1   DAVID M. STERN (State Bar No. 67697)
    dstern@ktbslaw.com
2   LEE R. BOGDANOFF (State Bar No. 119542)
    lbogdanoff@ktbslaw.com
3   MATTHEW C. HEYN (State Bar No. 227474)
    mheyn@ktbslaw.com
4   KLEE, TUCHIN, BOGDANOFF & STERN LLP
    1999 Avenue of the Stars, 39th Floor
5   Los Angeles, California 90067-6049
    Telephone: (310) 407-4000
6   Facsimile: (310) 407-9090

7   ANDREW L. SANDLER (*pro hac vice* application pending)
    asandler@buckleysandler.com
8   BENJAMIN B. KLUBES (*pro hac vice* application pending)
    bklubes@buckleysandler.com
9   BENJAMIN P. SAUL (*pro hac vice* application pending)
    bsaul@buckleysandler.com
10  BUCKLEYSANDLER LLP
    1250 24th Street N.W., Suite 700
11  Washington, District of Columbia 20037
    Telephone: (202) 349-8000
12  Facsimile: (202) 349-8080

13  *Attorneys for Alfred H. Siegel, Solely as Chapter 7 Trustee*

14              **UNITED STATES DISTRICT COURT**
15              **CENTRAL DISTRICT OF CALIFORNIA**
                      **WESTERN DIVISION**
16

17  XL SPECIALTY INSURANCE              Case No. CV 11-02078-GHK (JCGx)
    COMPANY, *et al.*,
18                                      **CHAPTER 7 TRUSTEE'S MOTION**
19              Plaintiffs,             **TO REFER THIS CIVIL ACTION**
                                        **TO BANKRUPTCY COURT**
20        v.                            **PURSUANT TO GENERAL ORDER**
                                        **NO. 266 AND 28 U.S.C. § 157(a)**
21  MICHAEL W. PERRY, *et al.*,
22              Defendants.                     Hearing
23                                      Date:   May 16, 2011
24                                      Time:   9:30 a.m.
                                        Place:  Roybal Federal Building
25                                              255 East Temple Street
26                                              Courtroom 650
                                                Los Angeles, CA 90012
27                                      Judge:  Hon. George H. King
28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

**TO:   THE HONORABLE GEORGE H. KING, UNITED STATES DISTRICT JUDGE, PLAINTIFFS AND DEFENDANTS IN THE ABOVE-CAPTIONED CIVIL ACTION, AND OTHER INTERESTED PARTIES.**

PLEASE TAKE NOTICE that Alfred H. Siegel (the "Trustee"), solely in his capacity as Chapter 7 Trustee of the estate (the "Estate") of IndyMac Bancorp, Inc. ("Bancorp"), hereby moves for an order referring the above-captioned civil action to the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court") pursuant to District Court General Order No. 266 and 28 U.S.C. § 157(a) (the "Motion").

The Motion is based upon the fact that the declaratory relief sought by the Plaintiffs in this action (the "Plaintiff Insurers") is indisputably "related to" (i) Bancorp's pending chapter 7 bankruptcy case; (ii) the Trustee's underlying litigation against certain former Bancorp officers and directors; and (iii) two other insurance coverage declaratory relief actions, which are pending in the Bankruptcy Court, including the Trustee's own, first-filed litigation against both the Plaintiff Insurers and other insurers.  Those two adversary proceedings seek declaratory relief directly contrary to the relief the Plaintiff Insurers seek here.[1]  Accordingly, the instant action is one over which the Bankruptcy Court has jurisdiction pursuant to sections 157, 1334, and 1367 of title 28 of the United States Code (the "Judicial Code").  As a result, General Order No. 266 mandates that this matter be referred to the Bankruptcy Court for resolution.

The Motion is based on and supported by these moving papers, the attached

---

[1]  For the Court's ease of reference, a copy of the Plaintiffs' *Complaint for Declaratory Relief* [ECF No. 1] (the "Plaintiff Insurers' Complaint") has been submitted herewith. *See Request for Judicial Notice in Support of the Trustee's Motions to Intervene and Refer Complaint to Bankruptcy Court* ("Request for Judicial Notice" or "RJN"), Ex. 1. The operative complaints pending before the Bankruptcy Court in the Trustee's Insurance Action and the FDIC's Insurance Action are attached to the RJN as Exhibits 2 & 3.

1

Memorandum of Points and Authorities, the accompanying Request for Judicial Notice and Declarations of Julia J. Rider ("Rider Decl.") and Martin R. Barash ("Barash Decl."), the pleadings and records on file in this action, and all such other evidence or argument as may be submitted to the Court at or before any hearing on this Motion.  Concurrently herewith the Trustee is filing a separate motion for mandatory or permissive intervention pursuant to Federal Rules of Civil Procedure 24(a) and 24(b) (the "Motion to Intervene").  Both motions are made following the conference of counsel pursuant to L.R. 7-3, which took place on March 28, 2011.

PLEASE TAKE FURTHER NOTICE that, pursuant to the parties' *Stipulation Regarding Filing and Calendaring of Hearing* (the "Briefing Schedule Stipulation"), the Trustee has set this Motion for hearing on May 16, 2011 at 9:30 a.m., or as soon thereafter as counsel may be heard, before the United States District Court for the Central District of California in Courtroom 650 of the Roybal Federal Building and United States Courthouse, 255 East Temple Street, Los Angeles, CA 90012.

PLEASE TAKE FURTHER NOTICE that Local Rule 7-9, as modified by the Briefing Schedule Stipulation and order thereon, requires that any objection, joinder, or response to the Motion must be in writing; must be accompanied by supporting evidence; must comply with the Local Rules of the Court; must be filed with the Court no later than April 22, 2011; and must be served on the Trustee's counsel.

WHEREFORE, the Trustee respectfully requests that the Court enter an order referring this matter to the Bankruptcy Court and granting such other and further relief that may be appropriate.

Dated: April 11, 2011          KLEE, TUCHIN, BOGDANOFF & STERN LLP

By:_____

David M. Stern
*Attorneys for Alfred H. Siegel,*
*Solely as Chapter 7 Trustee*

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

2

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................................................. 1

II.   FACTUAL BACKGROUND  ....................................................................... 3

      A.    Bancorp's Directors, Officers and Company Insurance. ........................... 4

      B.    The Litigation Against Bancorp and Its Former Directors and Officers...5

      C.    The Insurance Policy Exclusions. .......................................................... 7

      D.    The D&O Proofs of Claim. ................................................................... 9

      E.    All of the Insurance Policies Have Been the Subject of Litigation Before the Bankruptcy Court. ............................................................. 10

      F.    The Siegel Litigation.......................................................................... 11

      G.    The Trustee's Insurance Action. .......................................................... 12

      H.    The Plaintiff Insurers' Complaint. ....................................................... 13

III.  ARGUMENT................................................................................................ 14

      A.    In this District, Any Matters "Related to" a Bankruptcy Case Are Automatically Referred to the Bankruptcy Court. .................................. 14

      B.    This Litigation Is Unquestionably "Related To" the Pending Coverage Litigation, the Trustee's Adversary Proceeding, and the Bankruptcy Case Pending Before the Bankruptcy Court. ........................................... 15

      C.    Because of the Bankruptcy Court's Previous Involvement with These Matters, It Advances the Interests of Judicial Economy to Have All Coverage Matters Decided by the Bankruptcy Court ............................. 21

IV.   CONCLUSION ............................................................................................ 25

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

# TABLE OF AUTHORITIES

**Page(s)**

C ASES

*Am. Int'l Specialty Lines Ins. Co. v. Towers Fin. Corp.*,
   198 B.R. 55 (S.D.N.Y. 1996) ........................................................................16

*Boucher v. Shaw*,
   572 F.3d 1087 (9th Cir. 2009) ....................................................................20

*Caplan v. Liberty Mut. Ins. Co. (In re Century Brass Prods, Inc.)*,
   No. 2:91-79X, 1992 U.S. Dist. LEXIS 1277 (D. Conn. Jan. 7, 1992) ..............22

*Celotex Corp. v. Edwards*,
   514 U.S. 300, 115 S. Ct. 1493, 131 L. Ed. 2d 403 (1995) ............................2, 15

*Centrix Fin. Liquidating Trust v. Nat'l Union Fire Ins. Co.*
   *(In re Centrix Fin., LLC)*,
   No. 09-01542, 2011 U.S. Dist. LEXIS 3247 (D. Colo. Jan. 7, 2011) ...............22

*Cohen v. Nat'l Union Fire Ins. Co. (In re Cnty. Seat Stores)*,
   No. 01-2966, 2002 U.S. Dist. LEXIS 1555 (S.D.N.Y. Jan. 25, 2002)...16, 19, 22

*Colony Ins. Co. v. Nat'l Relocation Servs., Inc., et al.*,
   ECF Nos. 28 & 37, Case No. CV 09-3203-GW (C.D. Cal. Sept. 11, 2009) .....15

*Colony Insurance Co. v. National Relocation Services, Inc.*,
   Case No. CV 09-3203-GW .........................................................................17

*Crawford v. Bell*,
   599 F.2d 890 (9th Cir. 1979) .....................................................................24

*EquiMed, Inc. v. Steadfast Ins. Co. (In re EquiMed, Inc.)*,
   254 B.R. 347 (D. Md. 2000) .......................................................................22

*Exec. Risk Indem., Inc. v. Brooks (In re Jackson Brook Inst., Inc.)*,
   280 B.R. 779 (D. Me. 2002) .......................................................................22

*Far Out Prods. v. Oskar*,
   247 F.3d 986 (9th Cir. 2001) .....................................................................20

*Fed. Ins. Co. v. Sheldon*,
   167 B.R. 15 (S.D.N.Y. 1994) .............................................................15, 17, 23

K LEE , T UCHIN , B OGDANOFF & S TERN LLP
1999 A VENUE OF THE S TARS , 39 TH F LOOR
L OS A NGELES , C ALIFORNIA 90067-6049
T ELEPHONE : (310) 407-4000

*Gray v. Petoseed Co.*,
   985 F. Supp. 625 (D.S.C. 1996) ..................................................................24

*GTS 900 F, LLC v. Corus Constr. Venture, LLC (In re GTS 900 F, LLC)*,
   No. 10-06693, 2010 U.S. Dist. LEXIS 129112 (C.D. Cal. Nov. 23, 2010).......21

*In re Canter*,
   299 F.3d 1150 (9th Cir. 2002) .....................................................................21

*In re Circle K Corp.*,
   121 B.R. 257 (Bankr. D. Ariz. 1990) ..........................................................20

*In re Fietz*,
   852 F.2d 455 (9th Cir. 1988) ................................................................ 1, 15

*In re Leslie Fay Cos.*,
   207 B.R. 764 (Bankr. S.D.N.Y. 1997) ........................................................19

*In re Marcus Hook Dev. Park, Inc.*,
   943 F.2d 261 (3d Cir. 1991) .......................................................................16

*In re Mercury Masonry Corp.*,
   114 B.R. 35 (Bankr. S.D.N.Y. 1990) ..........................................................23

*In re Sacred Heart Hosp.*,
   182 B.R. 413 (Bankr. E.D. Pa. 1995) ..........................................................20

*In re Titan Energy, Inc.*,
   837 F.2d 325 (8th Cir. 1988) ............................................................... 17, 19

*In re TM Carlton House Partners*,
   93 B.R. 859 (Bankr. E.D. Pa. 1988) ..........................................................20

*Johnston Envtl. Corp. v. Knight (In re Goodman)*,
   991 F.2d 613 (9th Cir. 1993) .....................................................................20

*Kaonohi Ohana, Ltd. v. Sutherland*,
   873 F.2d 1302 (9th Cir. 1989) ...................................................................15

*Kolinsky v. Russ (In re Kolinsky)*,
   100 B.R. 695 (Bankr. S.D.N.Y. 1989) ........................................................16

*Mellon v. Del. & Hudson R.R. (In re Del. & Hudson R.R.)*,
   122 B.R. 887 (D. Del. 1991)......................................................................24

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

*Montana v. Goldin (In re Pegasus Gold Corp.)*,
    394 F.3d 1189 (9th Cir. 2005) ...................................................................... 15

*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*,
    458 U.S. 50, 102 S. Ct. 2858, 73 L. Ed. 2d 598 (1982) ..................................... 14

*Pacor, Inc. v. Higgins*,
    743 F.2d 984 (3d Cir. 1984) ............................................................... passim

*Phillips v. Congelton, L.L.C. (In re White Mt. Mining Co., L.L.C.)*,
    403 F.3d 164 (4th Cir. 2005) ..................................................................... 23

*Pintlar Corp. v. Fidelity & Casualty Co. (In re Pintlar Corp.)*,
    124 F.3d 1310 (9th Cir. 1997) ............................................................. 18, 19

*Safeco Ins. Co. v. Farmland Indus., Inc. (In re Farmland Indus., Inc.)*,
    296 B.R. 793 (B.A.P. 8th Cir. 2003) ............................................................ 16

*Sasson v. Sokoloff (In re Sasson)*,
    424 F.3d 864 (9th Cir. 2005) ..................................................................... 15

*Travelers Cas. & Sur. Co. v. Skinner Engine Co. (In re Am.
    Capital Equip., LLC)*,
    325 B.R. 372 (W.D. Pa. 2005) .................................................................... 22

*U.S. ex rel. McGough v. Covington Techs. Co.*,
    967 F.2d 1391 (9th Cir. 1992) .................................................................... 18

*United States v. Stringfellow*,
    783 F.2d 821 (9th Cir. 1986) ..................................................................... 18

**STATUTES**

11 U.S.C. § 362 .............................................................................................. 20

28 U.S.C. §157 ......................................................................................... 14, 25

28 U.S.C. § 158 .............................................................................................. 18

28 U.S.C. § 1334 ...................................................................................... 14, 15

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

This is an action for determination of the scope of coverage for certain insureds under four of eight insurance policies Bancorp purchased before filing for bankruptcy. It is one of three coverage actions seeking to determine the scope of Bancorp's policies.  The four insurance companies that are the Plaintiff Insurers in this action request a ruling that certain exclusions, which are in *all eight* of Bancorp's insurance policies, exclude coverage for all litigation matters currently pending against their insureds, including litigation brought by the Trustee in the Bankruptcy Court.

The insurance policies are one of the more important assets of the Bancorp Estate.  The Bankruptcy Court has exercised jurisdiction over the policies and has dealt with several disputes regarding the use of funds available under the policies.  In fact, this action is just one of three overlapping lawsuits seeking declaratory relief regarding the scope of coverage under Bancorp's insurance policies.  The other two lawsuits are adversary proceedings currently pending in the Bankruptcy Court that request declaratory relief determining coverage under *all eight* insurance policies. Unlike the Plaintiff Insurers' Complaint, the complaints in the other two actions involve all of the relevant parties, including the Trustee and all the insurers. Additionally, both actions were filed before the present suit was commenced.

This Court's General Order No. 266 provides that all matters "related to" a bankruptcy case are to be automatically referred to the Bankruptcy Court.  The Ninth Circuit Court of Appeals has held that a matter is "related to" a bankruptcy case if "*the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy.*"[2]  There is no reasonable question that this coverage

---

[2]   *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988) (emphasis in original; citing and adopting the "related to" test set forth in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)); *see also, e.g., Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S. Ct. 1493, 1499, 131 L. Ed. 2d 403, 410 (1995) ("We agree with the views expressed by the Court of Appeals for the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (1984) . . . .").

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

proceeding could conceivably have effects on the Bancorp Estate, including because:

- The Estate has multi-million dollar claims against Bancorp's former CEO and directors, who are insureds under the Plaintiff Insurers' policies. The Estate's ability to collect on those claims against the CEO and directors may depend on whether their losses are covered by the Plaintiff Insurers' insurance policies.

- The present action has the same subject matter as the two adversary proceedings pending before the Bankruptcy Court. All three matters seek declaratory relief regarding the scope of exclusions common to all of Bancorp's insurance policies, including whether there is coverage for the Trustee's pending litigation. A declaration in this action may have effects on those actions.

- Several of Bancorp's former directors and officers have filed proofs of claim in the Bankruptcy Court against the Bancorp Estate for indemnification. These indemnity obligations could total hundreds of millions of dollars. The Estate has coverage for such indemnity obligations under several insurance policies. Although Bancorp is not an insured under the Plaintiff Insurers' policies, the Estate is entitled to coverage under related directors, officers and company insurance policies for the 2007 to 2008 policy year. The effect of the declaratory relief that the Plaintiff Insurers seek would be to force the policies that cover former Bancorp directors and officers, as well as the Estate itself, for the policy year 2007-2008 to bear all losses (including defense costs) for all the Pending Litigation (described below) rather than having coverage spread over both the 2007-2008 and 2008-2009 policies, as Bancorp intended. This would significantly deplete the aggregate insurance coverage available to the Estate.

- The Trustee maintains that the filing of this action, in and of itself, violated the automatic stay arising in Bancorp's bankruptcy case. Accordingly, continued prosecution of this action threatens the administration of the Bancorp Estate.

Ultimately, any judicial determination of whether the insurance policies stand as a

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

2

source of payment for the Estate as a plaintiff or as an insured will have direct and tangible effects on the Estate, making this matter "related to" Bancorp's bankruptcy case.  In light of the foregoing, General Order No. 266 requires referral of the present matter.

If there is any discretion regarding the enforcement of General Order No. 266, the Court should not hesitate to exercise that discretion in favor of referral.  This coverage action is one patch of a multifaceted and interrelated litigation quilt with which the Bankruptcy Court is already quite familiar.  It is strongly in the interests of judicial economy that this lawsuit be decided by the same court that will decide the two other coverage actions and the Trustee's underlying litigation.  Consolidating matters in that one court is efficient for the parties and both courts, and avoids palpable risks of inconsistent or conflicting judgments.  Indeed, the Bankruptcy Court is the best qualified to determine the scope of the policies because it has familiarity with much of the underlying litigation and has been dealing with many of the parties in the three years during which the Bancorp bankruptcy case has been pending.  This litigation would be best handled by the Bankruptcy Court, which is why General Order No. 266 automatically refers it there.

## II.    FACTUAL BACKGROUND [3]

Bancorp is the indirect corporate parent of the Bank. On July 11, 2008, the Office of Thrift Supervision seized the Bank and named the FDIC as receiver for the Bank.  RJN Ex. 3, page 7, ¶ 3.  On July 31, 2008, Bancorp filed a petition for relief under chapter 7 of the Bankruptcy Code in the Bankruptcy Court, thereby commencing the case captioned *In re IndyMac Bancorp, Inc.*, Case No. 08-21752 (the "Bankruptcy Case"), which is still pending before the Bankruptcy Court.  *Id.*

---

[3]   Because the grounds for this Motion and the Motion to Intervene are similar, this factual background is reprinted from the Motion to Intervene.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE:  (310) 407-4000

### A.    Bancorp's Directors, Officers and Company Insurance.

In 2007, Bancorp purchased directors, officers, and company insurance ("D&O Insurance") in the total amount of $80 million in coverage.  This coverage was spread among eight policies, each with a face limit of $10 million.  The policy year for these policies was March 1, 2007 to March 1, 2008.  These policies collectively are referred to as the "First Year Tower."  The premiums for the First Year Tower policies totaled over $1,777,920.  RJN Ex. 3, page 7, ¶ 3 & page 10.

Prior to the expiration of the First Year Tower policies, Bancorp purchased eight replacement or renewal policies, which also provided a total of $80 million in coverage.  In exchange for this D&O coverage, Bancorp paid over $6,113,281 in premiums, reflecting an increase of *over 300%* or $4 million over the premiums charged for the First Year Tower.  RJN Ex. 3, page 7, ¶ 3 & page 10.  These eight insurance policies are collectively referred to as the "Second Year Tower."  The policy year for the Second Year Tower policies was March 1, 2008 to April 1, 2009.  RJN Ex. 3, page 7, ¶ 3 & page 10.

Both the First Year Tower and the Second Year Tower are comprised of:

a.    The primary policy and the first three layers of excess policies, which collectively provide $40 million of insurance with three types of coverage:

(1)    coverage for losses resulting from claims made against directors and officers during the policy period for "an individual act," also known as "Side A" coverage;

(2)    coverage for Bancorp's losses as a result of indemnifying officers and directors for losses, also known as "Side B" coverage; and

(3)    coverage for losses sustained by Bancorp as a result of securities law violations, also known as "Side C" coverage.

b.    The fourth, fifth, sixth, and seventh layers of excess policies, which collectively provide a total of $40 million of "Side A" coverage only.  RJN Ex. 3, page 8, ¶ 9.

4

In both the First Year Tower and the Second Year Tower, the eight insurance policies provide nearly identical coverage with the exception that the fourth, fifth, sixth, and seventh layers of excess policies in both towers only provide Side A Coverage.  Each policy references Bancorp by name as among the "Assureds," as the "Named Insured" or otherwise "Insured" party, as the "Named Entity," or as the "Policyholder."  Rider Decl. ¶ 3.  All policies in the First Year Tower and the Second Year Tower include the "Interrelated Wrongful Acts Exclusion," and all policies in the Second Year Tower also contains the "Tripp Exclusion," both of which are discussed in greater detail below.  *Id.* ¶ 4.

The policies are depleting insurance policies.  The $10 million of coverage for each of the policies represents the applicable insurer's maximum liability thereunder (except if the insurers are liable for bad faith denial of coverage), irrespective of whether, in the case of the primary policy and first three excess policies, the covered losses arise under "Side A," "Side B," or "Side C."  *Id.* ¶ 5.  When the insurers pay defense costs, it exhausts available coverage.  Regardless of the party receiving such payments, all payments made on account of losses under the policies, including attorneys' fees and court costs, reduce the available aggregate insurance for all of the insureds.  *Id.*

## B.   The Litigation Against Bancorp and Its Former Directors and Officers.

As reflected in the Plaintiff Insurers' Complaint, Bancorp and its former directors and officers have been parties to several lawsuits that were filed at or around the time of  Bancorp's collapse and for which claims have been reported under the insurance policies (collectively, the "<u>Pending Litigation</u>"), which includes:

- Six securities class actions were filed between June 6, 2008 and August 1, 2008 in the United States District Court for the Central District of California relating to the collapse of Bancorp and the Bank.  Five of the six securities class actions were consolidated into *Daniels v. IndyMac*

Klee, Tuchin, Bogdanoff & Stern LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067-6049
Telephone:  (310) 407-4000

*Bancorp, Inc.*, Case No. 2:08-cv-03812-GW-VBK (the "Daniels Litigation").  The most recent complaint in the Daniels Litigation is attached to the Plaintiff Insurers' Complaint as Exhibit E.  The other securities class action, the "Tripp Litigation," was not consolidated.  The most recent complaint in the Tripp Litigation is attached to the Plaintiff Insurers' Complaint as Exhibit F.  Bancorp is a defendant in both actions.

- On November 13, 2009, the Trustee initiated the Siegel Litigation in the Bankruptcy Court against Michael Perry (the former CEO) and certain of the directors of Bancorp.  That action is described in greater detail below.  A true and correct copy of the Trustee's complaint is attached to the Plaintiff Insurers' Complaint as Exhibit J.

- On July 2, 2010, the FDIC filed a complaint against former officers of the Bank in the United States District Court for the Central District of California in an action styled *FDIC v. Van Dellen, et al.*, Case No. 2:10-cv-04915-DSF-SH (the "FDIC Litigation").  A true and correct copy of the complaint in the FDIC Litigation is attached to the Plaintiff Insurers' Complaint as Exhibit H.

- On May 14, 2009, the Police and Fire Retirement System of the City of Detroit filed a complaint in the U.S. District Court for the Southern District of New York against former officers of the Bank, styled *Police and Fire Retirement System of the City of Detroit v. IndyMac MBS, Inc., et al.*, Case No. 09-6-cv-4583 (the "Detroit Action").  Plaintiff Insurers' Complaint ¶ 81.

- On June 14, 2009, the Wyoming State Treasurer and Wyoming Retirement System filed a complaint in the same court against some of the same former officers, styled *Wyoming State Treasurer, et al. v. Glinski, et al.*, Case No. 09-cv-5933 (the "Wyoming Action").

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

- The Detroit and Wyoming Actions were subsequently consolidated into a single action in the U.S. District Court for the Southern District of New York styled *In re IndyMac Mortgage-Backed Securities Litigation*, Case No. 09-civ-4583.  A true and correct copy of the most recent complaint in the consolidated action is attached to the Plaintiff Insurers' Complaint as Exhibit L.

- On September 22, 2009, MBIA Insurance Corporation filed a complaint in California State Superior Court, Los Angeles County against IndyMac MBS, Inc. and former officers of Bancorp and the Bank, among others, styled *MBIA Insurance Corporation v. IndyMac ABS, Inc., et al.*, California Superior Court Los Angeles Case No. BC422358 (the "<u>MBIA Litigation</u>").  A true and correct copy of the most recent complaint in the MBIA Litigation is attached to the Plaintiff Insurers' Complaint as Exhibit M.

- On September 17, 2010, Assured Guaranty Municipal Corp. filed a complaint in California State Superior Court, Los Angeles County against IndyMac MBS, Inc. and former officers of Bancorp and the Bank, styled *Assured Guaranty Municipal Corp. v. UBS Securities LLC, et al.*, California Superior Court Los Angeles Case No. BCC445785 (the "<u>Assured Guaranty Litigation</u>").  A true and correct copy of the operative complaint in the Assured Guaranty Litigation is attached to the Plaintiff Insurers' Complaint as Exhibit N.

### C.   The Insurance Policy Exclusions.

The Plaintiff Insurers and the other insurers have denied coverage under the Second Year Tower policies for all of the above-referenced litigations wholly or in part based on the three exclusions in their policies:  (i) the "Interrelated Wrongful Acts Exclusion," (ii) the Tripp Exclusion, and (iii) the exclusion for losses based on events that are the subject of any notice given under any other insurance policy.  Plaintiff

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

7

Insurers' Complaint ¶¶ 86-87.

The "Tripp Exclusion" provides that there will be no coverage under those policies for claims:

> based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the following:
>
> 1.  The litigation styled *Wayman Tripp and Sven Mossberg v. IndyMac Bancorp, Inc. Michael W. Perry and Scott Keys*, initiated 12 March 2007 in the United States District Court for the Central District of California under the caption Claude A. Reese v. IndyMac Financial, Inc., Richard A. Wohl and Scott Keys, Case No. 2:07-cv-1635-GW-VBK ("the Tripp Litigation"); or
>
> 2.  Any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions underlying or alleged in the Tripp Litigation.

*See* 2008-2009 XL Policy, Endorsement No. 16 (attached to the Plaintiff Insurers' Complaint as Exhibit A).

The Tripp Exclusion is incorporated into the insurance policies of each of the other Plaintiff Insurers. *See* 2008-2009 Arch Policy § I(C) (attached to Plaintiff Insurers' Complaint as Exhibit B); 2008-2009 Ace Policy § IV.A. (attached to Plaintiff Insurers' Complaint as Exhibit C); 2008-2009 Axis Policy, Endorsement 4 (attached to Plaintiff Insurers' Complaint as Exhibit D). The Tripp Exclusion is also included in the primary and first three levels of excess coverage under the Second Year Tower, which are the subject of both the Trustee's Insurance Action and the FDIC's Insurance Action (although conspicuously missing from the Plaintiff Insurers' Complaint). *See* 2008-2009 Lloyds Policy, last page (Trustee Insurance Complaint

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

Ex. A).[4]

The other two exclusions are related both to each other and to the Tripp Exclusion.  They provide that the Plaintiff Insurers will not pay any loss for acts that "have as a common nexus any fact, circumstance, situation, event, transaction or series of acts, circumstances, situations, events or transactions" – with respect to acts that were the basis of coverage notices given prior to the Second Year Tower's policy period.  2008-2009 XL Policy, § III.B. (attached to the Plaintiff Insurers' Complaint as Exhibit A).  Generally such claims are "Interrelated Wrongful Acts" that "shall be deemed to constitute a single Claim and shall be deemed to have been made at the earliest time at which the earliest such Claim is made or deemed to have been made" *Id.* §§ II(J) & IV(G).  These provisions are a part of each of the First Year Tower policies and the Second Year Tower policies, including the policies which are the subject of the Trustee's Insurance Action and the FDIC's Insurance Action.

**D.      The D&O Proofs of Claim.**

The coverage under the insurance policies is an asset of the Estate because, among other reasons, Bancorp's former CEO and several of its former directors have filed proofs of claim in the Bankruptcy Court that implicate coverage under the policies.[5]

On November 24, 2008, Mr. Perry, former Bancorp CEO and director, filed a proof of claim in Bancorp's bankruptcy case for unpaid prepetition compensation, termination damages, and indemnification pursuant to a certain employment

---

4    The Trustee Insurance Complaint is attached to the Request for Judicial Notice as Exhibit 2.  Each of the first three layers of excess policies incorporate the exclusions of the Lloyds policy.  2008-09 Zurich Policy, § I  (Trustee Insurance Complaint, Ex. B); 2008-09 Hartford Policy, § III.A.  (Trustee Insurance Complaint, Ex. C); 2008-09 CNA Policy, § I (Trustee Insurance Complaint, Ex. D).

5    Those claimants include Louis E. Caldera, Lyle E. Gramley, Hugh M. Grant, Patrick C. Haden, Terrance G. Hodel, Robert L. Hunt II, Lydia H. Kennard, Bruce G. Willison, and Michael W. Perry (collectively, the "D&O Defendants").

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

agreement attached as Attachment B thereto.  *See* RJN Ex. 5.  With respect to indemnification, the Perry proof of claim broadly asserts unliquidated rights "to defense costs and indemnity in connection with claims filed against [Perry] for his actions or inactions as an officer or director of [Bancorp] or any affiliate," including pursuant to Bancorp's organic documents.  *See id.* ¶¶ 8-9.  In addition to the Siegel Litigation (described below), Mr. Perry is a defendant in several other civil proceedings, including the securities class actions, the MBIA Litigation and the Assured Guaranty Litigation, which are discussed above.

On November 26, 2008, Louis E. Caldera, Hugh M. Grant, Terrance G. Hodel, Robert L. Hunt II, and Lydia H. Kennard, former Bancorp directors, each filed a proof of claim in Bancorp's bankruptcy case for indemnification.  *See* RJN Exs. 6-10.  Each of these proofs of claim asserts, *inter alia,* rights of indemnification in respect of claims asserted against these individuals in their capacity as directors of Bancorp "pursuant to any applicable indemnity agreements with the Debtor, the Debtor's articles of incorporation and by-laws, and by operation of governing law."  Thus far, these individuals have been sued only in the Siegel Litigation.

**E.     All of the Insurance Policies Have Been the Subject of Litigation Before the Bankruptcy Court.**

Since the bankruptcy case was filed in 2008, the Bankruptcy Court has presided over numerous contested matters, discovery disputes, and adversary proceedings related to Bancorp's bankruptcy.  Much of that work has been directly related to the D&O Insurance.

Following Bancorp's bankruptcy petition, several former Bancorp directors and officers filed two motions for relief from the automatic stay to seek to access several of Bancorp's insurance policies, describing the importance of the insurance money for the funding of their defense.  *See* RJN Exs. 11 & 12.  After partially denying the first motion based on its specific determination and finding that the D&O Insurance policies are property of the Estate, *see* RJN Ex. 13, ¶ 2, the Bankruptcy Court ordered

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

the parties to mediation before a former judge of this Court, the Hon. Dickran Tevrizian (Ret.).  As a result of that mediation, the parties entered into several stipulations, which were approved by the Bankruptcy Court, granting the former directors and officers limited relief from the automatic stay to receive reimbursement of their defense costs under the D&O Insurance policies.  RJN Ex. 14-17

Under the close supervision of the Bankruptcy Court and pursuant to Bankruptcy Court orders entered in December 2008, August 2009, and June 2010, over *$30 million* of funds have been released from the insurance policies to allow the covered individuals to defend themselves in various litigations (including those discussed below).  *See* RJN Exs. 15 & 17.  As required by the Bankruptcy Court's orders, Retired Judge Tevrizian has reviewed all of the associated legal bills and has thereby assisted the Bankruptcy Court's efforts to mitigate depletion of these valuable Estate assets.  On several occasions, Bancorp's former directors and officers have requested further relief from the Bankruptcy Court to access coverage under the insurance policies and the Bankruptcy Court has issued appropriate orders ruling on the parties' ability to access the policies for various lawsuits.  *See, e.g.*, RJN Exs. 18 & 19.  Indeed, in the last two weeks, the Trustee, the former Bancorp directors and officers, and the FDIC have submitted further stipulations for relief from stay so that the Insurers may pay an additional $10 million in defense costs.  *See* RJN Ex. 20.[6] Not one of the Bankruptcy Court's decisions in connection with Bancorp's insurance policies has been appealed.

## F.    The Siegel Litigation.

As noted above, on November 13, 2009, the Trustee filed the Siegel Litigation against the D&O Defendants.  The Siegel Litigation objects to proofs of claim filed against the Estate by the D&O Defendants, including indemnity claims, and seeks equitable subordination of such claims.  *See* Plaintiff Insurers' Complaint at Exhibit J

---

[6]    This stipulation is still subject to Bankruptcy Court approval.

(RJN Ex. 1)  ¶¶ 239-255.  In addition, the Siegel Litigation alleges counterclaims for breaches of the duties of care, loyalty and good faith and for corporate waste.  *Id.* ¶¶ 265-302.

The Siegel Litigation seeks damages arising from the D&O Defendants' wrongful downstreaming from Bancorp to the Bank of $355 million between September 2007 and May 2008.  Those downstream transfers violated Bancorp's policies requiring (i) advance approval of transactions by Bancorp's board of directors and (ii) that Bancorp maintain adequate cash reserves.  *Id.* ¶¶ 202-213.

The amount of damages asserted in the Siegel Litigation in respect of the downstream transfers ($355 million) exceeds the total amount of insurance provided under the First Year Tower and the Second Year Tower combined ($160 million). Pursuant to the Bankruptcy Court's order, the Siegel Litigation and most other litigation affecting the policies was sent to mediation before Judge Daniel Weinstein (Ret.).  RJN Ex. 26.

The insurers have denied coverage under the Second Year Tower policies for all of the claims against the D&O Defendants in the Siegel Litigation based upon (1) the Tripp Exclusion and (2) their contention that the Siegel Litigation is based upon "Interrelated Wrongful Acts" with acts that occurred prior to the inception of the Second Year Tower and were the subject of a notice under the First Year Tower.  *See* Plaintiff Insurers' Complaint at Exhibit I.  The insurers' coverage position has stalled the global mediation before Judge Weinstein.  RJN Ex. 26.

### G.    The Trustee's Insurance Action.

The Trustee asserts that the insurers' position regarding the nature, extent and scope of the insurance coverage under the Second Year Tower – coverage that Bancorp paid a substantial sum to acquire before its bankruptcy – is wrong. Accordingly, on February 2, 2011, the Trustee filed an action seeking a declaration that the claims asserted in the Siegel Litigation are covered by the Second Year Tower policies, including the policies issued by the Plaintiff Insurers.  RJN Ex. 2.  In

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

connection with the Trustee's Insurance Action, the parties have submitted a joint status report stating that they believe "there are limited or no factual disputes in this case and that it can be decided by summary judgment.  To the extent genuine issues of material fact exist after the motion(s) for summary judgment are decided, the parties will meet to agree on a discovery plan and scheduling based on those factual issues." RJN Ex. 22.  Thus, both parties anticipate that the Trustee's Insurance Action will be decided without the need for a trial.

### H.    The Plaintiff Insurers' Complaint.

On January 12, 2011, ACE American Insurance ("ACE") commenced a declaratory relief action regarding the scope of its 2008-2009 insurance policy (in particular, the scope of the Tripp Exclusion and the Interrelated Wrongful Acts Exclusions) by filing a complaint in the California Superior Court (the "Superior Court Complaint").  RJN Ex. 23.  The Superior Court Complaint sought to determine that ACE had no obligation to provide coverage under the Second Year Tower policies in respect of the claims in the Pending Litigation.  On February 2, 2011, the Trustee's counsel transmitted correspondence advising that the filing of ACE's complaint violated the automatic stay arising in Bancorp's bankruptcy case and requesting that the complaint be dismissed.  *See* Barash Decl. ¶ 3 & Ex. 33.

On February 20, 2011, the directors named as defendants in the Superior Court Action filed a notice of removal, removing the Superior Court Complaint to the Bankruptcy Court.  RJN Ex. 24.  On March 3, 2011, ACE filed a notice of voluntary dismissal.  RJN Ex. 25.

Within seven days of that dismissal, on March 10, 2011, ACE and the other Plaintiff Insurers filed the Plaintiff Insurers' Complaint, which initiated the instant action.  RJN Ex. 1.  The Plaintiff Insurers' Complaint seeks essentially the same relief as the Superior Court Complaint, but includes several additional plaintiffs (although notably not all the implicated insurers).  On March 15, 2011, the Trustee's counsel transmitted correspondence advising that the filing of this action violated the

13

automatic stay arising in Bancorp's bankruptcy case and requesting that the complaint
be dismissed.  *See* Barash Decl. ¶ 4 & Ex. 34.

## III.   ARGUMENT

### A.   In this District, Any Matters "Related to" a Bankruptcy Case Are Automatically Referred to the Bankruptcy Court.

In 1984, Congress enacted curative legislation in response to the Supreme
Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*,
458 U.S. 50, 102 S. Ct. 2858, 73 L. Ed. 2d 598 (1982).  That legislation established a
system designed to allocate responsibility for certain cases and proceedings between
Article I bankruptcy judges and Article III district judges.  Thus, Judicial Code section
1334(b) vests district courts with three types of original "bankruptcy" jurisdiction:
(1) civil proceedings "arising under" the Bankruptcy Code; (2) civil proceedings
"arising in" a bankruptcy case; and (3) civil proceedings "related to" a bankruptcy
case.  *See* 28 U.S.C. § 1334(b).  Judicial Code section 157(a) then provides that
"[e]ach district court may provide that any or all cases under title 11 and any or all
proceedings arising under title 11 or arising in or related to a case under title 11 *shall
be referred* to the bankruptcy judges for the district."  *Id.* § 157(a) (emphasis added).

The United States District Court for the Central District of California responded
to Congress' codification of Judicial Code section 157(a) with a July 23, 1984 Order
of the Chief Judge titled *In the Matter of References Under Title 11 and Withdrawal
of General Order No. 242-A*.  Paragraph (1) of that Order provides that the District
Court "hereby refers to the bankruptcy judges for this district all cases under Title 11
and all proceedings under Title 11 or arising in or related to a case under Title 11."
The July 23, 1984 Order was finalized and adopted *nunc pro tunc* by District Court
General Order No. 266, which remains in effect today.  RJN Ex. 28.

Thus, in this district, all bankruptcy cases and all disputes "arising under" the
Bankruptcy Code, "arising in" a bankruptcy case, or "related to" a bankruptcy case are
automatically referred to the bankruptcy courts that serve the Central District of

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

California.  The appropriate method to enforce a general order referring matters to the Bankruptcy Court is by noticed motion.  *See, e.g.*, *Colony Ins. Co. v. Nat'l Relocation Servs., Inc., et al.*, ECF Nos. 28 & 37 [RJN Exs. 29 & 30], Case No. CV 09-3203-GW (C.D. Cal. Sept. 11, 2009) (referring insurance coverage action between third parties to the bankruptcy court after motion by bankruptcy estate's representative); *Fed. Ins. Co. v. Sheldon*, 167 B.R. 15, 18-19 (S.D.N.Y. 1994) (same).

**B.     This Litigation Is Unquestionably "Related To" the Pending Coverage Litigation, the Trustee's Adversary Proceeding, and the Bankruptcy Case Pending Before the Bankruptcy Court.**

"A bankruptcy court's 'related to' jurisdiction is very broad, including nearly every matter directly or indirectly related to the bankruptcy." *Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864, 868 (9th Cir. 2005) (citation and quotation marks omitted).  As explained by the Ninth Circuit Court of Appeals:

> The Ninth Circuit has adopted the "*Pacor* test" for determining the scope of "related to" jurisdiction.  Under this formulation, the test is whether: *the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy*.  Thus, the proceeding need not necessarily be against the debtor or against the debtor's property.  An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1193 (9th Cir. 2005) (citations omitted; emphasis in original); *see also, e.g.*, *Celotex*, 514 U.S. at 308; *Fietz*, 852 F.2d at 457.

The fact that the Trustee is not (yet) a party to this litigation is irrelevant because "related to" matters include "suits between third parties which have an effect on the bankruptcy estate." *Celotex*, 514 U.S. at 308 n.5; *see also, e.g.*, *Kaonohi*

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

15

*Ohana, Ltd. v. Sutherland*, 873 F.2d 1302, 1307 (9th Cir. 1989) ("[F]ederal jurisdiction exists pursuant to section 1334(b) when resolution of nondebtor litigation may directly affect the estate's obligation to creditors whose claims are currently before the bankruptcy court."); *Kolinsky v. Russ (In re Kolinsky)*, 100 B.R. 695, 702 (Bankr. S.D.N.Y. 1989) ("If a resolution of an action between nondebtors would affect the amount of property available for distribution to the creditors of a bankruptcy estate or the allocation of property among such creditors, or if the outcome could alter the debtor's rights or liabilities, such civil proceeding will be regarded as related to the bankruptcy case.").  Nor is it necessary that there be absolute certainty this litigation *will* actually affect the Bancorp Estate; the "key word in this test is 'conceivable.' Certainty, or even likelihood, is not a requirement."  *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 264 (3d Cir. 1991).

There can be little question that this litigation is "related to" the other coverage adversary proceedings, the Trustee's underlying litigation, and the Bankruptcy Case. The present litigation may have an impact on the Estate in the following ways:

First, the instant coverage action directly affects the value of the Trustee's lawsuit against Bancorp's former CEO and directors.  The Plaintiff Insurers' Complaint seeks a declaration that the Trustee's lawsuit against these individuals is not covered by their policies.  If the Plaintiff Insurers prevail, it would substantially decrease the aggregate assets available to satisfy the judgment the Trustee will obtain against Bancorp's former CEO and directors, and may prevent the parties from reaching a reasonable settlement of those claims.  This result clearly could "conceivably" have *some* "effect" on Bancorp's Estate, rendering this litigation "related to" Bancorp's Bankruptcy Case.

In fact, courts throughout the country have held that coverage lawsuits related to a bankrupt debtor's insurance coverage, including when the trustee or debtor-in-possession is a plaintiff, are "related to" its bankruptcy case.  *See, e.g.*, *Safeco Ins. Co. v. Farmland Indus., Inc. (In re Farmland Indus., Inc.)*, 296 B.R. 793, 802-08 (B.A.P.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

8th Cir. 2003); *Cohen v. Nat'l Union Fire Ins. Co. (In re Cnty. Seat Stores)*, No. 01-2966, 2002 U.S. Dist. LEXIS 1555, at *13-17 (S.D.N.Y. Jan. 25, 2002); *Am. Int'l Specialty Lines Ins. Co. v. Towers Fin. Corp.*, 198 B.R. 55, 60-62 (S.D.N.Y. 1996); *Fed. Ins. v. Sheldon*, 167 B.R. at 19-20.

*Federal Insurance v. Sheldon* is directly on point.  In that case, the bankruptcy trustee for the debtor, Donald Sheldon & Co., filed an adversary proceeding against the debtor's officers, Sheldon and Schad, alleging that they were responsible for losses that ensued from the debtor's failure.  *Id.* at 16.  The D&O insurer filed a declaratory relief complaint in the district court contending that the D&O policies issued to the debtor did not provide coverage for the trustee's litigation claims.  *Id.* at 18.  The trustee moved to refer the coverage matter to the bankruptcy court.  The district court granted the trustee's motion, reasoning that:

> If there is a determination that the D&O insurance policy does in fact cover Sheldon and Schad's liability, then the insurance proceeds will pay a substantial portion of their liability to the estate, which would otherwise remain unsatisfied.  As the Eighth Circuit has held, even a proceeding which portends a mere contingent or tangential effect on a debtor's estate meets the broad jurisdictional test articulated in *Pacor*.  Here, the resolution of this action will affect the DSCO liquidation, since the proceeds of the D&O policy paid to Sheldon and Schad, if any, would become payable to the Trustee.  Accordingly, the Trustee has a clear interest in the outcome of this action.  ***Since the outcome of this proceeding obviously will have some effect on the bankrupt's estate, this Court finds the trustee's argument that this proceeding is within the bankruptcy court's "related to" jurisdiction to be persuasive.***

*Id.* at 20 (emphasis added; citation omitted); *accord In re Titan Energy, Inc.*, 837 F.2d 325, 329-30 (8th Cir. 1988) (finding that nondebtor claims against third party insurance company were "related to" the bankruptcy under *Pacor* because recovery

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

would reduce liabilities of the estate).

Similarly, in *Colony Insurance Co. v. National Relocation Services, Inc.*, Case No. CV 09-3203-GW, District Judge Wu entered an order enforcing General Order No. 266 in a matter where the relevant insurance policy had not even been purchased by the debtor (unlike here) because the debtor's status as a plaintiff against an insured party gave it a sufficient interest in the policy proceeds to confer "related to" status and warrant referral. *See* RJN Exs. 29 & 30.

Second, the instant coverage action also has a conceivable effect on the Bancorp Estate because the facts and allegations underlying the Plaintiff Insurers' declaratory relief action have nearly identical facts and legal issues as the two pending coverage adversary proceedings before the Bankruptcy Court. The instant case seeks declaratory judgment – for just the Plaintiff Insurers – regarding whether the Interrelated Wrongful Acts Exclusion and the Tripp Exclusion are broad enough to exclude from coverage all of the Pending Litigation. RJN Ex. 1, ¶¶ 93-95, 101-103, 109-111, 118-120, 126-128, 134-136. The coverage adversary proceedings currently pending in the Bankruptcy Court seek declaratory judgment regarding the same exclusions for ***all*** policies, including policies that provide coverage to the Estate for the many indemnity proofs of claim asserted by Bancorp's former CEO and directors. RJN Ex. 2, ¶¶ 47-50 & Ex. 3, ¶¶ 84-85, 97-98, 101-102, 105-106, 110-111, 113, 115, 117-118. A determination of the scope of such exclusions in this Court would unquestionably have some impact on the determination of the Estate's coverage in those adversary proceedings. This is particularly so since any appeal of the actions before the Bankruptcy Court would be decided by this Court, if any party so elects. *See* 28 U.S.C. §§ 158(a) & 158(c)(1). *Cf. U.S. ex rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1396 (9th Cir. 1992) (*stare decisis* effect is grounds to intervene);

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

*United States v. Stringfellow*, 783 F.2d 821, 826 (9th Cir. 1986) (same).[7]

  Third, the instant coverage action has a conceivable effect on the Bancorp Estate because the Estate is an insured party under the 2007-2008 D&O Insurance policies that provide Side B and Side C coverage (*i.e.*, the first $40 million of coverage under the First Year Tower). If the Plaintiff Insurers are successful in this declaratory relief action, that coverage will be worth much less. This is because the Plaintiff Insurers seek declaratory judgment that the claims of the directors and officers for *all* of the Pending Litigation must be covered under the 2007-2008 policies, not under the 2008-2009 policies. Funding all defense costs, settlements, and judgments from the 2007-2008 policies inevitably reduces the Estate's coverage as an insured under those policies.

  Actions that would deplete the Estate's coverage for indemnity claims are at least "related to" Bancorp's bankruptcy case. *See, e.g.*, *In re Titan Energy, Inc.*, 837 F.2d at 329; *In re Cnty. Seat Stores*, 2002 U.S. Dist. LEXIS 1555, at *15-16 (finding that a coverage action was within the bankruptcy court's "core" jurisdiction because resolution of the dispute "will determine whether the debtor will be subject to the

---

[7] In *Pintlar Corp. v. Fidelity & Casualty Co. (In re Pintlar Corp.)*, 124 F.3d 1310 (9th Cir. 1997), the Ninth Circuit found that the automatic stay did not prevent a Delaware Chancery Court from ruling on the scope of an insurance policy. The court rejected the debtor's argument that the action should be stayed because of the potential to impact the debtor's coverage, concluding that "the Delaware action will not have a res judicata effect on litigation concerning the scope of Gulf's indemnification coverage." *Id.* at 1313. The question presented in *Pintlar* was whether, on its facts, the coverage in question was property of the estate, not whether the bankruptcy court had "related to" jurisdiction. Moreover, the facts here are different because (1) unlike the Delaware court in *Pintlar*, this Court will likely review the Bankruptcy Court's decisions regarding the scope of coverage; and (2) the issue raised with respect to "Side A" coverage is also germane regarding Bancorp's rights under its own indemnification coverage. As a practical matter, a decision in the Plaintiff Insurers' action *will* have potential res judicata effect on Bancorp. Of equal significance, for the reasons set forth in the Motion to Intervene, the Trustee is entitled and should be permitted to intervene in the present action because of its very real impact on the Estate.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

indemnification claims of the Directors and Officers, potentially reducing the estate for other creditors, or whether the insurance proceeds will fund such indemnification expenses"); *In re Leslie Fay Cos.*, 207 B.R. 764, 785 (Bankr. S.D.N.Y. 1997) ("[T]he debtors have an interest in those proceeds because of the possibility that the class action might deplete the policy and theoretically force claims for indemnification to fall upon the estate."); *In re Sacred Heart Hosp.*, 182 B.R. 413, 420 (Bankr. E.D. Pa. 1995) (holding that estate had an "indemnification interest in proceeds" where "payment of either type of claim would have diminished the pot, and arguably exposed the debtor to claims which otherwise might have been paid by the insurer"); *In re Circle K Corp.*, 121 B.R. 257, 261-62 (Bankr. D. Ariz. 1990) (finding insurance proceeds to be estate property due to possible indemnity coverage, even though "the insurers have reserved their rights not to defend or pay" and even though the debtor had not yet made payments; the key fact was that "[i]n certain instances, debtor can make a claim for reimbursement for indemnification claims paid").

Fourth, the Trustee maintains that the Plaintiff Insurers' very filing of this action violated the automatic stay associated with the Bancorp case insofar as those insurers are attempting to exercise control over property of the Estate, which is forbidden by the stay. *See* 11 U.S.C. § 362(a)(3); Barash Decl. Exs. 33 & 34.  The automatic stay is one of the most fundamental protections offered to debtors in bankruptcy cases. *See, e.g.*, *Boucher v. Shaw*, 572 F.3d 1087, 1092 (9th Cir. 2009) ("The automatic stay is fundamental to bankruptcy law."); *Far Out Prods. v. Oskar*, 247 F.3d 986, 995 (9th Cir. 2001) ("the automatic stay provision is so central to the functioning of the bankruptcy system that this circuit regards judgments obtained in violation of the provision as void rather than merely voidable on the motion of the debtor").  Indeed, parties who willfully violate the stay – as the Plaintiff Insurers have done here – may be subject to significant sanctions, payment of attorneys' fees, or other awards in favor of a debtor's estate. *See, e.g.*, *Johnston Envtl. Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 618-21 (9th Cir. 1993).  As a result of its significance

20

to the administration of bankruptcy law, matters relating to the automatic stay are, more so than other proceedings, arguably among the most "core" bankruptcy proceedings. *See, e.g.*, *In re TM Carlton House Partners*, 93 B.R. 859, 872 (Bankr. E.D. Pa. 1988) (concluding that "a proceeding to enforce the automatic stay . . . is incontestably core"). Therefore, the Bankruptcy Court is best situated to consider whether the pursuit of this litigation by the Plaintiff Insurers violated the automatic stay, and the need to consider that "core" issue again demonstrates how this action will directly affect administration of the Bancorp Estate.

Because the results of this litigation could affect the Bancorp Estate (1) in its capacity as plaintiff against insured parties, (2) in its capacity as plaintiff against the Plaintiff Insurers in its own coverage action, (3) in its capacity as an insured party under other insurance policies, and (4) in its capacity as a entity protected by the automatic stay, it easily satisfies the *Pacor* test for "related to" jurisdiction.

## C. Because of the Bankruptcy Court's Previous Involvement with These Matters, It Advances the Interests of Judicial Economy to Have All Coverage Matters Decided by the Bankruptcy Court

The Ninth Circuit has made clear that the bankruptcy reference should be enforced when a contrary result would cause "an inefficient allocation of judicial resources," particularly when "the bankruptcy court [i]s more familiar with the facts and issues of the case." *In re Canter*, 299 F.3d 1150, 1154 (9th Cir. 2002); *see also, e.g.*, *GTS 900 F, LLC v. Corus Constr. Venture, LLC (In re GTS 900 F, LLC)*, No. 10-06693, 2010 U.S. Dist. LEXIS 129112, at *11 (C.D. Cal. Nov. 23, 2010) (explaining how "a district court should consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors" in determining whether to enforce the reference (quoting *Sec. Farms. v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1008 (9th Cir. 1997)). Here, multiple considerations of judicial economy weigh heavily in favor of referral.

First, the Plaintiff Insurers' declaratory relief action seeks partially to obtain

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

declaratory relief regarding whether the insureds have coverage for losses arising from the Siegel Litigation.  That adversary proceeding has been pending in the Bankruptcy Court for almost a year and a half.  *See* RJN Ex. 31 (ECF docket sheet for the Siegel Litigation).  The Bankruptcy Court has ruled on three motions to dismiss and one motion (by the FDIC) to intervene.  *See id.*  The motions that have been filed in the Siegel Litigation have allowed the Bankruptcy Court to become knowledgeable about the complex facts and legal issues implicated by the Siegel Litigation.  The Bankruptcy Court's existing knowledge about the matter will only continue to grow as the Siegel Litigation proceeds to trial.  As a result of this expanding foundation of knowledge and familiarity, there can be no question that the Bankruptcy Court is best situated to resolve other matters related to the claims in the Siegel Litigation, such as whether those claims implicate insurance coverage under the Second Year Tower.

Bifurcating these obviously related matters into separate proceedings before separate courts and on separate tracks (including for discovery, motion practice, trial, and potential appeals) would be wasteful and inefficient, and would also raise palpable concerns about conflicting or inconsistent rulings.  In similar circumstances, numerous courts have enforced the bankruptcy reference to conserve resources and avoid creating these unnecessary problems.  *See, e.g.*, *Centrix Fin. Liquidating Trust v. Nat'l Union Fire Ins. Co. (In re Centrix Fin., LLC)*, No. 09-01542, 2011 U.S. Dist. LEXIS 3247, at \*16-19 (D. Colo. Jan. 7, 2011) (declining to withdraw reference of insurance litigation due to efficiencies stemming from the fact that "the Bankruptcy Court is in a better position to oversee the discovery process in this matter, seeing as the basis for plaintiffs' claim for insurance will largely overlap with the facts underlying" another pending proceeding before it); *Travelers Cas. & Sur. Co. v. Skinner Engine Co. (In re Am. Capital Equip., LLC)*, 325 B.R. 372, 378-80 (W.D. Pa. 2005) (same); *Exec. Risk Indem., Inc. v. Brooks (In re Jackson Brook Inst., Inc.)*, 280 B.R. 779, 785-86 (D. Me. 2002) (same); *In re Cnty. Seat Stores*, 2002 U.S. Dist. LEXIS 1555, at \*18-20 (same); *EquiMed, Inc. v. Steadfast Ins. Co. (In re EquiMed,*

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

*Inc.)*, 254 B.R. 347, 351 (D. Md. 2000) (same); *Caplan v. Liberty Mut. Ins. Co. (In re Century Brass Prods, Inc.)*, No. 2:91-79X, 1992 U.S. Dist. LEXIS 1277, at *7-9 (D. Conn. Jan. 7, 1992) (same).  Indeed, precisely these considerations influenced District Judge Leisure's referral in the *Federal Insurance v. Sheldon* case.  *See* 167 B.R. at 21(discussing how "the interests of judicial economy clearly militate in favor of the bankruptcy court hearing this matter" as a result of the bankruptcy court's familiarity with the underlying litigation giving rise to possible insurance coverage, putting that court "in a better position than this Court to assess the issues involving the insurance policy and the extent of its coverage" and avoiding "an obvious waste of judicial resources for two courts to preside over this matter").[8]

Second, beyond the underlying Siegel Litigation against the D&O Defendants, the Bankruptcy Court has also presided over the Bancorp bankruptcy case and multiple other adversary proceedings for nearly three years.  Based upon its understanding of the dynamics of the broader case, it was the Bankruptcy Court that ordered the mediation before Judge Weinstein (Ret.), which brought all of the IndyMac-related plaintiffs, defendants, and insurers into one place to attempt to consensually resolve their differences.  RJN Ex. 33.  As a result, there are significant economies to be realized by leaving the instant matter in that court.  Indeed, referral of this action to the Bankruptcy Court is consistent with Congress' intent "to centralize disputes about a debtor's assets and legal obligations in the bankruptcy courts." *Phillips v. Congelton, L.L.C. (In re White Mt. Mining Co., L.L.C.)*, 403 F.3d 164, 169 (4th Cir. 2005); *see also, e.g.*, *In re Mercury Masonry Corp.*, 114 B.R. 35, 39 (Bankr. S.D.N.Y. 1990) (describing "the public's interest in centralizing bankruptcy

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

---

[8]   District Judge George H. Wu, who is presiding over the only Pending Litigation in this Court (i.e., the Tripp Litigation and the Daniels Litigation), has declined transfer of all three coverage actions.  RJN Ex. 32.  Thus, there would not be similar efficiencies in the District Court deciding the coverage matters, as a new District Court Judge would have to familiarize himself or herself with all of the Pending Litigation.

23

1    proceedings in the bankruptcy court where the case is pending").

2         <u>Third</u>, the Bankruptcy Court also has prior experience specifically related to the

3    relevant insurance policies.  The Bankruptcy Court had to consider the terms of those

4    policies in some detail as part of the efforts by Bancorp's former directors and officers

5    to access the related proceeds notwithstanding the automatic stay.  The Bankruptcy

6    Court has subsequently exercised extensive supervisory control over the disbursement

7    of millions of dollars from the policies.  The Bankruptcy Court continues to monitor

8    use of the policies both for the purposes of settlements and payment of defense costs.

9    RJN Ex. 20.  Accordingly, the Bankruptcy Court is fully "up to speed" on the terms of

10   the different policies, which should foster quicker resolution of this action in that

11   forum.

12        <u>Fourth</u>, referral also comports with the "first-filed" rule and related principles of

13   comity, which teach "that where two federal courts have concurrent jurisdiction over

14   the same issue, the second court should ordinarily decline to exercise jurisdiction."

15   *Gray v. Petoseed Co.*, 985 F. Supp. 625, 633 n.9 (D.S.C. 1996); *see also, e.g.*,

16   *Crawford v. Bell*, 599 F.2d 890, 893 (9th Cir. 1979) ("[I]ncreasing calendar

17   congestion in the federal courts makes it imperative to avoid concurrent litigation in

18   more than one forum whenever consistent with the rights of the parties.  A court may

19   choose not to exercise its jurisdiction when another court having jurisdiction over the

20   same matter has entertained it and can achieve the same result.").  The pragmatic

21   considerations are obvious: consolidating later-filed litigation in a single forum avoids

22   the need to tax the limited resources – including the time of judges, clerks, and staff,

23   as well as the administrative expenses associated with maintaining a docket, filings,

24   and the like – of two separate courts, thereby streamlining the burdens imposed by

25   overlapping matters on litigants and the judicial system as a whole.  Here, the

26   Bankruptcy Court has already exercised jurisdiction over two insurance coverage

27   actions filed prior to this one; the "first-filed" rule suggests that the Bankruptcy Court

28   should exercise jurisdiction over all of them.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

24

At day's end, "Congress intended to have bankruptcy proceedings adjudicated in the bankruptcy court unless rebutted by a contravening policy." *Mellon v. Del. & Hudson R.R. (In re Del. & Hudson R.R.)*, 122 B.R. 887, 896 (D. Del. 1991).  Here, there is no "contravening policy" pulling against the Bankruptcy Court.  To the contrary, referring this matter to that court will be far more efficient given that court's significant role, experience, and specialized knowledge regarding the Siegel Litigation, the Bancorp bankruptcy more broadly, and the relevant insurance policies.

## IV.    CONCLUSION

Under Ninth Circuit law, the present action is "related to" Bancorp's Bankruptcy Case, the Trustee's underlying adversary proceeding, and the two other insurance coverage matters already pending before the Bankruptcy Court. Accordingly, General Order No. 266 mandates that this matter be sent to the Bankruptcy Court, and the Trustee requests that the Court enforce that order by referral under Judicial Code section 157(a).  For the forgoing reasons, the Court should enter an order referring the above-captioned action to the Bankruptcy Court.


Dated: April 11, 2011                   KLEE, TUCHIN, BOGDANOFF & STERN LLP


By:_____
                    David M. Stern
              *Attorneys for Alfred H. Siegel,*
              *Solely as Chapter 7 Trustee*

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000