1  DAVID M. STERN (State Bar No. 67697)
   dstern@ktbslaw.com
2  LEE R. BOGDANOFF (State Bar No. 119542)
   lbogdanoff@ktbslaw.com
3  MATTHEW C. HEYN (State Bar No. 227474)
   mheyn@ktbslaw.com
4  KLEE, TUCHIN, BOGDANOFF & STERN LLP
   1999 Avenue of the Stars, 39th Floor
5  Los Angeles, California 90067-6049
   Telephone: (310) 407-4000
6  Facsimile: (310) 407-9090

7  ANDREW L. SANDLER (*pro hac vice* application pending)
   asandler@buckleysandler.com
8  BENJAMIN B. KLUBES (*pro hac vice* application pending)
   bklubes@buckleysandler.com
9  BENJAMIN P. SAUL (*pro hac vice* application pending)
   bsaul@buckleysandler.com
10 BUCKLEYSANDLER LLP
   1250 24th Street N.W., Suite 700
11 Washington, District of Columbia 20037
   Telephone: (202) 349-8000
12 Facsimile: (202) 349-8080

13 *Attorneys for Proposed Intervenor Alfred H. Siegel,*
   *Solely as Chapter 7 Trustee*

14

15              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
16                   **WESTERN DIVISION**

17 XL SPECIALTY INSURANCE          Case No.  CV 11-02078-GHK (JCGx)
   COMPANY, *et al.*,
18                                 **CHAPTER 7 TRUSTEE'S MOTION**
                                   **TO INTERVENE**
19              Plaintiffs,
20        v.                                 Hearing
                                   Date:    May 16, 2011
21 MICHAEL W. PERRY, *et al.*,     Time:    9:30 a.m.
                                   Place:   Roybal Federal Building
22              Defendants.                 255 East Temple Street
                                            Courtroom 650
23                                          Los Angeles, CA 90012
24                                 Judge:   Hon. George H. King
25

26

27

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

**TO:   THE HONORABLE GEORGE H. KING, UNITED STATES DISTRICT JUDGE, PLAINTIFFS AND DEFENDANTS IN THE ABOVE-CAPTIONED CIVIL ACTION, AND OTHER INTERESTED PARTIES.**

PLEASE TAKE NOTICE that Alfred H. Siegel (the "Trustee"), solely in his capacity as Chapter 7 Trustee of the estate (the "Estate") of IndyMac Bancorp, Inc. ("Bancorp"), hereby moves, pursuant to FED. R. CIV. P. 24(a) and 24(b), for an order authorizing the Trustee to intervene in the above-captioned civil action (the "Motion"). By this Motion, the Trustee seeks mandatory intervention or, in the alternative, permissive intervention. Pursuant to FED. R. CIV. P. 24(c), the Trustee has filed and submitted his proposed answer in intervention concurrently herewith.

The Motion is based upon the fact that plaintiffs in the above-referenced action (collectively, the "Plaintiff Insurers") seek declaratory relief regarding the coverage available under the Estate's insurance policies that is in direct collision with the relief sought in (i) a ***previously filed*** declaratory relief action against the Plaintiff Insurers and several other insurers regarding the ***same issues*** (the "Trustee's Insurance Action"); and (ii) a ***previously filed*** declaratory relief action by IndyMac MBS, Inc., a wholly owned subsidiary of FDIC-controlled IndyMac Bank, F.S.B. (the "Bank") naming the Trustee and addressing these ***same issues*** (the "FDIC's Insurance Action"). Both the Trustee's Insurance Action and the FDIC's Insurance Action are now pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court"). The Trustee seeks to intervene in the present action to avoid inconsistent judgments and prevent blatant forum shopping by the Plaintiff Insurers.[1]

Mandatory intervention is appropriate because the Trustee has interests in the subject matter of this dispute (*i.e.*, the scope of the exclusions in the applicable

---

[1]   By separate motion filed concurrently herewith (the "Motion to Refer"), the Trustee is moving to have this civil action referred to the Bankruptcy Court.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

insurance policies) that could be impaired by the declaratory relief the Plaintiff Insurers seek.  In the alternative, permissive intervention is appropriate because, as is abundantly demonstrated by the complaints currently pending in the Bankruptcy Court, the Trustee has a claim that shares common questions of law with the Plaintiffs Insurers' Complaint in this action.[2]  Accordingly, the Court should grant the Trustee permission to intervene.

The Motion is based on and supported by these moving papers, the attached Memorandum of Points and Authorities, the accompanying Request for Judicial Notice and Declarations of Julia J. Rider ("Rider Decl.") and Martin R. Barash ("Barash Decl."), the pleadings and records on file in this action, and all such other evidence or argument as may be submitted to the Court at or before any hearing on this Motion.  This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on March 28, 2011.

PLEASE TAKE FURTHER NOTICE that, pursuant to the parties' *Stipulation Regarding Filing and Calendaring of Hearing* (the "Briefing Schedule Stipulation"), the Trustee has set this Motion for hearing on May 16, 2011 at 9:30 a.m., or as soon thereafter as counsel may be heard, before the United States District Court for the Central District of California in Courtroom 650 of the Roybal Federal Building and United States Courthouse, 255 East Temple Street, Los Angeles, CA 90012.

PLEASE TAKE FURTHER NOTICE that Local Rule 7-9, as modified by the Briefing Schedule Stipulation and order thereon, requires that any objection, joinder, or response to the Motion must be in writing; must be accompanied by supporting evidence; must comply with the Local Rules of the Court; must be filed with the Court

---

[2]  For the Court's ease of reference, a copy of the Plaintiffs' *Complaint for Declaratory Relief* [ECF No. 1] (the "Plaintiff Insurers' Complaint") has been submitted herewith. *See Request for Judicial Notice in Support of the Trustee's Motions to Intervene and Refer Complaint to Bankruptcy Court* ("Request for Judicial Notice" or "RJN"), Ex. 1. The operative complaints pending before the Bankruptcy Court in the Trustee's Insurance Action and the FDIC's Insurance Action are attached to the RJN as Exhibits 2 & 3.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

1  no later than April 22, 2011; and must be served on the Trustee's counsel.

2      WHEREFORE, the Trustee respectfully requests that the Court enter an order

3  authorizing the Trustee's intervention in the above-captioned civil action and granting

4  such other and further relief that may be appropriate.

5

6  Dated: April 11, 2011          KLEE, TUCHIN, BOGDANOFF & STERN LLP

7

8  By: _____
                David M. Stern

9          *Attorneys for Proposed Intervenor Alfred H. Siegel,*
              *Solely as Chapter 7 Trustee*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ....................................................................... 1

II.   FACTUAL BACKGROUND ..................................................... 3

      A.    Bancorp's Directors, Officers and Company Insurance. ......................... 4

      B.    The Litigation Against Bancorp and Its Former Directors and Officers. ... 5

      C.    The Insurance Policy Exclusions. ......................................... 7

      D.    The D&O Proofs of Claim. ................................................. 9

      E.    All of the Insurance Policies Have Been the Subject of Litigation Before the Bankruptcy Court. ............................................ 10

      F.    The Siegel Litigation. ................................................... 11

      G.    The Trustee's Insurance Action. .......................................... 12

      H.    The Plaintiff Insurers' Complaint. ....................................... 13

III.  MANDATORY INTERVENTION IS APPROPRIATE ................................ 14

      A.    The Motion Is Timely. .................................................... 15

      B.    The Estate Has a Significantly Protectable Interest. ..................... 15

      C.    Disposition of this Action May Impair the Trustee's Ability to Protect the Estate's Interest. .......................................... 21

      D.    The Estate's Interests Are Inadequately Represented by the Parties to this Action. .......................................................... 21

IV.   IN LIGHT OF THE COMMON QUESTIONS OF LAW ABOUT  THE SCOPE OF THE EXCLUSIONS, PERMISSIVE  INTERVENTION IS APPROPRIATE. ............................................................... 23

V. CONCLUSION ........................................................................... 24

i

# TABLE OF AUTHORITIES

Page(s)

CASES

*ACandS, Inc. v. Aetna Cas. & Sur. Co.*,
666 F.2d 819 (3d Cir. 1981) ...................................................................21

*Aetna Cas. & Sur. Co. v. Jasmine, Ltd. (In re Jasmine, Ltd.)*,
258 B.R. 119 (D.N.J. 2000) ...................................................................19

*Arakaki v. Cayetano*,
324 F.3d 1078 (9th Cir. 2003) ...............................................................21

*C.S. v. Cal. Dept. of Educ.*,
No. 08-cv-0226, 2008 U.S. Dist. LEXIS 28657 (S.D. Cal. Apr. 7, 2008).........23

*California ex rel. Lockyer v. United States*,
450 F.3d 436 (9th Cir. 2006) .................................................................21

*California v. Tahoe Reg'l Planning Agency*,
792 F.2d 775 (9th Cir. 1986) .................................................................22

*Crosby v. St. Paul Fire & Marine Insurance Co.*,
138 F.R.D. 570 (W.D. Wash. 1991) ......................................................19

*Donnelly v. Glickman*,
159 F.3d 405 (9th Cir. 1998) .................................................................14

*Eureka Federal Savings & Loan Association v. American Casualty Co.*,
873 F.2d 229 (9th Cir. 1989) .................................................................20

*Exec. Risk Indemnity, Inc. v. Boston Reg'l Med. Ctr., Inc. (In re Boston Reg'l Med. Ctr., Inc.)*,
285 B.R. 87 (Bankr. D. Mass. 2002) .....................................................18

*Flintkote Co. v. Gen. Acc. Assur. Co.*,
410 F. Supp. 2d 875 (N.D. Cal. 2006)...................................................16

*Hatchwell v. Blue Shield of California*,
198 Cal. App. 3d 1027 (1988) ...............................................................17

*In re Circle K Corp.*,
121 B.R. 257 (Bankr. D. Ariz. 1990) ....................................................16

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

i

*In re CyberMedica, Inc.,*
    280 B.R. 12 (Bankr. D. Mass 2002) ..................................................16

*In re Sacred Heart Hosp.,*
    182 B.R. 413 (Bankr. E.D. Pa. 1995) ..............................................16

*Kootenai Tribe of Idaho v. Veneman,*
    313 F.3d 1094 (9th Cir. 2003) .......................................................23

*Kunkel v. Cont'l Cas. Co.,*
    866 F.2d 1269 (10th Cir. 1989) ....................................................20

*Lake Investors Dev. Grp. v. Egidi Dev. Grp.,*
    715 F.2d 1256 (7th Cir. 1983) ......................................................14

*Lite-on Peripherals, Inc. v. Burlington Air Express, Inc.,*
    255 F.3d 1189 (9th Cir. 2001) ......................................................17

*Metro. Inv. Sec., Inc. v. Cauvel (In re Metro. Mortg. & Sec. Co.),*
    325 B.R. 851 (Bankr. E.D. Wash. 2005) ........................................16

*Minoco Grp. of Cos. v. First State Underwriters Agency of New England
    Reinsurance Corp. (In re Minoco Grp. of Cos.),*
    799 F.2d 517 (9th Cir. 1986) ...........................................15, 16, 18

*Morris v. Nat'l Union Fire Ins. Co. (In re Eastwind Grp., Inc.),*
    303 B.R. 743 (Bankr. E.D. Pa. 2004) ............................................16

*Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.,*
    72 F.3d 361 (3d Cir. 1995) ...........................................................18

*Nat'l Union Fire Ins. Co. v. Reichhold, Inc.,*
    No. 1:06CV939, 2008 WL 90186 (M.D.N.C. Jan. 8, 2008) .............19

*Pintlar Corp. v. Fidelity & Casualty Co. (In re Pintlar Corp.),*
    124 F.3d 1310 (9th Cir. 1997) ......................................................17

*Rubins Contractors, Inc. v. Lumbermens Mut. Ins. Co.,*
    821 F.2d 671 (D.C. Cir. 1987)......................................................20

*S. Cal. Edison Co. v. Lynch,*
    307 F.3d 794 (9th Cir. 2002) .......................................................15

*Sagebrush Rebellion Inc. v. Watt,*
    713 F.2d 525 (9th Cir. 1983) .......................................................22

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

ii

*Sec. Ins. Co. v. Schipporeit,*
    69 F.3d 1377 (7th Cir. 1995) ....................................................................20

*Seretti v. Superior Nat'l Ins. Co.,*
    71 Cal. App. 4th 920 (1999) ....................................................................15

*Sierra Club v. EPA,*
    995 F.2d 1478 (9th Cir. 1993) ................................................................15

*Spangler v. Pasadena Bd. of Educ.,*
    552 F.2d 1326 (9th Cir. 1977) ................................................................23

*Sw. Ctr. for Biological Diversity v. Berg,*
    268 F.3d 810 (9th Cir. 2001) .............................................................14, 21

*Teague v. Bakker,*
    931 F.2d 259 (4th Cir. 1991) ..................................................................19

*TIG Specialty Ins. Co. v. Financial Web.com, Inc.,*
    208 F.R.D. 336 (M.D. Fla. 2002) ...........................................................20

*Tringali v. Hathaway Mach. Co.,*
    796 F.2d 553 (1st Cir. 1986) ...................................................................16

*U.S. ex rel. McGough v. Covington Techs. Co.,*
    967 F.2d 1391 (9th Cir. 1992) ................................................................17

*United States v. Oregon,*
    913 F.2d 576 (9th Cir. 1990) ..................................................................15

*United States v. Stringfellow,*
    783 F.2d 821 (9th Cir. 1986) ..................................................................17

**RULES AND STATUTES**

FED. R. CIV. P. 24(A)(2) ....................................................................14, 21, 23

FED. R. CIV. P. 24(B)(2) ................................................................................23

11 U.S.C. § 541 ..........................................................................................16

28 U.S.C. § 158 ..........................................................................................17

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

**OTHER AUTHORITIES**

7C WRIGHT, MILLER, & KANE, FEDERAL PRACTICE AND PROCEDURE:
    CIVIL 3D (2009).................................................................................21

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

This is a declaratory relief action by the insurers under four of eight insurance policies that Bancorp purchased in the first few months of 2008, before it filed for bankruptcy.  Of significance to this Motion is that this action is one of three overlapping lawsuits seeking declaratory relief regarding the scope of coverage under Bancorp's insurance policies.  The other two lawsuits are adversary proceedings currently pending in the Bankruptcy Court that seek declaratory relief determining coverage under *all eight* insurance policies.  Unlike the Plaintiff Insurers' Complaint, the complaints in the Trustee's Insurance Action and in the FDIC Insurance Action collectively involve all of the relevant parties, including the Trustee, and all eight insurers.  Additionally, both the Trustee's Insurance Action and the FDIC's Insurance Action were filed before the present suit.

Notwithstanding the broader and first-filed litigation pending in the Bankruptcy Court, the Plaintiff Insurers brought this action and chose not to sue the Trustee in an unsuccessful attempt to avoid litigating in the Bankruptcy Court.  The Trustee seeks to intervene in this action and to refer the action to the Bankruptcy Court to avoid waste, inconsistent judgments, and forum shopping by the Plaintiff Insurers.

As a threshold matter, and as explained in the Motion to Refer, judicial economy unquestionably favors referring this action to the Bankruptcy Court, which is already familiar with the nature of the claims in the Trustee's underlying litigation and thus is far better situated to resolve whether those claims are covered under the relevant insurance policies.  The Bankruptcy Court, the Trustee, and other parties in that litigation have already devoted substantial attention to the specific details of all the policies at issue, including multiple rounds of litigation and stipulations allowing for sizable distributions from the "Side A" parts of the policies.  Deciding the applicability of exclusions in four of eight policies in this separate proceeding in a separate court makes no sense from the standpoint of fairness or judicial economy.

However, whether or not this Court refers this litigation to the Bankruptcy Court, the Trustee submits, via this Motion, that he is entitled to be involved in its determination.

Mandatory intervention is appropriate here because the Estate has several significantly protectable economic interests in the subject matter of this dispute.

- Bancorp, the Trustee's predecessor in interest, purchased and is a party to all the insurance policies. As successor to Bancorp, the Trustee holds substantial contractual rights under the policies, including the right to ensure that the policies are interpreted consistently with the parties' intent so that the Trustee (on behalf of the Estate) receives the benefit of his predecessor's bargain.

- The exclusions at issue in this case are the subject of the Trustee's coverage litigation against all the insurers in the Bankruptcy Court. If any party to that litigation chooses, this Court could potentially review decisions of the Bankruptcy Court in an appeal of the Trustee's coverage litigation. Thus, the Estate has an interest in ensuring that this Court correctly interprets the exclusion to avoid a potentially adverse *stare decisis* effect.

- Although Bancorp is not an insured under the Plaintiff Insurers' policies, the Estate is entitled to coverage under related directors, officers and company insurance policies for the 2007-2008 policy year. The effect of the declaratory relief that the Plaintiff Insurers seek would be to force the policies that cover former Bancorp directors and officers, as well as the Estate itself, for the policy year 2007-2008 to bear all losses (including defense costs) for all the Pending Litigation (described below) rather than having coverage spread over both the 2007-2008 and 2008-2009 policies, as Bancorp intended. This would significantly deplete the aggregate insurance coverage available to the Estate.

- The Estate has an interest as a plaintiff against the other insureds. On

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

2

behalf of the Estate, the Trustee has filed a lawsuit (which the Complaint refers to as the "<u>Siegel Litigation</u>") against Bancorp's former CEO and directors.  The Trustee's suit is, among other things, based on the defendants' authorizing and/or permitting $355 million to be "downstreamed" from Bancorp to the Bank at a time when the Bank was doomed to fail and in violation of specific Bancorp policies.  An adverse decision in the above-captioned litigation would impair the value of the Trustee's lawsuit, because – absent coverage under the relevant insurance policies – the defendants may be unable to pay a $355 million judgment.

Each of these direct and significant Estate interests could be adversely affected by the disposition of this coverage action.  The Estate's interests, moreover, are not aligned with the current defendants' interests, none of whom are appropriately motivated to defend the Estate's interest.  To the contrary, the defendants' interests are adverse to the Estate insofar as they may seek to reduce their personal liability by arguing that certain claims against the policies fall only into the 2007-2008 policy year, while other claims fall into the 2008-2009 policy year.  The Trustee, on the other hand, seeks to maximize the coverage for the Estate and its claims against the defendants in the Siegel Litigation.  In order to protect the Estate's interests, the Trustee should be allowed to intervene.

## II.   FACTUAL BACKGROUND[3]

Bancorp is the indirect corporate parent of the Bank. On July 11, 2008, the Office of Thrift Supervision seized the Bank and named the FDIC as receiver for the Bank.  RJN Ex. 3, page 7, ¶ 3.  On July 31, 2008, Bancorp filed a petition for relief under chapter 7 of the Bankruptcy Code in the Bankruptcy Court, thereby

---

[3]   Because the grounds for the Motion to Refer and this Motion are similar, this factual background is the same as the factual background in the Motion to Refer.

commencing the case captioned *In re IndyMac Bancorp, Inc.*, Case No. 08-21752 (the "Bankruptcy Case"), which is still pending before the Bankruptcy Court. *Id.*

### A.   Bancorp's Directors, Officers and Company Insurance.

In 2007, Bancorp purchased directors, officers, and company insurance ("D&O Insurance") in the total amount of $80 million in coverage. This coverage was spread among eight policies, each with a face limit of $10 million. The policy year for these policies was March 1, 2007 to March 1, 2008. These policies collectively are referred to as the "First Year Tower." The premiums for the First Year Tower policies totaled over $1,777,920. RJN Ex. 3, page 7, ¶ 3 & page 10.

Prior to the expiration of the First Year Tower policies, Bancorp purchased eight replacement or renewal policies, which also provided a total of $80 million in coverage. In exchange for this D&O coverage, Bancorp paid over $6,113,281 in premiums, reflecting an increase of *over 300%* or $4 million over the premiums charged for the First Year Tower. RJN Ex. 3, page 7, ¶ 3 & page 10. These eight insurance policies are collectively referred to as the "Second Year Tower." The policy year for the Second Year Tower policies was March 1, 2008 to April 1, 2009. RJN Ex. 3, page 7, ¶ 3 & page 10.

Both the First Year Tower and the Second Year Tower are comprised of:

a.   The primary policy and the first three layers of excess policies, which collectively provide $40 million of insurance with three types of coverage:

    (1)   coverage for losses resulting from claims made against directors and officers during the policy period for "an individual act," also known as "Side A" coverage;

    (2)   coverage for Bancorp's losses as a result of indemnifying officers and directors for losses, also known as "Side B" coverage; and

    (3)   coverage for losses sustained by Bancorp as a result of securities law violations, also known as "Side C" coverage.

b.    The fourth, fifth, sixth, and seventh layers of excess policies, which

collectively provide a total of $40 million of "Side A" coverage only.

RJN Ex. 3, page 8, ¶ 9.

In both the First Year Tower and the Second Year Tower, the eight insurance

policies provide nearly identical coverage with the exception that the fourth, fifth,

sixth, and seventh layers of excess policies in both towers only provide Side A

Coverage.  Each policy references Bancorp by name as among the "Assureds," as the

"Named Insured" or otherwise "Insured" party, as the "Named Entity," or as the

"Policyholder."  Rider Decl. ¶ 3.  All policies in the First Year Tower and the Second

Year Tower include the "Interrelated Wrongful Acts Exclusion," and all policies in

the Second Year Tower also contains the "Tripp Exclusion," both of which are

discussed in greater detail below.  *Id.* ¶ 4.

The policies are depleting insurance policies.  The $10 million of coverage for

each of the policies represents the applicable insurer's maximum liability thereunder

(except if the insurers are liable for bad faith denial of coverage), irrespective of

whether, in the case of the primary policy and first three excess policies, the covered

losses arise under "Side A," "Side B," or "Side C."  *Id.* ¶ 5.  When the insurers pay

defense costs, it exhausts available coverage.  Regardless of the party receiving such

payments, all payments made on account of losses under the policies, including

attorneys' fees and court costs, reduce the available aggregate insurance for all of the

insureds.  *Id.*

**B.    The Litigation Against Bancorp and Its Former Directors and**

**Officers.**

As reflected in the Plaintiff Insurers' Complaint, Bancorp and its former

directors and officers have been parties to several lawsuits that were filed at or around

the time of  Bancorp's collapse and for which claims have been reported under the

insurance policies (collectively, the "<u>Pending Litigation</u>"), which includes:

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

- Six securities class actions were filed between June 6, 2008 and August 1, 2008 in the United States District Court for the Central District of California relating to the collapse of Bancorp and the Bank. Five of the six securities class actions were consolidated into *Daniels v. IndyMac Bancorp, Inc.*, Case No. 2:08-cv-03812-GW-VBK (the "Daniels Litigation"). The most recent complaint in the Daniels Litigation is attached to the Plaintiff Insurers' Complaint as Exhibit E. The other securities class action, the "Tripp Litigation," was not consolidated. The most recent complaint in the Tripp Litigation is attached to the Plaintiff Insurers' Complaint as Exhibit F. Bancorp is a defendant in both actions.

- On November 13, 2009, the Trustee initiated the Siegel Litigation in the Bankruptcy Court against Michael Perry (the former CEO) and certain of the directors of Bancorp. That action is described in greater detail below. A true and correct copy of the Trustee's complaint is attached to the Plaintiff Insurers' Complaint as Exhibit J.

- On July 2, 2010, the FDIC filed a complaint against former officers of the Bank in the United States District Court for the Central District of California in an action styled *FDIC v. Van Dellen, et al.*, Case No. 2:10-cv-04915-DSF-SH (the "FDIC Litigation"). A true and correct copy of the complaint in the FDIC Litigation is attached to the Plaintiff Insurers' Complaint as Exhibit H.

- On May 14, 2009, the Police and Fire Retirement System of the City of Detroit filed a complaint in the U.S. District Court for the Southern District of New York against former officers of the Bank, styled *Police and Fire Retirement System of the City of Detroit v. IndyMac MBS, Inc., et al.*, Case No. 09-6-cv-4583 (the "Detroit Action"). Plaintiff Insurers' Complaint ¶ 81.

6

- On June 14, 2009, the Wyoming State Treasurer and Wyoming Retirement System filed a complaint in the same court against some of the same former officers, styled *Wyoming State Treasurer, et al. v. Glinski, et al.*, Case No. 09-cv-5933 (the "Wyoming Action").

- The Detroit and Wyoming Actions were subsequently consolidated into a single action in the U.S. District Court for the Southern District of New York styled *In re IndyMac Mortgage-Backed Securities Litigation*, Case No. 09-civ-4583.  A true and correct copy of the most recent complaint in the consolidated action is attached to the Plaintiff Insurers' Complaint as Exhibit L.

- On September 22, 2009, MBIA Insurance Corporation filed a complaint in California State Superior Court, Los Angeles County against IndyMac MBS, Inc. and former officers of Bancorp and the Bank, among others, styled *MBIA Insurance Corporation v. IndyMac ABS, Inc., et al.*, California Superior Court Los Angeles Case No. BC422358 (the "MBIA Litigation").  A true and correct copy of the most recent complaint in the MBIA Litigation is attached to the Plaintiff Insurers' Complaint as Exhibit M.

- On September 17, 2010, Assured Guaranty Municipal Corp. filed a complaint in California State Superior Court, Los Angeles County against IndyMac MBS, Inc. and former officers of Bancorp and the Bank, styled *Assured Guaranty Municipal Corp. v. UBS Securities LLC, et al.*, California Superior Court Los Angeles Case No. BCC445785 (the "Assured Guaranty Litigation").  A true and correct copy of the operative complaint in the Assured Guaranty Litigation is attached to the Plaintiff Insurers' Complaint as Exhibit N.

**C.    The Insurance Policy Exclusions.**

The Plaintiff Insurers and the other insurers have denied coverage under the

7

Second Year Tower policies for all of the above-referenced litigations wholly or in part based on the three exclusions in their policies:  (i) the "Interrelated Wrongful Acts Exclusion," (ii) the Tripp Exclusion, and (iii) the exclusion for losses based on events that are the subject of any notice given under any other insurance policy.  Plaintiff Insurers' Complaint ¶¶ 86-87.

The "Tripp Exclusion" provides that there will be no coverage under those policies for claims:

> based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the following:
>
> 1.   The litigation styled *Wayman Tripp and Sven Mossberg v. IndyMac Bancorp, Inc. Michael W. Perry and Scott Keys*, initiated 12 March 2007 in the United States District Court for the Central District of California under the caption Claude A. Reese v. IndyMac Financial, Inc., Richard A. Wohl and Scott Keys, Case No. 2:07-cv-1635-GW-VBK ("the Tripp Litigation"); or
>
> 2.   Any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions underlying or alleged in the Tripp Litigation.

*See* 2008-2009 XL Policy, Endorsement No. 16 (attached to the Plaintiff Insurers' Complaint as Exhibit A).

The Tripp Exclusion is incorporated into the insurance policies of each of the other Plaintiff Insurers.  *See* 2008-2009 Arch Policy § I(C) (attached to Plaintiff Insurers' Complaint as Exhibit B); 2008-2009 Ace Policy § IV.A. (attached to Plaintiff Insurers' Complaint as Exhibit C); 2008-2009 Axis Policy, Endorsement 4 (attached to Plaintiff Insurers' Complaint as Exhibit D).  The Tripp Exclusion is also included in the primary and first three levels of excess coverage under the Second Year Tower, which are the subject of both the Trustee's Insurance Action and the FDIC's Insurance Action (although conspicuously missing from the Plaintiff Insurers'

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE:  (310) 407-4000

8

Complaint).  *See* 2008-2009 Lloyds Policy, last page (Trustee Insurance Complaint Ex. A).[4]

The other two exclusions are related both to each other and to the Tripp Exclusion.  They provide that the Plaintiff Insurers will not pay any loss for acts that "have as a common nexus any fact, circumstance, situation, event, transaction or series of acts, circumstances, situations, events or transactions" – with respect to acts that were the basis of coverage notices given prior to the Second Year Tower's policy period.  2008-2009 XL Policy, § III.B. (attached to the Plaintiff Insurers' Complaint as Exhibit A).  Generally such claims are "Interrelated Wrongful Acts" that "shall be deemed to constitute a single Claim and shall be deemed to have been made at the earliest time at which the earliest such Claim is made or deemed to have been made" *Id.* §§ II(J) & IV(G).  These provisions are a part of each of the First Year Tower policies and the Second Year Tower policies, including the policies which are the subject of the Trustee's Insurance Action and the FDIC's Insurance Action.

### D.    The D&O Proofs of Claim.

The coverage under the insurance policies is an asset of the Estate because, among other reasons, Bancorp's former CEO and several of its former directors have filed proofs of claim in the Bankruptcy Court that implicate coverage under the policies.[5]

On November 24, 2008, Mr. Perry, former Bancorp CEO and director, filed a proof of claim in Bancorp's bankruptcy case for unpaid prepetition compensation,

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE:  (310) 407-4000

---

4   The Trustee Insurance Complaint is attached to the Request for Judicial Notice as Exhibit 2.  Each of the first three layers of excess policies incorporate the exclusions of the Lloyds policy.  2008-09 Zurich Policy, § I  (Trustee Insurance Complaint, Ex. B); 2008-09 Hartford Policy, § III.A.  (Trustee Insurance Complaint, Ex. C); 2008-09 CNA Policy, § I (Trustee Insurance Complaint, Ex. D).

5   Those claimants include Louis E. Caldera, Lyle E. Gramley, Hugh M. Grant, Patrick C. Haden, Terrance G. Hodel, Robert L. Hunt II, Lydia H. Kennard, Bruce G. Willison, and Michael W. Perry (collectively, the "<u>D&O Defendants</u>").

9

termination damages, and indemnification pursuant to a certain employment agreement attached as Attachment B thereto.  *See* RJN Ex. 5.  With respect to indemnification, the Perry proof of claim broadly asserts unliquidated rights "to defense costs and indemnity in connection with claims filed against [Perry] for his actions or inactions as an officer or director of [Bancorp] or any affiliate," including pursuant to Bancorp's organic documents.  *See id.* ¶¶ 8-9.  In addition to the Siegel Litigation (described below), Mr. Perry is a defendant in several other civil proceedings, including the securities class actions, the MBIA Litigation and the Assured Guaranty Litigation, which are discussed above.

On November 26, 2008, Louis E. Caldera, Hugh M. Grant, Terrance G. Hodel, Robert L. Hunt II, and Lydia H. Kennard, former Bancorp directors, each filed a proof of claim in Bancorp's bankruptcy case for indemnification.  *See* RJN Exs. 6-10.  Each of these proofs of claim asserts, *inter alia,* rights of indemnification in respect of claims asserted against these individuals in their capacity as directors of Bancorp "pursuant to any applicable indemnity agreements with the Debtor, the Debtor's articles of incorporation and by-laws, and by operation of governing law."  Thus far, these individuals have been sued only in the Siegel Litigation.

**E.    All of the Insurance Policies Have Been the Subject of Litigation Before the Bankruptcy Court.**

Since the bankruptcy case was filed in 2008, the Bankruptcy Court has presided over numerous contested matters, discovery disputes, and adversary proceedings related to Bancorp's bankruptcy.  Much of that work has been directly related to the D&O Insurance.

Following Bancorp's bankruptcy petition, several former Bancorp directors and officers filed two motions for relief from the automatic stay to seek to access several of Bancorp's insurance policies, describing the importance of the insurance money for the funding of their defense.  *See* RJN Exs. 11 & 12.  After partially denying the first motion based on its specific determination and finding that the D&O Insurance

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

10

policies are property of the Estate, *see* RJN Ex. 13, ¶ 2, the Bankruptcy Court ordered the parties to mediation before a former judge of this Court, the Hon. Dickran Tevrizian (Ret.).  As a result of that mediation, the parties entered into several stipulations, which were approved by the Bankruptcy Court, granting the former directors and officers limited relief from the automatic stay to receive reimbursement of their defense costs under the D&O Insurance policies.  RJN Ex. 14-17

Under the close supervision of the Bankruptcy Court and pursuant to Bankruptcy Court orders entered in December 2008, August 2009, and June 2010, over *$30 million* of funds have been released from the insurance policies to allow the covered individuals to defend themselves in various litigations (including those discussed below).  *See* RJN Exs. 15 & 17.  As required by the Bankruptcy Court's orders, Retired Judge Tevrizian has reviewed all of the associated legal bills and has thereby assisted the Bankruptcy Court's efforts to mitigate depletion of these valuable Estate assets.  On several occasions, Bancorp's former directors and officers have requested further relief from the Bankruptcy Court to access coverage under the insurance policies and the Bankruptcy Court has issued appropriate orders ruling on the parties' ability to access the policies for various lawsuits.  *See, e.g.*, RJN Exs. 18 & 19.  Indeed, in the last two weeks, the Trustee, the former Bancorp directors and officers, and the FDIC have submitted further stipulations for relief from stay so that the Insurers may pay an additional $10 million in defense costs.  *See* RJN Ex. 20.[6] Not one of the Bankruptcy Court's decisions in connection with Bancorp's insurance policies has been appealed.

## F.   The Siegel Litigation.

As noted above, on November 13, 2009, the Trustee filed the Siegel Litigation against the D&O Defendants.  The Siegel Litigation objects to proofs of claim filed against the Estate by the D&O Defendants, including indemnity claims, and seeks

---

[6]   This stipulation is still subject to Bankruptcy Court approval.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

11

equitable subordination of such claims. *See* Plaintiff Insurers' Complaint at Exhibit J (RJN Ex. 1) ¶¶ 239-255. In addition, the Siegel Litigation alleges counterclaims for breaches of the duties of care, loyalty and good faith and for corporate waste. *Id.* ¶¶ 265-302.

The Siegel Litigation seeks damages arising from the D&O Defendants' wrongful downstreaming from Bancorp to the Bank of $355 million between September 2007 and May 2008. Those downstream transfers violated Bancorp's policies requiring (i) advance approval of transactions by Bancorp's board of directors and (ii) that Bancorp maintain adequate cash reserves. *Id.* ¶¶ 202-213.

The amount of damages asserted in the Siegel Litigation in respect of the downstream transfers ($355 million) exceeds the total amount of insurance provided under the First Year Tower and the Second Year Tower combined ($160 million). Pursuant to the Bankruptcy Court's order, the Siegel Litigation and most other litigation affecting the policies was sent to mediation before Judge Daniel Weinstein (Ret.). RJN Ex. 26.

The insurers have denied coverage under the Second Year Tower policies for all of the claims against the D&O Defendants in the Siegel Litigation based upon (1) the Tripp Exclusion and (2) their contention that the Siegel Litigation is based upon "Interrelated Wrongful Acts" with acts that occurred prior to the inception of the Second Year Tower and were the subject of a notice under the First Year Tower. *See* Plaintiff Insurers' Complaint at Exhibit I. The insurers' coverage position has stalled the global mediation before Judge Weinstein. RJN Ex. 26.

### G. The Trustee's Insurance Action.

The Trustee asserts that the insurers' position regarding the nature, extent and scope of the insurance coverage under the Second Year Tower – coverage that Bancorp paid a substantial sum to acquire before its bankruptcy – is wrong. Accordingly, on February 2, 2011, the Trustee filed an action seeking a declaration that the claims asserted in the Siegel Litigation are covered by the Second Year Tower

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

policies, including the policies issued by the Plaintiff Insurers.  RJN Ex. 2.  In connection with the Trustee's Insurance Action, the parties have submitted a joint status report stating that they believe "there are limited or no factual disputes in this case and that it can be decided by summary judgment.  To the extent genuine issues of material fact exist after the motion(s) for summary judgment are decided, the parties will meet to agree on a discovery plan and scheduling based on those factual issues."  RJN Ex. 22.  Thus, both parties anticipate that the Trustee's Insurance Action will be decided without the need for a trial.

### H.    The Plaintiff Insurers' Complaint.

On January 12, 2011, ACE American Insurance ("ACE") commenced a declaratory relief action regarding the scope of its 2008-2009 insurance policy (in particular, the scope of the Tripp Exclusion and the Interrelated Wrongful Acts Exclusions) by filing a complaint in the California Superior Court (the "Superior Court Complaint").  RJN Ex. 23.  The Superior Court Complaint sought to determine that ACE had no obligation to provide coverage under the Second Year Tower policies in respect of the claims in the Pending Litigation.  On February 2, 2011, the Trustee's counsel transmitted correspondence advising that the filing of ACE's complaint violated the automatic stay arising in Bancorp's bankruptcy case and requesting that the complaint be dismissed.  *See* Barash Decl. ¶ 3 & Ex. 33.

On February 20, 2011, the directors named as defendants in the Superior Court Action filed a notice of removal, removing the Superior Court Complaint to the Bankruptcy Court.  RJN Ex. 24.  On March 3, 2011, ACE filed a notice of voluntary dismissal.  RJN Ex. 25.

Within seven days of that dismissal, on March 10, 2011, ACE and the other Plaintiff Insurers filed the Plaintiff Insurers' Complaint, which initiated the instant action.  RJN Ex. 1.  The Plaintiff Insurers' Complaint seeks essentially the same relief as the Superior Court Complaint, but includes several additional plaintiffs (although notably not all the implicated insurers).  On March 15, 2011, the Trustee's counsel

13

transmitted correspondence advising that the filing of this action violated the

automatic stay arising in Bancorp's bankruptcy case and requesting that the complaint

be dismissed.  *See* Barash Decl. ¶ 4 & Ex. 34.

### III.    MANDATORY INTERVENTION IS APPROPRIATE

Federal Rule of Civil Procedure 24(a) provides, in pertinent part:

> On timely motion, the court must permit anyone to intervene who: ... claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

In determining whether intervention is appropriate under Rule 24(a)(2), the

Court is to accept as true the non-conclusory allegations of the motion to intervene.

*Lake Investors Dev. Grp. v. Egidi Dev. Grp.*, 715 F.2d 1256, 1258 (7th Cir. 1983).[7]

Additionally a "motion to intervene as a matter of right, moreover, should not be

dismissed unless it appears to a certainty that the intervenor is not entitled to relief

under any set of facts which could be proved under the complaint." *Id.* at 1258.  That

is a low bar, and the Trustee easily clears it.

Courts construe Rule 24(a)(2) liberally in favor of potential intervenors.  *Sw.

Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001); *Donnelly v.

Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).  The Ninth Circuit Court of Appeals has

prescribed a four-part test in evaluating motions to intervene:  (1) the motion must be

timely; (2) the applicant must claim a "significantly protectable" interest relating to

the property or transaction which is the subject of the action; (3) the applicant must be

---

[7]  Given the nature of the allegations, based on allegations in complaints and terms of
insurance policies, there is not much room for dispute in any event.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

14

so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.  *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993).  The Trustee satisfies all four requirements.

### A.  The Motion Is Timely.

Courts in the Ninth Circuit consider "three criteria to evaluate timeliness: the stage of the proceeding, prejudice to other parties, and the reason for and length of the delay." *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990).  There can be no serious question that the Motion is timely.  The Plaintiff Insurers' Complaint was filed on March 10, 2011.  On March 22, 2011, soon after the Trustee found out about the action, the Trustee's counsel requested a meet and confer pursuant to Local Rule 7-3 (which, due to the number of other parties, ultimately took place on March 28, 2011), meaning that this Motion was filed within days of the earliest possible date permitted by Local Rule 7-3.

### B.  The Estate Has a Significantly Protectable Interest.

A proposed intervenor has a "significant protectable interest" in an action if (1) it asserts an interest that is protected under some law, and (2) there is a "relationship" between its legally protected interest and the plaintiff's claims.  *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002) (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002)).  The Estate has several protectable interests in this lawsuit:

First, the insurance policies at issues are the Estate's policies, and the policies and the proceeds are property of the Estate.  Each policy expressly references Bancorp as among the "Assureds," as the "Named Insured" or otherwise "Insured" party, as the "Named Entity," or as the "Policyholder."  Bancorp is the purchaser of and a party to each of the insurance contracts, and the Estate has clear interests in enforcing those contracts in accordance with the parties' bargain.  *See, e.g.*, *Flintkote Co. v. Gen. Acc. Assur. Co.*, 410 F. Supp. 2d 875, 883 (N.D. Cal. 2006) ("Under California law, both

15

the parties to an insurance contract and third-party beneficiaries of the contract are entitled to enforce the contract."); *Cf. Seretti v. Superior Nat'l Ins. Co.*, 71 Cal. App. 4th 920, 929 (1999) (articulating similar rights for parties to an insurance contract).

Moreover, pursuant to Bankruptcy Code section 541(a)(1), Bancorp's Estate includes "all legal or equitable interests of [Bancorp] in property as of the commencement of [its bankruptcy case]." 11 U.S.C. § 541(a)(1). The language of section 541(a)(1) is so broad as to encompass a debtor's interest in director and officer liability insurance – even if that insurance provides no coverage to the debtor in bankruptcy. *See, e.g.*, *Minoco Grp. of Cos. v. First State Underwriters Agency of New England Reinsurance Corp. (In re Minoco Grp. of Cos.)*, 799 F.2d 517, 518-519 (9th Cir. 1986) ("[T]he legislative history makes plain that '[t]he scope of this paragraph [Section 541(a)] is broad. It includes all kinds of property, including tangible or intangible property …'"); *accord Tringali v. Hathaway Mach. Co.*, 796 F.2d 553 (1st Cir. 1986); *Morris v. Nat'l Union Fire Ins. Co. (In re Eastwind Grp., Inc.)*, 303 B.R. 743, 746 (Bankr. E.D. Pa. 2004) ("Because corporations pay for and own insurance policies, courts considering the question have concluded that the *policies* are property of the estate pursuant to 11 U.S.C. § 541(a)(1)."); *Metro. Inv. Sec., Inc. v. Cauvel (In re Metro. Mortg. & Sec. Co.)*, 325 B.R. 851, 856-57 (Bankr. E.D. Wash. 2005); *In re CyberMedica, Inc.*, 280 B.R. 12 (Bankr. D. Mass 2002); *In re Sacred Heart Hosp.*, 182 B.R. 413, 419-21 (Bankr. E.D. Pa. 1995); *In re Circle K Corp.*, 121 B.R. 257, 260-61 (Bankr. D. Ariz. 1990).

Because the Trustee succeeds to the rights of Bancorp, he has Bancorp's contractual rights under the policies, including to assure that the policies are interpreted consistently with the parties' intent. Under the insurance policies, Bancorp has the right, *inter alia*, to cancel the policies and act on behalf of all of the insureds and itself with respect to the giving and receiving of all notices, the payment of premiums, and the receipt of any return premium that may become due. *See, e.g.*, 2008-2009 XL Policy §§ IV.D., IV.F., IV.I.1. (attached to the Plaintiff Insurers'

16

Complaint as Exhibit A).  It is black letter law that the party to a contract has the ability to enforce that contract.  *Lite-on Peripherals, Inc. v. Burlington Air Express, Inc.*,  255 F.3d 1189, 1192-93 (9th Cir. 2001); *Hatchwell v. Blue Shield of California*, 198 Cal. App. 3d 1027, 1034 (1988).  This is a significant protectable interest for purposes of intervention.

<u>Second</u>, the exclusions at issue in this case are the subject of two separate, first-filed cases among the Trustee, the Plaintiff Insurers, and others.  Just as in this action, the important issue in these other actions is whether the Tripp Exclusion and the Interrelated Wrongful Acts Exclusions preclude coverage of the Pending Litigation.

The two other coverage cases are pending before the Bankruptcy Court.  Pursuant to 28 U.S.C. § 158, any appeal of the actions before the Bankruptcy Court would be decided by this Court, if any party to the appeal so elects.  28 U.S.C. §§ 158(a) & 158(c)(1).  Thus, the decisions that this Court makes with respect to the scope of the Tripp Exclusion and the Interrelated Wrongful Acts may have a *stare decisis* effect on the two other cases.  Where a party seeking to intervene in an action claims an interest in the very property and very transaction that is the subject of another action, the potential *stare decisis* effect can supply the practical disadvantage that warrants intervention as of right.  *U.S. ex rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1396 (9th Cir. 1992); *United States v. Stringfellow*, 783 F.2d 821, 826 (9th Cir. 1986) ("The prospect of stare decisis may, under certain circumstances, supply the requisite practical impairment warranting intervention as of right."), *vacated on other grounds*, 480 U.S. 370 (1987).[8]

---

[8]   In *Pintlar Corp. v. Fidelity & Casualty Co. (In re Pintlar Corp.)*, 124 F.3d 1310 (9th Cir. 1997), the Ninth Circuit found that the automatic stay did not prevent a Delaware Chancery Court from ruling on the scope of an insurance policy.  The court rejected the debtor's argument that the action should be stayed because of the potential to impact the debtor's coverage, concluding that "the Delaware action will not have a *res judicata* effect on litigation concerning the scope of Gulf's indemnification coverage."  *Id.* at 1313.  The question presented in *Pintlar* was whether, on its facts, the coverage in question was property of the estate, not whether the trustee was entitled to intervene.

*FOOTNOTE CONTINUED ON NEXT PAGE*

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

1   <u>Third</u>, because the Estate is insured under the First Year Tower policies that

2   provide entity coverage with identical exclusions, it may well be affected by the

3   interpretation of the Tripp Exclusion and the Interrelated Wrongful Acts Exclusion in

4   this case.  After all, there is no question that the Estate has coverage for claims against

5   it under the 2007-2008 D&O Insurance policies that provide Side B and Side C

6   coverage (*i.e.*, the first $40 million of coverage under the First Year Tower).  If the

7   Plaintiff Insurers are successful in this action, that coverage will be worth much less.

8   This is because the Plaintiff Insurers seek declaratory judgment that the claims of the

9   directors and officers for *all* of the Pending Litigation must be covered under the

10  2007-2008 policies, not under the 2008-2009 policies.  Funding all defense costs,

11  settlements, and judgments from the 2007-2008 policies undermines coverage of the

12  Estate as an insured.  Actions that deplete the Estate's coverage are "related to" the

13  Bankruptcy Case.  The Trustee has a right to protect the Estate's interest in coverage

14  under those policies, and that right provides adequate grounds for mandatory

15  intervention.  *Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder,*

16  *Inc.*, 72 F.3d 361, 366 (3d Cir. 1995) (insured's right to limited pool of insurance

17  proceeds was significant protectable interest that allowed intervention as of right).[9]

18

19  Moreover, the facts here are different because (1) unlike the Delaware court in *Pintlar*,
    this Court will likely review the Bankruptcy Court's decisions regarding the scope of

20  coverage; and (2) the issue raised with respect to "Side A" coverage is also germane

21  regarding Bancorp's rights under its own indemnification coverage.  As a practical

22  matter, a decision in the Plaintiff Insurers' action *will* have potential res judicata effect on
    Bancorp.

23  [9]   The insurance policies that provide coverage to the Estate and their proceeds are
    considered property of the estate because the estate is more valuable with that insurance

24  coverage than without it.  *See, e.g.*, *In re Minoco*, 799 F.2d at 519-20.  The fact that

25  proceeds may also be payable to the D&O Defendants does not diminish the Estate's
    rights.  *See, e.g.*, *Exec. Risk Indemnity, Inc. v. Boston Reg'l Med. Ctr., Inc. (In re Boston*

26  *Reg'l Med. Ctr., Inc.)*, 285 B.R. 87, 92 n.5 (Bankr. D. Mass. 2002) (rejecting suggestion

27  that indemnity coverage was not a corporate protection; noting that "the coverage is the
    entity's, and it inures in no small part to the entity itself by protecting the assets of the

28  entity"); *Aetna Cas. & Sur. Co. v. Jasmine, Ltd. (In re Jasmine, Ltd.)*, 258 B.R. 119, 128

*FOOTNOTE CONTINUED ON NEXT PAGE*

1      Finally, the interpretation of the policies is integral to the ultimate distributions

2   to creditors.  The Estate has multi-million dollar claims against Bancorp's former

3   CEO and directors, who are insureds under the Plaintiff Insurers' policies.  The value

4   of the Estate's claims against the CEO and directors depends on whether their losses

5   are covered under the Plaintiff Insurers' insurance policies.  The proceeds of the

6   Plaintiff Insurers' policies may be the only, or at least the primary, source of funds

7   from which the directors and officers will pay any settlement or judgment against

8   them in the Trustee's lawsuit.  If a settlement or judgment by the Trustee is excluded

9   from coverage by the Interrelated Wrongful Acts Exclusion or the Tripp Exclusion,

10   the Estate's claims become less valuable.

11      The Estate's interest as a plaintiff gives it a significantly protectable interest in

12   the instant litigation.  *Crosby v. St. Paul Fire & Marine Insurance Co.*, 138 F.R.D.

13   570 (W.D. Wash. 1991), is directly on point.  In that case, the FDIC moved to

14   intervene in a declaratory relief action to determine whether the FDIC's lawsuit

15   against a bank's directors and officers was covered by the bank's D&O insurance.  *Id.*

16   at 572.  As is true here, the insurance policy proceeds were likely to be the only, or at

17   least the primary, source of funds from which the directors and officers would pay any

18   judgment against them in the lawsuit brought by the FDIC.  *Id.* at 573.  Based on this,

19   the court held that "if the FDIC does not intervene in this [coverage] lawsuit, its only

20   source of recovery for its separate lawsuit against plaintiff could be adversely

21   affected."  *Id.*  Similarly here, Trustee, the FDIC and the D&O Defendants view the

22   insurance policies as necessary component of any settlement or judgment in the Siegel

23   Litigation.  RJN Ex. 26.  If the Trustee does not intervene, the Estate's source of

24   recovery could be adversely affected.  *See also, e.g.*, *Sec. Ins. Co. v. Schipporeit*, 69

25   F.3d 1377, 1380-81 (7th Cir. 1995) (underlying plaintiff had a sufficient interest in the

26   ────────────────────────────────────────────

27       (D.N.J. 2000) (similarly rejecting this argument because the debtor "had an
     indemnification interest in the proceeds, and the proceeds are property of the estate and

28       subject to the authority of the trustee under these circumstances").

Klee, Tuchin, Bogdanoff & Stern LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067-6049
Telephone: (310) 407-4000

issue of whether its claim against the architectural firm for faulty roof construction work was covered under the firm's professional liability insurance policy, so as to warrant intervention as of right in the insurer's action against the firm for declaratory judgment of no coverage); *Teague v. Bakker*, 931 F.2d 259 (4th Cir. 1991); *Nat'l Union Fire Ins. Co. v. Reichhold, Inc.*, No. 1:06CV939, 2008 WL 90186 (M.D.N.C. Jan. 8, 2008); *TIG Specialty Ins. Co. v. Financial Web.com, Inc.*, 208 F.R.D. 336, 338 (M.D. Fla. 2002) ("[I]f this Court declares that the insurance policy is void in the present suit, a significant source of recovery for the intervenors would become extinct; therefore, the Court finds that the intervenors have a direct, significant legal interest in the insurance policy.").

Several courts have held that a dispute between a plaintiff and an insurer regarding the scope of an insurance policy is a justiciable controversy that the Court can and should resolve.  In *Eureka Federal Savings & Loan Association v. American Casualty Co.*, 873 F.2d 229, 230 (9th Cir. 1989), Eureka  sought to establish the liability limits under the D&O policy that covered its directors and officers in order to facilitate settlement of a lawsuit that Eureka had brought against five of its former officers for breach of fiduciary duty, negligence, mismanagement, and waste.  The insurer, American, contended that the district court lacked jurisdiction over the action because Eureka's claims did not present an actual case or controversy.  *Id.* at 231. The Court of Appeals for the Ninth Circuit disagreed:

> [D]eclaratory relief is appropriate (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.
>
> * * *
>
> American's settlement posture thus indicates to us that a settlement cannot be achieved in Kidwell without a resolution in this case of the limits of liability coverage. To conclude that Eureka and its officers

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

20

1        do not have an interest "of sufficient immediacy and reality to warrant

2        the issuance of a declaratory judgment" would prevent the parties

3        from settling Kidwell prior to a prolonged and costly trial.

4   *Id.* at 231-32 (quotation marks omitted); *accord Kunkel v. Cont'l Cas. Co.*, 866 F.2d

5   1269, 1273-75 (10th Cir. 1989); *Rubins Contractors, Inc. v. Lumbermens Mut. Ins.*

6   *Co.*, 821 F.2d 671, 673-74 (D.C. Cir. 1987); *ACandS, Inc. v. Aetna Cas. & Sur. Co.*,

7   666 F.2d 819, 822-23 (3d Cir. 1981).

8        Like Eureka, the Trustee, the fiduciary responsible for the Bancorp Estate (and

9   successor to the purchaser of the policies), has standing as a plaintiff to ensure that the

10   insurance policies for which Bancorp paid millions of dollars are interpreted correctly.

11   The Estate's interest in seeing that the policies are interpreted correctly for the benefit

12   of creditors is a significantly protectable interest that justifies mandatory intervention.

13       **C.**    **Disposition of this Action May Impair the Trustee's Ability to**

14              **Protect the Estate's Interest.**

15        Because the Trustee has a significantly protectable interest in the interpretation

16   of the Plaintiff Insurers' insurance policies, it follows that this lawsuit and the

17   declaratory relief that the Plaintiff Insurers are requesting will potentially impair the

18   Trustee's ability to protect that interest. *California ex rel. Lockyer v. United States*,

19   450 F.3d 436, 442 (9th Cir. 2006) ("Having found that appellants have a significant

20   protectable interest, we have little difficulty concluding that the disposition of this

21   case may, as a practical matter, affect it."); *Berg*, 268 F.3d at 822 ("We follow the

22   guidance of Rule 24 advisory committee notes that state that '[i]f an absentee would

23   be substantially affected in a practical sense by the determination made in an action,

24   he should, as a general rule, be entitled to intervene.'" (quoting Fed. R. Civ. P. 24

25   Advisory Committee Note to 1966 amendment)).

26       **D.**    **The Estate's Interests Are Inadequately Represented by the Parties**

27              **to this Action.**

28        The burden on the Trustee in showing inadequate representation is minimal and

Klee, Tuchin, Bogdanoff & Stern LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067-6049
Telephone: (310) 407-4000

1  is satisfied by demonstrating that representation of the Estate's interests "may be"

2  inadequate. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (citing

3  *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)).  Therefore,

4  applicants "should be allowed in, if the other conditions to Rule 24(a)(2) are satisfied,

5  unless the court is persuaded that the representation is in fact adequate." 7C WRIGHT,

6  MILLER, & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 1909, at 388-90

7  (2009).

8       The Ninth Circuit considers three factors in determining the adequacy of

9  representation: (1) whether the interest of a present party is such that it will

10  undoubtedly make all of a proposed intervenor's arguments; (2) whether the present

11  party is capable and willing to make such arguments; and (3) whether a proposed

12  intervenor would offer any necessary elements to the proceeding that other parties

13  would neglect. *California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th

14  Cir. 1986) (emphasis added).

15       The Estate's interests are not adequately represented by the present defendants,

16  none of whom have the same interests as the Trustee.  The Trustee is interested in

17  maximizing the value of the Estate and coverage of the Estate.  The defendants sued

18  herein share the objective of minimizing their personal liability, *including their*

19  *liability to the Estate*.  They may wish certain claims to fall into First Year Tower

20  policies and certain claims to fall into the Second Year Tower policies in order to

21  reduce their personal liability.  Where, as here, a proposed intervenor has different

22  litigation objectives than the present parties to a suit, intervention is appropriate. *See,*

23  *e.g.*, *Sagebrush Rebellion Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir. 1983) (finding that

24  defendant intervenors overcame presumption that defendant would adequately

25  represent their interests by showing defendant-intervenors offered a different

26  perspective from defendant); *C.S. v. Cal. Dept. of Educ.*, No. 08-cv-0226, 2008 U.S.

27  Dist. LEXIS 28657, at *13 (S.D. Cal. Apr. 7, 2008) (where intervenor had  greater

28  incentive to oppose plaintiff's claims, court could not be assured present party would

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE:  (310) 407-4000

22

make every argument intervenors were willing to make).

## IV.  IN LIGHT OF THE COMMON QUESTIONS OF LAW ABOUT THE SCOPE OF THE EXCLUSIONS, PERMISSIVE INTERVENTION IS APPROPRIATE.

In addition to meeting the requirements for mandatory intervention, the Trustee meets the standards for permissive intervention.  Rule 24(b) provides that a court may grant intervention if "the applicant's claim or defense and the main action have a question of law or fact in common."  Fed. R. Civ. P. 24(b)(2).  In determining whether to allow permissive intervention, a court should consider the timeliness of the application and whether intervention will "unduly delay or prejudice the adjudication of the rights of the original parties."  Like the "interest" requirement of Rule 24(a)(2), the existence of a "common question" is liberally construed.  *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108-09 (9th Cir. 2003) (upholding district court's grant of permissive intervention on the grounds that intervention by defendant intervenors would aid in equitable resolution of the case).

Unless there are no questions of law or fact common to the main action and the proposed intervenors' claims or defenses, the Court has discretion to permit the intervention.  *Id.* at 1111.  The Court may also consider whether allowing intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.  *See Spangler v. Pasadena Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

As shown above, the Trustee's claims are entirely common – at law and in fact – to those in the main action.  This Motion, moreover, is timely as it was filed within weeks of the time that the Plaintiff Insurers filed their complaint and promptly after the time allotted by the Local Rules.  Allowing the Trustee's intervention will not occasion undue delay or prejudice; the Trustee's proposed answer in intervention will be filed before any other answers in this proceeding.

23

## V.     CONCLUSION

For the forgoing reasons, and without regard to the Court's determination of the Motion to Refer, the Trustee submits that this Court should permit him to intervene and to file his proposed answer in intervention.

Dated: April 11, 2011                    KLEE, TUCHIN, BOGDANOFF & STERN LLP

By:_____
                    David M. Stern
          *Attorneys for Proposed Intervenor Alfred H. Siegel,*
                *Solely as Chapter 7 Truste*

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000