1    144.    In the Insurance and Indemnity Agreement for the 2007-H1 transaction,
2  IndyMac represented and warranted to Assured that the "offer and sale of the Securities
3  comply in all material respects with all requirements of law, including requirements of
4  applicable securities law." 2007-H1 Insurance and Indemnity Agreement § 2.01(a)(x).

5    145.    In the 2007-H1 Indemnification Agreement, Deutsche Bank Securities Inc.
6  represented and warranted that "[e]ach Underwriter will comply in all material respects
7  with all legal requirements in connection with offers and sales of Securities and make such
8  offers and sales in the manner provided in the Prospectus Supplement." 2007-H1
9  Indemnification Agreement § 3(a).

10    146.    Similarly, in the 2007-HOA1 Indemnification Agreement UBS represented
11  and warranted that "[t]he Underwriter will comply in all material respects with all legal
12  requirements in connection with offers and sales of the Offered Certificates and make such
13  offers and sales in the manner provided in the Offering Documents." 2007-HOA1
14  Indemnification Agreement § 3(a).

15    147.    Each of the representations and warranties listed above was breached by the
16  fraudulent misrepresentations and omissions and violations of securities laws described in
17  this Complaint.

18  **VII.    Tolling of the Statute of Limitations**

19    148.    The Defendants and IndyMac concealed their wrongdoing in relation to the
20  Note offerings. At no time did any of them issue any corrective statements or other
21  declaration, either to Assured, to the Note Holders, or to the general public, disclosing or
22  correcting the misrepresentations and omissions contained in the Offering Documents.

23    149.    Assured and the Note Holders did not become aware of the allegations
24  regarding IndyMac set forth herein until the publication of the Audit Report by the Office
25  of Inspector General on February 26, 2009.

26
27
28

04125.61949/3676568.1

41

COMPLAINT

Exhibit N, Page 1059

## VIII. The Substantial Missed Payments for Which Assured Has Had to Compensate the Note Holders and Assured's Rights as Subrogee and Assignee

150.   The mortgage loans pooled in the IndyMac transactions have defaulted at a severe and unexpected rate, thus causing significant shortfalls in cash flows from the mortgage loans needed to make payments to the Note Holders. Because of the misrepresentations made by IndyMac and disseminated by Defendants in the Offering Documents, the loans were more prone to default than they would have been if IndyMac had adhered to its stated underwriting guidelines. Assured, as subrogee to the claims of all the Note Holders and to the extent it has made payments under its Policies, has the right to recover to the extent of the payments it has made to compensate the Note Holders.

151.   Assured provided a Policy for each securitization, guaranteeing certain payments due under the Notes. The agreement to provide the Policy was memorialized in the March 23, 2007 Insurance and Indemnity Agreement between Assured (as Insurer), IndyMac Bank (as the Servicer and as Sponsor), IndyMac ABS (as Depositor), and the Trust (as Issuer).

152.   The 2007-H1 Policy issued to the Note Holders states that "[Assured] shall be subrogated to the rights of each Holder to receive payments under the Obligations to the extent of any payment by [Assured] hereunder". The 2007-H1 Insurance and Indemnity Agreement also stated that "[Assured] is to be fully subrogated to the rights of the Noteholders to any moneys paid or payable in respect of the Securities under the Transaction Documents or otherwise." 2007-H1 Insurance and Indemnity Agreement § 3.05.

153.   Similarly, the 2007-HOA1 Policy provides that "[Assured] shall be subrogated to the rights of each Holder to receive distributions with respect to each Certificate held by such Holder to the extent of any payment by [Assured] hereunder." Assured's subrogation rights are further secured in all the relevant Transaction Documents. Under these documents and operative law, Assured has full rights as subrogee to the full extent of all payments it has made.

04125.61949/3676568.1

COMPLAINT

Exhibit N, Page 1060

1  154. Further, each "Notice of Claim and Certificate" that the related Indenture

2  Trustee sends in making a request for payment under the related Policy makes clear that

3  broad rights to bring the claims of the Note Holders are assigned to Assured:

4      The Trustee on its behalf and on behalf of the Holders, hereby
        assigns to [Assured] (a) the rights of the Holders with respect
5      to the Insured Certificates to the extent of any payments under
        the Policy and (b) any claims of and amounts due to the
6      Holders in respect of securities law, fraud, or other claims
        arising out of or relating to the offer and sale of the Insured
7      Certificates. The foregoing assignments are in addition to, and
        not in limitation of, rights of subrogation otherwise available to
8      [Assured] in respect of such payments."
9

10  2007-H1 Policy, Exhibit A to Endorsement 1; 2007-HOA1 Policy, Exhibit A to

11  Endorsement 1.

12      155. The Indenture for the 2007-H1 securitization provides:

13      The Insurer shall, to the extent it makes any payment with
        respect to the Notes, become subrogated to the rights of the
14      recipient of such payments to the extent of such payments.
        Subject to and conditioned upon any payment with respect to
15      the Notes by or on behalf of the Insurer, the Indenture Trustee
        shall assign to the Insurer all rights to the payment of interest
16      or principal with respect to the Notes which are then due for
        payment to the extent of all payments made by the Insurer.
17

18  2007-H1 Indenture § 5.12.

19      156. The 2007-H1 Indenture states further that "[e]ach Noteholder agrees that . . .

20  the Insurer shall have the right to exercise all rights of the Noteholders as specified under

21  this Agreement without any further consent of the Noteholders." 2007-H1 Indenture §

22  11.06.

23      157. The Sale and Servicing Agreement for the 2007-H1 deal also provides that:

24      The Seller, the Depositor, the Servicer and the Indenture
        Trustee acknowledge, and each Holder by its acceptance of a
25      Note agrees, that without the need for any further action on the
        part of the Insurer, the Seller, the Depositor, the Servicer, the
26      Indenture Trustee or the Certificate Registrar (a) to the extent
        the Insurer makes payments, directly or indirectly, on account
27      of principal of or interest on any Notes to the Holders of such
        Notes, the Insurer will be fully subrogated to the rights of such
28

04125.61949/3676568.1                          43

Exhibit N, Page 1061

Holders to receive such principal and interest, as applicable,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> Holders to receive such principal and interest, as applicable, from the Trust and (b) the Insurer shall be paid such principal and interest but only from the sources and in the manner provided herein and in the Insurance Agreement for the payment of such principal and interest.

2007-H1 Sale and Servicing Agreement § 4.02.

158. Likewise, the Pooling and Servicing Agreement for the 2007-HOA1 securitization provides:

> The Trustee acknowledges, and each Holder of an Insured Certificate by its acceptance of the Insured Certificate agrees, that, without the need for any further action on the part of the Certificate Insurer or the Trustee, to the extent the Certificate Insurer makes payments, directly or indirectly, on account of principal of or interest on any Insured Certificates, the Certificate Insurer will be fully subrogated to the rights of the Holders of such Insured Certificates to receive such principal and interest from the Trust Fund.

2007-HOA1 Pooling and Servicing Agreement § 4.10(g).

159. As a result of Defendants' conduct, the Trustees have submitted claims under the Policies on behalf of the Note Holders for hundreds of millions of dollars of shortfalls that, but for Assured's payments under the Policies, would have led to missed payments on the Notes, as set forth above. Assured has been forced to compensate the Note Holders for those shortfalls.

160. The Note Holders have recovered their "entire debt" from Assured as of this filing within the meaning of the California Supreme Court's decision in *21st Century Insurance Co. v. Superior Court*, 47 Cal. 4th 511 (2009). The sums paid by Assured have fully compensated the Note Holders for missed principal and interest payments to date. Assured seeks to recover amounts it has paid, according to proof.

161. Further, Assured's contracts expressly permit Assured to seek reimbursement from the Defendants of the principal and interest payments Assured has made to its insureds. Assured is subrogated to and assigned the rights of the Note Holders "to the extent" of payments made by Assured. *See* 2007-H1 Indenture § 5.12 ("The

04125.61949/3676568.1

Exhibit N, Page 1062

1  Insurer shall, to the extent it makes any payment with respect to the Notes, become
2  subrogated to the rights of the recipient of such payments to the extent of such
3  payments."); 2007-H1 Sale and Servicing Agreement § 4.02 ("[T]o the extent [Assured]
4  makes payments . . . to the Holders of such Notes, [Assured] will be fully subrogated to the
5  rights of such Holders . . . ."); 2007-HOA1 Pooling and Servicing Agreement § 4.10(g)
6  ("[T]o the extent [Assured] makes payments . . . on any Insured Certificates, [Assured]
7  will be fully subrogated to the rights of the Holders . . . ."); Policies, Ex. A (Notice of
8  Claim and Certificate) at 1-2 (Assured is assigned "(a) the rights of the [Note] Holders
9  with respect to the [Notes] to the extent of any payments under the Policy and (b) any
10 claims of and amounts due to the [Note] Holders in respect of securities law, fraud or other
11 claims arising out of or relating to the offer and sale of the [Notes]."). The Transaction
12 Documents make clear that Assured may act on its subrogation and assignment rights
13 immediately and without regard to any possibility that the Note Holders may have future
14 claims. *See Travelers Indemnity Co. v. Ingebresten*, 38 Cal. App. 3d 858, 865-66 (1974)
15 ("The assignment by appellants of 'all rights' 'to the extent' of the payments by the
16 insurance companies entitles the latter to first and total indemnification out of the recovery
17 had against the county.").

18
19                          **FIRST CAUSE OF ACTION**
20             **(Against the Underwriter Defendants for Violations of**
21                  **CAL. CORP. CODE § 25401 and § 25501)**

22      162.   Assured incorporates by reference and realleges each and every allegation as
23 set forth above in paragraphs 1 through 161 as if fully set forth herein.

24      163.   Under California Corporations Code Section 25401, "[i]t is unlawful for any
25 person to offer or sell a security in this state . . . by means of any written or oral
26 communication, which includes an untrue statement of a material fact or omits to state a
27 material fact necessary in order to make the statements made, in the light of the
28 circumstances under which they were made, not misleading."

04125.61949/3676568.1

COMPLAINT

1  164.  The Corporations Code makes any person who violates Section 25401 liable
2  to those who purchase or sell a security.

3  165.  The Underwriter Defendants qualify as sellers of the Notes because they
4  issued, offered and/or sold the Notes to the public, including the Initial Purchasers.

5  166.  In offering and selling the Notes, the Underwriter Defendants provided
6  materially false and misleading information to the Initial Purchasers and omitted material
7  facts regarding the 2007-H1 and 2007-HOA1 transactions in the Offering Documents.

8  167.  The misstatements, misrepresentations and omissions referred to herein are
9  material facts within the meaning of Section 25401 because they concern matters a
10  reasonable investor would consider in deciding to invest.

11  168.  The Initial Purchasers did not know, or in the exercise of due diligence could
12  not have known, of the untruths and omissions.

13  169.  Under the Policies and other Transaction Documents quoted above, and
14  under California law, Assured may bring this claim as the Initial Purchasers' subrogee and
15  assignee.

16  170.  By reason of the foregoing, the Underwriter Defendants violated California
17  Corporations Code Section 25401. The Underwriter Defendants are liable under
18  California Corporations Code Section 25501, which provides a private right of action for
19  violations of California Corporations Code Section 25401. Assured has the right to bring
20  this claim as subrogee and assignee of the Initial Purchasers to the extent of any and all
21  payments made by Assured and received by the Initial Purchasers.

22

23  ### SECOND CAUSE OF ACTION

24  **(Against the Individual Defendants and Does 51-100 for**

25  **Violations of CAL. CORP. CODE § 25504)**

26  171.  Assured incorporates by reference and realleges each and every allegation as
27  set forth above in paragraphs 1 through 161 as if fully set forth herein.

28

04125.61949/3676568.1

46

COMPLAINT

1    172.    The Individual Defendants and Does 51-100 are liable for the above-stated
2  violations of California Corporations Code Section 25401 because they were controlling
3  persons of one or more of IndyMac Securities and the Trusts under California
4  Corporations Code Section 25504.

5        173.    Defendant Michael Perry was the CEO of IndyMac Bank and Chairman of
6  the Board, as well as the Director and CEO of IndyMac during times relevant to this
7  action.  Defendant A. Scott Keys was the Executive Vice President and Chief Financial
8  Officer of IndyMac Bancorp until April 25, 2008.  Defendant Jill Jacobson was a vice
9  president of IndyMac ABS, and IndyMac Bank during times relevant to this action.  Ms.
10 Jacobson signed the Sale and Servicing, Pooling and Servicing, Underwriting, and
11 Insurance and Indemnity Agreements alleged herein.  Defendant Kevin Callan was the
12 CEO of IndyMac Securities during times relevant to this action.  Mr. Callan executed the
13 Underwriting Agreement and Indemnification Agreement for the 2007-H1 securitization at
14 issue herein.

15       174.    Does 51-100 are officers, directors, agents, affiliated persons, and/or
16 employees of IndyMac, the Trusts and/or the Underwriter Defendants, and each of them
17 controlled one or more of IndyMac ABS, the Trusts and/or the Underwriter Defendants.

18       175.    The Initial Purchasers did not know, or in the exercise of due diligence could
19 not have known, of the untruths and omissions.

20       176.    Under the Policies and other Transaction Documents, and under California
21 law, Assured may bring this claim as the Initial Purchasers' subrogee and assignee.

22       177.    By reason of the foregoing, the Individual Defendants and Does 51-100 are
23 jointly and severally liable as control persons under Section 25504 of the California
24 Corporations Code to Assured as subrogee and assignee of the Initial Purchasers.

25
26
27
28

04125.61949/3676568.1

47

COMPLAINT

# THIRD CAUSE OF ACTION

## (Against the Underwriter Defendants, Individual Defendants and Does 1-50 for Violations of CAL. CORP. CODE § 25504.1)

178. Assured incorporates by reference and realleges each and every allegation as set forth above in paragraphs 1 through 161 as if fully set forth herein.

### The Underwriter Defendants

179. The Underwriter Defendants underwrote offerings of mortgage-backed securities.

180. At the time of the acts alleged herein, the Underwriter Defendants materially assisted IndyMac ABS's, IndyMac Securities', and the Trusts' violations of California Corporations Code Section 25401 in that they acted as underwriters for the securitizations at issue, and assisted in pricing and selling Notes to investors, structuring and marketing the transactions, and making SEC filings.

181. On information and belief, the Underwriter Defendants acted with intent to deceive or defraud.

182. The Underwriter Defendants relied on third-party party due diligence firms to ostensibly confirm that the underlying mortgage loans in the securitizations complied with IndyMac's stated underwriting guidelines. However, the Underwriter Defendants knew or should have known that because of the pressure to get the offerings available for sale quickly and the sheer number of loans that needed to be reviewed across many deals for many issuers, the due diligence required could not have been done (and was not done) properly in such a compressed time frame.

183. In addition, given the financial incentives for the Underwriter Defendants to bring the securitizations to the market regardless of the quality of the mortgage loans included within them, the Underwriter Defendants allowed non-compliant loans to be included in the securitizations based on their conclusions that compensating factors existed or the breaches were curable. Specifically, the Underwriter Defendants were paid for their work only if the offering was completed and the Notes were sold to the public. The

48

COMPLAINT

Exhibit N, Page 1066

1  Underwriter Defendants also were paid higher fees if more loans and riskier loans were
2  included in the securitizations. Moreover, the Underwriter Defendants knew that IndyMac
3  would not continue to use them for future mortgage-backed securitizations if the
4  Underwriter Defendants were unable to offer and sell the Notes to the public in a timely
5  manner, if the balance of the Notes (due to the elimination of non-compliant loans) was
6  smaller than IndyMac planned, if (due to the Underwriter Defendants' elimination of non-
7  compliant loans from the securitizations) IndyMac retained the risk of default on the
8  related mortgage loans, or if the Underwriter Defendants insisted on conducting an
9  adequate level of due diligence and scrutiny of the mortgage loans included in the
10  securitizations.

11      184.  The Underwriter Defendants thus had a financial disincentive to require that
12  non-compliant loans be replaced, or run second samples when their due-diligence firms
13  reported their discovery of fraud, misrepresentations, breaches and other defects in initial
14  samples of mortgage loans or to allow adequate time and resources for due diligence.
15  Thus, the Underwriter Defendants knew the quality of the underlying mortgage loans was
16  not as represented in the Offering Documents and the Underwriter Defendants thus
17  knowingly failed to adequately disclose the true risk profile of the underlying loans.

18      185.  The Individual Defendants were all IndyMac executives. The Individual
19  Defendants had responsibility for managing and controlling the entire securitization
20  process from loan origination to the sale of the Notes to the Initial Purchasers.

21      186.  Each of the Individual Defendants therefore materially assisted IndyMac
22  Securities', the Trusts' and the Underwriter Defendants' violations of California
23  Corporations Code Section 25401.

24      187.  The Individual Defendants acted with intent to deceive and defraud. The
25  Individual Defendants knew that the mortgage loans underlying the securitizations were
26  not underwritten pursuant to IndyMac's stated underwriting guidelines. The Individual
27  Defendants also knew that because of the pressure to get offerings available for sale
28  quickly, the sheer number of loans that needed to be reviewed across many deals for many

1  issuers, and the short timeframes within which to complete the due diligence, the required
2  due diligence could not be done and was not being done properly.

3      188.   Additionally, given the financial incentives to bring the securitizations to
4  market quickly, the Individual Defendants knew that non-compliant loans were included in
5  the securitizations.

6      189.   The Individual Defendants knew that the quality of the underlying mortgage
7  loans was not as represented in the Offering Documents, and the Individual Defendants
8  knowingly failed to disclose the true risk profile of the underlying loans.

9      *Does 1-50*

10      190.   Each of Does 1-50 was, at all times herein mentioned, a corporation, a
11  partnership, a limited liability company, a joint venture, an association, a joint stock
12  company, a trust, and/or an unincorporated organization.

13      191.   At the time of the acts alleged herein, each of Does 1-50 materially assisted
14  in IndyMac ABS's, IndyMac Securities', the Trusts', and/or the Underwriter Defendants'
15  violation of California Corporations Code Section 25401. Each of Does 1-50 acted with
16  intent to deceive or defraud.

17      192.   Under the Policies and other Transaction Documents quoted above, and
18  under California law, Assured may bring this claim as the Initial Purchasers' subrogee and
19  assignee.

20      193.   By reason of the foregoing, the Underwriter Defendants, and each of Does 1-
21  50 materially assisted the violations of California Corporations Code Section 25401, and
22  are jointly and severally liable to Assured as subrogee and assignee under California
23  Corporations Code Section 25504.1.

24

25              **FOURTH CAUSE OF ACTION**

26      **(Against the Underwriter Defendants for Breach of Contract)**

27      194.   Assured incorporates by reference and realleges each and every allegation as
28  set forth above in paragraphs 1 through 161 as if fully set forth herein.

                                                                    COMPLAINT

1  195.  The Indemnification Agreements among Assured, IndyMac, and the
2  Underwriter Defendants are fully binding contracts between the parties.

3  196.  The Underwriter Defendants breached their representations and warranties
4  that the Note offerings would comply with all applicable laws, including all applicable
5  securities laws. As set forth herein, neither Note offering complied with all applicable
6  laws or all applicable securities laws.

7  197.  As a result of the Underwriter Defendants' breaches of their representations
8  and warranties, Assured has suffered damages in an amount not yet fully ascertained, but
9  at least equal to the principal and interest payments Assured has had to make under the
10  Policies.

11

12  ## FIFTH CAUSE OF ACTION

13  **(Against the Individual Defendants and Does 1-100 for Common-Law Fraud)**

14  198.  Assured incorporates by reference and realleges each and every allegation as
15  set forth above in paragraphs 1 through 161 as if fully set forth herein.

16  *The Individual Defendants*

17  199.  The Individual Defendants made fraudulent and false statements of material
18  fact, and omitted material facts, in connection with the offer and sale of the Notes as set
19  forth herein.

20  200.  The Individual Defendants knew that the above-listed statements were false
21  when made. They knew facts or had access to information suggesting that their public
22  statements, and IndyMac's statements, were untrue and/or materially misleading, but they
23  failed to disclose that information.

24  201.  The Individual Defendants intended to defraud the Note Holders. The
25  Individual Defendants benefitted from the fraud in the form of increased revenue for the
26  entities they worked for, and, upon information and belief, increased compensation and
27  increased value of their investment in their employers.

28

04125.61949/2676568.1

51

COMPLAINT

1     202.   The Note Holders justifiably relied on the Individual Defendants'

2 representations and false statements.

3     203.  Had the Note Holders known the true facts regarding the Individual

4 Defendants' false and misleading statements, the Note Holders would not have purchased

5 the Notes.

6     204.  As a result of the Individual Defendants' false and misleading statements and

7 omissions, as alleged herein, the Note Holders have suffered damages and/or would have

8 suffered damages had they not been compensated under the Policies.

9     *Does 1-100*

10     205.  Each of Does 1-100 made fraudulent and false statements of material fact

11 and omitted material facts in connection with the offer and sale of the Notes.

12     206.  Each of Does 1-100 knew that the above-listed statements were false when

13 made.

14     207.  Each of Does 1-100 intended to defraud the Note Holders.

15     208.  The Note Holders justifiably relied on Does 1-100's representations and false

16 statements.

17     209.  Had the Note Holders known the true facts regarding the false and

18 misleading statements of Does 1-100, the Note Holders would not have purchased the

19 Notes.

20     210.  As a result of Does 1-100's false and misleading statements and omissions,

21 as alleged herein, the Note Holders have suffered damages and/or would have suffered

22 damages had they not been compensated under the Policies.

23     211.  Under the Policies and other Transaction Documents, and the laws of the

24 State of California, Assured may bring this claim as the Note Holders' subrogee and

25 assignee.

26     212.  By reason of the foregoing, each of the Individual Defendants and Does 1-

27 100 are liable to Assured as subrogee and assignee for common-law fraud.

28

Exhibit N, Page 1070

## SIXTH CAUSE OF ACTION

### (Against the Underwriter Defendants, the Individual Defendants, and Does 1-100 for
### Aiding and Abetting Common-Law Fraud)

213.    Assured incorporates by reference and realleges each and every allegation as set forth above in paragraphs 1 through 161 and 199 through 212 as if fully set forth herein.

214.    As set forth above, each of the Underwriter Defendants and the Individual Defendants knew that IndyMac Bank, IndyMac ABS, IndyMac Securities, the other Individual Defendants, and the Trusts were making false and misleading statements of material fact to the public, including the Initial Purchasers and other Note Holders, and were omitting to disclose to investors material facts regarding the mortgage loans included in the securitizations.

215.    The Individual Defendants, as executive officers of IndyMac, were responsible for implementing IndyMac's goal of generating more loans so that it could generate more securitizations, and for the abandonment of IndyMac's conservative lending practices and failure to adhere to its stated underwriting guidelines. The Individual Defendants knew that IndyMac was originating, approving and/or promoting high risk loans, particularly to subprime borrowers, without verifying income or collateral on the loan, and they knew that IndyMac was selling these loans to the investing public. The Individual Defendants were aware of IndyMac's actual lending practices at material levels· and the resulting exposure to losses through at least the following ways: (1) internal IndyMac reports describing exceptions to IndyMac's underwriting and lending practices and detailing the particular loan types and borrower characteristics; (2) IndyMac's practice of unconditionally approving non-qualifying subprime loans to meet mandatory IndyMac loan volume approval requirements; and (3) the information that the Individual Defendants received as officers of IndyMac and as members of committees responsible for monitoring and managing credit risk and valuing loan assets and related allowance for loan losses.

04125.61949/3676568.1

COMPLAINT

Exhibit N, Page 1071

1    216.    The Underwriter Defendants knew that the Notes being packaged and sold
2   by IndyMac were not backed by high-quality loans and that the loans included in the
3   securitizations were not underwritten according to IndyMac's stated underwriting
4   guidelines. The Underwriter Defendants knew that due diligence conducted on the
5   mortgage loans included in the securitizations was not being done and/or was not being
6   done properly.

7    217.    Each Underwriter Defendant and Individual Defendant gave substantial
8   assistance to and/or facilitated and encouraged the other Individual Defendants, IndyMac
9   Bank, IndyMac ABS, and the Trusts in their commission of fraud as set forth above.

10    218.    In providing this substantial assistance, the Individual Defendants and the
11   Underwriter Defendants knew that the information being distributed to the public was false
12   and misleading, and that material information was being withheld, but intended to facilitate
13   the wrongful conduct.

14    219.    Does 1-100 are entities and/or officers, directors, agents, affiliated person or
15   employees of the Doe entities or IndyMac and/or the Trusts. Those Does are liable herein
16   because they knew that the Individual Defendants, the Underwriter Defendants, IndyMac
17   Bank, the Trusts, and other Does were making false and misleading statements of material
18   fact to the public, including the Initial Purchasers and other Note Holders, and were
19   omitting material facts. Does 2-100 gave substantial assistance to and/or facilitated and
20   encouraged the Individual Defendants, the Underwriter Defendants, IndyMac, the Trusts,
21   and other Does in their commission of the fraud as set forth above.

22    220.    The conduct of the Individual Defendants, the Underwriter Defendants and
23   Does 1-100 was a substantial factor in causing the harm to Assured's insureds, and
24   Assured has the right to bring this claim as subrogee and assignee of the Note Holders.

25

26

27

28

## SEVENTH CAUSE OF ACTION

**(Against the Underwriter Defendants, the Individual Defendants and Does 1-100 for Negligent Misrepresentation)**

221. Assured incorporates by reference and realleges each and every allegation as set forth above in paragraphs 1 through 161 as if fully set forth herein.

222. The Underwriter Defendants', the Individual Defendants', and Does 1-100's material misrepresentations and omissions set forth above were made without any reasonable ground for believing that the representations were true.

223. The Underwriter Defendants, the Individual Defendants and Does 1-100 intended that the material misrepresentations and omissions would induce the Note Holders to purchase the Notes.

224. The Note Holders justifiably relied on the material misrepresentations and omissions of the Underwriter Defendants, the Individual Defendants and Does 1-100 and were induced to purchase the Notes.

225. Had the Note Holders known the true facts regarding IndyMac's underwriting practices and the quality of the mortgage loans making up the securitizations, the Note Holders would not have purchased the Notes.

226. As a result of the Underwriter Defendants', the Individual Defendants' and Does 1-100s' negligent misrepresentations, the Note Holders would have suffered missed principal and interest payments had they not been compensated under Assured's Policies.

227. Under the Policies and other Transaction Documents, and the laws of the State of California, Assured may bring this claim as the Note Holders' subrogee and assignee.

228. By reason of the foregoing, the Underwriter Defendants, the Individual Defendants and Does 1-100 are liable to Assured as subrogee and assignee for negligent misrepresentation.

04125.61949/3676568.1

55

Exhibit N, Page 1073

## PRAYER FOR RELIEF

WHEREFORE Assured prays for judgment on its behalf as follows:

1. On the first cause of action, for violations of California Corporations Code Sections 25401 and 25501, relief in the form of statutory recoveries to the full extent of payments Assured has made and that have been received by the Initial Purchasers;

2. On the second cause of action, for violations of California Corporations Code Section 25504, relief in the form of statutory recoveries to the full extent of payments Assured has made and that have been received by the Initial Purchasers;

3. On the third cause of action, for violations of California Corporations Code Section 25504.1, relief in the form of statutory recoveries to the full extent of payments Assured has made and that have been received by the Initial Purchasers;

4. On the fourth cause of action, for breach of contract, relief in the form of damages to the full extent of payments Assured has made under the Policies;

5. On the fifth cause of action, for common-law fraud, relief in the form of damages to the full extent of payments Assured has made under the Policies;

6. On the sixth cause of action, for aiding and abetting common-law fraud, relief in the form of damages to the full extent of payments Assured has made under the Policies;

7. On the seventh cause of action, for negligent misrepresentation, for relief in the form of damages to the full extent of payments Assured has made under the Policies;

56

04125.61949/3676568.1

1    8.    Such other and further relief as the Court may deem just and proper.

2

3

4  DATED: September 17, 2010            QUINN EMANUEL URQUHART &
                                       SULLIVAN, LLP
5

6

7                                      By
                                          Harry A. Olivar, Jr.
8                                         Attorneys for Plaintiff Assured Guaranty
                                          Municipal Corporation
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

04125.61949/3676568.1
                                       57
                                                                    COMPLAINT

## JURY DEMAND

1.  Assured requests a trial by jury on all issues so triable.

DATED: September 17, 2010

QUINN EMANUEL URQUHART &
SULLIVAN. LLP

By_____
Harry A. Olivar, Jr.
Attorneys for Plaintiff Assured Guaranty
Municipal Corporation

COMPLAINT

04125.61949/3576568.1