DAVID M. STERN (State Bar No. 67697)
dstern@ktbslaw.com
LEE R. BOGDANOFF (State Bar No. 119542)
lbogdanoff@ktbslaw.com
MATTHEW C. HEYN (State Bar No. 227474)
mheyn@ktbslaw.com
KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067-6049
Telephone: (310) 407-4000
Facsimile: (310) 407-9090

ANDREW L. SANDLER (*pro hac vice* application pending)
asandler@buckleysandler.com
BENJAMIN B. KLUBES (*pro hac vice* application pending)
blubes@ buckleysandler.com
BUCKLEYSANDLER LLP
1250 24th Street N.W., Suite 700
Washington, District of Columbia 20037
Telephone: (202) 349-8000
Facsimile: (202) 349-8080

*Attorneys for Proposed Intervenor Alfred H. Siegel, Solely as Chapter 7 Trustee*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| XL SPECIALTY INSURANCE COMPANY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL W. PERRY, *et al.*,<br><br>Defendants. | Case No: CV 11-02078-GHK (JCGx)<br><br>**DECLARATION OF MARTIN R. BARASH IN SUPPORT OF TRUSTEE'S MOTIONS TO INTERVENE AND REFER**<br><br><u>Hearing</u><br>Date: May 16, 2011<br>Time: 9:30 a.m.<br>Place: Roybal Federal Building<br>255 East Temple Street<br>Courtroom 650<br>Los Angeles, CA 90012<br>Judge: Hon. George H. King |

129819.3


## DECLARATION OF MARTIN R. BARASH

1. I am a partner in the law firm of Klee, Tuchin, Bogdanoff & Stern LLP, attorneys for Alfred H. Siegel, solely in his capacity as Chapter 7 Trustee of the bankruptcy estate of IndyMac Bancorp, Inc. ("Bancorp") and as plaintiff in this action (the "Trustee"). As a result of that role and my representation of the Trustee, I have personal knowledge of the facts set forth herein. This declaration is submitted in support of the concurrently filed *Chapter 7 Trustee's Motion to Intervene* and the *Chapter 7 Trustee's Motion to Refer this Civil Action to Bankruptcy Court Pursuant to General Order No. 266 and 28 U.S.C. § 157(a)* (the "Motions").[1]

2. Attached hereto as **Exhibit 33** is a true and correct copy of a letter that I prepared and transmitted to counsel for ACE American Insurance Company on February 2, 2011, informing them that that the action ACE American Insurance Company commenced in the Superior Court of the State of California for the County of Los Angeles violated the automatic stay arising in Bancorp's bankruptcy case.

3. Attached hereto as **Exhibit 34** is a true and correct copy of a letter that I prepared and transmitted to counsel for the plaintiffs in the above-captioned case (the "Plaintiff Insurers' Action") on March 15, 2011, informing counsel that commencement of the Plaintiff Insurers' Action violated the automatic stay arising in Bancorp's bankruptcy case. On April 4, 2011, I received the response attached hereto as **Exhibit 35.**

---

[1] Unless otherwise defined herein, capitalized terms have the same meaning as are given to them in the Motions.

129819.3

1

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 11, 2011, at Los Angeles, California.

*/s/ Martin R. Barash*

_____

MARTIN R. BARASH

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

129819.3

2

# EXHIBIT 33

**K T B S**

**Klee,
Tuchin,
Bogdanoff &
Stern
LLP**

| 1999 Avenue of the Stars
Thirty-Ninth Floor
Los Angeles, California 90067

| voice: 310-407-4000
fax: 310-407-9090
www.ktbslaw.com

E-mail: mbarash@ktbslaw.com
Direct Dial: 310-407-4005

February 2, 2011

**VIA FEDEX**

Ira Revich, Esq.
James B. Green, Esq.
Charlston, Revich & Wollitz LLP
1925 Century Park East, Suite 1250
Los Angeles, CA 90067

Edward P. Gibbons, Esq.
Paul F. Matousek, Esq.
Tiffany S. Saltzman-Jones, Esq.
Walker Wilcox Matousek, LLP
225 W. Washington Street, Suite 2400
Chicago, IL 60606

Re: In re Indymac Bancorp, Inc., a Delaware corporation (the "Debtor"), Chapter 7 Case No. 2:08-bk-21752-BB ("Chapter 7 Case").

Dear Counsel:

This firm serves as bankruptcy counsel to Alfred H. Siegel, solely as chapter 7 trustee for the Debtor (the "Trustee") in the above-referenced Chapter 7 Case, which is pending before the United States Bankruptcy Court for the Central District of California, the Honorable Sheri Bluebond, United States Bankruptcy Judge presiding (the "Bankruptcy Court").

The purpose of this letter is to advise you that ACE American Insurance Company is in violation of the automatic stay in effect in the Chapter 7 Case, pursuant to Bankruptcy Code section 362(a), advise you of the consequences of such violation, and afford you an opportunity to promptly remedy this violation.

Your attention is directed to Bankruptcy Code section 362, 11 U.S.C. § 362, which imposes an automatic stay, applicable against all entities, wherever located, against, among other things:

> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

11 U.S.C. § 362(a)(3).

Pursuant to applicable law, a party that willfully violates the automatic stay imposed under section 362(a) – including a corporate entity – is liable for damages resulting from that violation. See 11 U.S.C. § 362(k) (individuals are liable for stay violation damages); *Knupfer v. Lindblade (In re Dyer)*, 322 F.2d 1178, 1191-93 (9th Cir. 2002) (violations of automatic stay by non-individual are compensable under Bankruptcy Code section 105 and the civil contempt power); *In re Computer Communications, Inc. v. Codex Corp. (In re Computer Communications, Inc.)*, 824 F.2d 725, 732 (9th Cir. 1987) (same) (affirming $5 million damage award).

It has come to our attention that subsequent to the commencement of the Chapter 7 Case, and the commencement of an adversary proceeding by the Trustee against certain former directors and officers of the Debtor, Adv. No. 2:09-ap-02645 ("Trustee Action"), you filed on behalf of ACE a complaint in the Superior Court of the State of California for the County of Los Angeles ("Superior Court" and "Superior Court Action"), seeking a declaration that the claims asserted in the Trustee Action against the defendants therein (the "D&O Defendants") are not covered by the directors and officers liability insurance acquired by the Debtor from ACE for the 2008-2009 policy year ("ACE D&O Policy").

The Superior Court Action violates the automatic stay. As such, the Superior Court Action is void *ab initio*, and must be dismissed by ACE. The failure of ACE to do so immediately may subject ACE and others to sanctions for violation of the automatic stay.

Insurance policies issued to a debtor are property of the estate under Bankruptcy Code section 541 because "the debtor's estate is worth more with them than without them." *In re Minoco Group of Cos., Ltd.*, 799 F.2d 517, 519 (9th Cir. 1986); *In re Circle K Corp.*, 121 B.R. 257 (Bankr. D. Ariz. 1990). Further, "[t]he possession or control language of Section 362(a)(3) has consistently been interpreted to prevent acts that diminish future recoveries from a debtor's insurance policies." *ACANDS, Inc.*, 435 F.3d 252, 260-61 (3d Cir. 2006) (arbitration award effectively terminating insurance coverage violated stay). Accordingly, "[a] declaratory judgment action against a debtor is an 'act to . . . exercise control over property of the estate', 11 U.S.C. § 362(a)(3), insofar as it seeks to affect the insurance policies which are estate property. The fact that the action does not name Debtor is not dispositive." *Harbison-Walker Refractories Co. v. Ace Property & Casualty Ins. Co. (In re Global Indus. Technologies, Inc.)*, 303 B.R. 753 (Bankr. W.D. Pa. 2004).

As you know, the $10 million ACE D&O Policy is the sixth excess layer in a "tower" of directors and officers liability policies totaling $80 million in coverage for the 2008-2009 policy year (the "Second Tower").[1] The primary and first three excess policies provide "Side A," "Side B," and "Side C" coverage. The others provide "Side A" coverage, *i.e.*, insurance for claims asserted against the Debtor's directors and officers. Subject to the specific terms thereof, the ACE D&O Policy generally provides excess insurance only after the underlying layers of insurance in the Second Tower have been exhausted as a result of claims payments. All of the policies are "wasting" policies in that there is a finite amount of insurance coverage under them, and all amounts paid thereunder – including attorneys fees and costs – reduce the remaining amount of available coverage.

The Debtor's estate ("Estate") is worth more with each of the policies comprising the Second Tower than it would be without each of such policies because they enhance the value of, and protect against diminution of the Estate. This true of the ACE D&O Policy, even though it provides only "Side A" coverage. By providing Side A coverage, the ACE D&O Policy provides a source from which defense costs and losses incurred by the D&O Defendants may be funded. The funding of those defense costs and losses reduces, dollar-for-dollar, the amount of the indemnity claims asserted by the D&O Defendants against the Estate, and correspondingly increases the recovery of other creditors from the Estate. No less than 6 of the D&O Defendants have filed proofs of claim against the Estate seeking indemnity for such claims under the articles of incorporation for the Debtor, the bylaws, any applicable agreements, and applicable law. The ACE D&O Policy therefore is property of the Estate. *See National Union Fire Ins. Co. v. Titan Energy (In re Titan Energy, Inc.)*, 837 F.2d 325, 329 (8th Cir. 1988) ("Though the policy proceeds do not flow directly into the coffers of the estate, they do serve to reduce some claims and permit more extensive distribution of available assets in the liquidation of the estate") (citing *Minoco*); *In re Circle K Corp., Inc.*, 121 B.R. at 261 ("The fact debtor may not receive all benefits or proceeds under the insurance does not affect its current status as estate property . . . . If the insurer fails to provide coverage, the officers will look to debtor's assets for reimbursement, pursuant to the bylaws."[2]

ACE has filed the Superior Court Action seeking a determination that the Trustee Action does not fall within the category of insured claims covered by the ACE D&O

---

[1] Various parties involved in the Chapter 7 Case have come to refer to this tower as the "Second Tower," with the policies covering the 2007-2008 policy year being referred to as the "First Tower."

[2] Among other reasons, that these proofs of claim have been filed distinguishes the present circumstances from those presented in *Pintlar Corp. v. Fidelity & Case. Co. (In re Pintlar Corp.)*, 124 F.3d 1310 (9th Cir. 1997), where the court was not persuaded by the arguments presented that the "Side A Only" policy at issue there would have an impact on the estate. Here, most of the D&O Defendants already have asserted indemnification claims against the Estate.

Policy purchased by the Debtor for the 2008-2009 policy year. The commencement and continuation of the Superior Court Action violate the automatic stay for at least two independently sufficient reasons.

First, the automatic stay protects against infringements on property of the estate. See *Adams v. Zarnel (In re Zarnel)*, 619 F.3d 156, 171 (2d Cir. 2010); *Dean v. TWA*, 72 F.3d 754, 756 (9th Cir. Wash. 1995). By seeking a determination that the Trustee Action is not entitled to coverage under the ACE D&O Policy, ACE has undertaken an act "to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" under Bankruptcy Code section 362(a)(3). *ACANDS, Inc.*, 435 F.3d 252, 260-61. If the relief sought in the Superior Court Action were granted, the recovery realized by the creditors of the Estate would be diminished, as the amount of the pending indemnity claims of the D&O Defendants would increase. Indeed, a denial of coverage under the ACE D&O Policy might also affect or eliminate the availability of coverage under the seventh excess policy, and further increase the amount of the claims against the estate.

Second, the Trustee Action seeks a determination of a key provision that is common to all of the policies comprising the Second Tower, including those policies containing Side B and C coverage to the estate. As you are well aware, ACE contends in the Superior Court Action that coverage is not available because of the so-called "Tripp Exclusion," which refers to certain securities litigation. That exclusion, however, is *incorporated verbatim* into each of the other policies comprising the Second Tower. Thus, although drafted to suggest that ACE is seeking an interpretation "only" of its own policy (which is property of the estate in any event), the complaint in the Superior Court Action actually seeks an adjudication as to all of the policies comprising the Second Tower, including those policies as to which the estate holds a direct interest as insured. This is a blatant effort to exercise control over property of the estate and a violation of the automatic stay pursuant to Bankruptcy Code section 362(a)(3).

We note that courts have looked beneath efforts to formulate a complaint that names only non-debtor parties, and have found stay violations where the substance of the action may alter or impact the debtor or its property, as the Superior Court Action does here. *See, e.g., In re Northstar Contracting*, 125 B.R. 368, 369-71 (S.D.N.Y. 1991) (affirming bankruptcy court determination that action against corporate officer was effectively an action against the debtor because the officer was to be indemnified under corporate bylaws); *Maxicare Health Plans, Inc. v. Centinela Mammoth Hospital (In re Family Health Services)*, 105 B.R. 937, 942-43 ("the court finds that actions against non-debtor members will result in claims against the debtor for reimbursement or indemnification such that the debtor is the real party defendant").

The Trustee demands that ACE cease and desist its prosecution of the Superior Court Action and dismiss such action. In the event that ACE permits the Superior Court to remain pending, the Trustee reserves the right to seek damages in accordance with applicable law, and to seek other relief from the Bankruptcy Court.

February 2, 2011
Page 5

                                             Very truly yours,

                                             */s/ Martin R. Barash*

                                             Martin R. Barash

cc:    Alfred H. Siegel, as Chapter 7 Trustee
       Lee R. Bogdanoff, Esq (i/o)
       David M. Stern, Esq. (i/o)

# EXHIBIT 34

**Klee,
Tuchin,
Bogdanoff &
Stern
LLP**

| 1999 Avenue of the Stars
Thirty-Ninth Floor
Los Angeles, California 90067 | voice: 310-407-4000
fax: 310-407-9090
www.ktbslaw.com |

E-mail: mbarash@ktbslaw.com
Direct Dial: 310-407-4005

March 15, 2011

**VIA FEDEX AND ELECTRONIC MAIL**

Kim W. West, Esq.
Alec H. Boyd, Esq.
Tucker Ellis & West LLP
135 Main Street, Suite 700
San Francisco, CA 94105

Re: *In re Indymac Bancorp, Inc.*, a Delaware corporation (the "Debtor"), Chapter 7 Case No. 2:08-bk-21752-BB ("Chapter 7 Case")

*XL Specialty Insurance Co., et al v. Perry et al* ("District Court Action"), Case No. CV 11-02078 GHK (JCGx)

Dear Counsel:

This firm serves as bankruptcy counsel to Alfred H. Siegel, solely as chapter 7 trustee for the Debtor (the "Trustee") in the above-referenced Chapter 7 Case, which is pending before the United States Bankruptcy Court for the Central District of California, the Honorable Sheri Bluebond, United States Bankruptcy Judge presiding (the "Bankruptcy Court").

The purpose of this letter is to advise you that XL Specialty Insurance Company, Arch Insurance Company, ACE American Insurance Company ("ACE"), and Axis Insurance Company (collectively, the "Carriers") are in violation of the automatic stay in effect in the Chapter 7 Case, pursuant to Bankruptcy Code section 362(a), inform you of the consequences of such violation, and afford you an opportunity to promptly remedy this violation. Although this is the first violation of which we are aware by most of the Carriers, this is the second time recently that ACE has violated the automatic stay.

Bankruptcy Code section 362, 11 U.S.C. § 362, which imposes an automatic stay, applicable against all entities, wherever located, against, among other things:

> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

March 15, 2011
Page 2

11 U.S.C. § 362(a)(3). Thus, the automatic stay protects against infringements on property of the estate. See *Adams v. Zarnel (In re Zarnel)*, 619 F.3d 156, 171 (2d Cir. 2010); *Dean v. TWA*, 72 F.3d 754, 756 (9th Cir. 1995).

Pursuant to applicable law, any "actions, including judicial proceedings, taken in violation of the automatic stay are void." *In re Wardrobe*, 559 F.3d 932, 934 (9th Cir. 2009); *Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1082 (9th Cir. 2000). Additionally, a party that willfully violates the automatic stay imposed under section 362(a) – including a corporate entity – is liable for damages resulting from that violation. See *Knupfer v. Lindblade (In re Dyer)*, 322 F.2d 1178, 1191-93 (9th Cir. 2002) (violations of automatic stay by non-individuals are compensable under Bankruptcy Code section 105 and the civil contempt power); *In re Computer Commc'ns, Inc. v. Codex Corp. (In re Computer Commc'ns, Inc.)*, 824 F.2d 725, 732 (9th Cir. 1987) (same) (affirming $5 million damage award).

On March 10, 2011, subsequent to the commencement of the Chapter 7 Case, you filed the District Court Action on behalf of the Carriers in the United States District Court for the Central District of California ("District Court"). This filing was made subsequent to the Trustee's commencement of adversary proceedings (i) against certain former directors and officers of the Debtor for damages resulting from their conduct, Adv. No. 2:09-ap-02645-BB ("Trustee Action"), and (ii) against the Carriers (among others) for a declaration that the claims asserted in the Trustee Action are covered, by among other policies, the directors and officers insurance policies acquired by the Debtor for the 2008-2009 policy year, Adv. No. 2:11-ap-01443-BB.

The District Court Action violates the automatic stay by seeking declaratory relief regarding the nature and extent of coverage provided under the directors and officers insurance policies purchased by the Debtor from the Carriers for the 2008-2009 policy year (collectively, the "D&O Policies"). As such, the District Court Action is void *ab initio*, and must be dismissed. The failure of the Carriers to do so immediately will subject the Carriers and others to sanctions for violation of the automatic stay.

We note that this is the *second* time in as many months that ACE, acting in concert with the other Carriers, has violated the automatic stay in this manner, having filed a similar complaint in the Superior Court for the State of California for the County of Los Angeles, Case No. BC452871 (the "District Court Action") By letter dated February 2, 2011, counsel for ACE was advised of ACE's violation. On February 10, 2011, the District Court Action was removed to the Bankruptcy Court by the defendants therein. On March 3, 2011, ACE voluntarily dismissed the action. The Trustee intends to pursue damages relating to that improper filing. Against this backdrop, the re-filing of the complaint by ACE and the other Carriers in the District Court indicate a willful violation of the stay and a flagrant attempt at forum shopping.

March 15, 2011
Page 3

The D&O Policies constitute property of the Debtor's estate ("Estate"). Bankruptcy Code section 541 "defines property of the debtor which is to be considered part of the bankruptcy estate ... to be broad and all-inclusive," *In re Bialac*, 712 F.2d 426, 430 (9th Cir. 1983), including "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Insurance contracts meet this test and "can even be an estate's most valuable asset." *In re W. Asbestos Co.*, 313 B.R. 859, 864 (N.D. Cal. 2004). In particular, the law is clear in this Circuit and elsewhere that directors and officers insurance policies procured by a debtor constitute property of the estate under Bankruptcy Code section 541. *In re Minoco Group of Cos., Ltd.*, 799 F.2d 517, 519 (9th Cir. 1986); *In re Circle K Corp.*, 121 B.R. 257 (Bankr. D. Ariz. 1990); *accord Am. Int'l Specialty Lines Ins. Co. v. Towers Fin. Corp.*, 198 B.R. 55, 61-62 (S.D.N.Y. 1996) (directors and officers insurance policies were property of the estate) (citing *Minoco*); *Adelphia Communs. Corp. v. Associated Elec. & Gas Inc. Servs (In re Adelphia Bus. Solutions)*, 285 B.R. 580. 590-93 (Bankr. S.D.N.Y. 2002) (directors and officers insurance policies and proceeds thereof were property of the estate and therefore subject to automatic stay) (citing *Minoco*).

Following extensive litigation earlier in the Chapter 7 Case, Judge Bluebond held that: "The Debtor's interests in the insurance policies identified in the Motion are property of the estate." See *Order Regarding Motion of Current and/or Former Indymac Directors and Officers For Determination That Certain Insurance Proceeds Are Not Subject to the Automatic Stay and/or Relief From the Automatic Stay Under 11 U.S.C. §362* [Docket No. 140] at ¶ 2. Judge Bluebond's conclusion was well supported by both the law and the facts. In the Ninth Circuit and elsewhere, the test for determining whether or not an insurance policy belongs to the estate is whether "the debtor's estate is worth more with them than without them." *Minoco*, 799 F.2d at 519 (citation omitted); *In re Cybermedica, Inc.*, 280 B.R. 12, 17 (Bankr. D. Mass. 2002). That is clearly the case with the D&O Policies that are the subject of the District Court Action.

As you know, the D&O Policies constitute the fourth, fifth, sixth and seventh excess policy layers, providing coverage of $10 million each, in a "tower" of directors and officers insurance policies totaling $80 million in coverage for the 2008-2009 policy year (the "Second Tower").[1] The D&O Policies provide "Side A" coverage only, *i.e.*, insurance covering defense costs and losses for claims asserted against the Debtor's directors and officers. The primary and first three excess policies provide "Side A," "Side B," and "Side C" coverage. All of the policies are "wasting" or "depleting" policies; there is a finite amount of insurance coverage, and all amounts paid thereunder, including attorneys' fees and costs, reduce the remaining amount of available coverage.

The Estate is clearly worth more with the D&O Policies than without and would be adversely affected by the relief the Carriers seek in the District Court Action. Side A coverage provides a funding source for defense costs and losses that are incurred by

---

[1] The directors and officers insurance policies covering the 2007-2008 policy year being referred to as the "First Tower."

officers and directors and asserted by them as indemnification claims against the Estate. No less than 7 of the D&O Defendants named in the Trustee Action have filed proofs of claim against the Estate seeking indemnity for such claims under the articles of incorporation for the Debtor, the bylaws, any applicable agreements, and applicable law.

The funding of claims under the D&O Policies reduces, dollar-for-dollar, the amount of the indemnity claims that may be asserted by such parties against the Estate, and correspondingly increases the recovery of other creditors from the Estate. *See Nat'l Union Fire Ins. Co. v. Titan Energy (In re Titan Energy, Inc.)*, 837 F.2d 325, 329 (8th Cir. 1988) ("Though the policy proceeds do not flow directly into the coffers of the estate, they do serve to reduce some claims and permit more extensive distribution of available assets in the liquidation of the estate") (citing *Minoco*); *Circle K*, 121 B.R. at 261 ("The fact debtor may not receive all benefits or proceeds under the insurance does not affect its current status as estate property . . . . If the insurer fails to provide coverage, the officers will look to debtor's assets for reimbursement, pursuant to the bylaws." Thus, the Estate has a material economic interest in the Side A coverage provided under the D&O Policies.

It is equally clear that the District Court Action constitutes an act to exercise control over Estate property – regardless of the fact that it does not name the trustee. Courts regularly look beyond a plaintiff's efforts to formulate a complaint that names only non-debtor parties, and have found stay violations where the substance of the action may alter or impact the debtor or its property, as the District Court Action does here. *See, e.g., In re Northstar Contracting*, 125 B.R. 368, 369-71 (S.D.N.Y. 1991) (affirming bankruptcy court determination that action against corporate officer was effectively an action against the debtor because the officer was to be indemnified under corporate bylaws); *Maxicare Health Plans, Inc. v. Centinela Mammoth Hospital (In re Family Health Services)*, 105 B.R. 937, 942-43 (Bankr. C.D. Cal. 1989) ("the court finds that actions against non-debtor members will result in claims against the debtor for reimbursement or indemnification such that the debtor is the real party defendant"), *cited with approval, United States v. Dos Cabezas Corp.*, 995 F.2d 1486, 1491 (9th Cir. 1993).

In the context of insurance coverage, the case law specifically instructs that a "declaratory judgment action against a debtor is an 'act to . . . exercise control over property of the estate', 11 U.S.C. § 362(a)(3), insofar as it seeks to affect the insurance policies which are estate property. The fact that the action does not name Debtor is not dispositive." *Harbison-Walker Refractories Co. v. Ace Property & Casualty Ins. Co. (In re Global Indus. Technologies, Inc.)*, 303 B.R. 753, 760 (Bankr. W.D. Pa. 2004); *see also ACANDS, Inc. v. Travelers Casualty and Surety Co. (In re ACANDS, Inc.)*, 435 F.3d 252, 260-61 (3d Cir. 2006) (insurance coverage arbitration violated stay where award adversely affected the estate's share of policy proceeds); *In re Adelphia Bus. Solutions*, 285 B.R. at 590 (declaratory relief action, one purpose of which was to obtain rescission of directors and officers policy, was subject to the stay under section 362(a)(3)) (citing *Minoco*). If the relief sought in the District Court Action is granted, the

March 15, 2011
Page 5

recovery realized by the creditors of the Estate will be diminished, as such coverage will not be available to eliminate the indemnity claims asserted by the D&O Defendants.

Further, the District Court Action seeks a determination of key provisions that are common to all of the policies comprising the Second Tower, including those policies containing Side B and C coverage. The Carriers contend in the District Court Action, for instance, that coverage is not available because of the so-called "Tripp Exclusion," which refers to certain securities litigation. That exclusion, however, is incorporated *verbatim* into each of the other policies comprising the Second Tower. Thus, although drafted to suggest that the Carriers are seeking an interpretation "only" of their own policies (which are property of the Estate in any event), the complaint in the District Court Action effectively seeks an adjudication as to all of the policies comprising the Second Tower, including those policies as to which the Estate holds a direct entitlement to insurance proceeds. This is a blatant effort to exercise control over property of the estate and a violation of the automatic stay.

Accordingly, the Trustee demands that the Carriers cease and desist their prosecution of the District Court Action and dismiss it. In the event that the Carriers allow the District Court Action to remain pending, the Trustee will seek damages in accordance with applicable law and other appropriate relief from the Bankruptcy Court. By commencing and continuing the District Court Action, the Carriers and other responsible parties in effect have issued another insurance policy to the Estate against all losses and damages as a result of their proceeding in this manner.

Very truly yours,

Martin R. Barash

cc: Mr. Alfred H. Siegel, as Chapter 7 Trustee
Lee R. Bogdanoff, Esq (i/o)
David M. Stern, Esq. (i/o)

# EXHIBIT 35



# TUCKER ELLIS & WEST LLP

ATTORNEYS AT LAW

135 Main Street, Suite 700  San Francisco, CA 94105
phone 415.617.2400  fax 415.617.2409  Web: www.tuckerellis.com

**CLEVELAND   COLUMBUS   DENVER   LOS ANGELES   SAN FRANCISCO**

Direct Dial: 415.617.2224
Email: Kwest@tuckerellis.com

April 4, 2011

**VIA E-MAIL**

Martin R. Barash, Esq.
Klee, Tuchin, Bogdanoff & Stern LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067
E-mail: mbarash@ktbslaw.com

        Re:     *XL Specialty Insurance Co., et al v. Perry et al.*
        Case No.:  CV 11-02078 GHK (JCGx)
        Our File No.:  10177 / 00015

Dear Mr. Barash:

      We are in receipt of your correspondence of March 15, 2011. For the reasons that have been communicated to you during the recent meet and confer discussions in connection with the Motion to Withdraw the Reference of the coverage action initiated by your client, and for additional reasons that are set forth in our clients' Motion to Dismiss that action, we disagree with the legal and factual assertions made in your letter. Simply put, the commencement of *XL Specialty Insurance Co., et al v. Perry et al.* is not a violation of the bankruptcy stay. Accordingly, it will not be dismissed.

                                   Very truly yours,
                                        /s/
                                   Kim W. West

KWW:AHB/lah