David Simantob, SBN 155790
dsimantob@tresslerllp.com
Elizabeth L. Musser, SBN 203512
emusser@tresslerllp.com
TRESSLER LLP
1901 Avenue of the Stars, Suite 450
Los Angeles, CA 90067
Telephone: (310) 203-4800
Facsimile: (310) 203-4850

Attorneys for Counterdefendants
Catlin Insurance Company (UK) Ltd.,
Continental Casualty Company, and
Twin City Fire Insurance Company, and
Intervenor Defendant Those Certain Underwriters at
Lloyd's, London Subscribing to Policy No. QA011608

(Additional parties and counsel listed on next page)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| XL SPECIALTY INSURANCE COMPANY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL W. PERRY, *et al.* <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIMS | Case No. 2:11-CV-2078-RGK-JCG <br><br> Hon. R. Gary Klausner <br><br> **ABC DEFENDANTS' RESPONSE IN OPPOSITION TO FDIC'S MOTION TO INTERVENE** <br><br> Date: November 21, 2011 <br> Time: 9:00 a.m. |

**ABC DEFENDANTS' RESPONSE IN OPP. TO FDIC'S MOTION TO INTERVENE**

Brian D. Harrison, SBN 157123
brian.harrison@sedgwicklaw.com
Robert S. Gebhard, SBN 158125
robert.gebhard@sedgwicklaw.com
Veena A. Mitchell, SBN 161153
veena.mitchell@sedgwicklaw.com
SEDGWICK LLP
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, California 94105
Telephone: (415) 781-7900
Facsimile: (415) 781-2635

Attorneys for Zurich American Insurance Co.


Theodore A. Boundas (*admitted pro hac vice*)
tboundas@bswb.com
Jeffrey T. Shaw (*admitted pro hac vice*)
jshaw@bswb.com
W. Joel Vander Vliet (*admitted pro hac vice*)
wvandervliet@bswb.com
BOUNDAS, SKARZYNSKI, WALSH & BLACK, LLC
200 East Randolph Drive, Suite 7200
Chicago, Illinois 60601
Telephone: (312) 946-4200
Facsimile: (312) 946-4272


Attorneys for Counterdefendant
Catlin Insurance Company (UK) Ltd. and
Intervenor Defendant Those Certain Underwriters at
Lloyd's, London Subscribing to Policy No. QA011608

**ABC DEFENDANTS' RESPONSE IN OPP. TO FDIC'S MOTION TO INTERVENE**

William E. Smith (*admitted pro hac vice*)
wsmith@wileyrein.com
John E. Howell (*admitted pro hac vice*)
jhowell@wileyrein.com
WILEY REIN LLP
1776 K Street NW
Washington, D.C. 20006
Telephone: (202) 719-7000
Facsimile: (202) 719-7049

Attorneys for Continental Casualty Company

Michael R. Delhagen (*admitted pro hac vice*)
mdelhagen@tresslerllp.com
Kyle P. Barrett (*admitted pro hac vice*)
kbarrett@tresslerllp.com
TRESSLER LLP
One Penn Plaza, Suite 4701
New York, New York 10119
Telephone: (646) 833-0900
Facsimile: (646) 833-0877

Attorneys for Twin City Fire Insurance Company

**ABC DEFENDANTS' RESPONSE IN OPP. TO FDIC'S MOTION TO INTERVENE**

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................... 1

II.   STATEMENT OF FACTS ................................................................. 2

III.  ARGUMENT .................................................................................... 4

      A.    Mandatory Intervention Is Inappropriate. ............................... 4

            1.    The Motion Is Not Timely. ........................................... 4

            2.    The FDIC Lacks A Protectable Interest. ...................... 5

            3.    The FDIC's Interest, Even If It Existed, Would Not Be
                  Improperly Impaired Absent Intervention. ............... 11

            4.    Any Interest The FDIC Might Have Will Be Adequately
                  Protected By The Existing Defendants. ..................... 12

      B.    Permissive Intervention Also Is Inappropriate. .................... 13

IV.   CONCLUSION ............................................................................... 15

**ABC DEFENDANTS' RESPONSE IN OPP. TO FDIC'S MOTION TO INTERVENE**

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Arakaki v. Cayetano*
   324 F.3d 1078 (9th Cir. 2003) .................................................................5, 12

*Arizona for Official Eng'g v. Arizona*
   520 U.S. 43 (1997) ............................................................................11-12

*Bankers Trust Co. v. Old Republic Ins. Co.*
   959 F.2d 677 (7th Cir. 1992) ..............................................................15

*Beckman Indus., Inc. v. Int'l Ins. Co.*
   966 F.2d 470 (9th Cir. 1992) .............................................................13-14

*California ex rel. Lockyer v. United States*
   450 F.3d 436 (9th Cir. 2006) ...............................................................4

*Crosby v. St. Paul Fire & Marine Ins. Co.*
   138 F.R.D. 570 (W.D. Wash. 1991) ...................................................9-10

*Dilks v. Aloha Airlines*
   642 F.2d 1155 (9th Cir. 1981) .............................................................5, 9

*Donnelly v. Glickman*
   159 F.3d 405 (9th Cir. 1998) ..............................................................5, 14

*Eureka Fed. Sav. & Loan Ass'n v. American Cas. Co.*
   873 F.2d 229 (9th Cir. 1989) ...........................................................9-10, 15

*Eureka Fed. Sav. & Loan Ass'n v. American Cas. Co.*
   663 F. Supp. 1583 (N.D. Cal. 1987)....................................10, 12, 15

*Fireman's Fund Ins. Co. v. City of Lodi*
   302 F.3d 928 (9th Cir. 2002) ...............................................................11

*Genesis Ins. Co. v. Crowley*
   2005 WL 3989772, *3-4 (D. Colo. Aug. 31, 2005) ..........................13

*Glyn v. Roy Al Boat Mgmt. Corp.*
   897 F. Supp. 451 (D. Hawaii 1995) ...................................................9-10

*Greene v. United States*
    996 F.2d 973 (9th Cir. 1993) ....................................................................5, 8

*Hawaii-Pacific Venture Capital Corp. v. Rothbard*
    564 F.2d 1343 (9th Cir. 1977) ................................................................9-10

*League of United Latin Am. Citizens v. Wilson*
    131 F.3d 1297 (9th Cir. 1997) ..............................................................12-13

*McGough v. Covington Techs. Co.*
    967 F.2d 1391 (9th Cir. 1992) ....................................................................11

*Perry v. Proposition 8 Official Proponents*
    587 F.3d 947 (9th Cir. 2009) ...............................................................4-5, 12

*Prete v. Bradbury*
    438 F.3d 949 (9th Cir. 2006) ...............................................................5, 12

*S. Cal. Edison Co. v. Lynch*
    307 F.3d 794 (9th Cir. 2002) .............................................................5, 8, 13

*Southwest Center for Biological Diversity v. Berg*
    268 F.3d 810 (9th Cir. 2001) .......................................................................5

*United States v. Alisal Water Corp.*
    370 F.3d 915 (9th Cir. 2004) ................................................................8-10

*United States v. City of Los Angeles*
    288 F.3d 391 (9th Cir. 2002) ......................................................................14

*United States v. State of Washington*
    86 F.3d 1499 (9th Cir. 1996) ...................................................................4-5

*Western Int'l Syndication Corp. v. Gulf Ins. Co.*
    2004 WL 5573919, *3 (C.D. Cal. Dec. 20, 2004) .........................................15

*Yniguez v. State of Arizona*
    939 F.2d 727 (9th Cir. 1991) ...........................................................11-12, 14

**Statutes**

Cal Ins. Code § 15800 ........................................................................11

**ABC DEFENDANTS' RESPONSE IN OPP. TO FDIC'S MOTION TO INTERVENE**

## I.    INTRODUCTION[1]

On October 24, almost two months to the day from this Court's Rule 12(b)(1) dismissal of its sweeping coverage complaint in *IndyMac MBS, Inc. v. Ace American Insurance Company, et al.*, the Federal Deposit Insurance Corporation ("FDIC") through the same counsel (albeit through a different entity) filed a motion to intervene in this case.  In its motion, the FDIC gives unmistakable notice that if intervention is granted, it will attempt to raise many of the same allegations and claims held in *IndyMac MBS* to be too remote and speculative to adjudicate.  Thus, under the guise of a Rule 24 motion, the FDIC wants to turn this lawsuit into the spitting image of the *IndyMac MBS* lawsuit dismissed by this Court for want of an Article III case or controversy.

In seeking to intervene, the FDIC all but admits that it has no immediate and direct stake in the outcome of the coverage questions it wants this Court to answer.  That is why the FDIC argues, over and over again, that lack of standing is irrelevant to its request to intervene.  But in fact, as shown below, the FDIC's lack of a sufficient stake is one of the many reasons why intervention would be improper—under established Ninth Circuit precedent addressing both mandatory and permissive intervention.

In any event, even if the FDIC's stake in this controversy were sufficient to pass muster under Rule 24, intervention still would be inappropriate because the FDIC's ultimate coverage objectives are sufficiently represented by the dozens of parties and law firms already before the Court.  These parties are the individuals seeking insurance coverage and the insurers from which they seek it; there is no need to have another party and another set of lawyers involved.  The FDIC's motion to intervene should be denied.

---

[1]  All capitalized terms used and not defined in this Memorandum have the meanings ascribed to them in the FDIC's Memorandum of Points and Authorities in support of its Motion to Intervene (cited herein as "FDIC Mem.").

1

## II.    STATEMENT OF FACTS

IndyMac Bancorp, Inc., obtained from the Plaintiffs and some of the Counterdefendants D&O liability insurance that afforded specified coverage for claims made during the March 1, 2007 to March 1, 2008 Policy Period (the "07-08 Policies").   *See* Ex. 1 Joint Counterclaims of Defendants/Counterclaimants Michael W. Perry, et al. at ¶ 42.[2]  IndyMac Bancorp also secured insurance from the Plaintiffs and Counterdefendants with a Policy Period of March 1, 2008 to April 1, 2009 (the "08-09 Policies," and, together with the 07-08 Policies, the "D&O Policies").  *Id.* at ¶ 32.  Only the 08-09 Policies are at issue in this lawsuit.

At the time it obtained the D&O Policies, IndyMac Bancorp was the parent of IndyMac Bank, F.S.B., which was the parent of IndyMac MBS, Inc.  *Id.* at ¶ 3; Ex. 3 First Amended Complaint, *IndyMac MBS, Inc. v. Zurich American Ins. Co., et al.*, at ¶¶ 35, 38.  On July 11, 2008, the Office of Thrift Supervision closed IndyMac Bank and appointed the FDIC as its receiver.  Ex. 3 at ¶ 36.  As this Court is aware, the circumstances surrounding the demise of IndyMac have spawned a number of coverage lawsuits, three of which have been filed by the FDIC (either in its own name, as here, or through IndyMac MBS, of which it is receiver).

***First***, the FDIC filed a lawsuit entitled *IndyMac MBS, Inc. v. Ace American Insurance Co., et al.,* a case assigned to this Court.  That lawsuit named a number of insurers and former directors and officers of IndyMac Bancorp and its subsidiaries, and sought wide-ranging coverage determinations under the 07-08 and 08-09 Policies for twelve underlying matters.  On August 25, 2011, this Court

---

[2] Cited exhibits are attached to the Declaration of Elizabeth L. Musser.

**ABC DEFENDANTS' RESPONSE IN OPP. TO FDIC'S MOTION TO INTERVENE**

dismissed *IndyMac MBS* as to the insurance carriers, finding no Article III case or controversy.  *See* Ex. 4.[3]

**Second**, on October 14, 2011, the FDIC through the same lawyers and again in the name of IndyMac MBS sued certain carriers in Los Angeles County Superior Court.  This lawsuit names the "ABC Carriers" under both the 07-08 and 08-09 Policies and is a virtually unchanged repackaging of the lawsuit dismissed by this Court.  Ex. 2.  This lawsuit, which is not disclosed by the FDIC in its motion, remains pending.  The relevant carrier defendants (including the 08-09 ABC Carriers joining in this opposition) shortly will be initiating motion practice regarding the propriety of the FDIC's prosecution of this lawsuit in state court.

**Third**, the last coverage "lawsuit" filed by the FDIC is the instant motion to intervene.  It is fair to call this motion a third "lawsuit" because it seeks to transform this action into a carbon copy of the two lawsuits just discussed.

The FDIC's 22-page memorandum in support of its intervention motion devotes multiple pages to arguing that the existence of Article III standing is not germane to intervention under Rule 24—a contention that the Ninth Circuit precedents discussed below expose to be irrelevant because the FDIC does not satisfy the standards of Rule 24, which overlap with standing requirements.  As for its interest in the matter, the FDIC confesses that its primary aim is to maximize the monies that might be available to satisfy a judgment or fund a settlement in the *Van Dellen* and *Perry* litigations filed by the FDIC.  *See, e.g.,* FDIC Mem. 4. Thus, the FDIC's main interest is not as an insured under the Policies, but as a claimant that hopes someday to tap into insurance proceeds should it prevail in asserting its currently unadjudicated and unliquidated claims.

---

[3] The court dismissed the lawsuit against the remaining defendants on September 7, 2011.

**ABC DEFENDANTS' RESPONSE IN OPP. TO FDIC'S MOTION TO INTERVENE**

As shown below, for the FDIC, this third attempt to assert the same sweeping claims is not a charm:  The FDIC has not made a credible case for either mandatory or permissive intervention under Rule 24.

## III.   ARGUMENT

### A.   Mandatory Intervention Is Inappropriate.

Under Rule 24(a), a third party has a right to intervene in a lawsuit if (1) the motion is timely, (2) the movant has a "significantly protectable" interest in the subject matter of the lawsuit, (3) the lawsuit's disposition will impede the movant's ability to protect its interest, and (4) this interest is not adequately protected by the existing parties.  *See Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009); *California ex rel. Lockyer v. United States,* 450 F.3d 436, 440 (9th Cir. 2006).   "[F]ailure to satisfy any one of the requirements is fatal to the application."  *Perry,* 587 F.3d at 950.

Here, although the FDIC must demonstrate all four requirements, it cannot satisfy any of them.

### 1.   The Motion Is Not Timely.

The FDIC's motion comes too late.  The Side A Only Insurers filed this lawsuit on March 10, 2011, Individual Insured Defendants answered and filed counterclaims on July 20 and 25, 2011, the Side A Only Insurers and the Side ABC Insurers answered on August 26, 2011, and the pleadings were then closed.  The carriers and some of the other parties intend to file dispositive motions in the near future, and the parties have conducted conferences regarding these motions as required by the Local Rules.  The Court also recently entered a scheduling order setting a discovery cut-off date of April 25, 2012, and a trial date of July 24, 2012.

Given that this case has been ongoing for months, and that dispositive motions will be filed soon, the FDIC's motion is untimely.  *See United States v. State of Washington,* 86 F.3d 1499, 1503 (9th Cir. 1996) ("the stage of the

**ABC DEFENDANTS' RESPONSE IN OPP. TO FDIC'S MOTION TO INTERVENE**

proceeding at which an applicant seeks to intervene" is a factor to consider in determining the timeliness of the motion).

## 2. The FDIC Lacks A Protectable Interest.

The FDIC lacks the required interest in this lawsuit.  A party seeking to intervene must have a "direct, non-contingent, substantial and legally protectable" interest in the action.  *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002) (affirming denial of motion to intervene by parties "claiming a right to intervene based on a contingent, unsecured claim against a third-party debtor") (quoting *Dilks v. Aloha Airlines*, 642 F.2d 1155, 1157 (9th Cir. 1981)).  "An economic stake in the outcome of the litigation, even if significant, is not enough." *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993) (citation omission).

The Ninth Circuit requires a movant seeking to intervene to have a sufficiently protectable interest in the lawsuit.  *See Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 822 n.3 (9th Cir. 2001) ( "the standing requirement is at least implicitly addressed by our requirement that the applicant must 'assert[] an interest relating to the property or transaction which is the subject of the action'") (citations omitted); *accord Perry,* 587 F.3d at 950 n.2; *Prete v. Bradbury,* 438 F.3d 949, 956 n.8 (9th Cir. 2006).  A movant's interest is sufficient if "(1) it … is protected under some law, and (2) there is a 'relationship' between [the movant's] legally protected interest and the plaintiff's claims." *Lynch,* 307 F.3d at 803 (citing *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)).  The "relationship" requirement is met only if the resolution of the claims "actually will affect the applicant." *Id.* (quoting *Donnelly*, 159 F.3d at 410 (9th Cir. 1998)); *see also Arakaki v. Cayetano*, 324 F.3d 1078, 1084 (9th Cir. 2003).

The FDIC fails these standards.  The FDIC asserts essentially two interests in support of this element:  (1) as successor to IndyMac Bank, it is a party to and a "named insured" under the 08-09 Policies; and (2) as claimant against various

**ABC DEFENDANTS' RESPONSE IN OPP. TO FDIC'S MOTION TO INTERVENE**

individual insureds, it has an economic interest in the insurance proceeds to fund settlement or judgment of its claims.

### a. The Rule 12(b)(1) Dismissal Of *IndyMac MBS* Confirms That The FDIC Lacks A Sufficiently Protectable Interest In The Policy Proceeds.

This Court already has concluded, in dismissing the *IndyMac MBS* action, that the FDIC (litigating that case as IndyMac MBS) lacks a sufficient stake in the proceeds of the D&O Policies.  This Court observed that the Side ABC Policies prioritize coverage for the individual defendants over any coverage the company might eventually receive.   Until the rights of the individual defendants are adjudicated and resolved, therefore, no other rights are ripe for adjudication.  In these circumstances, as this Court found,

> Plaintiff's request for declaratory relief is too remote to constitute a case or controversy under Article III.   Any eventual insurance coverage that may be owed to plaintiff under the ABC policies can only be determined after the underlying actions involving the Individual Defendants have been concluded.  Plaintiff does not yet have an adequate injury that would be make this case justiciable.

Ex. 4 at 4.  This Court further found that any coverage owed by the Side ABC Insurers was too speculative because IndyMac MBS had not yet triggered coverage.  *See id.*

These findings apply equally here.  The FDIC seeks to distance itself from the *IndyMac MBS* ruling by arguing that the FDIC, as receiver for IndyMac Bank, is a different entity than IndyMac MBS (a subsidiary of IndyMac Bank that is under FDIC control as part of the receivership estate).  *See* FDIC Mem. 6-7. However, the FDIC ultimately acknowledges that this distinction makes no difference.  *See* FDIC Mem. 12 (treating its motion to intervene as the functional equivalent of the *IndyMac MBS* complaint by arguing that its interests in the

Policies at issue were adequately protected until that action was dismissed by this Court).

In any event, the same reasoning utilized in *IndyMac MBS* would apply here even if the parties were different, as the FDIC is merely asserting an interest in coverage proceeds at some point in the future depending on how pending claims might be resolved. Because the FDIC's purported interest in these proceeds is remote, speculative, and may never arise, the FDIC lacks the significantly protectable interest necessary to warrant mandatory intervention.

The FDIC offers no reason to conclude otherwise. It contends that it has a protectable interest in the "Side B" coverage[4]—but the FDIC has offered no explanation whatsoever as to why it may be entitled to Side B coverage.[5] It has not alleged that it is (or that the IndyMac entities it represents are) required or permitted to indemnify any directors or officers. It has not alleged that any directors or officers have made any claims for such indemnification, or under what theory it might indemnify the directors and officers, some of which it has sued, if

---

[4] "Side B" refers to Insuring Clause B of the Primary Policy, which provides: "Underwriters shall pay on behalf of the Company Loss which the Company is required or permitted to pay as indemnification to any of the Directors and Officers resulting from any Claim first made against the Directors and Officers during the Policy Period for an Individual Act." Ex. 1 Joint Counterclaims of Defendants/Counterclaimants Michael W. Perry, et al. Ex. 1 Primary Policy at Section I.B (p. 41).

[5] The FDIC repeatedly argues that it is "a named insured in the 'Side B' coverage of the Side ABC Policies." FDIC Mem. 1, 6, 14. A review of the policies, however, reveals that neither the FDIC or the IndyMac entities it represents are "named insureds." The only "insured" party "named" in the primary policy is the "Parent Company," defined as "IndyMac Bancorp, Inc., and its predecessor company, IndyMac Mortgage Holdings, Inc." *See* Ex. 1 Joint Counterclaims of Defendants/Counterclaimants Michael W. Perry, et al. Ex. 1 Primary Policy at Item A (p. 38). The "Side B" insuring clause refers to the "Company," *id.* at Section I.B. (p. 41), which in turn is defined as "the Parent Company [and] any Subsidiary," *id.* at Section II.E (p. 42).

7

**ABC DEFENDANTS' RESPONSE IN OPP. TO FDIC'S MOTION TO INTERVENE**

they have.   And it has not alleged that it has given the carriers any notice whatsoever in connection with any purported Side B coverage.

>      **b.      The FDIC's Interest As A Contingent Creditor Is Insufficient.**

As observed above, the primary stake asserted by the FDIC in the outcome of the coverage disputes stems from its capacity as plaintiff in the *Van Dellen* and *Perry* actions, so the FDIC seeks to intervene to maximize its potential recovery in those cases at some point in the future.   Specifically, according to the FDIC:

> The D&O policies may be the primary, or only, source of recovery for FDIC-R's claims; the insureds have not suggested that they can personally satisfy any settlement or judgments out of their own pockets.   The value of FDIC-R's claims is purportedly falling dollar-for-dollar over time with each defense and indemnity payment that the insurers are permitted to assign and make under the First Tower instead of the Second Tower.   If the insurers are permitted to take significant insurance proceeds off the table, FDIC-R and the insureds would be handicapped in negotiating any potential settlements of the FDIC-R claims.

FDIC Mem. 15.

The FDIC's argument that it has a significantly protectable interest as a result of its status as a potential judgment creditor fails because, under Ninth Circuit law, "[a] mere interest in property that may be impacted by litigation is not a passport to participate in the litigation itself." *United States v. Alisal Water Corp.*, 370 F.3d 915, 920 n.3 (9th Cir. 2004).   "An economic stake in the outcome of the litigation, even if significant, is not enough" to satisfy the requirement of a significantly protectable interest.   *Greene*, 996 F.2d at 976; *Alisal Water*, 370 F.3d at 920 ("[T]he impaired ability to collect judgments that may arise from future claims does not give rise to a right of intervention."); *Lynch*, 307 F.3d at 803

**ABC DEFENDANTS' RESPONSE IN OPP. TO FDIC'S MOTION TO INTERVENE**

(proposed intervenors "are claiming a right to intervene based on a contingent, unsecured claim against a third-party debtor[,]. . . [which] falls far short of the 'direct, non-contingent, substantial and legally protectable' interest required for intervention as a matter of right") (quoting *Dilks*, 642 F.2d at 1157); *Hawaii-Pacific Venture Capital Corp. v. Rothbard*, 564 F.2d 1343, 1346 (9th Cir. 1977) (mere concern that judgment against the remaining defendant "may decrease the collectibility of any subsequent judgments they may obtain in the future against [him] . . . does not give the appellants the right to intervene in the class action suit").

This is the general rule because permitting intervention based on a potential economic interest in one possible outcome "would transform every civil suit before this court into a kind of exaggerated interpleader action where all potential creditors of all parties could assert their rights." *Glyn v. Roy Al Boat Mgmt. Corp.*, 897 F. Supp. 451, 453 (D. Hawaii 1995); *see also Alisal Water*, 370 F.3d at 920 n.3 ("mere interest in property that may be impacted by litigation" is not enough to intervene; "To hold otherwise would create a slippery slope where anyone with an interest in the property of a party to a lawsuit could bootstrap that stake into an interest in the litigation itself"); *Hawaii-Pacific Venture Capital*, 564 F.2d at 1346 ("Logically extended, the appellants' contention would give the right to intervene in the class action suit to all persons with potential claims against any party in the class action suit on the ground that the outcome of the class action suit may increase or decrease the collectibility of their claims").

The FDIC ignores this line of cases, relying primarily on two decisions, *Eureka Fed. Sav. & Loan Ass'n v. American Cas. Co.,* 873 F.2d 229 (9th Cir. 1989), and *Crosby v. St. Paul Fire & Marine Ins. Co.,* 138 F.R.D. 570 (W.D. Wash. 1991). Neither decision supports the relief the FDIC seeks.

In *Eureka*, the Ninth Circuit held that a company that had sued its directors and officers could bring an action against the company's D&O insurer to

9

determine the applicable limits of insurance, but the company was an insured under the applicable policy seeking to enforce the policy against its insurer.  *See* 873 F.2d 232-33.   Indeed, a prior district court ruling in the *Eureka* establishes that the company was making its claims as an insured, not as a claimant.  *See Eureka Fed. Sav. & Loan Ass'n v. American Cas. Co.*, 663 F. Supp. 1583, 1584 (N.D. Cal. 1987) (distinguishing case law applicable to claims by third-party claimants against insurers and stating:  "This is a 'first party' action by an insured against its insurance company, rather than a third party claim against the insurer").  Here, the FDIC is suing as a potential judgment creditor, and any unspecified rights it may purport to have as an insured are remote, speculative, and subordinate to those of the individual insureds.[6]

In *Crosby*, the district court allowed the FDIC to intervene in a lawsuit to protect what supposedly was its "only source of recovery for its lawsuit."   138 F.R.D. at 573.  But any persuasive force of this ruling, which no reported case has cited in the 20 years since its issuance, is eclipsed by the above authorities establishing that the bare status as a claimant does not confer the right to intervene.  Otherwise, coverage disputes routinely would be transformed from manageable disputes between contracting parties into three-ring circuses involving countless claimants and plaintiffs. *See, e.g., Alisal Water Corp.*, 370 F.3d at 920 n.3; *Hawaii-Pacific Venture Capital Corp.*, 564 F.2d at 1346; *Glyn*, 897 F. Supp. at 453.

Finally, the FDIC lacks a sufficiently protectable interest for one more reason:  the policies do not permit a claimant to bring a direct action against the carriers unless "the amount of the Assureds' obligation to pay shall have been determined either by judgment against them or by written agreement between

---

[6] The issue addressed in *Eureka* was not whether a party could intervene, but whether the action presented an Article III case or controversy, as the FDIC acknowledges later in its memorandum.  FDIC Mem. 20.  The FDIC's reliance on this opinion is particularly odd, then, in light of this Court's prior ruling on Article

**ABC DEFENDANTS' RESPONSE IN OPP. TO FDIC'S MOTION TO INTERVENE**

1   them, the claimant and [the carriers]."   Ex. 1 Joint Counterclaims of

2   Defendants/Counterclaimants Michael W. Perry, et al. Ex. 1 Primary Policy at

3   Section X (p. 54).  California law, which governs the policies, likewise provides no

4   statutory basis for a direct action against a directors and officers insurer.  *See* Cal.

5   Ins. Code § 11580 (permitting direct actions by claimants only where judgment has

6   been obtained "in an action based upon bodily injury, death, or property damage");

7   *see also Fireman's Fund Ins. Co. v. City of Lodi*, 302 F.3d 928, 955-56 (9th Cir.

8   2002) ("[Section] 11580 sets forth the exclusive set of circumstances under which

9   a third-party claimant may directly sue another policyholder's liability insurer").

> **3.    The FDIC's Interest, Even If It Existed, Would Not Be Improperly Impaired Absent Intervention.**

12   The FDIC argues that "this action may result in coverage rulings that one

13   party or another may attempt to assert as precedent against the FDIC-R."  *See*

14   FDIC Mem. 14.  In support of this argument, the FDIC cites *U.S. ex rel. McGough*

15   *v. Covington Techs. Co.*, 967 F.2d 1391, 1396 (9th Cir. 1992) and *Yniguez v. State*

16   *of Arizona,* 939 F.2d 727, 737 (9th Cir. 1991), neither of which supports the

17   FDIC's argument.  *Covington* concluded that the prospect of *stare decisis* supplied

18   the requisite practical impairment only where the existing parties' interests differed

19   from the intervenor's interests.  967 F.2d at 1396 (finding practical impairment

20   where the existing parties entered into stipulated dismissal that would have

21   precluded the claims of the proposed intervenor in another suit.).  In *Yniguez*,

22   which the FDIC cites to argue that "the mere persuasive effect of a ruling can

23   constitute a sufficient impairment" (FDIC Mem. 15), the Court notes, in dicta, only

24   that it "cannot wholly overlook" the persuasive effect of its ruling on other courts.

25   939 F.2d at 737.  Indeed, the FDIC's reliance on *Yniguez* is particularly weak given

26   that the Supreme Court vacated it in *Arizona for Official Eng'g v. Arizona,* 520

27

28   III issues in *IndyMac MBS* and also the FDIC's position that Article III standing is not required for intervention.

**ABC DEFENDANTS' RESPONSE IN OPP. TO FDIC'S MOTION TO INTERVENE**

U.S. 43, 80 (1997).  *See League of United Latin Am. Citizens v. Wilson,* 131 F.3d 1297, 1304 n.5 (9th Cir. 1997) (discussing *Yniguez* and ruling that the Supreme Court's decision vacating it rendered it "wholly without precedential authority"); *see also Prete,* 438 F.3d at 956 n.8 (quoting *Wilson* regarding the non-precedential effect of *Yniguez*).

Here, as shown more fully below, the FDIC's stated interests are adequately protected by the existing parties.  Thus, the specter of *stare decisis* is not a risk of impairment sufficient to justify intervention.

### 4.    Any Interest The FDIC Might Have Will Be Adequately Protected By The Existing Defendants.

The FDIC's interests are more than adequately represented by the dozens of parties and lawyers already involved in this case.  The Ninth Circuit has observed that "[t]he most important factor in determining the adequacy of representation is how the [applicant's] interest compares with the interests of existing parties.  When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *Arakaki*, 324 F.3d at 1086 (citations omitted); *Perry,* 587 F.3d at 950-51.  In that situation, the movant can overcome the presumption only by making a "compelling showing to the contrary." *Arakaki,* 324 F.3d at 1086.  Expressing a desire to pursue a different litigation approach to achieve the same basic objective is not enough. *Perry*, 587 F.3d at 954.

Here, as observed above, the FDIC shares the same objectives with the numerous existing parties with respect to the insurance policies at issue in this action.  With respect to the *Van Dellen* litigation, the officer defendants defending that action and the FDIC have an identical interest—to obtain a declaration that the action is covered under the 08-09 Policies.  With respect to the remaining Underlying Claims, the FDIC and the carriers have an identical interest in obtaining a declaration that they are not covered by the 08-09 Policies. *See, e.g.*

12

*Genesis Ins. Co. v. Crowley*, 2005 WL 3989772, *3-4 (D. Colo. Aug. 31, 2005) (denying intervention in a coverage action between a Side A insurer and its insured where the movant and the insured shared the goal "to obtain a judicial declaration that plaintiff is obligated to provide maximum coverage").

Moreover, the numerous existing parties are represented by capable law firms, which together will fully address the coverage issues.  Despite the FDIC's claim that no one else will present its "nuanced coverage theory" (FDIC Mem. 17), it is beyond question that all outstanding coverage questions under the 08-09 Policies will be vetted fully before this Court by the existing parties.

In sum, because the FDIC has failed to establish any of the elements of mandatory intervention (let alone all of them), the FDIC's request for mandatory intervention should be denied.

### B.    Permissive Intervention Also Is Inappropriate.

Permissive intervention under Rule 24(b) likewise is not appropriate in the circumstances of this case.  The Ninth Circuit maintains that a district court may permit intervention when the movant shows that (1) independent grounds for jurisdiction exist; (2) the motion is timely; and (3) the movant's claim or defense, and the main action, have a question of law or question of fact in common.  *League of United Latin Am. Citizens*, 131 F.3d at 1308; *Beckman Indus., Inc. v. Int'l Ins. Co.,* 966 F.2d 470, 473 (9th Cir. 1992).  "Even if an applicant satisfies those threshold requirements, [however,] the district court has discretion to deny permissive intervention."  *Lynch*, 307 F.3d at 803 (citation omitted).

Here, the following factors counsel against permitting the FDIC to intervene:

- This Court already has found that an entity controlled by the FDIC lacks a sufficient interest in the insurance proceeds to assert the same positions the FDIC seeks to advance.

**ABC DEFENDANTS' RESPONSE IN OPP. TO FDIC'S MOTION TO INTERVENE**

- There are literally dozens of parties and law firms already before this Court possessing the financial capability, professional expertise, and litigation incentive to address every relevant coverage question.

- The case has been pending for over seven months, the pleadings have been closed for nearly two months, and many parties are ready to file dispositive motions immediately. The FDIC's request to participate in this litigation therefore is too late.

The first consideration is worth special emphasis because, again, permissive intervention requires "independent jurisdictional grounds." *United States v. City of Los Angeles,* 288 F.3d 391, 403 (9th Cir. 2002); *Beckman,* 966 F.2d at 473. This requirement is especially applicable in a case such as this, where the movant seeks relief on the merits and permission to assert new claims against new parties. *See Donnelly*, 159 F.3d at 412 (requiring an independent jurisdictional ground ensures that intervention "is not intended to allow the creation of whole new lawsuits by the intervenors"). There has been no credible showing by the FDIC regarding subject matter jurisdiction over the claims it wishes to assert.

Instead, toward the end of its 22-page memorandum, the FDIC misstates what the law requires by: (1) relying on the vacated *Yniguez* decision for the proposition that Article III standing is irrelevant to mandatory intervention; (2) ignoring the Ninth Circuit cases cited in Section III.B.2 above recognizing a circuit split on the issue, that the Ninth Circuit has not weighed in on the debate, and that the "significantly protectable interest" requirement of Rule 24(a) implicitly incorporates Article III standing requirements; and (3) asserting that there is no "significantly protectable interest" requirement for permissive intervention, but at the same time, failing to address the requirement of independent jurisdictional grounds for the claims to be raised in intervention. *See* FDIC Mem. 19-20.

Then, the FDIC caps off its memorandum with a half-hearted argument that it "can" demonstrate Article III standing with regard to its claims in the pending

**ABC DEFENDANTS' RESPONSE IN OPP. TO FDIC'S MOTION TO INTERVENE**

1    *Van Dellen* and *Perry* litigations—citing the Ninth Circuit's *Eureka* decision again

2    and quoting at length from the Seventh Circuit opinion in *Bankers Trust Co. v. Old*

3    *Republic Ins. Co.,* 959 F.2d 677 (7th Cir. 1992).  As for *Eureka*, as explained in

4    Section III.A.2.b. above, it does not hold that third-party claimants possess Article

5    III standing against insurance carriers, as the company's role in that case was as

6    insured, not as claimant.  *See Eureka*, 663 F. Supp. at 1584.  As for the lengthy

7    quote from *Bankers Trust*, it will be familiar to the Court, because it is copied from

8    the response to the order issued by this Court in *IndyMac MBS* directing the

9    plaintiff to show cause why the claims against the individual defendants should not

10    be dismissed for want of an Article III Case or Controversy along with the claims

11    against the insurance carriers.  *See* Ex. 5 at 2-3.  This Court rejected the FDIC's

12    argument in *IndyMac MBS,* dismissing all claims against all parties, and the

13    argument does not gain persuasive force through mere repetition.

14         In sum, notwithstanding the FDIC's arguments to the contrary, the claims in

15    *Van Dellen* and *Perry* cannot give rise to a justiciable stake in indemnity proceeds

16    before those cases proceed to resolution.  *See Western Int'l Syndication Corp. v.*

17    *Gulf Ins. Co.,* 2004 WL 5573919, *3 (C.D. Cal. Dec. 20, 2004) (Klausner, J.)

18    (indemnity issue not ripe because, "[w]ithout a determination of liability, this

19    Court simply cannot make determinations as to Defendant's duty to indemnify").

20                            ********

21         Given the circumstances of this case, the FDIC's failure to address the

22    independent jurisdictional basis for its claims, and that the parties are ready to

23    proceed with the presentation of dispositive motions now, the denial of the FDIC's

24    request for permissive intervention would be a sound exercise of this Court's

25    discretion.

26    **IV.   CONCLUSION**

27         The FDIC's motion to intervene should be denied and this Court should

28    grant any additional further relief that it considers just and proper.

**ABC DEFENDANTS' RESPONSE IN OPP. TO FDIC'S MOTION TO INTERVENE**

1   Dated: October 31, 2011          TRESSLER LLP

2

3                                    By:   /s/ Elizabeth L. Musser
                                          David Simantob
4                                         Elizabeth L. Musser
                                          Attorneys for Counterdefendants
5                                         Catlin Insurance Company (UK) Ltd.,
                                          Continental Casualty Company, and
6                                         Twin City Fire Insurance Company, and
                                          Intervenor Defendant Those Certain
7                                         Underwriters at Lloyd's, London
                                          Subscribing to Policy No. QA011608
8

9

10

11  Dated: October 31, 2011          SEDGWICK LLP

12

13                                   By:   /s/ Brian D. Harrison
                                          Brian D. Harrison
14                                        Robert S. Gebhard
                                          Veena A. Mitchell
15                                        Attorneys for Counterdefendant
                                          Zurich American Insurance Co.
16

17

18

19

20

21

22

23

24

25

26

27

28

**ABC DEFENDANTS' RESPONSE IN OPP. TO FDIC'S MOTION TO INTERVENE**