1  GORDON J. CALHOUN, SB# 84509
       E-Mail: calhoun@lbbslaw.com
2  DOUGLAS R. IRVINE, SB# 119863
       E-Mail: irvine@lbbslaw.com
3  LEWIS BRISBOIS BISGAARD & SMITH LLP
   221 North Figueroa Street, Suite 1200
4  Los Angeles, California 90012
   Telephone: (213) 250-1800
5  Facsimile: (213) 250-7900

6  JASON P. CRONIC
       E-Mail: jcronic@wileyrein.com
7  WILEY REIN LLP
   1776 K Street NW
8  Washington, DC 20006
   Telephone: (202) 429-7000
9  Facsimile: (202) 719-7049

10 Attorneys for Plaintiff and Counterdefendant,
   XL SPECIALTY INSURANCE COMPANY
11
12 [See Signature Page for Additional Counsel]

13         **UNITED STATES DISTRICT COURT**

14         **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 15  XL SPECIALTY INSURANCE COMPANY, ARCH INSURANCE COMPANY, ACE AMERICAN INSURANCE COMPANY, and AXIS INSURANCE COMPANY, | ) Case No. 2:11-cv-02078-RGK-JCG |
| 18                                    Plaintiffs, | ) **(1) PLAINTIFFS'/COUNTERCLAIM DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS** |
| 19  v. | |
| 20  MICHAEL W. PERRY, A. SCOTT KEYS, LOUIS E. CALDERA, LYLE E. GRAMLEY, HUGH M. GRANT, PATRICK C. HADEN, TERRANCE G. HODEL, ROBERT L. HUNT II, LYDIA H. KENNARD, BRUCE G. WILLISON, JOHN OLINSKI, S. BLAIR ABERNATHY, SAMIR GROVER, SIMON HEYRICK, VICTOR H. WOODWORTH, SCOTT VAN DELLEN, RICHARD KOON, KENNETH SHELLEM, WILLIAM ROTHMAN, JILL JACOBSON, and KEVIN CALLAN, | ) **(2) MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> ) **Date:           January 17, 2012** <br> ) **Time:           9:00 a.m.** <br> ) **Courtroom:  850** <br> ) **Hon. R. Gary Klausner** |
| 27                                    Defendants. | |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on January 17, 2012, at 9:00 a.m. before the Honorable R. Gary Klausner, United States District Judge, sitting in Courtroom 850 of the United States District Court for the Central District of California located at 255 East Temple Street, Los Angeles, California, 90012, Plaintiffs and Counterclaim Defendants XL Specialty Insurance Company, Arch Insurance Company, ACE American Insurance Company, and AXIS Insurance Company (the "08-09 A-Side Insurers") will and do hereby move the Court for an order granting judgment on the pleadings under Federal Rule of Civil Procedure 12(c) in favor of the Plaintiffs and Counterclaim Defendants on the Complaint [Dkt. No. 1], the Counterclaims of Outside Director Defendants [Dkt. No. 94], the Counterclaims of Defendants/Counterclaimants Richard Koon and Kenneth Shellem [Dkt. No. 102] and the Joint Counterclaims of Defendants/Counterclaimants Michael W. Perry, A. Scott Keys, S. Blair Abernathy, John Olinski, Samir Grover, Simon Heyrick, Victor H. Woodworth, Scott Van Dellen, William Rothman, Jill Jacobson, and Kevin Callan [Dkt. No. 97]. Judgment on the pleadings is appropriate because there is no material issue of fact and Plaintiffs/Counterclaim Defendants are entitled to judgment as a matter of law. The directors and officers liability insurance policies issued by the Plaintiffs/Counterclaim Defendants afford no coverage for the underlying litigation and other matters for which the Defendants/Counterclaimants seek coverage. These matters are deemed first made prior to the policy period of the claims-made policies at issue and fall outside the scope of coverage of those policies. In addition, coverage for the underlying matters is precluded by Specific Litigation and Prior Notice Exclusions to the relevant policies. Accordingly, no coverage is available as a matter of law and the Plaintiffs/Counterclaim Defendants are entitled to judgment on the pleadings.

This Motion for Judgment on the Pleadings is made following the conference of counsel pursuant to L.R. 7-3 which took place on October 26, 2011.

This Motion is based on this Notice of Motion and Motion for Judgment on the

Pleadings, the Memorandum of Points and Authorities, the Stipulation Regarding Certain Exhibits and Allegations filed in this action on November 23, 2011 all pleadings, records and documents filed in this action, and such other oral argument and/or evidence that may be presented at the time of the hearing on this Motion.

DATED: November 23, 2011  WILEY REIN LLP

          By:_____/s/_____

            Jason P. Cronic (Admitted *pro hac vice*)
            WILEY REIN LLP
            1776 K Street NW
            Washington, DC  20006
            Telephone: (202) 429-7000
            Facsimile: (202) 719-7049
            jcronic@wileyrein.com

            LEWIS BRISBOIS BISGAARD & SMITH LLP
            GORDON J. CALHOUN, SB# 84509
            DOUGLAS R. IRVINE, SB# 119863
            221 North Figueroa Street, Suite 1200
            Los Angeles, California  90012
            Telephone: (213) 250-1800
            Facsimile: (213) 250-7900
            Calhoun@lbbslaw.com
            irvine@lbbslaw.com

            Attorneys for Plaintiff/Counterclaim Defendant XL Specialty Insurance Company

DATED: November 23, 2011  TUCKER ELLIS & WEST LLP

          By:_____/s/_____
            Kim W. West – SBN 78553
            Alec H. Boyd – SBN 161325
            135 Main Street Suite 700
            San Francisco, CA 94105
            415-617-2400
            415-617-2409 (fax)
            kim.west@tuckerellis.com
            alec.boyd@tuckerellis.com

            Attorneys for Plaintiff/Counterclaim Defendant Arch Insurance Company

A-SIDE INSURERS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS
4838-5794-1006.1

DATED: November 23, 2011   WALTER WILCOX MATOUSEK LLP

By:_____/s/_____
         Edward P Gibbons (Admitted *pro hac vice*)
         Tiffany Saltzman-Jones (Admitted *pro hac vice*)
         One North Franklin Street, Suite 3200
         Chicago, IL 60606
         312-244-6700
         312-244-6800 (fax)
         tsj@wwmlawyers.com
         egibbons@wwmlawyers.com
         Attorneys for Plaintiff/Counterclaim Defendant
         ACE American Insurance Company

DATED: November 23, 2011   BATES CAREY NICOLAIDES LLP

By:_____/s/_____
         Andrew W. Smith (Admitted *pro hac vice*)
         Michael T Skoglund  (Admitted *pro hac vice*)
         BATES CAREY NICOLAIDES LLP
         191 N Wacker Street Suite 2400
         Chicago, IL 60606
         312-762-3297
         312-762-3200 (fax)
         asmith@bcnlaw.com
         Attorneys for Plaintiff Counterclaim Defendant
         AXIS American Insurance Company

A-SIDE INSURERS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS
4838-5794-1006.1

## Memorandum of Points and Authorities

## TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION ................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ........................................... 2

    A.      The Policies ......................................................... 2

        1.      The D&O Program ........................................... 2

        2.      The A-Side Program ........................................ 2

    B.      The Complaint ....................................................... 3

    C.      The Counterclaims ................................................... 4

    D.      The Relevant A-Side Policy Provisions ............................... 4

    E.      The Tripp Litigation and the Related Claims ......................... 5

        1.      The Tripp Litigation ...................................... 5

        2.      The Related Claims ........................................ 6

III.    ARGUMENT ..................................................................... 9

    A.      Unmistakably Broad and Unambiguous Policy Language .................. 10

    B.      Several Constituencies:  One Series of Related Problems ............ 12

        1.      Allegedly Deficient and Risky Underwriting Practices ...... 14

        2.      Deficient Appraisal Practices ............................. 15

        3.      Inadequate Loan Loss Reserves ............................. 16

    C.      Applying the Unambiguous Policy Language ........................... 17

## <u>TABLE OF CONTENTS</u>

**PAGE**

1.     Based on the Interrelated Claims Provision, the Underlying Matters are Deemed First Made Prior to the 08-09 Claims-Made Policy Period ........................................................................... 17

2.     The Underlying Matters are Excluded Under the 08-09 Policies ...... 18

IV.    CONCLUSION ....................................................................... 20

A-SIDE INSURERS' MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

4838-5794-1006.1

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

### FEDERAL CASES

*Alexander Manufacturing, Inc. v. Illinois Union Insurance Co.*,

    No. CV.06-735, 2009 WL 3335883 (D. Or. Oct. 15, 2009) ...................19

*Atlantic Permanent Federal Savings & Loan Association v. American*

    *Casualty Co. of Reading, Pa.*,

    839 F.2d 212 (4th Cir. 1988) ....................................................................19

*Dorsett v. Sandoz, Inc.*,

    No. CV 06-7821, 2009 WL. 3633874 (C.D. Cal. Oct. 28, 2009) ..............9

*Gregory v. Home Insurance Co.*,

    876 F.2d 602 (7th Cir. 1989) ....................................................................19

*Heliotrope General, Inc. v. Ford Motor Co.*,

    189 F.3d 971 (9th Cir. 1999) ......................................................................9

*Highwoods Properties, Inc. v. Executive Risk Indemnity, Inc.*,

    407 F.3d 917 (8th Cir. 2005) ....................................................................11

*Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control*

    *District*,

    644 F.3d 934 (9th Cir. 2011) ......................................................................9

*KB Home v. St. Paul Mercury Insurance Co.*,

    621 F. Supp. 2d 1271 (S.D. Fla. 2008)....................................................12

*KB Home v. Travelers Ins. Co.*,

    339 F. App'x 910 (11th Cir. 2009)...........................................................12

*Stanford University Hospital v. Federal Insurance Co.*,

    174 F.3d 1077 (9th Cir. 1999)..............................................................9, 10

*WFS Financial Inc. v. Progressive Casualty Insurance Co.*,

    232 Fed. App'x 624 (9th Cir. 2007)...................................................11, 14

*Zunenshine v. Executive Risk Indemnity, Inc.*,

    182 F.3d 902, 1999 WL 464988 (2d Cir. June 29, 1999) .......................19

iii

# TABLE OF AUTHORITIES

**PAGE**

## STATE CASES

*Acceptance Insurance Co. v. Syufy Enterprises*,

    69 Cal. App. 4th 321, 81 Cal. Rptr. 2d 557 (Cal. Ct. App. 1999)............11

*Advanced Network, Inc. v. Peerless Insurance Co.*,

    190 Cal. App. 4th 1054 (Cal. Ct. App. 2010) .........................................17

*Century Transit System, Inc. v. American Empire Surplus Lines Insurance Co.*,

    42 Cal. App. 4th 121, 49 Cal. Rptr. 2d 567 (Cal. Ct. App. 1996)...........11

*Friedman Professional Management Co., Inc. v. Norcal Mutual Insurance Co.*,

    120 Cal. App. 4th 17, 15 Cal. Rptr. 3d 359 (Cal. Ct. App. 2004)...........19

*Frontier Oil Corp. v. RLI Insurance Co.*,

    153 Cal. App. 4th 1436, 63 Cal. Rptr. 3d 816 (Cal. Ct. App. 2007)........10

*GGIS Insurance Services, Inc. v. Superior Court*,

    168 Cal. App. 4th 1493, 86 Cal. Rptr. 3d 515 (Cal. Ct. App. 2008)..10, 12

*ML Direct, Inc. v. TID Specialty Insurance Co.*,

    79 Cal. App. 4th 137, 93 Cal. Rptr. 2d 846 (Cal. Ct. App. 2000)......12, 19

*Waller v. Truck Insurance Exchange, Inc.*,

    11 Cal. 4th 1, 44 Cal. Rptr. 2d 370 (Cal. 1995) .......................................10

## STATUTES

Cal. Civil. Code §1646 ......................................................................10

Fed. R. Civ. P. 12(c) ..........................................................................9

## I.    __INTRODUCTION__

The complaint and counterclaims in this action seek to resolve whether coverage for nine pending lawsuits and related demands is available under "claims-made" directors and officers insurance policies issued to IndyMac Bancorp, Inc. for the 2008-2009 policy period.  To be clear, however, this is not a dispute over whether those actions are covered – with limited exceptions, the parties agree that the underlying actions are covered, but under policies in effect in 2007-2008.  The issue before the Court is whether there is additional coverage under the 2008-2009 policy year.

There is no such coverage, for at least three reasons.  First, as the actions are based on and otherwise involve facts that gave rise to claims initially made during the 2007-2008 policy period, they are deemed to constitute claims "first made" during that prior policy period, and thus do not fall within the 2008-2009 policies' coverage grant.  Second, the 2008-2009 policies specifically exclude coverage for any claim that "any way involves" any fact alleged in the so-called "Tripp Litigation."  That litigation, a securities class action, indisputably concerned the implementation and failure of IndyMac's allegedly high-risk business model involving deficient loan underwriting, appraisal practices and loss reserves, which also gave rise to the additional underlying claims now at issue.  Accordingly, those claims are excluded from coverage by virtue of the "Specific Litigation Exclusion," contained in the 2008-2009 policies.  In addition, coverage is precluded by a prior notice exclusion because the Tripp Litigation was filed and noticed to insurers during the 2007-2008 Policy Period

This motion is brought on behalf of insurers who issued "Side A Only" policies for the 2008-2009 period, which policies afford coverage solely to IndyMac's directors and officers.  For the reasons discussed, there is no material issue of fact regarding the contents of these policies, and the Plaintiffs/Counterclaim Defendants are entitled to judgment as a matter of law based on the clear terms of the policy language at issue.  Under the broad and unambiguous terms of the 08-09 policies, no coverage is available for the underlying matters irrespective of any differences in claimants, defendants, cause

of action or focus.  Despite their differences, the underlying matters all are connected to the same series of facts underlying the Tripp Litigation.  Accordingly, the 08-09 policies—issued after the Tripp Litigation was filed and the alleged train of events leading to the underlying matters had been set in motion—afford no coverage for the underlying matters under the clear policy terms.[1]

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Policies

#### 1.   The D&O Program

Certain other insurers, including other Counterclaim Defendants, issued or participate in directors and officers insurance policies for the "07-08 Policy Period" from March 1, 2007 to March 1, 2008 and the "08-09 Policy Period" from March 1, 2008 to April 1, 2009 (the "07-08 D&O Policies" and the "08-09 D&O Policies," respectively and, collectively, the "D&O Policies").  Each of the 07-08 and 08-09 D&O Policies has a limit of liability of $10 million, excess of any applicable retention.  *See* the joint Stipulation Regarding Certain Exhibits and Allegations dated November 23, 2011 ("JS") Ex. 1–4 and 9–12.[2]  Subject to their terms, conditions and exclusions, the 07-08 and 08-09 D&O Policies afford specified coverage (1) for Loss incurred by insured individuals, (2) on behalf of IndyMac for Loss that IndyMac is permitted or required to pay as indemnification to insured individuals and, (3) in limited circumstances, for Loss incurred directly by IndyMac.  JS, Ex. 1 and 9.

#### 2.   The A-Side Program

The A-Side Policies, though excess to the D&O Policies, do not adopt or incorporate those policies' terms.  They are wholly separate, subject to their own terms,

---

[1] By moving for judgment the pleadings on the bases discussed herein, the Plaintiffs/Counterclaim Defendants do not waive, and expressly reserve, any other policy terms, conditions or exclusions that may limit or preclude coverage or any other rights under the A-Side Policies, as defined herein, at law, and in equity.

[2] Capitalized terms not defined herein are defined in the referenced policy.

A-SIDE INSURERS' MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS
4838-5794-1006.1

conditions, and limitations.  XL Specialty issued a Classic A-Side Management Liability Insurance Policy for the 07-08 Policy Period (the "07-08 Primary A-Side Policy").  Arch, ACE, and AXIS Reinsurance Company issued excess policies, which, subject to their own terms, conditions and exclusions, apply in conformance with the terms of the 07-08 XL Specialty Policy (collectively with the 07-08 Primary A-Side Policy, the "07-08 A-Side Policies").  Each of the 07-08 A-Side policies has a $10 million limit of liability, including defense expenses, and affords coverage solely for Loss arising out of Claims first made against Insured Persons during the 07-08 Policy Period.  JS, Ex. 13–16.

XL Specialty also issued a Classic A-Side Management Liability Insurance Policy for the 08-09 Policy Period (the "08-09 Primary A-Side Policy").  Movants Arch, ACE, and AXIS issued excess policies, which, subject to their own terms, conditions and exclusions, apply in conformance with the terms of the 08-09 Primary A-Side Policy (collectively with the 08-09 Primary A-Side Policy, "08-09 A-Side Policies" and collectively with the 07-08 A-Side Policies as the "A-Side Policies").  Each of the 08-09 A-Side Policies has a limit of liability of $10 million, including defense expenses, and affords coverage only for Loss arising out of Claims first made against Insured Persons during the 08-09 Policy Period.  JS, Ex. 5–8.

### B.   The Complaint

The 08-09 A-Side Insurers filed the Complaint (Dkt. No. 1) in this action seeking declaratory judgment that no coverage is available under the 08-09 A-Side Policies for:

- Consolidated securities class actions by IndyMac shareholders; Complaint ¶¶ 75-75;
- Consolidated securities litigation by purchasers of mortgage backed securities ("MBS") issued by entities allegedly affiliated with IndyMac; *id.* ¶¶ 80-83;
- Letters and a subsequent lawsuit by the Federal Deposit Insurance Corporation ("FDIC") against certain IndyMac Bank officers, *id.* ¶¶ 76-77;
- Two lawsuits by entities who insured mortgage-backed securities allegedly issued by entities affiliated with IndyMac, *id.* ¶¶ 84-85; and
- An action brought by the Chapter 7 Trustee of IndyMac against IndyMac's former

directors in the Bankruptcy Court (the "Siegel Action"); *id.* ¶¶ 78-79.

## C.   The Counterclaims

On July 20, 2011 three sets of counterclaims and third-party claims (collectively, the "Counterclaims") were filed by the Defendants against the Plaintiffs and the insurers who issued or participate in the 08-09 D&O Policies:

- The outside director defendants seek a declaration that the Siegel Action is covered under the 08-09 Policies in the "ODD Counterclaim." Dkt. No. 94;

- Eleven defendants, including former IndyMac CEO Michael Perry, seek declarations that the above-referenced securities litigation, lawsuits by insurers of and purchasers of mortgage-backed securities, FDIC demands and lawsuits, the Siegel Action, and a lawsuit by the Securities and Exchange Commission ("SEC") are covered under the 08-09 Policies in the "Joint Counterclaim." Dkt. No. 97; and

- Defendants Koon and Shellem seek a declaration that the FDIC lawsuit against them is covered under the 08-09 Policies "Koon and Shellem Counterclaim." Dkt. No. 102.

## D.   The Relevant A-Side Policy Provisions

The 08-09 A-Side Policies are "claims made" policies.  Coverage is available under the 08-09 A-Side Policies only for "Loss resulting from a Claim first made against the Insured Persons during the Policy Period."  JS, Ex. 5, Section I.  "Claim" is defined in relevant part as "any civil or criminal judicial proceeding in a court of law or equity or arbitration."  *Id.* Section II.C.  Under the A-Side Policies' "Interrelated Claims" provision, "[a]ll Claims arising out of the same Interrelated Wrongful Acts shall be deemed to constitute a single Claim and shall be deemed to have been made at the earliest time at which the earliest such Claim is made or deemed to have been made . . . ."  *Id.*, Section IV.(G).  "Interrelated Wrongful Acts" means "any Wrongful Act based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related, or series of related facts, circumstances, situations, transactions, or events."  *Id.*, Section II.(J).

The 08-09 A-Side Policies also include or incorporate a Specific Litigation Exclusion Endorsement which precludes coverage for any Claim:

Based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the following:

1.   the litigation styled *Wayman Tripp and Sven Mossberg v. IndyMac Bancorp, Inc., Michael W. Perry, and Scott Keys,* initiated 12 March 2007, in the United States District Court for the Central District of California under the caption *Claude A. Reese v. Indymac Financial Inc*, *Richard A. Wohl, and Scott Keys,* case number 2:07-cv-1635-GW-VBK (the "Tripp Litigation"); or

2.   any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions underlying or alleged in the Tripp Litigation.

regardless of any legal theory upon which such Claim is predicated.

*Id.*, Endorsement No. 16. (the "Specific Litigation Exclusion").

The 08-09 Primary A-Side Policy also contains a "Prior Notice Exclusion," which precludes coverage for Loss resulting from any Claim "based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance or situation, transaction event or Wrongful Act which, before the Inception Date of this Policy, was the subject of any notice given under any other Management Liability insurance, Directors' and Officers' insurance, or any other similar insurance." *Id.*, Section III.(B)(2).

**E.   The Tripp Litigation and the Related Claims**

**1.   The Tripp Litigation**

The plaintiffs in the Tripp Litigation allege securities law violations on behalf of a putative class of IndyMac stockholders during a class period of March 1, 2006 to March 1, 2007.  JS, Ex. 23 [Sixth Amended Class Action Complaint, Tripp Litigation ("Tripp 6th ACAC")] ¶ 1.  The Tripp plaintiffs allege that statements concerning IndyMac's financial

condition were false and misleading, primarily because IndyMac's underwriting practices and internal controls were grossly deficient, and that the company's loan loss reserves were inadequate.  The plaintiffs assert that IndyMac allegedly "engaged in a pattern and practice of overriding and abandoning its own underwriting guidelines . . . [,] failed to disclose the true condition of the Company's business, and misled the public with regard to the rigor of IndyMac's loan origination process and the quality of its loans." *Id.*  ¶ 29.

The Tripp plaintiffs contend that the alleged deficient underwriting practices were part of IndyMac's company-wide business strategy, and that IndyMac's senior management purportedly encouraged underwriters to disregard underwriting guidelines, manipulate appraisal values and push bad loans to close so that they could be sold on the secondary securitization market. *Id.* ¶¶ 11, 15.  As articulated by the Tripp plaintiffs, there was a "culture of fraud" at IndyMac, evidenced by "wide-ranging and management-directed violations of the Company's underwriting guidelines and controls." *Id.* ¶ 130.  Weaknesses in IndyMac's loan underwriting practices and internal and operational controls and various litigation in 2006 and 2007 allegedly were "red flags" warning of the company's "vulnerability to widespread loan origination and appraisal fraud, as well as strong warnings that IndyMac needed to tighten its credit quality control practices." *Id.* ¶ 84.  The defendants purportedly concealed that "the Company's loan portfolio was severely impaired as a result of Defendants' repeated violations of the Company's internal/operational controls over underwriting[,]" causing IndyMac's stock to trade at inflated levels. *Id.* ¶ 172.

### 2.   The Related Claims

**a.   The Daniels Action -** In 2008, additional securities class action lawsuits were filed in this court against defendants Perry and Keys, among others, which were consolidated under the caption *Daniels v.  Perry, et al.*, Case No.  08-cv-3812 (C.D. Cal.) (the "Daniels Action").  The Daniels plaintiffs assert violations of the Securities Exchange Act on behalf of IndyMac stockholders between March 1, 2007 and May 12, 2008.  The Daniels plaintiffs assert that IndyMac collapsed in part because it

_____6_____

"underwrote, originated and sold poor-quality, risk-laden mortgages."  JS, Ex. 25 [Fifth Amended Consolidated Class Action Complaint, Daniels Action ("Daniels 5th CAC")] ¶ 2.  According to the Daniels plaintiffs, the defendants' liability arises from material misstatements and omissions regarding IndyMac's underwriting, risk management and appraisals.  *E.g., id.*, ¶ 25 ¶¶ 123-27.

      **b.**    **The FDIC Letters and Litigation -** Counsel for the FDIC sent letters dated March 27, 2009 to defendant Perry and others stating that the FDIC was making a "demand for payment of civil damages" regarding "Claims by FDIC Arising Out of IndyMac Bank's Involvement in The Alt A Subprime and Option ARM Mortgage Markets."  JS, Ex. 37 at 1.  On the same date, the FDIC's counsel sent a letter to defendants Koon, Shellem and Van Dellen stating that it was making a "demand for payment of civil damages . . ."  regarding "Claims by FDIC Arising Out of The Home Builders Division ("HBD") of IndyMac Bank FSB ('IndyMac Bank')."  JS, Ex. 36 at 1 (collectively with the FDIC's letter to Perry, *et al.*, the "FDIC Letters").  The FDIC Letters assert negligence in IndyMac Bank's loan underwriting practices in the Homebuilders Division and within the bank generally.  The FDIC filed a lawsuit on July 2, 2010, styled *FDIC v. Van Dellen, et al.*, No. 2:10-cv-04915-DSF-SH (C.D. Cal.), against defendants Shellem, Van Dellen, Koon, and Rothman substantially echoing its letter and asserting negligence in the underwriting of certain loans originated in the bank's Homebuilders Division, as well as violations of the applicable appraisal policies.  JS, Ex. 26 [Complaint, *FDIC v. Van Dellen*].  The FDIC also filed a lawsuit styled *FDIC v. Perry*, No. 11-cv-5561 (C.D. Cal.), against defendant Perry, asserting that Mr. Perry was negligent in allowing IndyMac Bank to continue to lower its credit standards to originate risky mortgage loans knowing that it would not be able to sell them on the secondary market (collectively with the action styled *FDIC v. Van Dellen*, the "FDIC Litigation").  JS, Ex. 35 [Complaint, *FDIC v. Perry*].

      **c.**    **The MBS Purchaser and Insurer Litigation -** Class action lawsuits brought by purchasers of mortgage backed securities for which an IndyMac subsidiary

was the depositor were filed on January 20, 2009, May 14, 2009, and June 14, 2009, and were consolidated into the litigation styled *In re IndyMac Mortgage-Backed Securities Litigation*, Case No. 09-civ-4583 (S.D.N.Y.) (collectively, the "MBS Purchaser Litigation"). JS, Ex. 28 [Amended Consolidated Class Action Complaint, MBS Purchaser Litigation] and 29 [Second Amended Consolidated Class Action Complaint, MBS Purchaser Litigation ("MBS 2nd ACAC"). The MBS Purchaser Litigation plaintiffs assert that the defendants, including Defendants Abernathy, Olinski, Grover, Heyrick, and Woodsworth made material misrepresentations and omissions regarding underwriting and appraisals for and other aspects of IndyMac loans comprising the relevant mortgage-backed securities.

After the 08-09 A-Side Policies expired, MBIA Insurance Corporation and Assured Guaranty Municipal Corporation filed lawsuits on September 22, 2009 and September 17, 2010 respectively, styled *MBIA Insurance Corp. v. IndyMac ABS, Inc., et al.*, No. BC422358 (Cal. Super. Ct., Los Angeles County) (the "MBIA Action"), JS, Ex. 30 [Complaint, MBIA Action ("MBIA Compl.")] and *Assured Guaranty Municipal Corp. v. UBS Securities LLC, et al.*, BCC445785 (Cal. Super. Ct., Los Angeles County) (the "Assured Guaranty Action" and, collectively with the MBIA Action, the "MBS Insurer Litigation") against defendants Perry, Keys, Jacobson, Callan and others, JS, Ex. 32 [First Amended Complaint, Assured Guaranty Action ("Assured Amend. Compl.")]. The MBS Insurer Litigation was brought by entities who issued credit enhancement insurance for certain mortgage-backed securities for which an IndyMac subsidiary was the depositor. The MBS Insurer Litigation plaintiffs allege that the defendants made material misrepresentations concerning underwriting and appraisals for and other aspects of mortgage loans comprising mortgage-backed securities for which MBIA and Assured Guaranty issued credit protection insurance policies. *E.g.*, JS, Ex. 30 [MBIA Compl.] ¶¶ 6-9, 104, Ex. 32 [Assured Amend. Compl.] ¶¶ 6-9, 101-08.

**d.     The Siegel Action -** On May 28, 2009, after the expiration of the 08-09 Side A Policies, Alfred H. Siegel, the Chapter 7 Trustee of the estate of IndyMac Bancorp,

Inc. ("Siegel") sent a letter to Plaintiffs in which Siegel stated that the estate "plans to pursue claims against the Officers and Directors of IndyMac Bancorp, Inc. and IndyMac Bank, F.S.B." (the "Siegel Letter").  JS, Ex. 38 [Siegel Letter], at 1.  Enclosed with the Siegel Letter were letters from Siegel to certain defendants, also dated May 28, 2009, stating that Siegel "intends to pursue a legal action."  On November 13, 2009, Siegel initiated the Siegel Action.  JS, Ex. 33 [Complaint, Siegel Action].  That lawsuit alleges that the defendants "fail[ed] to act upon financial red flags regarding [IndyMac]'s weak financial condition" and breached their duties to the company by contributing capital to its IndyMac Bank subsidiary, knowing that the company was on a hopeless and unsustainable course and that the contributions therefore constitute waste.  *Id.* ¶ 8.

   **e.**  **The SEC Action -** On February 11, 2011, the SEC filed a complaint in this court against defendants Perry and Keys for alleged violations of the Securities Exchange Act and associated rules arising out of alleged material misstatements and omissions concerning IndyMac's purportedly deteriorating financial condition and capitalization. JS, Ex. 39 [Complaint, *SEC v. Perry*, No. 11-cv-01309 (C.D. Cal.) ("SEC Compl.")].[3]

## III. <u>ARGUMENT</u>

   "Judgment on the pleadings under Rule 12(c) is proper when the moving party establishes on the face of the pleadings that there is no material issue of fact and that the moving party is entitled to judgment as a matter of law."  *Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist.*, 644 F.3d 934, 937 n.1 (9th Cir. 2011). The court may consider facts contained in materials of which it may take judicial notice. *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999).  And documents necessarily relied upon by the pleadings may be considered if there is no dispute about authenticity.  *Dorsett v. Sandoz, Inc.*, No. CV 06–7821, 2009 WL 3633874, at *1 (C.D. Cal. Oct. 28, 2009).  The meaning and interpretation of an insurance policy is a question of law.  *Stanford Univ. Hosp. v. Fed. Ins. Co.*, 174 F.3d 1077, 1083 (9th Cir.

---

  [3] The Daniels Action, FDIC Letters and Litigation, MBS Litigation, the Siegel Action and the SEC Action are referred to collectively as the "Underlying Matters."

1999).  Interpretation is governed by the mutual intent of the parties at the time the contract is formed, "inferred, if possible, solely from the written provisions of the contract."  *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 19, 44 Cal. Rptr. 2d 370, 378 (Cal. 1995).[4]  Where policy language is "clear and explicit and does not involve an absurdity, the plain meaning governs."  *GGIS Ins. Servs., Inc. v. Superior Court*, 168 Cal. App. 4th 1493, 1506, 86 Cal. Rptr. 3d 515, 526 (Cal. Ct. App. 2008).

The Tripp Litigation was the first in a string of related matters arising out of the same overarching set of facts, and all of the Underlying Matters arise out of, are based upon, or involve in some way numerous facts, circumstances and Wrongful Acts alleged in or related to the Tripp Litigation.  As a result, the Underlying Matters are deemed to have been made prior to inception of the Policy Period and are therefore not covered under the 08-09 A-Side Policies, which afford coverage only for claims first made from March 1, 2008 to April 1, 2009.  In addition, the Underlying Matters are excluded by the Specific Litigation and Prior Notice Exclusions of the Primary 08-09 Side A Policy.

### A.   Unmistakably Broad and Unambiguous Policy Language

Because the Underlying Matters arise out of the same facts, circumstances and alleged Wrongful Acts, they are treated under the A-Side Policies as a single Claim first made at the time first of these Claims was asserted, *i.e.*, when the Tripp Litigation was first filed during the 07-08 Policy Period.  This treatment is mandated by clear, broad policy language, under which all Claims "based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related, or series of related facts, circumstances, situations, transactions, or events" are treated as a

---

[4]    Under California choice of law rules, courts determine issues of contract interpretation "according to the law and usage of the place where [the contract] is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made."  Cal. Civil Code § 1646; *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1455, 63 Cal. Rptr. 3d 816, 831 (Cal. Ct. App. 2007). Here, the 08-09 A-Side Policies were issued to IndyMac Bancorp, Inc., a Delaware entity with a principal address in California, and many of the defendants are California citizens. Accordingly, California law appears to govern this dispute.

single Claim for coverage purposes. JS, Ex. 5, Sections IV.(G), II.(J).

Coverage for the Underlying Matters under the 08-09 A-Side Policies is also barred by the plain language of these policies' exclusions. The exclusions make clear that no coverage is available for Claims based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions underlying or alleged in the Tripp Litigation, regardless of any legal theory upon which such Claim is predicated, or any fact, circumstance or situation, transaction event or Wrongful Act that was the subject of notice under a prior policy. As discussed below, the breadth of the Specific Litigation Exclusion and the Prior Notice Exclusion is unmistakable; their effect is clear.

Courts routinely enforce clear policy language similar to that of the 08-09 A-Side Policies. "California courts have consistently given a broad interpretation to the terms 'arising out of' . . . in various kinds of insurance provisions." *Acceptance Ins. Co. v. Syufy Enters.*, 69 Cal. App. 4th 321, 328, 81 Cal. Rptr. 2d 557, 561 (Cal. Ct. App. 1999) Such language requires "only a 'slight connection' or incidental relationship," and "the term 'based on' has the same effect as 'arising out of.'" *Century Transit Sys., Inc. v. Am. Empire Surplus Lines Ins. Co.*, 42 Cal. App. 4th 121, 128 n.4, 49 Cal. Rptr. 2d 567, 572 n.4 (Cal. Ct. App. 1996) (citation omitted).

Courts also have recognized that language similar to that of the 08-09 A-Side Policies addressing the relationships between multiple claims applies, even where lawsuits are filed by "different sets of plaintiffs, in . . . different fora under . . . different legal theories. *WFS Fin. Inc. v. Progressive Cas. Ins. Co.,* 232 Fed. App'x 624, 625 (9th Cir. 2007). Even where a later claim seeks different remedies and has "added a number of facts that had occurred since [an earlier claim] was filed," actions including "many of the same allegations" have been held to arise out of the same series of facts. *Highwoods Props., Inc. v. Exec. Risk Indem., Inc.*, 407 F.3d 917, 925 (8th Cir. 2005). Similarly, differences in the defendants named in underlying matters is not determinative, as a

California Court of Appeal has concluded that an action naming an insured not named in previously-filed litigation was nevertheless "derived from the essential facts of previously pending proceedings" and therefore subject to an exclusion for claims "based upon arising out of, or in consequence of or in any way involving (1) any prior and/or pending litigation . . . or (2) any fact, circumstance, or situation underlying or alleged in such litigation." *ML Direct, Inc. v. TIG Spec. Ins. Co.*, 79 Cal. App. 4th 137, 144-45, 93 Cal. Rptr. 2d 846, 852-53 (Cal. Ct. App. 2000) (holding that the subject litigation was "based upon" the prior proceedings and that all the matters shared an undisputed "factual relationship."). *Id.*, 93 Cal. Rptr. 2d at 853. Notably, under policy language similar to that in the 08-09 A-Side Policies, "having at least one fact in common with [the prior] claim results in a finding that the claims are interrelated." *KB Home v. St. Paul Mercury Ins. Co.*, 621 F. Supp. 2d 1271, 1277 (S.D. Fla. 2008) *aff'd sub nom. KB Home v. Travelers Ins. Co.*, 339 F. App'x 910 (11th Cir. 2009) (applying California law).

As the Defendants/Counterclaimants will likely respond, other courts analyzing the relationships among claims have surely come to various conclusions when considering different policy language and different circumstances. Here, however, the Court must apply the specific terms, conditions and exclusions of the 08-09 A-Side Policies, unless it "involve[s] an absurdity" *GGIS Ins. Servs.*, 168 Cal. App. 4th at 1506, 86 Cal. Rptr. 3d at 526. And here the broad, clear policy language at issue in this case is determinative. The Underlying Matters indisputably have "at least one fact in common;" indeed, they stem from the same overarching series of alleged facts, circumstances, situations, events and transactions—the Defendants' alleged awareness of and involvement with IndyMac's business plan centered on suspect underwriting and appraisal practices

## B.   Several Constituencies:  One Series of Related Problems

The Tripp Litigation and the Underlying Matters involve different IndyMac-related constituencies making allegations concerning fundamentally the same series of problems allegedly caused or contributed to by the Defendants. As phrased by the Tripp Litigation plaintiffs, "IndyMac and defendant Perry in particular, created a company-wide culture

and practice of ignoring and intentionally overriding the Company's underwriting guidelines for the singular, myopic goal of generating loan volume." JS Ex. 23 [Tripp 6th ACAC] ¶ 146. IndyMac's alleged loosening and abandonment of its loan underwriting standards and internal controls, its purportedly deficient appraisal practices and its allegedly inadequate loan loss reserves and resulting liquidity and capitalization issues underlie the Tripp Litigation and the Underlying Matters. According to the Tripp Litigation and the Underlying Matters, this series of problems manifested itself in several ways throughout IndyMac's business, in which IndyMac entities originated loans to hold for investment purposes or to turn into mortgage-backed securities.

Indymac's shareholders allege in the Tripp Litigation and the Daniels Action that the defendants misrepresented IndyMac's adherence to sound underwriting guidelines and appraisal practices. *E.g.* JS, Ex. 25 [Daniels 5th CAC ] ¶¶ 25, 36; Ex. 22 [Tripp 6th ACAC] ¶¶ 8-9. According to the Tripp Litigation and Daniels Action, these business practices were crucial to IndyMac's balance sheet and financial condition, which ultimately collapsed because of the allegedly deficient practices, despite defendants' misleading statements. *E.g.*, JS, Ex. 25 [Daniels 5th CAC ] ¶¶ 153, 248; Ex. 22 [Tripp 6th ACAC] ¶¶ 15, 151. The SEC also alleges that Perry and Keys misrepresented IndyMac's deteriorating capital and liquidity positions. JS, Ex. 39 ¶¶ 25, 32, 39. The FDIC, as receiver for IndyMac Bank, attacks alleged negligence in underwriting risky loans in variance from applicable underwriting guidelines and the use of improper appraisal practices, which is likewise alleged in the shareholder securities actions. *E.g.*, JS, Ex. 26 [*FDIC v. Van Dellen* Compl.] ¶ 8; Ex. 35 [*FDIC v. Perry* Compl.] ¶¶ 20, 81-82, 88.

The plaintiffs in the MBS Purchaser and Insurer Litigation likewise sue on the basis of alleged misrepresentations concerning the underwriting and appraisals of the loans originated by IndyMac, which they contend affected the value of mortgage-backed securities made up of such loans. *E.g.*, JS, Ex. 29 [MBS 2nd ACAC] ¶¶ 8-10 Siegel asserts that IndyMac Bank faced an unsolvable capital crisis due to its unsustainable and high-risk business model, and that IndyMac's directors ignored "red flags" that indicated

the company's dire position and knew that contributing capital to the bank would be futile. JS, Ex. 33 [Siegel Compl.] ¶¶ 7, 44, 187.

While the underlying claimants approach the series of related facts, circumstances and Wrongful Acts underlying all these matters from different perspectives, their claims were all precipitated by IndyMac's alleged company-wide culture of loosening or disregarding sound loan underwriting and associated capital and liquidity practices. Under the terms of the 08-09 Primary A-Side Policy, it is immaterial that the claimants in the Underlying Matters represent different interests or assert injuries under different laws allegedly occurring at different times during the series of related facts, circumstances, transactions, events and Wrongful Acts underlying the Underlying Matters.[5]

## 1.    Allegedly Deficient and Risky Underwriting Practices

The Tripp Litigation plaintiffs allege that IndyMac made a practice of "disregarding underwriting guidelines generally," citing alleged findings that IndyMac was "well aware of material deficiencies in the Company's underwriting protocols before, during and after the Class Period." JS, Ex. 23 [Tripp 6th CAC ] ¶¶ 10, 21.  They assert that IndyMac, "directed by defendant Perry, engaged in a pattern and practice of abandoning . . . loan underwriting guidelines, approving substantial numbers of high-risk loans for the purpose of increasing reported loan volume." *Id.* ¶ 29.  The Underlying Matters also arise out of IndyMac's allegedly poor underwriting of high-risk loans.

The Daniels Action asserts that "fraudulent and reckless loan underwriting practices . . . were pervasive both prior to and during the Class Period."  JS, Ex. 25 [Daniels 5th CAC ] ¶ 108.  As an example and evidence of alleged company-wide lapses

---

[5] Under policy language similar to that at issue here, claims involving a common business practices were held to involve "Interrelated Wrongful Acts" "[a]lthough the suits were filed by two different sets of plaintiffs in two different fora under two different legal theories." *WFS Fin. Inc.* 232 F. App'x at 625 (9th Cir. 2007).  Here, the Specific Litigation Exclusion specifically anticipates that claimants may have differing perspectives and legal interests and therefore applies "regardless of any legal theory on which such Claim may be predicated." JS, Ex. 5, Endorsement No. 16.

in underwriting, the Daniels Action cites and quotes *FDIC v. Van Dellen*, which also focuses on a "high risk underwriting strategy" of the bank, which purportedly employed "very risky and poorly managed underwriting practices." JS Ex. 25 [Daniels 5th CAC ] ¶ 9, Ex. 26 [*FDIC v. Van Dellen* Compl.]  ¶¶ 44-60.  Similarly, the MBS Litigation is based upon allegations that IndyMac ignored and abandoned its stated underwriting practices. JS Ex. 29 [MBS Compl.] ¶8; Ex. 30 [MBIA Compl.] ¶ 8, Ex. 32 [Assured Amend. Compl.] ¶ 6.  And in its action against Defendant Perry, the FDIC alleges, like the Tripp Litigation plaintiffs, that the bank "wrongly emphasized production and market share over credit quality and quality underwriting" resulting in the generation of loans that could not be sold on the secondary market.  JS, Ex. 35 [*FDIC v. Perry* Compl.] ¶ 19(g).

Further purported financial consequences of IndyMac's allegedly deficient loan underwriting are asserted in the Siegel Action, which is "based upon" on and attaches a report by the Treasury Department Office of the Inspector General detailing the causes of IndyMac's failure (the "OIG Report"). Ex. 33 [Siegel Compl.] at 1.  Based on the OIG Report, the Siegel Action alleges that, the "primary cause of the Bank's capital inadequacies and its failure was its business strategy of originating and securitizing Alt-A loans on a large scale." JS, Ex. 33 [Siegel Compl.] ¶ 44.  The Siegel Action notes the report's findings that "IndyMac often made loans without verification of the borrower's income or assets, and to borrowers with poor credit histories." *Id.*  The SEC Action shares the Siegel Action's allegations that IndyMac's capital and liquidity positions were deteriorating, due—according to the OIG Report incorporated by Siegel—to IndyMac's deficient underwriting practices, and alleges that the defendants misrepresented these facts. JS, Ex. 39 [SEC Compl.] ¶ 51.

### 2.    Deficient Appraisal Practices

As alleged in the Underlying Matters, IndyMac's loan origination processes involved appraisals of the prospective collateral property.  The Tripp Litigation and a number of the Underlying Matters allege that IndyMac's appraisal practices were deficient.  According to the Tripp Litigation, the risks associated with IndyMac's loans

were "further compounded by IndyMac's deficient appraisals process by which IndyMac assigned inflated values to underlying properties." Such allegations continue in the Daniels Action, which alleges the use of "artificially inflated property appraisals," and *FDIC v. Van Dellen*, which alleges that the defendants are liable for "negligently approving loans with inadequate appraisals." JS, Ex. 25 [Daniels 5th CAC] ¶ 103, Ex. 26 [*FDIC v. Van Dellen* Compl.] ¶ 8. The Daniels Action further relies upon a news report of the FDIC's investigation into appraisal practices in the bank's Homebuilder Division. JS, Ex. 25 [Daniels 5th CAC] ¶ 103. And as the Tripp Litigation plaintiffs note, the OIG Report attached to and relied upon in the Siegel Action found "weaknesses with property appraisals obtained to support the collateral on the loans." JS, Ex. 23 [Tripp 6th CAC] ¶ 106. The Siegel Action similarly alleges, quoting the OIG Report, that "[a]ppraisals obtained by IndyMac on underlying collateral were often questionable as well." JS Ex. 33 [Siegel Comp.] ¶ 44. The plaintiffs in the MBS Purchaser and Issuer Litigation also plainly assert that IndyMac did not follow its stated appraisal practices and relied upon faulty and overvalued appraisals. JS, Ex. 29 [MBS Compl.] ¶ 8, Ex. 30 [MBIA Compl.] ¶¶ 101-04, Ex. [Assured Amend Compl.] ¶¶ 101-108].

### 3. Inadequate Loan Loss Reserves

The Tripp Litigation plaintiffs challenge the adequacy of IndyMac's loan loss reserves and assert that IndyMac's loan loss reserves did not consider the "effects of any changes in risk selection and underwriting standards" because IndyMac's "'underwriting standards' were wholly ineffective . . . and thus meaningless as a factor in the calculation of the Company's loan loss reserves." JS, Ex. 23 [Tripp 6th ACAC] ¶ 129; *see also, id.* ¶¶ 171-72, 196, 207, 209. The Daniels plaintiffs also allege that IndyMac's statements regarding the "conservative nature of its loan loss reserves" were false. JS, Ex. 25 [Daniels 5th CAC] ¶ 26. According to the allegations of the Daniels Action, the defendants ignored "Red Flags" demonstrating that allowances for loan losses were insufficient and falsely stated that IndyMac was in a fundamentally sound financial position, even though "IndyMac's loan loss reserves were not even within the realm of

reason." *Id.* ¶¶ 278, 325-26.  According to the OIG Report appended to the complaints in the Tripp Litigation and many of the Underlying Matters, deficient loan loss reserves directly impacted IndyMac's capital levels, which are the aspect of IndyMac's downfall on which the Siegel Action and the SEC Action focus.  JS, Ex. 34 [OIG Report] at 10-11.

     **C.**     **Applying the Unambiguous Policy Language**

     **1.**     **Based on the Interrelated Claims Provision, the Underlying Matters are Deemed First Made Prior to the 08-09 Claims-Made Policy Period**

As evidenced by the Underlying Matters, IndyMac's alleged culture of fraud and emphasis on originating loans at the expense of sound underwriting and appraisal practices are akin to the mythical Hydra:  the several Underlying Matters sprang forth from this common origin, originally at issue in the Tripp Litigation.  Although the Underlying Matters are different in several respects, they are all consequences of the same series of events:  IndyMac is alleged to have negligently underwritten loans using poor underwriting and appraisal standards, which Defendants allegedly concealed from shareholders, regulators, and purchasers and insurers of mortgage-backed securities.  IndyMac's capitalization and liquidity allegedly suffered as a result of its poor underwriting and appraisal practices and inability to sell its allegedly shoddy loans, and it allegedly lied about its financial position to the various constituencies.

It is the insureds' burden to demonstrate that a claim falls within the basic scope of coverage.  *Advanced Network, Inc. v. Peerless Ins. Co.*, 190 Cal. App. 4th 1054, 1060, 119 Cal. Rptr. 3d 17, 23 (Cal. Ct. App. 2010).  The 08-09 A-Side Policies are "claims made" policies and afford coverage only for Claims first made during the 08-09 Policy Period.  JS, Ex. 5, Section I.  Multiple Claims based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related, or series of related, facts, circumstances, situations, transactions, or events are deemed to constitute a single claim first made at the earliest time at which the initial Claim was made.  *Id.*, Sections IV.(G) and II.(J).  The Tripp Litigation and the Underlying Matters arise out of, are based on, are in consequence of, and "in any way

A-SIDE INSURERS' MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS
4838-5794-1006.1

involve" related facts circumstances, situations, transactions or events and the same series of related facts situations, transactions, or events.[6]  Indeed, the allegations of many of the Underlying Matters are so interwoven that they are practically "baked into" the complaint in the Daniels Action, where the plaintiffs support their allegations that defendants misrepresented IndyMac's financial condition, underwriting and internal controls by citing, quoting and describing allegations made in the Siegel Action, the SEC Action, *FDIC v. Van Dellen* and the OIG Report.  And the OIG Report is repeatedly cited in support of the allegations of the Tripp Litigation, Daniels Action and MBS Insurer Litigation, is actually attached to and constitutes part of the pleadings in the Siegel Action and Assured Guaranty Action, and describes the problems in IndyMac Bank that are the subject of *FDIC v. Van Dellen.*

Accordingly, the Underlying Matters and the Tripp Litigation are deemed made at the time the Tripp Litigation was first filed, prior to the inception of the 08-09 Policy Period.  Because they are not Claims first made during the 08-09 Policy Period, the Underlying Matters fall outside the grant of coverage of the 08-09 A-Side Policies.

## 2.    The Underlying Matters are Excluded Under the 08-09 Policies

### a.    The Specific Litigation Exclusion Bars Coverage

The Specific Litigation Exclusion was added by endorsement to the 08-09 XL Specialty Policy and broadly precludes coverage for any Claim "[b]ased upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving . . . any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions underlying or alleged in the Tripp Litigation . . .

---

[6] The Underlying Matters are *not* concurrently covered under the 07-08 A-Side Policies and 08-09 A-Side Policies, as some Defendants assert.  The 07-08 A-Side Policies afford coverage for Claims first made (and deemed first made) during the 07-08 Policy Period.  The 08-09 Policies afford coverage only for Claims first made during the 08-09 Policy Period; as discussed above, Claims are deemed first made at the time that the first claim arising out of the same Interrelated Wrongful Acts was made.  A Claim— here a civil or criminal judicial proceeding in a court or law or equity or arbitration— cannot be deemed first made during multiple policy periods.

regardless of any legal theory upon which such Claim is predicated." JS, Ex. 5, Endorsement 16. As described above, the Underlying Matters are based upon arise out of, directly or indirectly result from, are in consequence of, or in any way involve facts, circumstances, situations, events, transactions or series of facts, circumstances, situations, events or transactions underlying or alleged in the Tripp Litigation. Accordingly, even if the Insured Persons could demonstrate that the Underlying Matters fall within the scope of coverage of the 08-09 A-Side Policies—which they do not—they would be encompassed within the clear language of the Specific Litigation Exclusion. *See*, *e.g.*, *Zunenshine v. Exec. Risk Indem., Inc.*, 182 F.3d 902, 1999 WL 464988, at *2 (2d Cir. June 29, 1999) (prior notice exclusion barred coverage for lawsuit by insured's noteholders because "the same series of underestimations . . . underlay" previously noticed lawsuit by the insureds' shareholders, despite differences in allegations); *Alexander Mfg, Inc. v. Illinois Union Ins. Co.*, No. CV.06-735, 2009 WL 3335883 (D. Or. Oct. 15, 2009) (claims alleging "overlapping, but not identical acts" arising out of a common business decision and "pattern of conduct" had as a "common nexus any fact, circumstance, situation, event or series of facts, circumstances, situations, events or transactions." ); *ML Direct, Inc.*, 79 Cal. App. 4th at 145-46, 93 Cal. Rptr. 2d at 853 (later action was "based on" prior proceedings and therefore excluded even though later action named different defendants, raised different causes of action); *Atlantic Permanent Fed. Savings and Loan Assoc. v. Am. Cas. Co. of Reading, PA,* 839 F.2d 212, 219 (4th Cir. 1988) (finding a single claim where claims all arose out of the planning and carrying out of a home improvement loan program); *Friedman Professional  Management Co., Inc. v. Norcal Mutual Insurance Co.*, 120 Cal.App.4th 17, 15 Cal. Rptr. 3d 259 (Cal. Ct. App. 2004) (claim involving failures in efforts to mitigate harm the defendant caused was "related" to claim for causing the harm in the first place); *Gregory v. Home Ins. Co.*, 876 F.2d 602, 606 (7th Cir. 1989) (finding claims brought by different parties to be "related").

### b.  The Prior Notice Exclusion Bars Coverage

Even if the Underlying Matters could be deemed first made within the 08-09

Policy Period, they are excluded by the Prior Notice Exclusion.  For the reasons set forth above, the Underlying Matters are based upon, arise out of, or involve the series of facts circumstances, situations, transactions or events alleged in the Tripp Litigation.  The Tripp Litigation was filed and noticed to insurers during the 07-08 Policy Period.  *See* JS, Ex. 17, at 1.  Accordingly, the Underlying Matters fall within the 08-09 A-Side Policies' Prior Notice Exclusion, which bars coverage for any Claim "based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance or situation, transaction, event or Wrongful Act which, before the inception date of the 08-09 Policies was the subject of any notice given under any other Management Liability insurance, Directors' and Officers' insurance, or any other similar insurance."  JS, Ex. 5, Section III.(B)(2).  Coverage for the Underlying Matters is therefore excluded under the 08-09 A-Side Policies.

## IV.    <u>CONCLUSION</u>

The 08-09 A-Side Policies plainly and expressly limit coverage to matters that are not arising out of, based upon, in consequence of or in any way involving the series of facts, circumstances, situations, transactions or events alleged in or underlying the Tripp Litigation.  Whether based on the Specific Litigation Exclusion, Interrelated Claims provision, or the Prior Notice Exclusion, unambiguous terms of the 08-09 A-Side Policies preclude coverage for the Underlying Matters here, which all have their origin in the same series of facts, circumstances, transactions and events.

Because there is no genuine dispute as to any issue of material fact, the plaintiffs are entitled as a matter of law to a declaration that no coverage exists for the Underlying Matters under the 08-09 A-Side Policies.  Plaintiffs respectfully request that this Court declare that the 08-09 Policies afford no coverage for the Underlying Matters and that it grant judgment in the plaintiffs' favor on each count of the complaint.  Plaintiffs request further that the court grant judgment in the plaintiffs' favor on all counts asserted in the ODD Counterclaim; the first through tenth counts of the Joint Counterclaim; and the first and second counts of the Koon and Shellem Counterclaim.

DATED: November 23, 2011      WILEY REIN LLP

By:_____/s/_____

Jason P. Cronic (Admitted *pro hac vice*)
1776 K Street NW
Washington, DC  20006
Telephone: (202) 429-7000
Facsimile: (202) 719-7049
jcronic@wileyrein.com

LEWIS BRISBOIS BISGAARD & SMITH LLP
GORDON J. CALHOUN, SB# 84509
DOUGLAS R. IRVINE, SB# 119863
221 North Figueroa Street, Suite 1200
Los Angeles, California  90012
Telephone: (213) 250-1800
Facsimile: (213) 250-7900
calhoun@lbbslaw.com
irvine@lbbslaw.com

Attorneys for Plaintiff/Counterclaim Defendant XL Specialty Insurance Company

DATED: November 23, 2011      TUCKER ELLIS & WEST LLP

By:_____/s/_____

Kim W. West – SBN 78553
Alec H. Boyd – SBN 161325
135 Main Street Suite 700
San Francisco, CA 94105
415-617-2400
415-617-2409 (fax)
kim.west@tuckerellis.com
alec.boyd@tuckerellis.com

Attorneys for Plaintiff/Counterclaim Defendant Arch Insurance Company

DATED: November 23, 2011        WALTER WILCOX MATOUSEK LLP

                                By:_____/s/_____
                                      Edward P Gibbons (Admitted *pro hac vice*)
                                      Tiffany Saltzman-Jones (Admitted *pro hac vice*)
                                      One North Franklin Street, Suite 3200
                                      Chicago, IL 60606
                                      312-244-6700
                                      312-244-6800 (fax)
                                      tsj@wwmlawyers.com
                                      egibbons@wwmlawyers.com
                                      Attorneys for Plaintiff/Counterclaim Defendant
                                      ACE American Insurance Company

DATED: November 23, 2011        BATES CAREY NICOLAIDES LLP

                                By:_____/s/_____
                                      Andrew W. Smith (Admitted *pro hac vice*)
                                      Michael T Skoglund  (Admitted *pro hac vice*)
                                      BATES CAREY NICOLAIDES LLP
                                      191 N Wacker Street Suite 2400
                                      Chicago, IL 60606
                                      312-762-3297
                                      312-762-3200 (fax)
                                      asmith@bcnlaw.com
                                      Attorneys for Plaintiff Counterclaim Defendant
                                      AXIS American Insurance Company

4838-5794-1006.1