1  David Simantob, SBN 155790
2  dsimantob@tresslerllp.com
   Elizabeth L. Musser, SBN 203512
3  emusser@tresslerllp.com
4  TRESSLER LLP
   1901 Avenue of the Stars, Suite 450
5  Los Angeles, CA 90067
6  Telephone: (310) 203-4800
   Facsimile: (310) 203-4850
7
8  Attorneys for Counterdefendants
   Catlin Insurance Company (UK) Ltd.,
9  Continental Casualty Company, and
   Twin City Fire Insurance Company, and
10 Intervenor Counterdefendants Those Certain Underwriters at
11 Lloyd's, London Subscribing to Policy No. QA011608
12
   (Additional parties and counsel listed on next page)
13

14              **UNITED STATES DISTRICT COURT**

15      **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

16

17 XL SPECIALTY INSURANCE          | Case No. 2:11-CV-2078-RGK-JCG
   COMPANY, *et al.*,
18                                 | Hon. R. Gary Klausner
19         Plaintiffs,             | **ABC CARRIERS' NOTICE OF
                                   | MOTION AND MOTION FOR
20 v.                             | JUDGMENT ON THE
                                   | PLEADINGS; SUPPORTING
21 MICHAEL W. PERRY, *et al.*      | MEMORANDUM OF POINTS
                                   | AND AUTHORITIES
22         Defendants.            |
                                   | Date:      January 17, 2012
23                                 | Time:      9:00 a.m.
                                   | Ctrm:      850
24 AND RELATED COUNTERCLAIMS      |

25

26

27

28

1  Brian D. Harrison, SBN 157123
2  brian.harrison@sedgwicklaw.com
   Robert S. Gebhard, SBN 158125
3  robert.gebhard@sedgwicklaw.com
4  Veena A. Mitchell, SBN 161153
   veena.mitchell@sedgwicklaw.com
5  SEDGWICK LLP
6  333 Bush Street, 30th Floor
   San Francisco, California 94104
7  Telephone: (415) 781-7900
8  Facsimile: (415) 781-2635

9  Attorneys for Zurich American Insurance Co.

10
   Theodore A. Boundas (*admitted pro hac vice*)
11 tboundas@bswb.com
12 Jeffrey T. Shaw (*admitted pro hac vice*)
   jshaw@bswb.com
13 W. Joel Vander Vliet (*admitted pro hac vice*)
14 wvandervliet@bswb.com
   BOUNDAS, SKARZYNSKI, WALSH & BLACK, LLC
15 200 East Randolph Drive, Suite 7200
16 Chicago, Illinois 60601
   Telephone: (312) 946-4200
17 Facsimile: (312) 946-4272

18
   Attorneys for Counterdefendant
19 Catlin Insurance Company (UK) Ltd. and
20 Intervenor Counterdefendants Those Certain Underwriters at
   Lloyd's, London Subscribing to Policy No. QA011608
21

22

23

24

25

26

27

28

ABC Carriers' Notice of Mot. and Mot.
For Judgment on the Pleadings

1   William E. Smith (*admitted pro hac vice*)
2   wsmith@wileyrein.com
    John E. Howell (*admitted pro hac vice*)
3   jhowell@wileyrein.com
4   WILEY REIN LLP
    1776 K Street NW
5   Washington, D.C. 20006
6   Telephone: (202) 719-7000
    Facsimile: (202) 719-7049
7
8   Attorneys for Continental Casualty Company
9
    Michael R. Delhagen (*admitted pro hac vice*)
10  mdelhagen@tresslerllp.com
11  Kyle P. Barrett (*admitted pro hac vice*)
    kbarrett@tresslerllp.com
12  TRESSLER LLP
13  One Penn Plaza, Suite 4701
    New York, New York 10119
14  Telephone: (646) 833-0900
15  Facsimile: (646) 833-0877
16
    Attorneys for Twin City Fire Insurance Company
17
18
19
20
21
22
23
24
25
26
27
28

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 17, 2012, at 9:00 a.m., or as soon thereafter as this matter may be heard in the courtroom of the Honorable R. Gary Klausner of the United States District Court, Central District of California, Western Division, located at Courtroom 850, 255 East Temple Street, Los Angeles, California 90012, Counterdefendants Catlin Insurance Company (UK) Ltd., Zurich American Insurance Co., Twin City Fire Insurance Company and Continental Casualty Company and Intervenor Counterdefendants Those Certain Underwriters at Lloyd's, London Subscribing to Policy No. QA011608 (collectively, "ABC Carriers") will and hereby do respectfully move for judgment on the pleadings in favor of the ABC Carriers and against Counterclaimants: (1) Michael W. Perry, A. Scott Keys, S. Blair Abernathy, John Olinski, Samir Grover, Simon Heyrick, Victor H. Woodworth, Scott Van Dellen, William Rothman, Jill Jacobson and Kevin Callan for the counterclaims styled *Michael W. Perry, et al.* v. *XL Specialty Ins.Co., et al.*; (2) Louis E. Caldera, Lyle E. Gramley, Hugh M. Grant, Patrick C. Haden, Terrence G. Hodel, Robert L. Hunt II, Lydia H. Kennard and Bruce G. Willison for the counterclaims styled *Louis E. Caldera, et al.* v. *XL Specialty Ins. Co., et al.*; and (3) Richard Koon and Kenneth Shellem for the counterclaims styled *Richard Koon, et al. v. XL Specialty Ins. Co., et al.*,[1] pursuant to Federal Rules of Civil Procedure, Rule 12(c).

The ABC Carriers' Motion for Judgment on the Pleadings is made following the conference of counsel pursuant to L.R. 7-3 which took place on October 26, 2011.

This Motion is made on the grounds that the ABC Carriers are entitled to judgment as a matter of law because the directors and officers liability insurance policies issued by the ABC Carriers for the March 1, 2008 to April 1, 2009 policy

---

[1] Items (1)-(3) are collectively referred to herein as the "Counterclaims."

1  period (collectively referred to herein as the "08-09 D&O Policies") afford no
2  coverage for the underlying actions for which coverage is sought because these
3  matters fall outside the 08-09 D&O Policies' insuring agreements and are barred by
4  the plain terms of the *Tripp* and Prior Notice Exclusions.

5        This Motion is based on this Notice of Motion and Motion for Judgment on
6  the Pleadings, the Memorandum of Points and Authorities, the Stipulation
7  Regarding Certain Exhibits and Allegations filed in this action on November 23,
8  2011 (Docket No. 193), all pleadings, records and documents filed in this action,
9  and such other oral argument and/or evidence that may be presented at the time of
10  the hearing on this Motion.

11  Dated: November 23, 2011     TRESSLER LLP

12
13                      By:   /s/ Elizabeth L. Musser
                         David Simantob
14                           Elizabeth L. Musser
15                           Attorneys for Counterdefendants
                         Catlin Insurance Company (UK) Ltd.,
16                           Continental Casualty Company, and
                         Twin City Fire Insurance Company, and
17                           Intervenor Counterdefendants Those Certain
18                           Underwriters at Lloyd's, London Subscribing
                         to Policy No. QA011608
19

20  Dated: November 23, 2011     SEDGWICK LLP
21

22                      By:   /s/ Brian D. Harrison
                         Brian D. Harrison
23                           Robert S. Gebhard
24                           Veena A. Mitchell
                         Attorneys for Counterdefendant
25                           Zurich American Insurance Co.

26
27
28

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................ 1

I.    STATEMENT OF FACTS........................................................................ 2

    A.    IndyMac Bank's Business Model and Demise ..................................... 2

    B.    The Underlying Matters ...................................................................... 2

        1.    The *Tripp* Litigation ................................................................ 2

        2.    The *Daniels* Litigation ............................................................ 3

        3.    The FDIC Demand .................................................................. 3

        4.    The FDIC-HBD Litigation ...................................................... 3

        5.    The Trustee Letter.................................................................... 4

        6.    The Trustee Litigation ............................................................. 4

        7.    The MBS Litigation ................................................................. 4

        8.    The MBIA Litigation and Assured Guaranty Litigation ............ 5

        9.    The SEC Litigation .................................................................. 5

        10.   The FDIC Residential Litigation ............................................. 6

    C.    The Counterclaims .............................................................................. 6

    D.    The 07-08 and 08-09 D&O Policies .................................................... 7

II.   ARGUMENT .......................................................................................... 9

    A.    Judgment on the Pleadings is Appropriate in this Case........................ 9

    B.    The 08-09 D&O Policies Afford No Coverage for the Underlying Matters .............................................................................. 10

        1.    The *Tripp* Exclusion and the Prior Notice Exclusion Bar Coverage for the Underlying Matters........................................ 10

        2.    The Underlying Matters Are Based Upon, Arise Out Of, Directly Or Indirectly Result From, Are In Consequence Of, Or In Some Way Involve One Or More Facts Circumstances, Situations, Events Or Transactions Underlying Or Alleged In the *Tripp* Litigation ........................ 12

            a.    High-Risk Business Strategy ................................. 14

            b.    Underwriting Standards and Internal Controls.............................................................. 16

1

## <u>TABLE OF CONTENTS</u>

2

3          c.      Deficient Appraisal Practices..............................18

4          d.      Inadequate Loan Loss Reserves..........................19

5   III.   CONCLUSION ..............................................................20

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ABC CARRIERS' NOTICE OF MOT. AND MOT.
FOR JUDGMENT ON THE PLEADINGS

# TABLE OF AUTHORITIES

**Page**

## CASES

*Advanced Network, Inc. v. Peerless Ins. Co.*,
  190 Cal. App. 4th 1054, 119 Cal. Rptr. 3d 17 (2010) ........................................ 10

*Bank of the West v. Superior Ct.*,
  2 Cal. 4th 1254, 10 Cal. Rptr. 2d 538 (1992) ................................................ 11, 12

*Century Transit Sys., Inc. v. American Empire Surplus Lines Ins. Co.*,
  42 Cal App. 4th 121, 49 Cal. Rptr. 2d 567 (1996) ............................................ 11

*Core Wealth Mgmt., LLC v. Hartford Fin. Servs. Group, Inc.*,
  No. CV 05-6340, 2007 WL 778440 (C.D. Cal. March 7, 2007) ...................... 11

*GGIS Ins. Servs., Inc. v. Superior Ct.*,
  168 Cal. App. 4th 1493, 86 Cal. Rptr. 3d 515 (2008) .................................. 11, 12

*Hillcrest Christian School v. Los Angeles*,
  No. CV 05-8788, 2006 WL 5207228 (C.D. Cal. Dec. 26, 2006) ...................... 10

*Medill v. Westport Ins. Co.*,
  143 Cal. App. 4th 819, 49 Cal. Rptr. 3d 570 (2006). ........................................ 11

*Zunenshine v. Executive Risk Indem., Inc.*,
  182 F.3d 902, 1999 WL 464988 (2d Cir. June 29, 1999) ................................ 12

## STATUTES

Fed. R. Civ. Pro. 12(c) ................................................................................................ 9

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**[1]

Counterclaimants are defendants in a series of actions (the "Underlying Matters") arising out of the decline and ultimate demise of IndyMac Bank, F.S.B. ("IndyMac Bank") and its corporate parent IndyMac Bancorp, Inc. ("IndyMac"). IndyMac Bank was among the nation's largest home mortgage originators, specializing in "Alt-A" transactions – mortgages that fall short, for a variety of reasons, from the standards of conventional mortgages.  With the collapse of the housing bubble in 2007 and the evaporation of the secondary mortgage market, IndyMac Bank was unable to securitize mortgages it originated and faced mounting losses as borrowers defaulted on their loans.  When it was closed by the Office of Thrift Supervision in July 2008, IndyMac Bank's collapse was among the largest bank failures in the nation's history.

Although there are variations in their allegations and legal theories, the claimants in the Underlying Matters are remarkably uniform in their explanation of the circumstances underpinning IndyMac Bank's collapse and their various claims. Each of the Underlying Matters identifies IndyMac Bank's (1) high-risk business strategy, (2) departure from its own underwriting standards and lack of internal controls, (3) deficient appraisal practices, and (4) inadequate loan loss reserves as, at least in part, causes of the alleged injuries.  Importantly, these facts and circumstances are also central to litigation commenced in 2007 before the inception of the 08-09 D&O Policies and noticed under directors and officers liability insurance policies effective prior to March 1, 2008.  Because of the indisputable factual connections between the pre-policy period litigation and the Underlying Matters, the Underlying Matters do not fall within the scope of the 08-09 D&O Policies or are excluded by the 08-09 D&O Policies' specific litigation and prior

---

[1] All exhibits cited herein are attached to the Stipulation Regarding Certain Exhibits and Allegations filed in this action on November 23, 2011 (Docket No. 193).

1  notice exclusions.

2  **I.  STATEMENT OF FACTS**

3      **A.  IndyMac Bank's Business Model and Demise**

4      IndyMac Bank was founded in 1985 as Countrywide Mortgage Investment as

5  a means to collateralize Countrywide Financial loans too large to be sold to Freddie

6  Mac and Fannie Mae.  It became a savings and loan association in July 2000 and

7  embarked on a plan of aggressive growth, operating both as a thrift and mortgage

8  bank.[2]  IndyMac Bank failed because of that aggressive growth strategy, the use of

9  Alt-A and other nontraditional loan products, inadequate underwriting practices,

10  suspect appraisals, undue credit concentrations, and heavy reliance on costly funds

11  borrowed from the Federal Home Loan Bank and from brokered deposits.  *See* Ex.

12  34, OIG Audit Report at 2.  Borrower distress was evident in mid-2005, *id.* at 9,

13  and IndyMac Bank's liquidity was reduced when housing prices fell in 2007 and

14  the secondary mortgage market collapsed, *id.* at 3.  IndyMac Bank ultimately failed

15  due to unsafe and unsound underwriting practices and the manner in which the

16  company was operated.  *Id.*  As IndyMac Bank was the principal asset of IndyMac,

17  IndyMac Bank's failure led directly to IndyMac's bankruptcy in July 2008.

18      **B.  The Underlying Matters**

19          **1.  The *Tripp* Litigation**

20      The action styled *Tripp, et al. v. IndyMac Bancorp, Inc., et al.*, Case No.

21  2:07-cv-1635 (C.D. Cal.) (the "*Tripp* Litigation"), filed in March 2007, alleges

22  securities law violations on behalf of a putative class of IndyMac stockholders

23  during a class period of March 1, 2006 through March 1, 2007.  *See* Ex. 23, *Tripp*

24  Sixth ACAC ¶ 1.  The *Tripp* plaintiffs allege that statements concerning IndyMac

25  _____

26  [2] *See* Ex. 34, Audit Report, Safety and Soundness: Material Loss Review of IndyMac Bank, FSB, Department of the Treasury, Office of the Inspector General

27  (Feb. 26, 2009) (the "OIG Audit Report") at 2.  The OIG Audit Report is specifically referenced in complaints in the *Tripp* Litigation.  The OIG Audit

28  Report describes widespread problems with IndyMac Bank's underwriting practices, among others.

1   Bank's financial condition were false and misleading primarily because IndyMac

2   Bank's underwriting practices and internal controls were grossly deficient, and that

3   IndyMac Bank's loan loss reserves were inadequate.  The *Tripp* plaintiffs contend

4   that such deficient underwriting practices were part of IndyMac Bank's company-

5   wide, top-down business strategy, and that senior management purportedly

6   encouraged underwriters to disregard underwriting guidelines, manipulate appraisal

7   values, and push bad loans to close.  *See* Ex. 19, *Tripp* Second ACAC ¶¶ 63-64, 69,

8   74-77; Ex. 23, *Tripp* Sixth ACAC ¶¶ 44-45, 55-58.   The alleged misrepresentations

9   purportedly concealed that "the Company's loan portfolio was severely impaired as

10  a result of Defendants' repeated violations of the Company's internal/operational

11  controls over underwriting [,]" causing IndyMac's stock to trade at inflated levels.

12  Ex. 23, *Tripp* Sixth ACAC ¶172.

13              **2.      The *Daniels* Litigation**

14          The action styled *Daniels v. Perry, et al.*, Case No. 08-cv-3812 (C.D. Cal.)

15  (the "*Daniels* Litigation"), is a putative class action on behalf of all persons/entities

16  that purchased/acquired IndyMac securities during the period March 1, 2007

17  through May 12, 2008, in reliance upon allegedly false statements regarding

18  IndyMac Bank's appraisal practices, internal controls and underwriting guidelines.

19  *See* Ex. 25, *Daniels* Fifth ACAC Page 1, ¶ 23.

20              **3.      The FDIC Demand**

21          In a March 27, 2009 letter from Thomas D. Long, counsel for the Federal

22  Deposit Insurance Corporation (the "FDIC"), to Michael W. Perry and others (the

23  "FDIC Demand"), the FDIC alleges that certain Counterclaimants were negligent in

24  connection with IndyMac Bank's origination, underwriting and securitization of

25  high-risk mortgage loans, causing IndyMac Bank to incur over $1 billion in losses.

26  *See* Ex. 37.

27              **4.      The FDIC-HBD Litigation**

28          In a March 27, 2009 letter from Thomas D. Long, counsel for the FDIC, to

ABC CARRIERS' NOTICE OF MOT. AND MOT.
FOR JUDGMENT ON THE PLEADINGS

Kenneth Shellem, Scott Van Dellen and Richard S. Koon, II (*see* Ex. 36), and the action styled *FDIC, as Receiver for IndyMac Bank, F.S.B.  v. Van Dellen, et al.*, Case No. 2:10-cv-04915-DSF-SH (C.D. Cal.) (*see* Ex. 26) (collectively referred to herein as the "FDIC-HBD Litigation"), the FDIC alleges that certain Counterclaimants were negligent and breached their fiduciary duties by permitting IndyMac Bank's Home Builders Division (the "HBD") to violate appraisal practices and underwriting guidelines.  *See* Exs. 26, 36.

### 5.     The Trustee Letter

In a May 28, 2009 letter (the "Trustee Letter") from counsel for IndyMac Chapter 7 Trustee, Alfred H. Siegel (the "Trustee"), the Trustee alleges that certain Counterclaimants breached their fiduciary duties to IndyMac by disregarding IndyMac's Bank's loose underwriting guidelines and allowing IndyMac to improperly downstream funds to IndyMac Bank, in an effort to alleviate IndyMac's Bank's deteriorating financial condition caused by IndyMac Bank's loose underwriting guidelines and high-risk business model.  *See* Ex. 38.

### 6.     The Trustee Litigation

The action styled *Siegel v. Caldera, et al.*, Case No. 2:09-ap-02645-BB (Bankr. C.D. Cal.) (the "Trustee Litigation"), contains the same allegations as the Trustee Letter.  *See* Exs. 33, 38.  It alleges that certain Counterclaimants breached their fiduciary duties to IndyMac by transferring at least $355 million to IndyMac Bank in 2007 and 2008 in an imprudent, mismanaged effort to raise capital for IndyMac Bank.  *See* Ex. 33.  The Trustee alleges that IndyMac Bank's dire financial condition resulted from the deliberate implementation of inadequate appraisal practices and underwriting guidelines, causing IndyMac Bank to hold millions of dollars in high-risk loans.  *See id.*

### 7.     The MBS Litigation

The action styled *IBEW Local 103 v. IndyMac Bank MBS, Inc., et al.*, Case No. BC405843 (Cal. Super. Ct. Los Angeles Cty.) (the "IBEW Litigation") (*see* Ex.

ABC CARRIERS' NOTICE OF MOT. AND MOT. FOR JUDGMENT ON THE PLEADINGS

27) and the action styled *In re IndyMac Mortgage-Backed Securities Litigation*, Case No. 09-cv-4583 (S.D.N.Y.) (a consolidation of two prior actions commenced on May 14, 2009 and June 14, 2009) (*see* Ex. 29), are collectively referred to herein as the "MBS Litigation."  The MBS Litigation is a consolidated securities class action brought by purchasers of mortgage-backed securities ("MBS") issued by IndyMac MBS, Inc. and backed by loans originated by IndyMac Bank.   The plaintiffs allege that certain Counterclaimants made false and misleading statements regarding IndyMac Bank's appraisal practices and underwriting guidelines, causing plaintiffs to purchase MBS that were far riskier than represented.  *See* Exs. 27-29.

### 8.   The MBIA Litigation and Assured Guaranty Litigation

The actions styled *MBIA Ins. Corp. v. IndyMac ABS, Inc., et al.*, Case No. BC422358 (Cal. Super. Ct. Los Angeles Cty.) (the "MBIA Litigation") (*see* Ex. 30) and *Assured Guaranty Mun. Corp. v. UBS Securities LLC, et al.*, Case No. BC445785 (Cal. Super. Ct. Los Angeles Cty.) (the "Assured Guaranty Litigation") (*see* Ex. 32) were brought by companies that provided financial guaranty insurance in connection with MBS backed by loans originated by IndyMac Bank.   The plaintiffs, as subrogees and assignees for MBS purchasers, allege that certain Counterclaimants made false statements regarding IndyMac's underwriting guidelines, causing investors to purchase MBS that were riskier than represented. *See* Exs. 30-32.

### 9.   The SEC Litigation

The action styled *Securities and Exchange Comm'n v. Michael W. Perry*, *et al.*, Case No. CV11-01309-GHK (JCx) (C.D. Cal.) (the "SEC Litigation"), is an action brought by the Securities and Exchange Commission (the "SEC") for securities offering fraud and reporting violations against certain Counterclaimants. *See* Ex. 39.  The SEC alleges that the Counterclaimants participated in IndyMac's false and misleading disclosures of its financial condition when they knew its financial condition was rapidly deteriorating.   This rapid deterioration was

ABC CARRIERS' NOTICE OF MOT. AND MOT.
FOR JUDGMENT ON THE PLEADINGS

1   primarily caused by the imprudent and unsound business practices of IndyMac
2   Bank. *See id*.

3                   **10.    The FDIC Residential Litigation**

4          The action styled *Federal Deposit Ins. Corp., as Receiver for IndyMac Bank,*
5   *F.S.B. v. Michael Perry*, *et al.*, Case No. CV11-5561-ODW (MRWx) (C.D. Cal.)
6   (the "FDIC Residential Litigation"), generally contains the same allegations as the
7   FDIC Demand. *See* Ex. 35. Specifically, it alleges that Perry, the former Chief
8   Executive Officer of IndyMac Bank, was negligent in allowing IndyMac Bank to
9   implement an aggressive and risky strategy to increase loan production through a
10  loosening of credit standards and underwriting guidelines, thus causing IndyMac
11  Bank to incur significant losses.[3] *See id.*

12         **C.    The Counterclaims**

13         On July 20, 2011 and July 25, 2011, in this action, various directors and
14  officers of IndyMac and IndyMac Bank filed counterclaims against the ABC
15  Carriers in connection with: (1) *Michael W. Perry, et al.* v. *XL Specialty Ins. Co., et*
16  *al.* (the "Perry Counterclaims"); (2) *Louis E. Caldera, et al*. v. *XL Specialty Ins.*
17  *Co., et al.* (the "Outside Director Counterclaims"); and (3) *Richard Koon, et al. v.*
18  *XL Specialty Ins. Co., et al.* (the "Koon Counterclaims").[4] The Perry Counterclaims
19  seek a declaration that the ABC Carriers have defense and indemnity obligations
20  for the Underlying Matters under the 08-09 D&O Policies. The Outside Director
21  Counterclaims seek a declaration that the ABC Carriers have defense and indemnity
22  obligations for the Trustee Litigation under the 08-09 D&O Policies. The Koon
23  Counterclaims seek a declaration that the ABC Carriers have defense and indemnity
24  obligations for the FDIC-HBD Litigation under the 08-09 D&O Policies.

25

26

_____

27  [3] Items 2-10 are collectively referred to herein as the "Underlying Matters."

28  [4] The Perry Counterclaims, Outside Director Counterclaims and Koon
    Counterclaims are collectively referred to herein as the "Counterclaims."

ABC CARRIERS' NOTICE OF MOT. AND MOT.
FOR JUDGMENT ON THE PLEADINGS

### D.     The 07-08 and 08-09 D&O Policies

IndyMac obtained Directors and Officers Liability insurance that afforded specified coverage for claims made between March 1, 2007 and March 1, 2008 (the "07-08 D&O Policies"), providing total limits of liability of $80 million.  *See* Exs. 9-16 (07-08 D&O Policies); *see* Perry Counterclaims ¶¶ 42-50.  In March 2007, the *Tripp* Litigation was filed against IndyMac Financial, Inc., Perry, IndyMac's Chief Financial Officer, and IndyMac Bank's President.  *See* Ex. 17, *Tripp* Compl.  The Counterclaimants noticed the *Tripp* Litigation under the 07-08 D&O Policies and have sought and received coverage from those policies.

In connection with the expiration of the 07-08 D&O Policies, IndyMac negotiated with Those Certain Underwriters at Lloyd's, London and Catlin Insurance Company (UK) Ltd., Subscribing to Policy No. QA011608 ("Underwriters"), Twin City Fire Insurance Company ("Twin City"), Continental Casualty Company ("Continental"), and Zurich American Insurance Company ("Zurich," and, collectively, with Underwriters, Twin City, and Continental, the "ABC Carriers") for a new "tower" of coverage.  The ABC Carriers issued directors and officers liability insurance policies for the March 1, 2008 to April 1, 2009 policy period.  *See* Exs. 1-4 (08-09 D&O Policies).

The 08-09 D&O Policies consist of the primary policy (the "Primary Policy") issued by counterclaim defendants Underwriters, which has a $10 million aggregate limit of liability.  *See* Ex. 1, Primary Policy, Declarations, at Item C.  Additionally, counterclaim defendants Zurich, Twin City, and Continental issued insurance contracts that afford specified coverage excess of the coverage provided in the Primary Policy, each with a $10 million limit of liability.  *See* Exs. 2-4.[5]  *See* Perry

---

[5] The 08-09 policies also include Side A policies issued for the policy period of March 1, 2008 to April 1, 2009 (the "08-09 Side A Only Policies").  *See* Exs. 5-8. The 08-09 Side A Only Policies were issued by XL Specialty Insurance Company, Arch Insurance Company, ACE American Insurance Company, and Axis Reinsurance Company.  *See id.*  The 08-09 Side A Only Policies provide excess Side A coverage for the 2008-2009 policy period.  *See id.*

Counterclaims ¶¶ 34-36.

The 08-09 D&O Policies are "claims made and reported polic[ies]," meaning they apply "only to any Claim first made during the Policy Period . . . ." Ex. 1, Primary Policy, Declarations.  *See also id.* at Section I., Insuring Clauses A. ("Underwriters shall pay on behalf of the Directors and Officers Loss resulting from any Claim first made against the Directors and Officers during the Policy Period for an Individual Act.").  The policies also require that claims be reported to the carriers within 60 days after the end of the policy period.  *See id.* at Section VI.A.  Under the 08-09 D&O Policies, all Claims "involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be deemed to have been made at the earliest of . . . the time at which the earliest **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** is first made [or] shall be deemed to have been made . . . ."  *Id.* at Section IV.C. "Interrelated Wrongful Acts" are "**Wrongful Acts** which have as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions."  *Id.* at Section II.L.

The carriers and IndyMac agreed that the 08-09 D&O Policies and the 08-09 Side A Only Policies would contain a specific litigation exclusion (the "*Tripp* Exclusion") that bars coverage for any Claim:

> based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving . . .
>
> 1.   the litigation styled *Wayman Tripp and Sven Mossberg v. Indymac Bancorp, Inc., Michael W. Perry, and Scott Keys*, initiated 12 March 2007, in the United States District Court for the Central District of California under the caption *Claude A. Reese v. Indymac Financial Inc, Richard A. Wohl, and Scott Keys*, case number 2:07-cv-1635-GW-VBK (the "Tripp Litigation"); or

ABC CARRIERS' NOTICE OF MOT. AND MOT. FOR JUDGMENT ON THE PLEADINGS

2.     any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions underlying or alleged in the Tripp Litigation.

regardless of any legal theory upon which such Claim is predicated.

Ex. 1, Primary Policy at Section III as amended by Endorsement.

In addition to the *Tripp* Exclusion, the 08-09 D&O Policies contain a prior notice exclusion (the "Prior Notice Exclusion"), which bars coverage for any Claim:

based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

1.     any **Wrongful Act** or any fact, circumstance or situation which has been the subject of any notice given prior to the **Policy Period** under any other Directors' and Officers'. . .Liability policy . . . .

Ex. 1, Primary Policy at Section III.B.

## II.    ARGUMENT

### A.    Judgment on the Pleadings is Appropriate in this Case

Rule 12(c) of the Federal Rules of Civil Procedure provides: "After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings."  This Court has previously set forth the standards for judgment on the pleadings:

When deciding a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("Rule") 12(c), a court must treat the allegations contained in the challenged pleading as true.  Moreover, the court must resolve all doubts in the light most favorable to the nonmoving party.  While the court must accept all material allegations in the pleading as true, the court need not accept as true conclusory allegations or legal characterizations.  Like a motion to dismiss, in

deciding a motion for judgment on the pleadings, the court generally is limited to the pleadings and may not consider extrinsic evidence. However, the court may consider a document necessarily relied upon by the pleading, as long as the authenticity of the document is unchallenged. Moreover, the court may take judicial notice of matters of public record under Federal Rule of Evidence 201. Judgment on the pleading[s] is appropriate when the moving party clearly established on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law.

*Hillcrest Christian School v. Los Angeles*, No. CV 05-8788, 2006 WL 5207228, at *2 (C.D. Cal. Dec. 26, 2006) (Klausner, J.) (internal citations omitted).

Judgment on the pleadings is appropriate under these standards because the 08-09 D&O Policies provide no coverage for the Underlying Matters.

**B.      The 08-09 D&O Policies Afford No Coverage for the Underlying Matters**

        **1.      The *Tripp* Exclusion and the Prior Notice Exclusion Bar Coverage for the Underlying Matters**

Pursuant to the *Tripp* Exclusion and the Prior Notice Exclusion, the 08-09 D&O Policies preclude coverage for both the *Tripp* Litigation itself and for any other Claims—even if based on other legal theories or involving some facts not alleged in the *Tripp* Litigation—if such Claims are based upon, arise out of, directly or indirectly result from, are in consequence of, or in any way involve *any* fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions, underlying *or* alleged in the *Tripp* Litigation.[6]

_____

[6] It is the insureds' burden to demonstrate that a claim falls within the basic scope of coverage. *Advanced Network, Inc. v. Peerless Ins. Co.*, 190 Cal. App. 4th 1054, 1060, 119 Cal. Rptr. 3d 17 (2010). The Counterclaimants cannot demonstrate that the Underlying Matters were first made during the 08-09 Policy Period, which is

This prefatory language is unmistakably and intentionally broad and plainly requires only the slightest of connections between the claim at issue and the *Tripp* Litigation. *Bank of the West v. Superior Ct.*, 2 Cal. 4th 1254, 1264, 10 Cal. Rptr. 2d 538 (1992) ("If contractual language is clear and explicit, it governs."); *GGIS Ins. Servs., Inc. v. Superior Ct.*, 168 Cal. App. 4th 1493, 1506, 86 Cal. Rptr. 3d 515 (2008) (Where policy language is "clear and explicit and does not involve an absurdity, the plain meaning governs.").

Courts, including those applying California law, give effect to broad language such as that included in the *Tripp* and Prior Notice Exclusions. "California courts have consistently given a broad interpretation to the terms 'arising out of' . . . in various kinds of insurance provisions." *Medill v. Westport Ins. Co.*, 143 Cal. App. 4th 819, 830, 49 Cal. Rptr. 3d 570 (2006). Such language requires "only a 'slight connection' or incidental relationship," and "the term 'based on' has the same effect as 'arising out of.'" *Century Transit Sys., Inc. v. American Empire Surplus Lines Ins. Co.*, 42 Cal App. 4th 121, 128 n.4, 49 Cal. Rptr. 2d 567 (1996) (citation omitted); *see also Core Wealth Mgmt., LLC v. Hartford Fin. Servs. Group, Inc.*, No. CV 05-6340, 2007 WL 778440, at *3 (C.D. Cal. March 7, 2007) (the "prefatory language . . . 'based upon, arising from, attributable to, in connection with, or in any way related to . . .' . . . has the effect of giving broad meaning to the terms of [an] exclusion.").

---

required for them to fall within the scope of the insuring agreements of the 08-09 D&O Policies. Under these policies, coverage is available only for Claims first made during the 08-09 Policy Period. Ex. 1, Primary Policy, Declarations. *See also id.* at Section I.A. As shown below, the Underlying Matters and the *Tripp* Litigation involve the same and Interrelated Wrongful Acts, and, as such, are deemed to have been made prior to the inception of the 08-09 Policy Period and fall outside the scope of coverage of the 08-09 D&O Policies. Moreover, certain of the Underlying Matters were not even filed until after the 08-09 Policy Period, which similarly renders them outside of the 08-09 D&O Policies' insuring agreements. However, even if the Underlying Matters are assumed for purposes of this motion to have been made during the 08-09 Policy Period, which the ABC Carriers do not concede, they would be excluded from coverage by the clear and unambiguous language of the *Tripp* Exclusion and the Prior Notice Exclusion. It is on this basis that the ABC Carriers focus in this motion.

ABC CARRIERS' NOTICE OF MOT. AND MOT. FOR JUDGMENT ON THE PLEADINGS

Moreover, where, as here, policy terms depend upon the presence of any shared fact, circumstance, situation, event, or transaction, a subsequent claim having any fact in common with a prior claim results in the triggering of the exclusion. *See Zunenshine v. Executive Risk Indem., Inc.*, 182 F.3d 902, 1999 WL 464988, at *2 (2d Cir. June 29, 1999) (holding that similarly-worded exclusions "apply if the [later] claims were based on any fact underlying the prior litigation."). Similarly, the plain language of the policies requires *only* that claims have any fact in common and expressly provides that differences in legal theories are not relevant to the coverage determination. *Bank of the West*, 2 Cal. 4th at 1264; *GGIS Ins. Servs., Inc.*, 168 Cal. App. 4th at 1506 (plain meaning governs).

## 2. The Underlying Matters Are Based Upon, Arise Out Of, Directly Or Indirectly Result From, Are In Consequence Of, Or In Some Way Involve One Or More Facts Circumstances, Situations, Events Or Transactions Underlying Or Alleged In the *Tripp* Litigation

A review of the allegations in the Underlying Matters and the *Tripp* Litigation establishes that they allege, are based upon, arise out of, result from, are in consequence of, or in some way involve the allegedly improper business practices that ultimately led to IndyMac Bank's failure and IndyMac's insolvency. The *Daniels* Litigation exemplifies this. The *Daniels* Litigation is, like the *Tripp* Litigation, a putative class action brought under the securities laws, with a class period that begins on March 1, 2007, the day the class period alleged in the *Tripp* Litigation ends. The *Tripp* Litigation and the *Daniels* Litigation share numerous common allegations concerning allegedly high-risk business strategies, deficient underwriting practices, internal controls, appraisal practices, and loan loss reserves that purportedly made the defendants' statements false and misleading. Given these undeniable commonalities, under the broad terms of the 08-09 D&O Policies, there is no coverage for the *Daniels* Litigation because it is based upon, arises out of,

ABC CARRIERS' NOTICE OF MOT. AND MOT. FOR JUDGMENT ON THE PLEADINGS

directly or indirectly results from, is in consequence of, or in some way involves any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions, underlying or alleged in the *Tripp* Litigation.

The *Daniels* Litigation illustrates that each of the Underlying Matters merely approach from different angles many of the same facts, circumstances, situations, transactions and events that underlie the alleged "unsafe and unsound" practices at IndyMac Bank. Ex. 34, OIG Audit Report at 3. The *Tripp* Litigation and the *Daniels* Litigation are based on allegations that IndyMac Bank "systematically disregarded sound underwriting practices," *see* Ex. 24, *Daniels* Fourth ACAC ¶ 108, and had a "Company-wide culture that, at every level, emphasized increased loan origination volume in derogation of safe and sound underwriting standards." *Id.* ¶ 230(h). Significantly, to support these allegations of fraud, the *Daniels* Litigation expressly refers to and incorporates allegations from the FDIC-HBD Litigation (*see* Ex. 24, *Daniels* Fourth ACAC ¶¶ 8-11, 84-85), the Trustee Action (*see id.* ¶¶ 7, 152, 169, 177, 179-81, 185), the MBIA Action (*see id.* ¶¶ 80-83 and the SEC Litigation, *see* Ex. 25, *Daniels* Fifth ACAC ¶¶ 12-20).

As the *Daniels* Litigation makes clear, the matters at issue here collectively allege a series of events in which IndyMac Bank purportedly lowered or abandoned sound underwriting and appraisal practices on a company-wide basis, concealed or misrepresented these facts, and did not adequately maintain IndyMac's capital and financial positions. The various claimants allege that this series of events gave rise to claims by shareholders (the *Daniels* Litigation and *Tripp* Litigation), purchasers of securities backed by IndyMac Bank's loans (the MBS Litigation) and the guarantors of those securities (the MBIA Litigation and Assured Guaranty Litigation), IndyMac Bank and its regulator (the FDIC-HBD Litigation and the FDIC Residential Litigation), and IndyMac itself, which the Trustee contends attempted to shore up its subsidiary's deteriorating capital position while knowing

- 13 -

1  of the unsound practices that had allegedly doomed the bank to fail.  In short, the

2  *Daniels* Litigation is highly illustrative of the close relationship between the *Tripp*

3  Litigation and each of the Underlying Matters.

4     Additional detail regarding the overlap between the facts and allegations set

5  forth in the *Tripp* Litigation and the facts and allegations set forth in the Underlying

6  Matters is as follows:

7     **a.**  **High-Risk Business Strategy**

8     The *Tripp* Litigation and the Underlying Matters each allege, are based upon,

9  arise out of, directly or indirectly result from, are in consequence of, or in some

10  way involve IndyMac Bank's allegedly high-risk business strategy.  The *Tripp*

11  plaintiffs allege that from 2001 through 2006, IndyMac Bank "grew by focusing on

12  utilizing Alt-A, negative/interest only amortizing loans, and other high-risk loans"

13  including "stated loans" or "liars' loans."  *See* Ex. 23, *Tripp* Sixth ACAC ¶¶ 3, 29.

14  Further, the *Tripp* plaintiffs allege that towards the end of the class period, IndyMac

15  Bank had difficulty in selling these loans "as the secondary market became less

16  liquid and information about IndyMac's lax credit quality practices began to seep

17  into the marketplace."  *Id*. ¶ 11.  Thus, the *Tripp* plaintiffs allege that IndyMac

18  Bank was "stuck with a substantial portion of loans that defaulted quickly and

19  which IndyMac was unable to sell on the secondary market."  *Id*.  As described

20  below, the Underlying Matters allege, are based upon, arise out of, directly or

21  indirectly result from, are in consequence of, or in some way involve IndyMac

22  Bank's allegedly high-risk business strategy:

23    • The *Daniels* Litigation alleges that IndyMac Bank's business strategy was

24     driven by a "sales culture" focused on originating and selling risky non-

25     traditional mortgages (*i.e.*, Alt-A and Option Arm loans), without

26     adhering to prudent origination and securitization processes.  *See* Ex. 25,

27     *Daniels* Fifth ACAC ¶¶ 61-63.

28

ABC CARRIERS' NOTICE OF MOT. AND MOT.
FOR JUDGMENT ON THE PLEADINGS

- The FDIC Demand alleges that the Counterclaimants were negligent "in connection with IndyMac's involvement with the origination, underwriting, securitization and marketing of the securities" of "Alt-A," "subprime" and "Option Arm" residential mortgage loans leading to IndyMac Bank's losses in the residential loan markets. *See* Ex. 37 at page 2.

- The FDIC-HBD Litigation alleges that IndyMac Bank's losses from the operation of the HBD stemmed from the HBD's "high-risk growth strategy" and "high-risk underwriting strategy." *See* Ex. 26, FDIC-HBD Complaint ¶¶ 33-43, 44-52.

- The Trustee alleges that IndyMac Bank's high-risk business model was a significant factor which contributed to IndyMac Bank's failure. Specifically, the Trustee alleges that IndyMac Bank's focus on originating and selling "high-risk" mortgage loans including Alt-A, subprime and other non-traditional loans, led to capital inadequacy problems as IndyMac Bank accumulated risky assets which it was unable to sell on the secondary market. *See* Ex. 33, Trustee Underlying Complaint ¶¶ 36-37, 44.[7]

- The MBS Litigation alleges that IndyMac Bank embarked on a path of "aggressive growth" marked by the origination and securitization of risky mortgage loans including Alt-A and "subprime" loans. *See* Ex. 28 MBS First ACAC ¶¶ 4, 52-53, 57-58.

- The MBIA Litigation and Assured Guaranty Litigation allege that IndyMac Bank, in an effort to expand market share, "pressed to generate more loans" by offering nontraditional mortgage loan products and

---

[7] As noted above, the Trustee Litigation followed the Trustee Letter and generally contained the same factual allegations.

ABC CARRIERS' NOTICE OF MOT. AND MOT. FOR JUDGMENT ON THE PLEADINGS

abandoning prudent underwriting practices.  *See* Ex. 30, MBIA Complaint ¶¶ 6, 35-36; *See* Ex. 32, Assured Amended Complaint ¶¶ 6, 34-35.

- The SEC Litigation focuses on IndyMac's "rapidly deteriorating financial condition," including deteriorating capital and liquidity levels.  *See* Ex. 39 SEC Complaint ¶¶ 5, 22.  Further, the SEC Litigation focuses on the downgrading of millions of dollars in IndyMac Bank-sponsored MBS that IndyMac Bank held on its balance sheet, negatively impacting IndyMac Bank's capital ratio.  *Id.* ¶ 34.  These negative developments are a direct result of IndyMac Bank's aggressive business model.

- The FDIC Residential Litigation alleges that defendant Michael Perry was negligent in failing to stop or limit the production of $10 billion in risky residential loans as part of an "aggressive gamble to increase market share." *See* Ex. 35, FDIC Complaint ¶ 3.[8]

### b.    Underwriting Standards and Internal Controls

Allegations regarding IndyMac Bank's controls over its underwriting practices are prominent in the *Tripp* Litigation.  *See*, *e.g.*, Ex. 19, *Tripp* Second ACAC ¶¶ 52-104.   Indeed, the *Tripp* Litigation alleges a culture of fraud at IndyMac Bank, evidenced by wide-ranging and management-directed violations of the Company's underwriting guidelines and controls.  *See id.* ¶¶ 62-77.  Similarly, the Underlying Matters allege, are based upon, arise out of, directly or indirectly result from, are in consequence of, or in some way involve such allegations:

- The *Daniels* Litigation alleges that IndyMac's statements about the company's financial health were misleading because IndyMac Bank "systematically disregarded sound underwriting practices, systematically overrode IndyMac's own underwriting standards and risk control procedures . . . and otherwise fostered a corporate culture that encouraged

---

[8] As noted above, the FDIC Residential Litigation followed the FDIC Demand and generally contains the same factual allegations.

ABC CARRIERS' NOTICE OF MOT. AND MOT. FOR JUDGMENT ON THE PLEADINGS

employees to push mortgages through without regard to underwriting standards. *See* Ex. 24, *Daniels* Fourth ACAC ¶ 108; *see also*, *e.g.*, *id.* ¶¶ 62-94.

- The FDIC Demand alleges that the Counterclaimants were negligent in connection with IndyMac Bank's underwriting of residential mortgage loans and that factual deficiencies relating to these allegedly negligent underwriting practices are described in the *Tripp* Litigation. *See* Ex. 37 at page 2.

- The FDIC-HBD Litigation alleges that the defendants ignored credit policies and waived underwriting requirements in pursuit of a "high risk underwriting strategy," *e.g.*, Ex. 26, FDIC-HBD Complaint ¶¶ 44-52, and pursued "negligent underwriting practices" between 2002 and 2007, *id.* ¶ 67. The majority of the specific loans at issue in the FDIC-HBD Litigation were initially underwritten or extended during the class period of the *Tripp* Litigation.

- The Trustee alleges that despite ignoring numerous financial red flags, the defendants deliberately implemented inadequate underwriting guidelines to increase loan volume and profits, ultimately leading to IndyMac's insolvency and IndyMac Bank's failure. *See* Ex. 33, Trustee Underlying Complaint ¶ 229 (The Directors "openly admitted, that among other things, their deliberate and, at times, blind pursuit of profits and self-interest over safe and sound business practices had created the circumstances that ultimately would cause the Bank's failure and Bancorp's insolvency.").

- The MBS Litigation also relies heavily on allegations of deficient underwriting practices by IndyMac Bank. *See* Ex. 28 MBS First ACAC ¶¶ 118-142.

- The MBIA Litigation and Assured Guaranty Litigation allege that IndyMac Bank "systematically" abandoned its own underwriting guidelines in pursuit of increased loan originations and that the Counterclaimants made misrepresentations regarding underwriting standards. *See* Ex. 30, MBIA Complaint ¶¶ 6, 75-88; *See* Ex. 32, Assured Amended Complaint ¶¶ 6, 82-93.

- The FDIC Residential Litigation alleges that IndyMac Bank "wrongly emphasized production and market share over credit quality and quality underwriting." Ex. 35, FDIC Complaint ¶ 19.

### c.   Deficient Appraisal Practices

The *Tripp* plaintiffs reference IndyMac Bank's vulnerability to widespread appraisal fraud, s*ee* Ex. 19, *Tripp* Second ACAC ¶¶ 210-214, and assert that "IndyMac's appraisal reviews were limited and recklessly deficient." *See* Ex. 23, *Tripp* Sixth ACAC ¶ 149.   The *Tripp* Litigation cites the OIG Audit Report's finding of "weaknesses with property appraisals obtained to support the collateral on the loans." *Id.* ¶ 206.  The Underlying Matters make similar allegations:

- The *Daniels* Litigation includes allegations that "IndyMac's appraisal policies were deficient," citing the OIG Audit Report.  Ex. 24, *Daniels* Fourth ACAC ¶ 100.  In addition, the *Daniels* Litigation relies upon the OIG Audit Report's findings that appraisals in the HBD were unsound. *Id.* ¶ 92.

- The FDIC-HBD Litigation also alleges that defendants are liable due to their "negligently approving loans with inadequate appraisals," Ex. 26, FDIC-HBD Complaint ¶ 8, and repeatedly alleges that defendants committed negligence or breaches of duty by "[c]ausing or allowing a loan to be made, renewed, and/or extended with inadequate or problematic appraisals."  *See*, *e.g.*, *id.* ¶ 78.e.

- The Trustee relies upon the OIG Audit Report's finding that "[a]ppraisals obtained by IndyMac on underlying collateral were often questionable" and contributed to the "significant capital inadequacy at the Bank" that precipitated the purportedly wrongful capital contributions the Trustee alleges. *See* Ex. 33, Trustee Underlying Complaint ¶ 44.

- The MBS Litigation also relies upon allegations of appraisal abuses by IndyMac Bank. *See*, *e.g.*, Ex. 28 MBS First ACAC ¶¶ 151-55.

- The MBIA Litigation and Assured Guaranty Litigation allege misrepresentations concerning appraisals by the defendants and cite the OIG Audit Report's finding that "IndyMac failed to comply with its own appraisal guidelines." Ex. 30, MBIA Complaint ¶ 104; *see also id.* ¶¶ 100-03; Ex. 32, Assured Amended Complaint ¶¶ 101-108.

### d.    Inadequate Loan Loss Reserves

The *Tripp* Litigation, Trustee Litigation, and *Daniels* Litigation each also allege, are based upon, arise out of, directly or indirectly result from, are in consequence of, or in some way involve IndyMac Bank's allegedly inadequate loan loss reserves.  The *Tripp* plaintiffs challenge the adequacy of IndyMac Bank's loan loss reserves and assert that such reserves did not consider the "effects of any changes in risk selection and underwriting standards" because IndyMac Bank's "'underwriting standards' were wholly ineffective . . . and thus meaningless as a factor in the calculation of the Company's loan loss reserves." *See* Ex. 23, *Tripp* Sixth ACAC ¶ 129; *see also id.* ¶¶ 171-72, 196, 207, 209 (citing the OIG Audit Report).

Like *Tripp*, the *Daniels* Litigation also alleges that IndyMac's statements regarding the "'conservative' nature of its loan loss reserves" were false. *See* Ex. 24, *Daniels* Fourth ACAC ¶ 17.  According to the allegations of the *Daniels* Litigation, the defendants ignored "Red Flags" demonstrating that allowances for loan losses were insufficient, s*ee id.* ¶¶ 230-31, and falsely stated that IndyMac was

ABC CARRIERS' NOTICE OF MOT. AND MOT.
FOR JUDGMENT ON THE PLEADINGS

1  in a fundamentally sound financial position, even though "IndyMac's loan loss
2  reserves were not even within the realm of reason" *id.* ¶ 278.

3      Similarly, the Trustee Litigation attaches and incorporates the OIG Audit
4  Report, which identified inadequate loss reserves as a cause of IndyMac Bank's
5  failure and found that its Allowance for Loan and Lease Losses ("ALLL")
6  decreased as a percentage of total loans until 2007, despite the observed probability
7  of a downward trend in real estate values.  *See* Ex. 34 OIG Audit Report at 10-11
8  ("The ALLL is critical because of its impact on the thrift's capital levels.").  The
9  OIG's findings are part of the allegations underpinning the Trustee's allegations
10 that the defendants negligently made capital contributions to IndyMac Bank despite
11 alleged knowledge that such transfers would not prevent the IndyMac Bank's
12 failure.  *See* Ex. 33, Trustee Underlying Complaint ¶ 268(c).

13     In sum, the *Tripp* Exclusion and the Prior Notice Exclusion clearly and
14 unambiguously embrace the Underlying Matters, which merely present different
15 perspectives on the same underlying circumstances leading to IndyMac Bank's
16 failure and IndyMac's insolvency.

17 **III.    CONCLUSION**

18     As set forth above, a review of the pleadings and the documents relied upon
19 therein demonstrates that there are no material issues of fact and the ABC Carriers
20 are entitled to a ruling that the Underlying Matters are not covered under the 08-09
21 D&O Policies.   The *Tripp* Exclusion and Prior Notice Exclusion clearly bar
22 coverage for the Underlying Matters.  Accordingly, the ABC Carriers' Motion for
23 Judgment on the Pleadings should be granted.

24
25
26
27
28

ABC CARRIERS' NOTICE OF MOT. AND MOT.
FOR JUDGMENT ON THE PLEADINGS

1

Dated: November 23, 2011          TRESSLER LLP

2

3                                               By:   /s/ Elizabeth L. Musser

4                                                     David Simantob
                                                      Elizabeth L. Musser
5                                                     Attorneys for Counterdefendants
                                                      Catlin Insurance Company (UK) Ltd.,
6                                                     Continental Casualty Company, and
                                                      Twin City Fire Insurance Company, and
7                                                     Intervenor Counterdefendants Those Certain
8                                                     Underwriters at Lloyd's, London Subscribing
                                                      to Policy No. QA011608
9

10

11      Dated: November 23, 2011          SEDGWICK LLP

12

13                                              By:   /s/ Brian D. Harrison
                                                      Brian D. Harrison
14                                                    Robert S. Gebhard
                                                      Veena A. Mitchell
15                                                    Attorneys for Counterdefendant
                                                      Zurich American Insurance Co.
16

17

18

19

20

21

22

23

24

25

26

27

28

ABC CARRIERS' NOTICE OF MOT. AND MOT.
                                                      FOR JUDGMENT ON THE PLEADINGS