LOUIS E. KEMPINSKY (State Bar No. 90068)
E-mail:  lkempinsky@pwkllp.com
JOHN C. KEITH (State Bar No. 229755)
Email:  jkeith@pwkllp.com
PEITZMAN WEG & KEMPINSKY LLP
10100 Santa Monica Boulevard
Los Angeles, CA  90067
Phone:  310-552-3100
Fax:  310-552-3101

D. JEAN VETA (*pro hac vice*)
E-mail:  jveta@cov.com
DENNIS B. AUERBACH (*pro hac vice*)
E-mail:  dauerbach@cov.com
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, D.C.  20004
Phone:  202-662-6000
Fax:  202-662-6291

Attorneys for Defendant/Counterclaimant
Michael W. Perry

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| **XL SPECIALTY INSURANCE COMPANY, *et al.*,**<br><br>              **Plaintiffs,**<br><br>v.<br><br>**MICHAEL W. PERRY, *et al.*,**<br><br>              **Defendants.**<br><br>**MICHAEL W. PERRY, A. SCOTT KEYS, S. BLAIR ABERNATHY, JOHN OLINSKI, SAMIR GROVER, SIMON HEYRICK, VICTOR H.** | **Case No. 2:11-CV-2078-GHK-JCG**<br><br>**[1] NOTICE OF MOTION and MOTION FOR JUDGMENT ON THE PLEADINGS; and**<br><br>**[2] MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date:  January 17, 2011**<br><br>**Time:  9:00 a.m.**<br><br>**Courtroom:  850**<br><br>**Judge:  Hon. R. Gary Klausner** |

WOODWORTH, SCOTT VAN DELLEN, WILLIAM ROTHMAN, JILL JACOBSON, AND KEVIN CALLAN,

**Counterclaimants,**

v.

XL SPECIALTY INSURANCE COMPANY, ARCH INSURANCE COMPANY, ACE AMERICAN INSURANCE COMPANY, AXIS INSURANCE COMPANY, CATLIN INSURANCE COMPANY, LTD, ZURICH AMERICAN INSURANCE COMPANY; TWIN CITY FIRE INSURANCE COMPANY; and CONTINENTAL CASUALTY COMPANY,

**Counterdefendants**

TO ALL PARTIES:

PLEASE TAKE NOTICE that on January 17, 2011, at 9:00 a.m., in Courtroom 850 of the United States District Court, Central District of California, located at 255 East Temple Street, Los Angeles, California 90012, Defendant MICHAEL W. PERRY will move this Court for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and corresponding case law as to the fifth and ninth counterclaims asserted in the Joint Counterclaims filed by Mr. Perry and other parties in this proceeding (Dkt. 97).

This Motion is made on the ground that California law mandates that a D&O insurer pay the reasonable defense costs of an insured party who has been named as a defendant in a lawsuit, unless there is no possibility of coverage of that underlying action.  The pleadings establish that Mr. Perry has at least the possibility of coverage with respect to the underlying lawsuits referenced in his fifth and ninth counterclaims under insurance policies issued by the counterclaim defendants and intervenors for the policy period from March 1, 2008 to April 1, 2009, and the

1   counterclaim defendants and intervenors thus are obligated under those policies,

2   subject to applicable limits of liability, to contribute to the payment of Mr. Perry's

3   defense costs in those underlying actions.

4        This Motion is based on this Notice, the Memorandum of Points and

5   Authorities, the parties' Joint Stipulation, the pleadings and papers on file with this

6   Court, and on such argument to be presented on the hearing of the Motion.  This

7   motion is made following the conference of counsel pursuant to Rule 7-3 of the

8   Local Rules of Civil Procedure, which took place on October 26, 2011.

9

10  DATED:   November 23, 2011              Respectfully submitted,

11

12                                          By:   /s/ D. Jean Veta

13                                                D. Jean Veta

14                                          Attorneys for Defendant Michael W. Perry

# TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................... 1

II.     BACKGROUND...................................................................................... 4

A.      The Year 1 Policies and Tripp et al. v. IndyMac Bancorp et al......................... 4

B.      Issuance of the Year 2 Policies -- More Exclusions But Substantially Higher Premiums................................................................. 5

C.      The Notices of Circumstances and the Trustee and SEC Litigations ............... 8

III.    STANDARD OF REVIEW ........................................................................ 10

IV.     ARGUMENT ......................................................................................... 10

A.      The Insurers Must Pay Defense Costs Unless There Is "No Possibility of Coverage.................................................................. 10

B.      The Insurers Cannot Meet Their Burden of Proving That the Prior Notice and Tripp Exclusions Plainly Eliminate any Possibility of Coverage Under Their Year 2 Policies .................................... 13

C.      Tripp is not "Interrelated" with the Trustee and SEC Litigations .................. 17

CONCLUSION......................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Admiral Ins. Co. v. Briggs*,
   264 F. Supp. 2d 460 (N.D. Tex. 2003) .................................................. 14

*AIU Ins. Co. v. Superior Court*,
   51 Cal. 3d 807, 274 Cal. Rptr. 820 (1990) ........................................ 14

*American Med. Sec., Inc. v. Executive Risk Specialty Ins. Co.*,
   393 F. Supp. 2d 693 (E.D. Wis. 2005) .............................................. 15

*Axis Surplus Ins. Co. v. Johnson*,
   No. 06-CV-500-GKF-PJC, 2008 WL 4525409 (N.D. Okla. Oct. 3, 2008) . 18, 19

*Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*,
   5 Cal. 4th 854, 21 Cal. Rptr.2d 691 (1993) ...................................... 16

*Buss v. Superior Court*,
   16 Cal. 4th 35, 65 Cal. Rptr. 2d 366 (1997) ...................................... 11

*Eureka Fed. Sav. & Loan Ass'n v. American Cas. Co. of Reading , Pa.*,
   873 F.2d 229 (9th Cir. 1989) ...................................................... 2, 18

*FDIC v. Mmhat*,
   907 F.2d 546 (5th Cir. 1990), *cert. denied*, 499 U.S. 936 (1991) ...................... 18

*Fidelity & Deposit Co. v. Charter Oak Fire Ins. Co.*,
   66 Cal. App. 4th 1080, 78 Cal. Rptr. 2d 429 (1998) ............................ 13

*FSLIC v. Burdette*,
   718 F. Supp. 649 (E.D. Tenn. 1989) ................................................ 18

*Gon v. First State Ins. Co.*,
   871 F.2d 863 (9th Cir. 1989) ...................................................... 5, 11

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*
   896 F.2d 1542 (9th Cir. 1990) ...................................................... 10

*Haynes v. Farmers Ins. Exchange*,
   32 Cal. 4th 1198, 13 Cal. Rptr.3d 68 (2004) .................................... 14

*Herzog v. National Am. Ins. Co.*
  2 Cal. 3d 192, 84 Cal. Rptr. 705 (1970) ............................................ 13

*Home Ins. Co. of Ill. (N.H.) v. Spectrum Info Techs., Inc.*,
  930 F. Supp. 825 (E.D.N.Y. 1996) .................................................. 17

*In re K.F. Dairies*,
  224 F.3d 922 (9th Cir. 2000) ......................................................... 14

*James River Ins. Co. v. Kemper Cas. Ins. Co.*,
  585 F.3d 382 (7th Cir. 2009) ......................................................... 16

*Lee v. Fidelity Nat. Title Ins. Co.*,
  188 Cal.App.4th 583, 115 Cal.Rptr.3d 748 (Cal. Ct App. 2010) ......................... 4

*McCuen v. American Cas. Co. of Reading, Pa.*,
  946 F.2d 1401 (8th Cir. 1991) ....................................................... 18

*North River Ins. Co. v. Huff*,
  628 F. Supp. 1129 (D. Kan. 1985) ................................................... 18

*Okada v. MGIC Indem. Corp.*,
  823 F.2d 276 (9th Cir. 1986) ......................................................... 18

*Palp, Inc. v. Williamsburg Nat'l Ins. Co.*,
  No. G043956, -- Cal. Rptr. 3d ---, 2011 WL 5088719
  (Cal. Ct. App. Oct. 27, 2011) ...................................................... 3, 14

*Pan Am. World Airways, Inc. v. Aetna Cas. & Sur. Co.*,
  505 F.2d 989 (2d Cir. 1974) ......................................................... 13

*Scottsdale Ins. Co. v. MV Transp.*,
  36 Cal. 4th 643, 31 Cal. Rptr. 3d 147 (2005) ...................................... 11

*Sealed Air Corp. v. Royal Indem. Co.*,
  404 N.J. Super. 363, 961 A.2d 1195 (2008) ......................................... 14

*Soltar v. Postmaster Gen. of U.S.*,
  277 F. Supp. 579 (N.D. Cal. 1967) .................................................. 10

*State Farm Mutual Automobile Insurance Co. v. Partridge*,
  10 Cal. 3d 94, 109 Cal. Rptr. 811 (1973) .......................................... 16

MICHAEL W. PERRY'S MOTION FOR
JUDGMENT ON THE PLEADINGS;
MEMORANDUM IN SUPPORT

*Sturdy v. Allied Mut. Ins. Co.*,
203 Kan. 783, 457 P.2d 34 (1969) ...................................................................... 13

*Tripp. First Trenton Indemn. Co. v. River Imaging, P.A.*,
No. A-6191-06T3, 2009 WL 2431649
(N.J. Super. Ct. App. Div. Aug. 11, 2009) ................................................. passim

*Waller v. Truck Ins. Exch., Inc.*,
11 Cal. 4th 1, 44 Cal. Rptr.2d 370 (1995) ..................................................... 2, 11

**OTHER AUTHORITIES**

Wright, Miller, & Kaye, FEDERAL PRACTICE AND PROCEDURE § 1370 (3d ed. 2011) ...................................................................................................................... 10

MICHAEL W. PERRY'S MOTION FOR
JUDGMENT ON THE PLEADINGS;
MEMORANDUM IN SUPPORT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Counterclaimant Michael W. Perry ("Mr. Perry"), the former CEO and Chairman of IndyMac Bancorp, Inc. ("Bancorp"),  has been sued in numerous actions following the bankruptcy of Bancorp and the failure of its banking subsidiary IndyMac Bank, F.S.B. (the "Bank"), of which Mr. Perry was also CEO and Chairman.  The Counterdefendants (hereinafter, the "Insurers") are insurers who, in return for agreeing to renew Bancorp's directors and officers insurance policies a few months prior to Bancorp's bankruptcy, increased the premiums for these policies (the "Year 2 Policies") by *up to 443%* compared to the premiums that Bancorp paid for similar D&O coverage during the prior policy year (the "Year 1 Policies").

The Insurers now contend that the Year 2 Policies provide *no coverage whatsoever* for any of the numerous claims that have been asserted against Mr. Perry and other directors and officers following the collapse of Bancorp and the Bank.  Instead, the Insurers contend that whatever coverage the directors and officers may have for these claims exists only under the Year 1 Policies, on the theory that all such claims are related to (and should be deemed to be the same "Claim" as) *Tripp et al. v. IndyMac Bancorp. et al.*, a securities class action filed shortly after the Year 1 Policies were issued.  In practical effect, the Insurers contend that they have no coverage obligations under the Year 2 Policies, despite having (in the aggregate) more than tripled the premiums as compared to the previous year.

Given these undisputed facts, Mr. Perry submits that discovery of the Insurers -- especially the reasons certain of their sales personnel demanded as much as four times the premium for what their claims handlers now contend is a dramatic diminution in coverage  -- would likely advance his coverage position.  However, Mr. Perry can ill-afford the delay that would be caused by pursuing discovery

- 1 -

before challenging the Insurers' position.

Mr. Perry is mounting a vigorous defense -- with no help from the Insurers under the Year 2 Policies -- against the many meritless lawsuits that have been brought against him.   Due to the Insurers' intransigence, however, Mr. Perry has over a million dollars in unpaid defense costs.  Although none of the cases has advanced to final resolution, the Insurers' denial of coverage under the Year 2 Policies is obviously prejudicing Mr. Perry *now*.  He is being forced to bear a defense cost burden that the Insurers agreed -- in the Year 2 Policies -- to bear. Moreover, Mr. Perry has been unable to settle with any of the underlying plaintiffs, in large part because of the ongoing dispute concerning the applicability of the Year 2 Policies.  That fact alone warrants a declaration of his coverage rights under the Year 2 Policies.[1]

Accordingly, Mr. Perry brings this motion for judgment on the pleadings with respect to the Fifth and Ninth Counterclaims in the Joint Counterclaims filed by Mr. Perry and other Counterclaimants (Dkt. 97, the "Jt. Counterclaims"), which seek declarations that the Year 2 Policies must contribute to the payment of Mr. Perry's defense costs for the "Trustee Litigation" and the "SEC Litigation" described in detail below.  Under California law, the Insurers must pay these defense costs unless they can demonstrate that there is "no possibility of coverage" under the Year 2 Policies.  *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 19, 44 Cal. Rptr.2d 370, 378 (1995) (quotation marks and citation omitted).  As we demonstrate herein as a matter of law and by reference to the pleadings and the Joint Stipulation (Dkt. 193, the "J.S.") submitted by Mr. Perry and the Insurers, there clearly is at least *the potential* for coverage with respect to the Trustee and SEC Litigations, which cannot reasonably be deemed to be the same "Claim" as

---

[1] *See Eureka Fed. Sav. & Loan Ass'n v. American Cas. Co. of Reading , Pa.*, 873 F.2d 229, 232 (9th Cir. 1989) (declaratory relief was warranted because "a settlement cannot be achieved in [the underlying action] without a resolution in this case of the limits of liability coverage.").

MICHAEL W. PERRY'S MOTION FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM IN SUPPORT

*Tripp* for purposes of determining whether the Year 2 Policies are applicable.

    *Tripp* is a putative securities class action filed in March 2007, the same month the Year 1 Policies were issued. *Tripp*, which has been the subject of numerous amendments, alleged that Bancorp's shareholders were injured by misrepresentations regarding Bancorp's "(a) underwriting and credit quality control practices; (b) hedging; and, (c) loan loss reserves," (J.S. Ex. 19, p. 513) and that Bancorp's shareholders suffered damage when these alleged falsehoods were revealed to the public. Depending on the version of the complaint one consults, the end date of the *Tripp* class period is either January 25, 2007 or no later than March 1, 2007. (*E.g.*, J.S. Ex. 17, p. 349; Ex. 19, p. 509.)

    By contrast, both the Trustee and SEC Litigations concern events that occurred significantly *after* the early 2007 end date of the *Tripp* class period. The claim in the Trustee Litigation, first threatened in early 2009 and filed in late 2009, is based entirely on capital contributions (alleged "downstreaming") by Bancorp to the Bank between September 2007 and May 2008. The Trustee contends that Mr. Perry and other directors favored the Bank at Bancorp's expense by authorizing these contributions, and thus allegedly breached their fiduciary duties to Bancorp. The SEC Litigation  -- filed even later but preceded in time by a 2008 SEC subpoena -- alleges improper disclosure with respect to Bancorp's liquidity level and the Bank's regulatory capital ratios in 2008. The first public disclosure at issue in the SEC Litigation is IndyMac's 10-K report filed on February 29, 2008 -- a full year after the end of the *Tripp* class period. The terms "capital contribution," "downstreaming" and "capital ratio" are entirely absent from the *Tripp* complaint. In short, the Trustee and the SEC cases involve claims that are categorically and temporally distinct from *Tripp*.[2]

---

[2] Mr. Perry denies the allegations in the Trustee and SEC Litigations. An insurer nevertheless has a duty to defend even meritless allegations if those allegations state a claim that potentially falls within the coverage of the policy. *See Palp, Inc. v. Williamsburg Nat'l Ins. Co.*, No. G043956, -- Cal. Rptr. 3d ---, 2011 WL 5088719, at *3 (Cal. Ct. App. Oct. 27, 2011) ("The insurer must defend any claim

A ruling in Mr. Perry's favor on this motion therefore would establish a point that the Insurers have until now refused to acknowledge:  There is at least a *possibility* of coverage under the Year 2 Policies.  Until the Insurers understand that the Year 2 Policies are at risk, they are unwilling to fund defense costs, leaving Mr. Perry on his own to mount a defense against the awesome resources of the federal government and a powerful bankruptcy trustee represented by multiple law firms. Moreover, without a ruling from this Court that the Year 2 Policies are at risk, the Insurers have no incentive to commit those policies to a settlement of the underlying litigations.  A declaration stating that there is at least a *possibility* that the Trustee and SEC Litigations allege claims sufficiently distinct from *Tripp* to be eligible for coverage under the Year 2 Policies would significantly advance the ultimate resolution of the larger IndyMac insurance coverage dispute and the many underlying IndyMac lawsuits as well.

Under the governing legal standards, Mr. Perry as the insured is entitled to secure a judicial declaration of defense cost coverage before discovery commences. By contrast, under those same legal standards, the insurers are unable to secure a contrary declaration unless and until the insured is afforded a full opportunity to pursue discovery.  This is so inasmuch as California law permits insureds to pursue discovery of extrinsic evidence and adduce such evidence to establish an ambiguity. *See Lee v. Fidelity Nat. Title Ins. Co.*, 188 Cal.App.4th 583, 599, 115 Cal.Rptr.3d 748, 760 (Cal. Ct App. 2010).  Accordingly, at this early stage, the only parties entitled to affirmative relief on the duty to defend are Mr. Perry and other insureds.

## II.    BACKGROUND

### A.    The Year 1 Policies and *Tripp et al. v. IndyMac Bancorp et al.*

For the period from March 1, 2007 to March 1, 2008, Bancorp, the Bank, and their officers and directors (including Mr. Perry) were insured under a "tower"

that would be covered if it were true, even if it is 'groundless, false or fraudulent.'").   (citation omitted).

MICHAEL W. PERRY'S MOTION FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM IN SUPPORT

of eight D&O liability policies, each providing a $10 million layer of insurance for a total of $80 million in coverage.  These Year 1 Policies, which are before the Court as J.S. Exhibits 9 - 16, cover "claims first made" against Mr. Perry during the policy period.  As it happened, the only such claim was *Tripp et al. v. IndyMac Bancorp et al.*, a securities class action originally filed on March 12, 2007. (Complaint ¶ 65.)  *Tripp* was thus filed during the March 1, 2007 to March 1, 2008 period of, and noticed as a claim under, the Year 1 Policies.  As described above, the alleged misconduct involves representations to Bancorp's shareholders regarding Bancorp's underwriting and credit quality control practices, hedging, and loan loss reserves that occurred no later than March 1, 2007, the latest class period end date posited by plaintiffs.

### B.   Issuance of the Year 2 Policies -- More Exclusions But Substantially Higher Premiums.

Bancorp renewed the D&O coverage for itself and its officers and directors by purchasing another "tower" of eight D&O policies covering the period March 1, 2008 to April 1, 2009, each of which provides a $10 million layer of insurance for a total of $80 million in coverage.  The terms of coverage under these Year 2 Policies, which are included as J.S. Exhibits 1-8, remained largely the same, with three important exceptions noted below.

*First*, the Year 2 Policies included a new exclusion, added by endorsement, that excluded coverage for any claim "based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving" either *Tripp* itself or "any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions underlying or alleged in" *Tripp*.  (J.S. Ex. 1, p. 55; J.S. Ex. 5, p. 140.)[3]  This provision, known as the "*Tripp*

---

[3] The first four layers of policies (*i.e.*, Lloyd's, Zurich American, Twin City, and Continental) follow the terms of the Lloyd's policy (J.S. Ex. 1).  The second four layers (*i.e.*, XL Specialty, Arch, ACE American, and Axis) follow the terms of the XL Specialty policy (J.S. Ex. 5).  The terms of the Lloyd's and XL Specialty policies pertinent to this motion are substantially the same.

Exclusion," bars coverage under the Year 2 Policies for *Tripp* or other claims resembling *Tripp* in a meaningful manner.

*Second*, the Year 2 Policies included an exclusion (hereinafter, the "Prior Notice Exclusion") for claims "based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving" either (1) "any Wrongful Act or any fact, circumstance or situation which has been the subject of" any notice given prior to the Year 2 policy period, or (2) "any other Wrongful Act whenever occurring, which, together with a Wrongful Act which has been the subject of such notice, would constitute Interrelated Wrongful Acts." (J.S. Ex. 1, p. 32.)[4]   While this exclusion, strictly speaking, was not new to the insurance program, it had implications for the Year 2 program because notice of *Tripp* had been given in the prior policy period.  Like the *Tripp* Exclusion, the Prior Notice Exclusion bars coverage under the Year 2 Policies for *Tripp* or other claims resembling *Tripp* in a meaningful manner.

*Third*, despite the fact that the *Tripp* and Prior Notice Exclusions theoretically *narrowed* the scope of coverage provided by the Year 2 Policies compared to the Year 1 Policies, the premiums set forth in the Year 2 Policies were, in the aggregate, more than three times the premiums paid for the Year 1 Policies. The Insurers demanded a significant *increase* in premiums for the Year 2 Policies, and two of the Year 1 insurers (Federal and National Union) declined to renew their policies at all, as shown here:

---

[4] "Interrelated Wrongful Acts" is defined to mean Wrongful Acts "which have as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions." (J.S. Ex. 1, p. 30.)

The version of the Prior Notice Exclusion in the XL Specialty policy is similar but does not exclude coverage for "Interrelated Wrongful Acts" that were not themselves the subject of a prior notice. (J.S. Ex. 5, p. 117.)

MICHAEL W. PERRY'S MOTION FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM IN SUPPORT

| Year 1 Insurers | Premium[5] | Year 2 Insurers | Premium[6] | Increase |
|---|---|---|---|---|
| Lloyd's/Lexington | $495,000 | Lloyd's/Catlin | $1,030,684 | 108% |
| Zurich American | $315,000 | Zurich American | $1,003,625 | 219% |
| Federal | $204,750 | Twin City | $853,081 | 317% |
| National Union | $194,670 | Continental | $724,780 | 272% |
| XL Specialty | $180,000 | XL Specialty | $976,500 | 443% |
| Arch | $123,500 | Arch | $541,667 | 339% |
| ACE American | $100,000 | ACE American | $487,500 | 388% |
| Axis Re | $100,000 | Axis | $414,444 | 314% |
| **TOTAL** | **$1,712,920** | **TOTAL** | **$6,032,281** | **252%** |

During the term of the Year 2 Policies, several demands and lawsuits were asserted against Mr. Perry in his capacity as the former CEO and Chairman of Bancorp and the Bank. The Insurers have denied coverage for all of these matters (as well as for all claims asserted against other insureds) under the Year 2 Policies based on the *Tripp* and Prior Notice Exclusions. (J.S. ¶¶ 46 - 47; Complaint ¶¶ 90 -

[5] Premiums for the Year 1 Policies are shown on the declarations pages of each policy. (*See* J.S., Ex. 9, p. 198 (Lloyd's), Ex. 10, p. 228 (Zurich), Ex. 11, p. 245 (Federal), Ex. 12, p. 254 (National Union), Ex. 13, p. 272 (XL Specialty), Ex. 14, p. 307 (Arch), Ex. 15, p. 323 (ACE American), Ex. 16, p. 344 (Axis Re).)

[6] Premiums for the Year 2 Policies are shown on the declarations pages of each policy. (*See* J.S., Ex. 1, p. 25 (Lloyd's), Ex. 2, p. 58 (Zurich), Ex. 3, p. 74 (Twin City), Ex. 4, p. 90 (Continental), Ex. 5, p. 106 (XL Specialty), Ex. 6, p. 143 (Arch), Ex. 7, p. 161 (ACE American), Ex. 8, p. 185 (Axis).)

The Year 2 Policies have a policy period of 13 months versus the 12 month policy period of the Year 1 Policies, but that 8% increase in the length of the policy period obviously does not explain the 252% increase in premiums for the same dollar limits of coverage.

MICHAEL W. PERRY'S MOTION FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM IN SUPPORT

138.)  The Insurers also contend that these matters constitute the same claim as *Tripp*, and therefore are covered only under the Year 1 Policies, based on the "One Claim Clause" in both the Year 1 and Year 2 Policies, which states that claims "involving the same Wrongful Acts or Interrelated Wrongful Acts shall be deemed to constitute a single Claim" made when the earliest such claim was asserted.  (J.S. Ex. 1, p. 36; *see also* J.S. Ex. 5, p. 119; Complaint ¶ 42, 111.)

### C.  The Notices of Circumstances and the Trustee and SEC Litigations.

As the policy period of the Year 2 Policies drew to a close, Mr. Perry not only had been named in additional lawsuits beyond *Tripp*, he also faced the prospect of further litigation from the Trustee and the SEC.  The Trustee had made litigation threats, and the SEC had served Mr. Perry with a subpoena.  Although the policies generally limit coverage to claims actually made against the insureds during the policy period, they also grant coverage where the insureds have notified the insurers of circumstances that may result in future claims.   In particular, the Year 2 Policies provide that, if an insured provides a notice of circumstances during the policy period, then "any Claim made subsequently arising out of such circumstances … shall be deemed for the purposes of this Policy to have been made at the time such notice was first given."  (J.S. Ex. 1, p. 37; *see also* J.S. Ex. 5, p. 129 (similar provision under the XL Specialty policy).)

To preserve coverage for future-filed claims under the Year 2 Policies, Mr. Perry formally notified the Insurers under the Year 2 Policies on February 26, 2009 of circumstances that might give rise to future claims.  The notices specifically noted that Bancorp's "bankruptcy trustee" and others "have indicated that they may assert claims against" Mr. Perry.  (J.S. Ex. 40, p. 2776; J.S. Ex. 41, p. 2781.)  The notices also advised the Insurers that Mr. Perry had "received a document subpoena issued by the United States Securities and Exchange Commission (SEC) regarding his involvement with IndyMac [Bancorp]."  (*Id.*)  Referring to the Trustee and the

SEC, among others, the letters went on to state that "[t]he foregoing circumstances might give rise to a Claim within the coverage of the Policies … by one or more of the aforementioned entities" and that such "Claims may allege," inter alia, "Wrongful Acts related to events leading up to or relating to the bankruptcy of IndyMac [Bancorp] and/or events leading up to or relating to the placing into receivership of IndyMac Bank." (J.S. Ex. 40, p. 2776-77; J.S. Ex. 41, p. 2781-82.)

The potential litigation identified by Mr. Perry in his notices of circumstances lodged during the Year 2 Policy period was subsequently filed. The Trustee made good on his threat by filing the Trustee Litigation on November 13, 2009 (J.S. Ex. 33), and the SEC filed the SEC Litigation on February 11, 2011 (J.S. Ex. 39).

The Trustee and SEC Litigations both focus on events occurring *after* the class period alleged in *Tripp*, and both allege claims entirely distinct from those alleged in *Tripp*. The Trustee Litigation alleges that Mr. Perry and other directors favored the Bank at Bancorp's expense by authorizing four capital contributions to the Bank totaling $355 million during the period September 27, 2007 through May 9, 2008. (J.S. Ex. 33, pp. 2440, 2451, 2457.) The Trustee alleges that these alleged "downstreaming" transactions "served no conceivable purpose other than to drain Bancorp of its assets and extend Perry and the Director Defendants' stay in their positions for a few more months until the Bank collapsed." (J.S. Ex. 33, pp. 2438-39.) No such "downstreaming" is alleged in *Tripp*, nor do contributions of capital from Bancorp to the Bank have anything whatsoever to do with the relief that the *Tripp* plaintiffs seek. While the Trustee's complaint refers generally to bank mismanagement -- presumably for the sole purpose of adding "color" to the operative "downstreaming" allegations -- the Bankruptcy Court has expressly ruled that the Trustee may only seek damages from Mr. Perry based on the capital contributions from Bancorp to the Bank. (*See* J.S. Ex. 44.)

The SEC for its part alleges that Mr. Perry caused Bancorp to make false and

1  misleading statements with respect Bancorp's liquidity level and the Bank's

2  regulatory capital ratios in 2008 -- beginning a full year after the end date of the

3  *Tripp* class period.  According to the SEC, Bancorp purportedly made

4  misrepresentations between February and May 2008 about Bancorp's strong capital

5  and liquidity positions and failed to disclose (a) that Bancorp was raising capital

6  through its Direct Stock Purchase Plan ("DSPP"); (b) that such capital was being

7  used to support capital ratios at the Bank; and (c) the methodology by which the

8  Bank's capital ratios were calculated.  (J.S. Ex. 39.)  The SEC Litigation, which

9  focuses on the period immediately preceding Bancorp's collapse, does not allege a

10  single misrepresentation concerning the underwriting standards, hedging, or loan

11  loss reserves alleged in *Tripp*, nor does it involve any alleged conduct during the

12  *Tripp* class period.

13  ### III.   <u>STANDARD OF REVIEW</u>

14  "Judgment on the pleadings is proper when the moving party clearly

15  establishes on the face of the pleadings that no material issue of fact remains to be

16  resolved and that it is entitled to judgment as a matter of law."  *Hal Roach Studios,*

17  *Inc. v. Richard Feiner & Co.* 896 F.2d 1542, 1550 (9th Cir. 1990).  "[M]aterial

18  which is properly submitted as part of the complaint may be considered" in ruling

19  on the motion, as may materials attached to a counterclaim "as an exhibit."  *Id*. at

20  1555 n.19.  Stipulations of the parties may also be considered.  *See* Wright, Miller,

21  & Kaye, FEDERAL PRACTICE AND PROCEDURE § 1370 (3d ed. 2011); *see also Soltar*

22  *v. Postmaster Gen. of U.S.*,  277 F. Supp. 579, 580 (N.D. Cal. 1967) (granting

23  judgment on the pleadings where "[t]he parties are in agreement as to the facts …").

24  ### IV.   <u>ARGUMENT</u>

25  ### A.   **The Insurers Must Pay Defense Costs Unless There Is "No Possibility of Coverage."**

26

27  Mr. Perry is entitled to defense costs for the Trustee Litigation and the SEC

28  Litigation because there is at least the potential for coverage under the Year 2

- 10 -

1  Policies.

2      Under California law,[7] "an insurer has a duty to defend an insured if it

3  becomes aware of, or if the third party lawsuit pleads, facts giving rise to *the*

4  *potential for coverage* under the insuring agreement." *Waller v. Truck Ins.*

5  *Exchange, Inc.*, 11 Cal. 4th 1, 19, 44 Cal. Rptr. 2d 370, 378 (1995) (emphasis

6  added).  Only if there is "no possibility of coverage" can a liability insurer avoid its

7  duty to defend its insured.  *Id.* (quotation marks and citation omitted)  "If any facts

8  stated or fairly inferable in the complaint, or otherwise known or discovered by the

9  insurer, suggest a claim potentially covered by the policy, the insurer's duty to

10  defend arises and is not extinguished until the insurer negates all facts suggesting

11  potential coverage." *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 655, 31

12  Cal. Rptr. 3d 147, 154 (2005).[8]  Where a complaint asserts multiple claims, an

13  insurer has a duty to defend the action if even one of them presents a potential for

14  coverage.  *See Buss v. Superior Court*, 16 Cal. 4th 35, 49, 65 Cal. Rptr. 2d 366, 375

15  (1997) (insurer "cannot parse the claims, dividing those that are at least potentially

16  covered from those that are not," but must provide a defense for the entire action).

17      The Year 2 Policies affirmatively provide coverage for the Trustee and SEC

18  Litigations.  The Lloyd's, Zurich American, Twin City, and Continental policies

19  provide coverage for "Loss resulting from any Claim first made against the

20  Directors and Officers during the Policy Period for an Individual Act."  (J.S. Ex. 1,

21  p. 27.)  These policies' definition of "Individual Act" is quite broad and includes

22  [7] The Lloyd's primary policy includes a California choice-of-law clause, which
23  Zurich American, Twin City, and Continental follow.  (J.S. Ex. 1, p. 41.)  While the
   other Year 2 Policies lack a choice-of-law clause, they were issued to an "Insured
24  Entity" (Bancorp)  based in California, and all of the underlying lawsuits for which
   coverage is sought are pending in California.

25  [8]  The Year 2 Policies impose on the Insurers a duty to pay Mr. Perry's defense
   costs rather than the more traditional duty to defend; nevertheless, an insurer's
26  obligation to pay defense costs is determined by the same standards that apply to
   the duty to defend.  *See, e.g.*, *Gon v. First State Ins. Co.*, 871 F.2d 863, 868 (9th
27  Cir. 1989) (applying duty-to-defend standards to insurer's duty to advance defense
   costs).

28

MICHAEL W. PERRY'S MOTION FOR
JUDGMENT ON THE PLEADINGS;
MEMORANDUM IN SUPPORT

"any actual or alleged act, error, omission, misstatement, misleading statement,
neglect or breach of duty by any of the Directors and Officers, while acting in their
capacity as: … a director or officer of the Company [*i.e.*, Bancorp]…." Similar
language appears in the other Year 2 Policies.[9]  (J.S. Ex. 1, pp. 29-30.)  The various
wrongful acts alleged against Mr. Perry in the Trustee and SEC Litigations easily fit
within this definition, as they all concern Mr. Perry's actions as an officer and
director of Bancorp.

Under the Year 2 Policies, the Trustee and SEC Litigations likewise
constitute claims "deemed" to be "first made" against Mr. Perry during the period
of the Year 2 Policies, because they "aris[e] out of [the] circumstances" disclosed in
Mr. Perry's notices of circumstances given during such period.  (J.S. Ex. 1 p. 37;
*see also* J.S. Ex. 5, p. 129 (similar provision in XL Specialty policy).)  Mr. Perry's
notices of February 26, 2009 specifically identified the SEC and Trustee as
potential plaintiffs, noted the Trustee's prior litigation threat and the SEC's
document subpoena, and indicated that the Trustee, the SEC, and others might
lodge claims alleging, *inter alia*, acts "related to events leading up to or relating to
the bankruptcy of [Bancorp] and/or events leading up to or relating to the placing
into receivership of [the Bank]."  (J.S. Ex. 40, p. 2776-77; J.S. Ex. 41, p. 2781-82.)
These notices, particularly insofar as they specifically identified the Trustee and the
SEC as potential plaintiffs, provided more than adequate notice and thus require
that the subsequently filed lawsuits be deemed to have been made during the period
of the Year 2 Policies.

Accordingly, the Trustee and SEC Litigations fall squarely within the

---

[9] The other Year 2 policies cover "Loss resulting from a Claim first made against
the Insured Persons [*i.e.*, the officers and directors of Bancorp] during the Policy
Period … for a Wrongful Act …."  (J.S. Ex. 5, p. 114.)  The definition of
"Wrongful Act" includes "any actual or alleged act, error, or omissions,
misstatement, misleading statement, neglect, or breach of duty by an Insured Person
while acting in his or her capacity as an: … Insured Person of the Company…."
(J.S. Ex. 5, p. 116.)

coverage terms of the Year 2 Policies.  To avoid the conclusion that a potential for coverage exists, the Insurers must show that some exclusion in the Year 2 Policies applies to the Trustee and SEC Litigations.  The Insurers argue that two such exclusions are applicable -- the *Tripp* and Prior Notice Exclusions -- and attempt to use the One Claim Clause as an exclusion as well.  As explained below, however, none of these provisions exclude the potential for coverage for the Trustee and SEC Litigations under the Year 2 Policies.

### B.   The Insurers Cannot Meet Their Burden of Proving That the Prior Notice and *Tripp* Exclusions Plainly Eliminate any Possibility of Coverage Under Their Year 2 Policies.

Relying on the *Tripp* and Prior Notice Exclusions, the Year 2 Insurers argue that there is no coverage for any proceeding initiated against Bancorp and the Bank's directors or officers after the end of the Year 1 policy period.  This is wrong as a matter of contract, law, and fact.

Before turning to the text of the exclusions and the relevant facts and law, we note preliminarily that the extreme nature of the Insurers' arguments is exposed by referring to the premiums they charged for the Year 2 Policies.[10]  The aggregate premiums charged for the Year 2 Policies were more than three times the premiums charged for the same amount of coverage the previous year.  Based on this fact, the Year 2 Policies surely must provide coverage for *some* claims that foreseeably could arise from Bancorp's financial difficulties.  Yet the Insurers contend that the

---

[10] Numerous cases in California and elsewhere have recognized that the amount of premiums charged is indicative of the breadth of coverage provided.  *See, e.g., Herzog v. National Am. Ins. Co.* 2 Cal. 3d 192, 197, 84 Cal. Rptr. 705, 707 (1970) (premiums are commensurate with the level of risk covered); *Fidelity & Deposit Co. v. Charter Oak Fire Ins. Co.*, 66 Cal. App. 4th 1080, 1086, 78 Cal. Rptr. 2d 429, 432 (1998) ("The insured's payment of a relatively small premium suggests that Charter Oak provided coverage for the relatively small risks associated with the Marina Inn, not the much larger risks associated with all of WSLA's projects."); *see also Pan Am. World Airways, Inc. v. Aetna Cas. & Sur. Co.*, 505 F.2d 989, 1001 n.10 (2d Cir. 1974) ("the size of the premiums is relevant to the construction of the policy."); *Sturdy v. Allied Mut. Ins. Co.*, 203 Kan. 783, 793, 457 P.2d 34, 42 (1969) ("amounts of premiums are based on amounts of liability," so that "[w]hen we pay a double premium we expect double coverage.").

MICHAEL W. PERRY'S MOTION FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM IN SUPPORT

1  Prior Notice and *Tripp* Exclusions effectively eliminate *all* coverage under the

2  Year 2 Policies, as they have denied coverage for *every one* of the numerous varied

3  underlying lawsuits now pending against Mr. Perry and his co-insureds.

4       The Insurers' contentions not only blink at economic reality; they also

5  proceed in defiance of the text of the exclusion and the well-established law (a)

6  casting the burden of establishing the applicability of an exclusion on the insurers

7  (b) requiring that exclusions be narrowly construed, and (c) directing that the

8  insured's reasonable expectations of coverage be honored.  *See Palp, Inc. v.*

9  *Williamsburg Nat'l Ins. Co.*, -- Cal. Rptr. 3d ---, 2011 WL 5088719, at *6 (Cal. Ct.

10  App. Oct. 27, 2011) ("An exclusion must be read narrowly and in accordance with

11  the reasonable expectations of an insured.").  Moreover, ambiguities in policy

12  language "are generally resolved in favor of coverage" to protect "objectively

13  reasonable expectations of the insured."  *In re K.F. Dairies*, 224 F.3d 922, 926 (9th

14  Cir. 2000) (quoting *AIU Ins. Co. v. Superior Court*,  51 Cal. 3d 807, 822, 274 Cal.

15  Rptr. 820, 831 (1990)).  "The burden of making coverage exceptions and

16  limitations conspicuous, plain and clear rests with the insurer."  *Haynes v. Farmers*

17  *Ins. Exchange*, 32 Cal. 4th 1198, 1204, 13 Cal. Rptr.3d 68, 73 (2004).

18       As a textual matter, the exclusions apply only if a claim has a substantial

19  *causal* connection to a "fact" alleged in *Tripp*.  Indeed, the exclusions use the

20  language of causation:  A claim must be "based upon, arising out of, directly or

21  indirectly resulting from or in consequence of, or in any way involving" a fact or

22  circumstance alleged in *Tripp* to be excluded.  *See Admiral Ins. Co. v. Briggs*, 264

23  F. Supp. 2d 460, 462-63 (N.D. Tex. 2003) (interpreting identical language to

24  require a "causal relationship" in order for exclusion to apply); *Sealed Air Corp. v.*

25  *Royal Indem. Co.*, 404 N.J. Super. 363, 381, 961 A.2d 1195, 1206 (2008) ("Read

26  together with the surrounding words, 'based on' and  'arising out of,' in the context

27  of the pollution exclusion clause, 'in any way involving' requires a more direct

28  causal relationship between the pollution and the harm.").  Facts that "simply

MICHAEL W. PERRY'S MOTION FOR
JUDGMENT ON THE PLEADINGS;
MEMORANDUM IN SUPPORT

1   provide[] the context" for a claim are not enough to trigger the exclusions. *Briggs*,

2   264 F. Supp. 2d at 463.  Nor do the exclusions apply merely upon a showing that a

3   claim "involves the same *type* of wrongful act" as a prior claim. *American Med.*

4   *Sec., Inc. v. Executive Risk Specialty Ins. Co.*, 393 F. Supp. 2d 693, 704 (E.D. Wis.

5   2005) (emphasis in original).

6          Thus, the Prior Notice and *Tripp* Exclusions clearly do not apply to the

7   claims asserted by the Trustee and the SEC.  Those claims arise from events that

8   occurred after the *Tripp* class period  and are based on alleged wrongful acts

9   completely different temporally and substantively from those alleged in *Tripp*.  As

10  described in greater detail at pages 3 and 9-10 above, the *Tripp* case involves

11  shareholder claims alleging misconduct that ceased by no later than March 1, 2007,

12  while the focus of the SEC and Trustee actions is on acts that allegedly occurred

13  much later and as Bancorp and the Bank neared financial collapse.  The SEC

14  Litigation is based on disclosures made regarding Bancorp's liquidity levels and the

15  Bank's capital ratios beginning on February 29, 2008 -- a full year after the end of

16  the *Tripp* class period.  Likewise, the Trustee Litigation is based on four

17  "downstream" capital contributions from Bancorp to the Bank that simply have

18  nothing to do with the *Tripp* allegations and occurred long after the *Tripp* class

19  period.

20         In no sense, therefore, can the Trustee and SEC claims be said to arise out of

21  or otherwise involve the facts alleged in *Tripp*.  That is not surprising.  Neither the

22  Trustee nor the SEC has any reason to assume the burden of proving the allegations

23  in *Tripp*.  The claims of the SEC and the Trustee are focused on temporally and

24  substantively distinct conduct from that at issue in *Tripp*.  Any attempt by the

25  Insurers to link *Tripp* to the SEC and Trustee Litigations based on purported

26  background similarities  will be unavailing.  "[A] peripheral component" of the

27  Trustee and SEC claims cannot be used to establish that the claims arise out of or

28  are otherwise related to *Tripp*. *First Trenton Indemn. Co. v. River Imaging, P.A.*,

MICHAEL W. PERRY'S MOTION FOR
JUDGMENT ON THE PLEADINGS;
MEMORANDUM IN SUPPORT

No. A-6191-06T3, 2009 WL 2431649, at *4-*5 (N.J. Super. Ct. App. Div. Aug. 11, 2009) (disregarding allegations that the plaintiffs "did not have to prove … to establish their basic breach of contract claims").

Furthermore, even if some background fact alleged in *Tripp* were deemed to have contributed to the situation out of which the wrongful acts alleged by the Trustee and the SEC arose, that would not be enough to preclude any possibility of coverage.  Only if such a fact were the *sole* proximate cause of the Trustee and SEC claims could the exclusions preclude all possibility of coverage for these claims.

The California Supreme Court so held in *State Farm Mutual Automobile Insurance Co. v. Partridge*, 10 Cal. 3d 94, 109 Cal. Rptr. 811 (1973).  There, the Supreme Court determined that a claim was covered under *both* an automobile policy and under a homeowners policy, even though the latter policy excluded coverage for claims "arising out of the use" of an automobile.  *Id*. at 97, 109 Cal. Rptr. at 813.  Concurrent coverage existed because the unusual accident giving rise to the claim -- the discharge of a gun in the course of negligent driving -- was "caused jointly by an insured risk (the negligent filing of the trigger mechanism) and by an excluded risk (the negligent driving)."  *Id.* at 102, 190 Cal. Rptr. at 817. The Court held that "when two such risks constitute concurrent proximate causes of an accident, the insurer is liable so long as one of the causes is covered by the policy."  *Id*.  Similarly here, the Year 2 Policies are at least potentially triggered if the Trustee and SEC claims were caused both by a fact alleged in *Tripp* and by alleged independent events.

As Judge Posner has correctly emphasized, "concepts such as 'arising from' 'mustn't [be] press[ed] … too hard."  *James River Ins. Co. v. Kemper Cas. Ins. Co.*, 585 F.3d 382, 386 (7th Cir. 2009).  "Maybe if Columbus hadn't discovered America the federal courts of appeals would not have been created in 1891; but it would be off to say that the federal appellate judiciary 'arose from' Columbus's voyages."  *Id*; *see also Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins.*

1  *Co.*, 5 Cal. 4th 854, 873, 21 Cal. Rptr.2d 691, 703 (1993) (relationship between two

2  claims "might be so attenuated or unusual that an objectively reasonable insured

3  could not have expected they would be treated as a single claim"); *Home Ins. Co. of*

4  *Ill. (N.H.) v. Spectrum Info Techs., Inc.*, 930 F. Supp. 825, 848 (E.D.N.Y. 1996)

5  ("[e]xpansive phrases … must have … boundar[ies]").  The Insurers' position that

6  the Trustee and SEC Litigations arise from the same circumstances as *Tripp* goes

7  too far and should be rejected.

8      **C.**    ***Tripp* is not "Interrelated" with the Trustee and SEC Litigations.**

9      Beyond relying on the *Tripp* and Prior Notice Exclusions, the Insurers argue

10  that the One Claim Clause excludes coverage for the Trustee and SEC Litigations

11  by rendering them the same "Claim" as *Tripp*.[11]  The One Claim Clause, by its

12  terms, would apply only if the Trustee and SEC Litigations had alleged wrongful

13  acts that are "interrelated" with a wrongful act alleged in *Tripp*.  No such

14  interrelation exists.

15      *Tripp* has nothing in common with the Trustee and SEC Litigations.  *Tripp*

16  alleges wrongful acts that occurred and concluded months before the wrongful acts

17  alleged by the Trustee and SEC commenced.  The reckless lending alleged in *Tripp*

18  involves transactions temporally and substantively distinct from the intercompany

19  capital transfers that form the basis for the Trustee's "downstreaming" claim, and

20  from the alleged false disclosures about Bancorp's liquidity levels and the Bank's

21  capital ratios in 2008 that form the basis for the SEC's claim.

22      In the wake of the last financial institution crisis (the savings and loan

23  failures of the late 1980s and 1990s), many courts -- including the Ninth Circuit --

24  specifically rejected carriers' arguments that separate claims that were related only

25

26  [11] If the One Claim Clause can be invoked at all in these circumstances, it must of necessity be treated as an exclusion -- and therefore subject to the same rules

27  regarding reasonable expectations and narrow construction as other exclusions -- because the Insurers are using it to limit the coverage otherwise granted under the

28  Year 2 Policies.

MICHAEL W. PERRY'S MOTION FOR
JUDGMENT ON THE PLEADINGS;
MEMORANDUM IN SUPPORT

in the sense that they all alleged improprieties in lending activities therefore involved "interrelated acts."[12]  Here, the Trustee and SEC do not allege even that: As noted, their claims are based on capital contributions from Bancorp to the Bank (the Trustee claim) and alleged false disclosures in 2008 regarding Bancorp's liquidity levels and the Bank's capital ratios (the SEC claim).  The Wrongful Acts alleged in the Trustee and SEC Litigations thus are completely distinct from the Wrongful Acts alleged in *Tripp*.

Indeed, *Axis Surplus Ins. Co. v. Johnson*, No. 06-CV-500-GKF-PJC, 2008 WL 4525409 (N.D. Okla. Oct. 3, 2008), a case that bears a striking resemblance to this one, rejected the very sort of sweeping interpretation of "Interrelated Wrongful Acts" relied upon by the Insurers here.  In *Johnson*, the insurers argued that the One Claim Clause did *not* apply to a lawsuit filed after the end of their policy period by the trustee of a bankrupt company.  The company failed when its subsidiary, a regional airline, incurred enormous losses.  The trustee, like the Bancorp trustee, argued that the directors and officers of the parent company breached their

---

[12]     *See Eureka*, 873 F.2d at 234-35 (holding that a single aggressive loan policy did not make multiple bad loans one loss for insurance aggregation purposes); *Okada v. MGIC Indem. Corp.*, 823 F.2d 276, 282-83 (9th Cir. 1986) (holding that claims arising from a savings and loan association's separate acts, including the authorization of loans to home buyers and the moving of corporate headquarters without funds, that resulted in the failure of the association, did not arise from interrelated acts); *see also FDIC v. Mmhat*, 907 F.2d 546, 555-56 (5th Cir. 1990), *cert. denied*, 499 U.S. 936 (1991) (different acts of malpractice resulted in discrete losses on seven loans); *McCuen v. American Cas. Co. of Reading, Pa.*, 946 F.2d 1401, 1407-08 (8th Cir. 1991) (court found words "interrelated" and "similar" so "elastic" in meaning as to be ambiguous and affirmed the district court's factual determination that all the loans were sufficiently distinct to create separate losses); *FSLIC v. Burdette*, 718 F. Supp. 649, 658 (E.D. Tenn. 1989) (court held that 25 loans constituted 25 losses; rejecting insurer's argument that "twenty-five loans and loan participations arose out of the same sequence of events"); *North River Ins. Co. v. Huff*, 628 F. Supp. 1129 (D. Kan. 1985) (court held that three different loan swap transactions entered into by a  savings and loan association each constituted a separate "occurrence" not involving "interrelated acts").

- 18 -

1   fiduciary duties by failing to obtain outside capital and by dissipating the assets of
2   the parent company in a futile attempt to remain in business.  The defendant
3   directors and officers in turn argued that the trustee's claim was covered because it
4   alleged wrongful acts that were the same as or interrelated to the wrongful acts
5   alleged in a prior lawsuit between the parent company and the founder of the
6   parent's airline subsidiary regarding a guarantee of the loan that financed the
7   creation of the airline.

8         Notwithstanding that the loan in question in the prior lawsuit created the
9   airline whose losses brought about the demise of the parent company, the insurers
10  denied that there was any common nexus between the facts of the loan lawsuit and
11  the trustee lawsuit.  The court agreed, holding that "[t]he sweeping interpretation
12  urged by Defendants stretches the meaning of Interrelated Wrongful Acts past the
13  breaking point."  *Id*. at *10.  The relationship between the two lawsuits "is so
14  attenuated that the court does not believe an objectively reasonable insured could
15  have expected the two to be treated as a single related claim."  *Id*.

16        One of the insurers in *Johnson* was XL Specialty -- the lead plaintiff here --
17  and the other was an affiliate of the Axis company that is a co-plaintiff here.  Both
18  argued against a "sweeping interpretation" of interrelatedness in *Johnson*, when
19  such an interpretation would have required them to provide coverage.  Now that the
20  shoe is on the other foot -- a broad interpretation of interrelatedness would *restrict*
21  coverage in the present case -- these insurers take the opposite position.  They argue
22  for a sweeping interpretation of the concept of "Interrelated Wrongful Act" that
23  would have the practical result of deeming *any* post-*Tripp* lawsuit brought against
24  the officers and directors of Bancorp or the Bank to be the same claim as *Tripp*.
25  That position would render coverage wholly illusory and should be rejected.

26
27
28

MICHAEL W. PERRY'S MOTION FOR
JUDGMENT ON THE PLEADINGS;
MEMORANDUM IN SUPPORT

1

## CONCLUSION

2

      For the foregoing reasons, Mr. Perry is entitled to judgment on the pleadings

3

declaring that there is a potential for coverage for the Trustee and SEC Litigations

4

under the Year 2 Policies, and that the Insurers therefore have a defense obligation

5

with respect to those cases.

6

DATED:   November 23, 2011             Respectfully submitted,

7

8

                            By:   /s/ D. Jean Veta
                                    D. Jean Veta

9

                            Attorneys for Defendant Michael W. Perry

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MICHAEL W. PERRY'S MOTION FOR
JUDGMENT ON THE PLEADINGS;
MEMORANDUM IN SUPPORT