David Simantob, SBN 155790
dsimantob@tresslerllp.com
Elizabeth L. Musser, SBN 203512
emusser@tresslerllp.com
TRESSLER LLP
1901 Avenue of the Stars, Suite 450
Los Angeles, CA 90067
Telephone: (310) 203-4800
Facsimile: (310) 203-4850

Attorneys for Counterdefendants
Catlin Insurance Company (UK) Ltd.,
Continental Casualty Company, and
Twin City Fire Insurance Company, and
Intervenor Counterdefendants Those Certain Underwriters at
Lloyd's, London Subscribing to Policy No. QA011608

(Additional parties and counsel listed on next page)

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| XL SPECIALTY INSURANCE COMPANY, *et al.*, | Case No. 2:11-CV-2078-RGK-JCG |
|---|---|
| Plaintiffs, | Hon. R. Gary Klausner |
| v. | **08-09 CARRIERS' OPPOSITION TO MICHAEL W. PERRY'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
| MICHAEL W. PERRY, *et al.* | Date:  January 17, 2012 |
| Defendants | Time:  9:00 a.m. |
| AND RELATED COUNTERCLAIMS | Ctrm:  850 |

Brian D. Harrison, SBN 157123
brian.harrison@sedgwicklaw.com
Robert S. Gebhard, SBN 158125
robert.gebhard@sedgwicklaw.com
Veena A. Mitchell, SBN 161153
veena.mitchell@sedgwicklaw.com
SEDGWICK LLP
333 Bush Street, 30th Floor
San Francisco, California 94104
Telephone: (415) 781-7900
Facsimile: (415) 781-2635

Attorneys for Zurich American Insurance Co.

Theodore A. Boundas (*admitted pro hac vice*)
tboundas@bswb.com
Jeffrey T. Shaw (*admitted pro hac vice*)
jshaw@bswb.com
W. Joel Vander Vliet (*admitted pro hac vice*)
wvandervliet@bswb.com
BOUNDAS, SKARZYNSKI, WALSH & BLACK, LLC
200 East Randolph Drive, Suite 7200
Chicago, Illinois 60601
Telephone: (312) 946-4200
Facsimile: (312) 946-4272

Attorneys for Counterdefendant
Catlin Insurance Company (UK) Ltd. and
Intervenor Counterdefendants Those Certain Underwriters at
Lloyd's, London Subscribing to Policy No. QA011608

08-09 CARRIERS' OPPOSITION TO PERRY MOTION FOR JUDGMENT ON THE PLEADINGS

William E. Smith (*admitted pro hac vice*)
wsmith@wileyrein.com
John E. Howell (*admitted pro hac vice*)
jhowell@wileyrein.com
WILEY REIN LLP
1776 K Street NW
Washington, D.C. 20006
Telephone: (202) 719-7000
Facsimile: (202) 719-7049

Attorneys for Continental Casualty Company


Michael R. Delhagen (*admitted pro hac vice*)
mdelhagen@tresslerllp.com
Kyle P. Barrett (*admitted pro hac vice*)
kbarrett@tresslerllp.com
TRESSLER LLP
One Penn Plaza, Suite 4701
New York, New York 10119
Telephone: (646) 833-0900
Facsimile: (646) 833-0877

Attorneys for Twin City Fire Insurance Company

08-09 CARRIERS' OPPOSITION TO PERRY MOTION FOR JUDGMENT ON THE PLEADINGS

Gordon J. Calhoun, SBN 84509
calhoun@lbbslaw.com
Douglas R. Irvine, SBN 119863
irvine@lbbslaw.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012
Telephone: (213) 250-1800
Facsimile: (213) 250-7900

Jason P. Cronic (*admitted pro hac vice*)
jcronic@wileyrein.com
WILEY REIN LLP
1776 K Street NW
Washington, DC 20006
Telephone: (202) 429-7000
Facsimile: (202) 719-7049

Attorneys for XL Specialty Insurance Company


Kim W. West, SBN 78553
kim.west@tuckerellis.com
Alec H. Boyd, SBN 161325
alec.boyd@tuckerellis.com
TUCKER ELLIS & WEST LLP
135 Main Street Suite 700
San Francisco, CA 94105
Telephone: (415)-617-2400
Facsimile: (415)-617-2409

Attorneys for Arch Insurance Company

08-09 CARRIERS' OPPOSITION TO PERRY MOTION FOR JUDGMENT ON THE PLEADINGS

1  Edward P Gibbons (*admitted pro hac vice*)
2  egibbons@wwmlawyers.com
   Tiffany Saltzman-Jones (*admitted pro hac vice*)
3  tsj@wwmlawyers.com
4  WALKER WILCOX MATOUSEK LLP
   One North Franklin Street, Suite 3200
5  Chicago, IL 60606
6  Telephone: (312)-244-6700
   Facsimile: (312)-244-6800
7
8  Attorneys for ACE American Insurance Company
9
10 Andrew W. Smith (*admitted pro hac vice*)
   asmith@bcnlaw.com
11 Ross B. Edwards (*admitted pro hac vice*)
   redwards@bcnlaw.com
12 BATES CAREY NICOLAIDES LLP
13 191 N Wacker Street Suite 2400
   Chicago, IL 60606
14 Telephone: (312)-762-3100
15 Facsimile: (312)-762-3200
16
   Attorneys for AXIS Insurance Company
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................1

II. FACTUAL BACKGROUND ...............................................................................3

   A.   IndyMac Bank's Failure ..............................................................................3

   B.   The Underlying Matters ...............................................................................3

      1.   The *Tripp* Litigation ...........................................................................3

      2.   The Trustee Litigation .........................................................................3

      3.   The SEC Litigation ..............................................................................4

   C.   Perry's Counterclaims and Motion for Judgment on the Pleadings ...........4

   D.   The 07-08 and 08-09 Policies.......................................................................4

      1.   The *Tripp* Exclusion ...........................................................................5

      2.   The Prior Notice Exclusions................................................................5

      3.   The Notice of Circumstances Provision ..............................................6

III. ARGUMENT........................................................................................................7

   A.   Standard on Judgment on the Pleadings......................................................7

   B.   Mr. Perry Cannot Establish that the SEC and Trustee Claims Were Made During the 08-09 Policy Period.......................................................................................7

      1.   Perry Admits the Claim Was Filed After the 08-09 Policy Period. ....................7

      2.   The 08-09 Policies Require Notice of Specific Circumstances, Specific Wrongful Acts, Anticipated Consequences, and Full Particulars. .......................8

      3.   Mr. Perry's Inadequate Notices Do Not Create Coverage for the Trustee Litigation or SEC Litigation Under the 08-09 Policies........................................9

   C.   Coverage is Precluded by the *Tripp* and Prior Notice Exclusions.........................12

      1.   Mr. Perry Seeks to Apply the Wrong Test to Interpret the *Tripp* and Prior Notice Exclusions ...............................................................................................12

      2.   The Trustee Litigation Arises Out Of One or More Facts Alleged in the *Tripp* Litigation. .........................................................................................................13

1

**TABLE OF CONTENTS, continued**

2

3       3.    The SEC Litigation Arises Out Of One or More Facts Alleged in the *Tripp*

4           Litigation. ...................................................................................................15

5       4.    The *Partridge* Analysis Does Not Apply. ........................................................16

6       5.    Because the *Tripp* and Prior Notice Exclusions Are Not Ambiguous, No

7           Discovery Is Necessary. ...............................................................................17

8       6.    The Interrelated Wrongful Acts Analysis Is Irrelevant for the Purpose of

9           Applying the *Tripp* and Prior Notice Exclusions. .............................................19

10   D.    The 08-09 Carriers Are Not Obligated to Pay Defense Costs Where the 08-09

11         Policies Provide "No Possibility of Coverage." ...................................................20

12   IV.    CONCLUSION ......................................................................................20

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

08-09 CARRIERS' OPPOSITION TO PERRY MOTION FOR JUDGMENT ON THE PLEADINGS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## Cases

*Advanced Network, Inc. v. Peerless Ins. Co.*,

    190 Cal. App. 4th 1054, 119 Cal. Rptr. 3d 17 (2010) ................................8

*AIU Ins. Co. v. Superior Ct.*,

    51 Cal. 3d 807, 799 P.2d 1253, 274 Cal. Rptr. 820 (1990) ...................18

*Am. Cas. Co. v. Fed. Deposit Ins. Corp.*,

    821 F. Supp. 655 (W.D. Okla. 1993)...........................................................9

*Bank of the West v. Superior Ct.*,

    2 Cal. 4th 1254, 833 P.2d 545, 10 Cal. Rptr. 2d 538 (1992)...............18

*Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*,

    5 Cal. 4th 854, 855 P.2d 1263, 21 Cal. Rptr. 2d 691 (1993)............17, 18

*Burns v. Int'l Ins. Co.*,

    709 F. Supp. 187 (N.D. Cal. 1989), *aff'd*, 929 F.2d 1442 (9th Cir. 1991)...............8

*Century Transit Sys., Inc. v. Am. Empire Surplus Lines Ins. Co.*,

    42 Cal App. 4th 121, 49 Cal. Rptr. 2d 567 (1996) ................................13

*Chatz v. Nat'l Union Fire Ins. Co.*,

    372 B.R. 368 (N.D. Ill. 2007) ....................................................................11

*Continental Ins. Co. v. Superior Ct.*,

    37 Cal. App. 4th 69, 43 Cal. Rptr. 2d 374 (1995) ...................................12

*Fed. Deposit Ins. Corp. v. Caplan*,

    838 F. Supp. 1125 (W.D. La. 1993) .........................................................11

*Fed. Deposit Ins. Corp. v. Mijalis*,

    15 F.3d 1314 (5th Cir. 1994) .....................................................................11

*Fidelity & Deposit Co. v. Charter Oak Fire Ins. Co.*,

    66 Cal. App. 4th 1080, 78 Cal. Rptr. 2d 429 (1998) .............................19

*Garvey v. State Farm Fire & Cas. Co.*,

    48 Cal. 3d 395, 770 P.2d 704, 257 Cal. Rptr. 292 (1989)......................16

# TABLE OF AUTHORITIES, continued

*Genesis Ins. Co. v. Magma Automation, Inc.*,

   386 F. App'x. 728 (9th Cir. 2010) ............................................................9

*Gon v. First State Ins. Co.*,

   871 F.2d 863 (9th Cir. 1989) ................................................................20

*Hervey v. Mercury Cas. Co.*,

   185 Cal. App. 4th 954, 110 Cal. Rptr. 3d 890 (2010) ......................17, 18

*Herzog v. Nat'l Am. Ins. Co.*,

   2 Cal. 3d 192, 465 P.2d 841, 84 Cal. Rptr. 705 (1970) ......................19

*Hillcrest Christian Sch. v. Los Angeles*,

   No. CV 05-8788, 2006 WL 5207228 (C.D. Cal. Dec. 26, 2006) .............7

*Homestead Ins. Co. v. Am. Empire Surplus Lines Ins. Co.*,

   44 Cal. App. 4th 1297, 52 Cal. Rptr. 268 (1996) ....................................8

*In re K.F. Dairies*,

   224 F.3d 922 (9th Cir. 2000) ................................................................18

*KPFF, Inc. v. Cal. Union Ins. Co.*,

   56 Cal. App. 4th 963, 66 Cal. Rptr. 2d 36 (1997) ...............................8, 9

*Medill v. Westport Ins. Co.*,

   143 Cal. App. 4th 819, 49 Cal. Rptr. 3d 570 (2006) ......................13, 16

*Qualcomm, Inc. v. Certain Underwriters at Lloyd's, London*,

   161 Cal. App. 4th 184, 73 Cal. Rptr. 3d 770 (2008) .............................17

*Resolution Trust Corp. v. Artley*,

   24 F.3d 1363 (11th Cir. 1994) ..............................................................11

*State Farm Mut. Auto. Ins. Co. v. Partridge*,

   10 Cal. 3d 94, 514 P.2d 123, 109 Cal. Rptr. 811 (1973) ......................16

*Waller v. Truck Ins. Exch., Inc.*,

   11 Cal. 4th 1, 900 P.2d 619, 44 Cal. Rptr. 2d. 370 (1995) ...............18, 20

# TABLE OF AUTHORITIES, continued

*WFS Fin. Inc. v. Progressive Cas. Ins. Co.*,

    232 F. App'x 624 (9th Cir. 2007) ........................................................................ 19

*Zurich Global Corporate U.K. v. Bickerstaff, Whatley, Ryan & Burkhalter, Inc.*,

    650 F. Supp. 2d 1064 (C.D. Cal. 2009) ........................................................... 13

08-09 CARRIERS' OPPOSITION TO PERRY MOTION FOR JUDGMENT ON THE PLEADINGS

# I.    INTRODUCTION[1]

Plaintiffs and counterdefendants[2] file this Opposition to defendant and counterclaimant Michael W. Perry's ("Mr. Perry's") Motion for Judgment on the Pleadings[3] and request that this Court deny Mr. Perry's Motion as a matter of law.  Mr. Perry, the former CEO and Chairman of IndyMac Bancorp, Inc. ("IndyMac"), has been named as a defendant in a series of actions arising out of the decline and ultimate demise of IndyMac and its subsidiary IndyMac Bank, F.S.B. ("IndyMac Bank").  Mr. Perry, together with other former directors and officers of IndyMac and IndyMac Bank, filed counterclaims in this action seeking a declaration that the 08-09 Carriers have defense and indemnity obligations for various of the underlying actions under insurance policies (the "08-09 Policies") that afford specified coverage for Claims first made from March 1, 2008 to April 1, 2009 (the "08-09 Policy Period").  Subsequently, Mr. Perry filed this Motion for Judgment on the Pleadings seeking a judicial declaration that the 08-09 Policies must contribute to the payment of Mr. Perry's defense costs for the actions styled *Siegel v. Caldera, et al.*, Case No. 2:09-ap-02645-BB (Bankr. C.D. Cal.) (the "Trustee Litigation") and *Securities and Exchange Commission v. Michael W. Perry*, *et al.*, Case No. CV11-01309-GHK (JCx) (C.D. Cal.) (the "SEC Litigation").

Mr. Perry's arguments fail and his Motion should be denied for several reasons.  In sum:

---

[1] All exhibits cited herein are attached to the Stipulation Regarding Certain Exhibits and Allegations filed in this action on November 23, 2011 (D.E. 193).

[2] With respect to this action, the insurer parties XL Specialty Insurance Company ("XL"), Arch Insurance Company ("Arch"), ACE American Insurance Company ("ACE"), and AXIS Insurance Company ("AXIS,") are plaintiffs and counterdefendants, the insurer parties Catlin Insurance Company (UK) Ltd. ("Catlin"), Zurich American Insurance Company ("Zurich"), Twin City Fire Insurance Company ("Twin City"), and Continental Casualty Company ("Continental") are counterdefendants and Those Certain Underwriters at Lloyd's, London Subscribing to Policy No. QA011608 (together with Catlin, "Lloyd's") are intervenor counterdefendants.  These insurer parties are collectively referred to herein as the "08-09 Carriers."

[3] Mr. Perry's motion has been joined by former IndyMac Executive Vice President and Chief Financial Officer A. Scott Keys ("Mr. Keys").

- Mr. Perry is not entitled to a defense under the 08-09 Policies because he cannot establish that the 08-09 Policies potentially cover the Trustee Litigation and/or the SEC Litigation. As described below, Mr. Perry cannot establish that those matters constitute Claims deemed timely made during the 08-09 Policy Period. And in any event, the 08-09 Policies' "specific litigation" and "prior notice" exclusions clearly preclude coverage for the Trustee Litigation and the SEC Litigation, as these matters are based upon and arise out of one or more facts underlying or alleged in the action styled *Tripp, et al. v. IndyMac Bancorp, Inc., et al.*, Case No. 2:07-cv-1635 (C.D. Cal.) (the "*Tripp* Litigation");

- Mr. Perry's argument that the *Tripp* Litigation, the Trustee Litigation, and the SEC Litigation do not involve Interrelated Wrongful Acts,[4] as that term is defined in the 08-09 Policies, is irrelevant to whether the 08-09 Policies' "specific litigation" and "prior notice" exclusions apply to bar coverage. That argument is also incorrect on the merits;

- Mr. Perry is not entitled to take discovery to establish an ambiguity in the "specific litigation" and "prior notice" exclusions because those exclusions are clear and explicit on their face, and extrinsic evidence is inadmissible to contradict an insurance contract's clear and explicit meaning; and

- Mr. Perry wrongly asserts that he is "on his own" in defending against the Trustee Litigation and the SEC Litigation and that his ability to settle with various underlying plaintiffs has been impeded by his coverage dispute with the 08-09 Carriers. To the contrary, the defense of the Trustee Litigation and the SEC Litigation is being fully funded under the 07-08 policies.

For the reasons summarized above and discussed in detail herein, Mr. Perry's Motion for Judgment on the Pleadings should be denied.

---

[4] Capitalized terms not defined herein are defined in the referenced policy.

## II.   FACTUAL BACKGROUND

### A.   IndyMac Bank's Failure

IndyMac Bank became a savings and loan association in July 2000 and embarked on a plan of aggressive growth, operating both as a thrift and mortgage bank.  IndyMac Bank failed because of that aggressive growth strategy, the use of Alt-A and other nontraditional loan products, inadequate underwriting practices and suspect appraisals.  *See* Ex. 34, OIG Audit Report at 2.  IndyMac Bank's failure led directly to IndyMac's bankruptcy in July 2008.

### B.   The Underlying Matters

#### 1.   The *Tripp* Litigation

The *Tripp* Litigation, filed in March 2007, alleges securities law violations and breaches of fiduciary duty on behalf of a putative class of IndyMac stockholders.  *See* Ex. 17, *Tripp* Complaint ¶ 39; Ex. 23, *Tripp* Sixth ACAC ¶ 1.  The *Tripp* plaintiffs allege that statements concerning IndyMac Bank's financial condition were false and misleading primarily because IndyMac Bank's underwriting practices and internal controls were grossly deficient, and that loan loss reserves were inadequate.  They further contend that such deficient underwriting practices were part of IndyMac's company-wide, top-down business strategy, and that senior management purportedly encouraged underwriters to disregard underwriting guidelines, manipulate appraisal values, and push bad loans to close.  *See* Ex. 19, *Tripp* Second ACAC ¶¶ 63-64, 69, 74-77; Ex. 23, *Tripp* Sixth ACAC ¶¶ 44-45, 55-58.   The alleged misrepresentations purportedly caused IndyMac's stock to trade at inflated levels.  Ex. 23, *Tripp* Sixth ACAC ¶172.

#### 2.   The Trustee Litigation

In the Trustee Litigation, first filed November 13, 2009, Alfred H. Siegel, the Chapter 7 Trustee of IndyMac's Bankruptcy estate (the "Trustee"), alleges that certain directors of IndyMac, including Mr. Perry, breached fiduciary duties to IndyMac by transferring at least $355 million to IndyMac Bank in 2007 and 2008 in an imprudent, mismanaged effort to avert a capital crisis at IndyMac Bank.  *See* Ex. 33.  Underpinning

his claims, the Trustee alleges that IndyMac Bank's dire financial condition resulted from unsafe and unsound business practices, including aggressive and inadequate underwriting of mortgage loans, reliance on inflated appraisals, abdication of established liquidity controls, and insufficient board oversight of management. *See id.*

### 3.     The SEC Litigation

The SEC Litigation, first filed February 11, 2011, was brought by the Securities and Exchange Commission (the "SEC") for securities fraud and reporting violations against Mr. Perry and Mr. Keys. *See* Ex. 39. The SEC alleges that the defendants participated in IndyMac's false and misleading disclosures of its financial condition when they knew its financial condition was rapidly deteriorating. This rapid deterioration was primarily caused by the imprudent and unsound business practices of the bank. *See id.*

### C.     Perry's Counterclaims and Motion for Judgment on the Pleadings

On July 20, 2011, Mr. Perry and various former officers of IndyMac and IndyMac Bank filed counterclaims seeking a declaration that the 08-09 Carriers have defense and indemnity obligations for various underlying matters under the 08-09 Policies. On November 23, 2011, Mr. Perry filed a Motion for Judgment on the Pleadings seeking a declaration that the 08-09 Policies must contribute to the payment of his defense costs for the Trustee Litigation and the SEC Litigation.

### D.     The 07-08 and 08-09 Policies

IndyMac obtained Directors and Officers Liability insurance that afforded specified coverage for claims made between March 1, 2007 and March 1, 2008 (the "07-08 Policies"), with total limits of liability of $80 million. *See* Exs. 9-16, 07-08 Policies. The 08-09 Carriers thereafter issued policies for the March 1, 2008 to April 1, 2009 policy period, with total limits of liability of $80 million. *See* Exs. 1-8, 08-09 Policies. The 08-09 Lloyd's, Zurich, Twin City, and Continental policies (the "08-09 D&O Policies") are "claims made and reported polic[ies]," which apply "only to any Claim first made during the Policy Period." Ex. 1, Lloyd's Policy, Declarations. The 08-09 XL, Arch, ACE, and AXIS policies (the "08-09 Side A Policies") are "claims made"

policies, which may afford coverage only for "Loss resulting from a Claim first made
against the Insured Persons during the Policy Period."  Ex. 5, 08-09 XL Policy, Section I.

### 1.   The *Tripp* Exclusion

The 08-09 Carriers and IndyMac agreed that the 08-09 D&O Policies and the 08-
09 Side A Policies would contain a "specific litigation exclusion" (the "*Tripp* Exclusion")
that bars coverage for any Claim:

> based upon, arising out of, directly or indirectly resulting from or in
> consequence of, or in any way involving . . .

> 1.   [the *Tripp* Litigation]; or

> 2.   any fact, circumstance, situation, event, transaction or series of facts,
> circumstances, situations, events or transactions underlying or alleged
> in the Tripp Litigation.

> regardless of any legal theory upon which such Claim is predicated.

Ex. 1, 08-09 Lloyd's Policy, at Section III as amended by Endorsement; Ex. 5, 08-
09 XL Policy, Endorsement No. 16.

### 2.   The Prior Notice Exclusions

In addition to the *Tripp* Exclusion, the 08-09 D&O Policies contain a prior notice
exclusion, which bars coverage for any Claim: "based upon, arising out of, directly or
indirectly resulting from or in consequence of, or in any way involving . . . any **Wrongful
Act** or any fact, circumstance or situation which has been the subject of any notice given
prior to the **Policy Period** under any other Directors' and Officers'. . . Liability policy."
Ex. 1, 08-09 Lloyd's Policy, Section III.B.[5]

The 08-09 Side A Policies also contain a prior notice exclusion (together with the

---

[5] The Twin City policy also includes an "Excess Absolute Prior Notice Exclusion," which
provides that "Underwriters shall not be liable to make any payment for loss in
connection with any claim made against the Insured(s) where all or part of such claim is,
directly or indirectly, based on, attributable to, arising out of, resulting from, or in any
manner related to wrongful acts or any facts, circumstances or situations of which notice
of claim or occurrence which could give rise to a claim, has been given prior to the
effective date of this policy under any other policy."  Ex. 3, Endorsement No. 3.

08-09 CARRIERS' OPPOSITION TO PERRY MOTION FOR JUDGMENT ON THE PLEADINGS

08-09 D&O Policies' prior notice exclusion, the "Prior Notice Exclusions") that bars coverage for any Claim "based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance or situation, transaction event or Wrongful Act which, before the Inception Date of this Policy, was the subject of any notice given under any . . . other similar insurance." Ex. 5, 08-09 XL Policy, Section III.(B)(2).

### 3.    The Notice of Circumstances Provision

In limited situations that do not apply here, the 08-09 Policies permit an insured to provide notice of specific circumstances or Wrongful Acts of which it has become aware during the 08-09 Policy Period, such that subsequent Claims arising out of the specified Wrongful Acts and circumstances disclosed may be deemed made during the 08-09 Policy Period.  The primary 08-09 D&O Policy provides that:

> If during the Policy Period . . . the Assureds first become aware of circumstances that might give rise to a Claim, and if the Assureds during the Policy Period . . . give written notice to Underwriters of:
>
> 1.    the specific circumstances and the anticipated Wrongful Act allegations;
>
> 2.    the consequences which have resulted or may result therefrom; and
>
> 3.    the circumstances by which the Assureds first became aware thereof,
>
> Then any Claim made subsequently arising out of such circumstances or Wrongful Act shall be deemed for the purposes of this Policy to have been made at the time such notice was first given.

Ex. 1, 08-09 Lloyd's Policy, Section VI.B.

Similarly, the primary 08-09 Side A Policy provides that, if during the 08-09 Policy Period, an Insured "first becomes aware of a specific Wrongful Act," an Insured may:

> (i)    provide the Insurer with written notice of the specific Wrongful Act, the consequences which have resulted or may result therefrom

(including but not limited to actual or potential damages), the
identities of the potential claimants, and the circumstances by which
the Insured Persons first became aware of such Wrongful Act;  and

(ii)    request coverage for any subsequently resulting Claim for such
Wrongful Act;

Then any Claim subsequently made arising out of such Wrongful Act will be
treated as if it had been first made during the Policy Period.

Ex. 5 08-09 XL Policy, Section IV.(D).

## III.   ARGUMENT

### A.   Standard on Judgment on the Pleadings

As this Court has previously noted, judgment on the pleadings under Rule 12(c) is appropriate only "when the moving party clearly establishe[s] on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hillcrest Christian Sch. v. Los Angeles*, No. CV 05-8788, 2006 WL 5207228, at *2 (C.D. Cal. Dec. 26, 2006) (Klausner, J.) (internal citations omitted).  Mr. Perry is not entitled to judgment under these standards because he cannot establish that the 08-09 Policies provide coverage for the Trustee Litigation or the SEC Litigation as a matter of law.

### B.   Mr. Perry Cannot Establish that the SEC and Trustee Claims Were Made During the 08-09 Policy Period.

#### 1.   Perry Admits the Claim Was Filed After the 08-09 Policy Period.

Mr. Perry's motion itself establishes that he has not demonstrated any potential for coverage for the Trustee or SEC Litigation under the 08-09 Policies.  The 08-09 Policies are claims-made policies, which afford coverage only for Claims first made during the 08-09 Policy Period.  Mr. Perry concedes that the Trustee Litigation and SEC Litigation were filed after the expiration of the 08-09 Policy Period.  Perry Mot. at 9:7-11.  While he contends that vacuous "notice of circumstance" letters bring these actions within the claims-made coverage of the 08-09 Policies, his argument does not withstand scrutiny.

*See Advanced Network, Inc. v. Peerless Ins. Co.*, 190 Cal. App. 4th 1054, 1060, 119 Cal. Rptr. 3d 17 (2010) (insured has the burden to demonstrate that a claim falls within the basic scope of coverage).

### 2. The 08-09 Policies Require Notice of Specific Circumstances, Specific Wrongful Acts, Anticipated Consequences, and Full Particulars.

An essential characteristic of claims-made policies, like the 08-09 Policies, is that they afford coverage only for Claims first made during the policy period. *See* Ex. 1, 08-09 Lloyd's Policy, Section I, Ex. 5, 08-09 XL Policy, Section I. While the 08-09 Policies permit an insured to provide notice of specific circumstances or Wrongful Acts of which it has become aware during the 08-09 Policy Period, such that subsequent Claims arising out of the specified Wrongful Acts and circumstances disclosed may be deemed made during the 08-09 Policy Period, the notice must "describe as precisely as possible all facts and details including the reasons for anticipating a Claim with full particulars as to dates and persons involved and an estimate of quantum." *Id.*

Because a failure to apply "notice of circumstances" provisions as written would result in an unbargained-for extension of claims-made coverage, courts have applied such policy provisions as written. *Burns v. Int'l Ins. Co.*, 709 F. Supp. 187, 191 (N.D. Cal. 1989), *aff'd*, 929 F.2d 1442 (9th Cir. 1991) (strict compliance is necessary to allow the insurer under a claims-made policy to "attain a level of predictability" so that it can "close its books" on a policy at the expiration date and more accurately "calculat[e] its necessary reserves and future premiums"; such predictability "translates into significantly lower costs to consumers"); *KPFF, Inc. v. Cal. Union Ins. Co.*, 56 Cal. App. 4th 963, 975, 66 Cal. Rptr. 2d 36 (1997) ("[O]ne of the intended functions of the written notice required by the awareness provision [is] the establishment of necessary reserves."); *Homestead Ins. Co. v. Am. Empire Surplus Lines Ins. Co.*, 44 Cal. App. 4th 1297, 1304, 52 Cal. Rptr. 2d 268 (1996 ) ("'The hallmark of a 'claims-made' policy is that exposure for claims terminates with expiration or termination of the policy, thereby providing

certainty in gauging potential liability which in turn leads to more accurate calculation of reserves and premiums.'").

### 3. Mr. Perry's Inadequate Notices Do Not Create Coverage for the Trustee Litigation or SEC Litigation Under the 08-09 Policies.

Measured against the policy requirements described above, Mr. Perry's purported notices of circumstances fall far short of the level of specificity required by courts applying California law.  *See, e.g.*, *Genesis Ins. Co. v. Magma Automation, Inc.*, 386 F. App'x. 728, 730 (9th Cir. 2010) (finding that insured's notice of circumstances did not provide the "specific information" required under the relevant notice provision); *KPFF, Inc.*, 56 Cal. App. 4th at 976 (finding that notice provided "at best a possibility of other claims . . . without providing enough information to allow insurer to infer the likelihood of such claims"); *see also Am. Cas. Co. v. Fed. Deposit Ins. Corp.*, 821 F. Supp. 655, 663 (W.D. Okla. 1993) (letter containing "laundry list of potential wrongdoing that could be committed by any bank director or officer" not sufficient to trigger coverage under a claims made policy).

Prior to the expiration of the 08-09 Policy Period, counsel for Mr. Perry sent substantively identical letters to the 08-09 Carriers captioned: "Matter: Notice of Circumstances."  Exs. 40, 41.  Mr. Perry's letters contain the following statements:

Mr. Perry is a former director and officer of IndyMac Bancorp, Inc. ("IndyMac"), which has filed for bankruptcy protection . . . .  In connection with IndyMac's pending bankruptcy case and otherwise, the Federal Deposit Insurance Corporation (FDIC) and the bankruptcy trustee have indicated that they may assert claims against Mr. Perry, and various government agencies in addition to the SEC (including the Office of Inspector General at the Department of the Treasury, the Office of Inspector General at the FDIC, the U.S. Department of Justice, and the Federal Bureau of Investigation) and a federal grand jury are pursuing inquiries, investigations, or proceedings in the aftermath of the placement of IndyMac Bank into receivership.

1    The foregoing circumstances might give rise to a Claim within the
2    coverage of the Policies against Mr. Perry by one or more of the
3    aforementioned entities, by other federal or state regulatory, administrative,
4    or investigative agencies, or by other persons or entities.  Such Claim or
5    Claims may allege one or more Wrongful Acts that are the same as or related
6    to the Wrongful Acts alleged in [the *Tripp* Litigation and *Daniels* Litigation]
7    or may allege other Wrongful Acts related to events leading up to or relating
8    to the bankruptcy of IndyMac and/or events leading up to or relating to the
9    placing into receivership of IndyMac Bank.  We are unable to estimate the
10   quantum of damages that might be claimed at this time.

11   Ex. 40, 41 at 1, 2.

12       These bare-bones statements do not comply with the requirements of the 08-09
13   Policies.  No specific Wrongful Acts or specific circumstances and anticipated Wrongful
14   Act allegations are set forth in the notice letters.  On the contrary, the notice letters
15   merely refer generally to one or more Wrongful Acts that are "the same as or related to
16   the Wrongful Acts alleged in" the *Tripp* Litigation and/or *Daniels* Litigation.  This
17   constitutes an acknowledgment by Mr. Perry that the circumstances or Wrongful Acts
18   that could potentially give rise to a Claim by the Trustee and SEC are the same facts,
19   circumstances, and Wrongful Acts at issue in the *Tripp* Litigation and its related Claims.
20   Consequently, assuming arguendo that this portion of the notice letters is adequate, for
21   there to be any coverage for the Trustee Litigation and the SEC Litigation, which were
22   filed after the 08-09 Policy Period, these actions must be deemed first made during the
23   07-08 year in which the Tripp Litigation was filed.

24       Further, while the letters reference that Claims could be asserted "in connection
25   with IndyMac's pending bankruptcy case *or otherwise*," by one of several entities or
26   *"other persons or entities*," alleging "*other Wrongful Acts*," no specifics are alleged.
27   Exs. 40, 41 at 1-2 (emphasis added).  Such vague statements are not notice of "specific
28   circumstances and anticipated Wrongful Act allegations," "specific Wrongful Acts" or

their anticipated consequences as required by the 08-09 Policies.  If Mr. Perry could not

identify the specific Wrongful Acts that could potentially give rise to claims by the

Trustee or SEC, then the insurers are certainly not required to guess.  *Fed. Deposit Ins.*

*Corp. v. Mijalis*, 15 F.3d 1314, 1335 (5th Cir. 1994) (adequacy of a notice of

circumstances is judged objectively, not based on whether the insurer can "subjectively

draw[] inferences that potential claims exist").

   Courts apply "notice of circumstances" provisions as written.  For example, in

*Chatz v. Nat'l Union Fire Ins. Co.*, 372 B.R. 368 (N.D. Ill. 2007), a court determined that

a letter containing "vague and general catchall statements" that insureds believed the

insured entity's bankruptcy filing would give rise to claims was insufficient to satisfy the

policy requirement of notice "with full particulars" and, therefore, a subsequent claim by

a bankruptcy trustee against insured directors and officers did not trigger coverage.  *Id.* at

372.  Other courts also have required detailed and specific compliance with "notice of

circumstances" or so-called "awareness" provisions, finding that "rote incantation" of

policy terms will not permit an insured to trigger a claims-made policy period and

"unilaterally expand the insurer's risk beyond that agreed in the contract of insurance."

*Fed. Deposit Ins. Corp. v. Caplan*, 838 F. Supp. 1125, 1130 (W.D. La. 1993) (letter

identifying FDIC as a potential claimant but not identifying alleged wrongful acts, time

periods, or individuals involved did not trigger coverage for subsequent FDIC claim).

Instead, courts enforce policy terms requiring notice of the purported wrongful acts on

which a subsequent claim may be based.  *Resolution Trust Corp. v. Artley*, 24 F.3d 1363,

1368 (11th Cir. 1994) (reports and letters documenting insured bank's decline and

mismanagement not sufficient notice).

   Mr. Perry baldly asserts that his letters provided "more than adequate notice"

because they mention IndyMac's bankruptcy trustee and the SEC as potential claimants.

Perry Mot. at 12:12-14.  It is insufficient, however, merely to identify the source of

potential claims—even if the referenced claimant subsequently brings an actual claim.

*Caplan*, 838 F. Supp. at 1130 (reference to the FDIC as a source of potential claims was

insufficient to trigger coverage).  The 08-09 Policies require notice of the *specific* Wrongful Acts and circumstances from which subsequent claims are expected to arise. Mr. Perry's letters do not contain such particulars and cannot be compared to "extensive and detailed" notices that have been found adequately to provide notice to insurers of potential claims in other cases.  *See, e.g., Continental Ins. Co. v. Superior Ct.*, 37 Cal. App. 4th 69, 76, 43 Cal. Rptr. 2d 374 (1995) (notice listing numerous arrangements, agreements, and transactions, including transactions that were the subject of the subsequent issue, was sufficient to trigger coverage).

Because the Trustee Litigation and the SEC Litigation undisputedly were filed after the 08-09 Policy Period and Mr. Perry's letters did not provide the notice expressly required by the 08-09 Policies to extend coverage to these subsequent Claims, the actions can in no event be deemed first made during the 08-09 Policy Period.

## C.   Coverage is Precluded by the *Tripp* and Prior Notice Exclusions

### 1.   Mr. Perry Seeks to Apply the Wrong Test to Interpret the *Tripp* and Prior Notice Exclusions

In asserting that the 08-09 Carriers cannot meet the burden of proving that the *Tripp* Exclusion and the Prior Notice Exclusions "plainly eliminate any possibility of coverage" under the 08-09 Policies, Mr. Perry misstates the standard under which these exclusions are interpreted by stringing together case law from various jurisdictions outside of California to suggest that the "exclusions apply only if a claim has a substantial causal connection to a 'fact' alleged in *Tripp*."  Perry Mot. at 13:8-10,14:18-19.  This standard is inapplicable.

The *Tripp* Exclusion and Prior Notice Exclusions bar coverage for any Claim based upon, arising out of, directly or indirectly resulting from, or in consequence of, or in any way involving any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions, underlying or alleged in the *Tripp* Litigation.  California courts reject efforts to read into this broad language a requirement of the "substantial causal connection" requirement suggested by Mr. Perry.  Instead, they

have "consistently given a broad interpretation to the terms 'arising out of' and 'arising from,'" ruling that "this language does not import any particular standard of causation . . . into an insurance policy" and "connotes only a minimal causal connection or incidental relationship." *Medill v. Westport Ins. Co.*, 143 Cal. App. 4th 819, 830, 49 Cal. Rptr. 3d 570 (2006) (citation omitted); *accord Century Transit Sys., Inc. v. Am. Empire Surplus Lines Ins. Co.*, 42 Cal App. 4th 121, 128 n.4, 49 Cal. Rptr. 2d 567 (1996) ("'arising out of' is a broad concept requiring only a 'slight connection' or an 'incidental relationship' between the injury and the excluded risk") (citation omitted); *see also Zurich Global Corporate U.K. v. Bickerstaff, Whatley, Ryan & Burkhalter, Inc.*, 650 F. Supp. 2d 1064, 1070 (C.D. Cal. 2009).

Accordingly, with respect to the Trustee Litigation and SEC Litigation, the *Tripp* Exclusion and Prior Notice Exclusions are triggered where those claims have *any* fact or circumstance in common with a fact or circumstance underlying or alleged in the *Tripp* Litigation.  A review of the operative pleadings for the *Tripp* Litigation, the Trustee Litigation and the SEC Litigation clearly demonstrates that the *Tripp* Exclusion and Prior Notice Exclusions apply and that coverage for the Trustee Litigation and the SEC Litigation is excluded.

## 2.   The Trustee Litigation Arises Out Of One or More Facts Alleged in the *Tripp* Litigation.

The *Tripp* Litigation and the Trustee Litigation each allege, are based upon, arise out of, directly or indirectly result from, are in consequence of, or in some way involve multiple facts including IndyMac Bank's allegedly high-risk business strategy, underwriting standards, internal controls, deficient appraisal practices and inadequate loan loss reserves.

In connection with IndyMac Bank's allegedly high-risk business strategy, the *Tripp* plaintiffs allege that from 2001 through 2006, IndyMac Bank "grew by focusing on utilizing Alt-A, negative/interest only amortizing loans, and other high-risk loans" including "stated loans" or "liars' loans," Ex. 23, *Tripp* Sixth ACAC ¶¶ 3, 29, but

ultimately had difficulty selling these loans in the secondary market, *id.* ¶ 11.  Similarly, the Trustee alleges that IndyMac Bank's focus on originating and selling "high-risk" mortgage loans including Alt-A, subprime and other non-traditional loans, led to capital inadequacy problems as IndyMac Bank accumulated risky assets which it was unable to sell on the secondary market.  Ex. 33, Trustee Underlying Complaint ¶¶ 36-37, 44.

With respect to underwriting standards and internal controls, the *Tripp* plaintiffs allege a culture of fraud at IndyMac Bank, evidenced by wide-ranging and management-directed violations of the Company's underwriting guidelines and controls.  *Tripp* Second ACAC ¶¶ 62-77.  Similarly, the Trustee alleges that the defendants deliberately implemented inadequate underwriting guidelines to increase loan volume and profits, ultimately leading to IndyMac's insolvency and IndyMac Bank's failure.  *See* Ex. 33, Trustee Underlying Complaint ¶ 229 (The Directors "openly admitted that among other things, their deliberate and, at times, blind pursuit of profits and self-interest over safe and sound business practices had created the circumstances that ultimately would cause the Bank's failure and Bancorp's insolvency.").

With respect to deficient appraisal practices, the *Tripp* plaintiffs reference IndyMac Bank's vulnerability to widespread appraisal fraud, Ex. 19, *Tripp* Second ACAC ¶¶ 210-214, and assert that "IndyMac's appraisal reviews were limited and recklessly deficient," Ex. 23, *Tripp* Sixth ACAC ¶ 149.  The *Tripp* Litigation cites the OIG Audit Report's finding of "weaknesses with property appraisals obtained to support the collateral on the loans."  *Id.* ¶ 206.  Similarly, the Trustee relies upon the OIG Audit Report's finding that "[a]ppraisals obtained by IndyMac on underlying collateral were often questionable" and contributed to the "significant capital inadequacy at the Bank" that precipitated the purportedly wrongful capital contributions the Trustee alleges.  *See* Ex. 33, Trustee Underlying Complaint ¶ 44.

With respect to IndyMac Bank's allegedly inadequate loan loss reserves, the *Tripp* plaintiffs challenge the adequacy of IndyMac Bank's loan loss reserves and assert that such reserves did not consider the "effects of any changes in risk selection and

underwriting standards" because IndyMac Bank's "'underwriting standards' were wholly ineffective . . . and thus meaningless as a factor in the calculation of the Company's loan loss reserves." Ex. 23, *Tripp* Sixth ACAC ¶ 129; *see also id.* ¶¶ 171-72, 196, 207, 209. (citing the OIG Audit Report).  Similarly, the Trustee Litigation attaches and incorporates the OIG Audit Report, which identified inadequate loss reserves as a cause of IndyMac Bank's failure and found that its Allowance for Loan and Lease Losses ("ALLL") decreased as a percentage of total loans until 2007, despite the observed probability of a downward trend in real estate values.  *See* Ex. 34 OIG Audit Report, 10-11 ("The ALLL is critical because of its impact on the thrift's capital levels.").  The OIG's findings are a critical component of the Trustee's allegations that the defendants negligently made capital contributions to IndyMac Bank despite alleged knowledge that such transfers would not prevent the bank's failure.  *See* Ex. 33, Trustee Underlying Complaint ¶ 268(c).

The facts described above are not a "peripheral component," or "context" for the Trustee's claim, as Mr. Perry asserts, but are essential to the theory of his case.  Perry Mot. 15:1, 26.  Specifically, the Trustee alleges that it was the defendants' failure to act upon and recognize the financial red flags, alleged in the *Tripp* Litigation, which made IndyMac's transfers to IndyMac Bank improper. *See* Ex. 33, Trustee Underlying Complaint ¶ 8.  Accordingly, it is evident that the Trustee Litigation is based upon and arises out of the same unsound business practices that were underlying or alleged in the *Tripp* Litigation and that ultimately led to the failure of IndyMac and IndyMac Bank.

### 3.   <u>The SEC Litigation Arises Out Of One or More Facts Alleged in the *Tripp* Litigation.</u>

The SEC alleges that Mr. Perry, along with Mr. Keys, participated in IndyMac's false and misleading disclosures of its financial condition when they knew of IndyMac's "rapidly deteriorating financial condition," that ultimately resulted in IndyMac Bank's receivership and IndyMac's bankruptcy.  *See* Ex. 39 SEC Complaint ¶ 5.  Further, the SEC Litigation focuses on the downgrading of millions of dollars in IndyMac Bank-

sponsored MBS that IndyMac Bank held on its balance sheet, negatively impacting its capital ratio.  *Id.* ¶ 34.  These negative developments are a direct result of IndyMac Bank's aggressive business model, which is the focus of the *Tripp* Litigation.  *See* Ex. 23, *Tripp* Sixth ACAC ¶21, citing the OIG Audit Report (the "'underlying cause of [the Company's failure] was the unsafe and unsound manner in which the thrift was operated' and the Company was well aware of material deficiencies before, during, and after the Class Period.").  Accordingly, it is clear that the SEC Litigation is based upon and arises out of IndyMac Bank's unsound business practices and the failure of IndyMac and IndyMac Bank, facts underlying and alleged in the *Tripp* Litigation.

## 4.   **The *Partridge* Analysis Does Not Apply.**

Mr. Perry's reliance upon the California Supreme Court's ruling in *State Farm Mutual  Automobile Insurance Co. v. Partridge*, 10 Cal. 3d 94, 514 P.2d 123, 109 Cal. Rptr. 811 (1973) is misplaced, as *Partridge* has been specifically distinguished in later cases interpreting "arising out of" language in policy exclusions under California law.  In *Medill*, the California Court of Appeals stated that "[c]ourts following *Partridge* have made it clear that its holding only applies to 'multiple causes that operated totally independently of one another.'"  143 Cal. App. 4th at 835 (citation omitted).  Thus, in *Medill*, the Court explained that because the insured directors' and officers' alleged negligence and breach of fiduciary duties did not exist independently of excluded risks for the issuance or endorsement of bonds and the failure to pay on the bonds, but arose out of and were directly connected to those risks, the proximate cause analysis in *Partridge* was inapplicable.  *Id*; *see also Garvey v. State Farm Fire & Cas. Co.*, 48 Cal. 3d 395, 399, 770 P.2d 704, 257 Cal. Rptr. 292 (1989) ("*Partridge* . . . should be utilized only in liability cases in which true concurrent causes, each originating from an independent act of negligence, simultaneously join together to produce injury").  The same conclusion is dictated here.  The SEC's and Trustee's allegations do not exist independently of the facts alleged in the *Tripp* Litigation but arise out of the alleged conduct, described in *Tripp*, which led to the demise of IndyMac and IndyMac Bank.

Specifically, the only way that the SEC can allege that Mr. Perry failed to disclose IndyMac's deteriorating condition and that the Trustee can allege that IndyMac directors and officers breached fiduciary duties is by virtue of the allegedly deficient business practices at issue in the *Tripp* Litigation.

**5.      Because the *Tripp* and Prior Notice Exclusions Are Not Ambiguous, No Discovery Is Necessary.**

Mr. Perry makes an incongruous argument that he is "entitled to secure a declaration of defense cost coverage before discovery commences" but that "the insurers are unable to secure a contrary declaration unless and until the insured is afforded a full opportunity to pursue discovery."  Perry Mot. at 4:14-18.  This argument is misinformed. As a threshold matter, it is significant that Mr. Perry does not allege in his counterclaims or his motion that the *Tripp* or Prior Notice Exclusions are ambiguous.  Indeed, he cannot, because the *Tripp* Exclusion and Prior Notice Exclusions are clear and explicit on their faces.  As a result, Mr. Perry is not entitled to fish for evidence in an attempt to establish an ambiguity.  *See Hervey v. Mercury Cas. Co.*, 185 Cal. App. 4th 954, 963-64, 110 Cal. Rptr. 3d 890 (2010) (refusing insured permission "to plead ambiguity of the policy and to obtain and introduce extrinsic evidence of her interpretation" because, had insured actually relied on such evidence in obtaining insurance, she would have alleged that reliance or sought leave to amend to do so).

Under California law, a policy provision is only ambiguous when it is "susceptible of two or more reasonable constructions."  *Qualcomm, Inc. v. Certain Underwriters at Lloyd's, London*, 161 Cal. App. 4th 184, 192, 73 Cal. Rptr. 3d 770 (2008) (citation omitted).  A policy provision is unambiguous where its language is clear and explicit. *See Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 867, 855 P.2d 1263, 21 Cal. Rptr. 2d 691 (1993) (stating that the "clear and explicit" meaning of a policy provision controls judicial interpretation) (citations omitted).  If the "clear and explicit" meaning of a provision interpreted in its "ordinary and popular sense" can be inferred solely from the written provisions of the insurance contract, that meaning

controls.  *Id.*; *see also Bank of the West v. Superior Ct.*, 2 Cal. 4th 1254, 1264, 833 P.2d 545, 10 Cal. Rptr. 2d 538 (1992) ("If contractual language is clear and explicit, it governs," citing California Civil Code section 1638, which provides, "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity"); *Waller v. Truck Ins. Exch. Inc.,* 11 Cal. 4th 1, 18-19, 900 P.2d 619, 44 Cal. Rptr. 2d 370 (1995) ("Courts will not strain to create an ambiguity where none exists.").  Moreover, California courts have held that parol evidence is not admissible to establish an ambiguity if it contradicts a "clear and explicit" policy provision.  *Hervey*, 185 Cal. App. 4th at 961.

The language of the *Tripp* and Prior Notice Exclusions clearly and explicitly bar coverage for any Claim "based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving" *any* fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions underlying or alleged in the *Tripp* Litigation.  Because the *Tripp* and Prior Notice Exclusions are clear and explicit, Mr. Perry is not entitled to take discovery to establish an ambiguity, as any extrinsic evidence proffered to contradict the *Tripp* Exclusion and Prior Notice Exclusions' clear and explicit meaning would be inadmissible.  *See id*.

Similarly, Mr. Perry's arguments regarding "reasonable expectations" and premiums paid are irrelevant.  Perry Mot. at 13:22-28.  Under California law, a "policyholder's 'reasonable expectation' of coverage *is only relevant* when the policy is ambiguous."  *In re K.F. Dairies*, 224 F.3d 922, 926 (9th Cir. 2000) (emphasis in original) (citation omitted); *see also AIU Ins. Co. v. Superior Ct.,* 51 Cal. 3d 807, 822, 799 P.2d 1253, 274 Cal. Rptr. 820 (1990) (the insured's objectively reasonable expectations of coverage are considered only if the language is susceptible to more than one interpretation).  As described above, the language of the *Tripp* Exclusion and Prior Notice Exclusions is clear and explicit, and Mr. Perry has alleged no reasonable basis for asserting otherwise.  Also, the California case law cited by Mr. Perry itself confirms that a court will look to the insurance premiums charged only where the "reasonable

expectations" of the insured are deemed relevant, *i.e.*, where the policy is ambiguous. *See Herzog v. Nat'l Am. Ins. Co.,* 2 Cal. 3d 192, 197, 465 P.2d 841, 84 Cal. Rptr. 705 (1970) (stating that the "reasonable expectations of the insured" do not contemplate that a homeowner's policy will provide automobile coverage as other insurance "with a premium commensurate to the increased risks" is available for that purpose); *Fidelity & Deposit Co. v. Charter Oak Fire Ins. Co.*, 66 Cal. App. 4th 1080, 1086, 78 Cal. Rptr. 2d 429 (1998) (stating that "if insured paid relatively small premium, it is not reasonable to expect that insurer intended to create entirely new areas of risk") (citation omitted). Because the language of the 08-09 Policies is unambiguous, the court should not consider "reasonable expectations" or the premiums charged for the policies.

### 6.    The Interrelated Wrongful Acts Analysis Is Irrelevant for the Purpose of Applying the *Tripp* and Prior Notice Exclusions.

Mr. Perry asserts that the "One Claim Clause[s]" in the 08-09 Policies do not apply because the *Tripp* Litigation, Trustee Litigation, and SEC Litigation do not involve Interrelated Wrongful Acts.  Perry Mot. 17:11-14.  This analysis and Mr. Perry's supporting case law interpreting "interrelated wrongful acts" is irrelevant to whether the *Tripp* Exclusion and Prior Notice Exclusions operate to preclude coverage for the Trustee Litigation and SEC Litigation.

Moreover, Mr. Perry is incorrect.  For the reasons discussed more fully in the 08-09 Carriers' motions for judgment on the pleadings, Mr. Perry's focus on the Trustee and SEC Litigation ignores that these matters are but a slice of the relevant Claim.  *See* D.E. 192 at 17-18; D.E. 194 at 10-11, n.6.  The Trustee Litigation and SEC Litigation are deemed under the 08-09 Policies to be a single Claim with the *Tripp* Litigation and other matters discussed in the 08-09 Carriers' motions because they arise out of the series of related facts, circumstances and Wrongful Acts underlying all these matters from different perspectives, precipitated by IndyMac's alleged company-wide culture of loosening or disregarding sound loan underwriting and associated capital and liquidity practices.  *See, e.g., WFS Fin. Inc. v. Progressive Cas. Ins. Co.,* 232 F. App'x 624, 625

(9th Cir. 2007) (lawsuits filed by "different sets of plaintiffs, in . . . different fora under . . . different legal theories" involved "interrelated wrongful acts").  Because the first of these matters, the *Tripp* Litigation, was filed during the 07-08 Policy Period, this Claim is deemed first made during that period, prior to the inception of the 08-09 Policies and outside their grant of coverage.

Accordingly, Mr. Perry wrongly asserts that he is "on his own" in his defense of the Trustee Litigation and the SEC Litigation.  Perry Mot. 4:4-5.  That defense has been funded by 07-08 Policies through an orderly process overseen by mediator Judge Dickran Tevrizian (Ret.).  Indeed, to date, the 07-08 carriers have already advanced approximately $26 million to the Insureds for the payment of defense costs.  Mr. Perry has hardly been left on his own.

**D.**     **The 08-09 Carriers Are Not Obligated to Pay Defense Costs Where the 08-09 Policies Provide "No Possibility of Coverage."**

Mr. Perry asserts that "the Year 2 Policies impose on the Insurers a duty to pay Mr. Perry's defense costs rather than the more traditional duty to defend," and cites to *Gon v. First State Insurance Co.*, 871 F.2d 863 (9th Cir. 1989), for the proposition that California courts do not distinguish between an insurer's "duty to defend" and "duty to pay."  Perry Mot. at 11:25-27.  However, even accepting that the 08-09 Carriers' obligations are considered to be the same as a duty to defend, California law is clear that "'where there is no possibility of coverage, there is no duty to defend . . . .'"  *Waller,* 11 Cal. 4th at 18-19 (citation omitted).  As described above, the application of the *Tripp* Exclusion and Prior Notice Exclusions establishes that there is no possibility of coverage under the 08-09 Policies for the Trustee Litigation or the SEC Litigation.  Accordingly, the 08-09 Carriers have no obligation to pay Mr. Perry's defense costs for those matters.

**IV.**     **CONCLUSION**

For the reasons set forth above, the Court should deny Mr. Perry's Motion for Judgment on the Pleadings as a matter of law.

08-09 CARRIERS' OPPOSITION TO PERRY MOTION FOR JUDGMENT ON THE PLEADINGS

1   Dated: December 16, 2011          TRESSLER LLP

2
                                      By:   /s/ Elizabeth L. Musser
3                                              David Simantob
                                               Elizabeth L. Musser
4                                              Attorneys for Counterdefendants
                                               Catlin Insurance Company (UK) Ltd.,
5                                              Continental Casualty Company, and
                                               Twin City Fire Insurance Company, and
6                                              Intervenor Counterdefendants Those Certain
                                               Underwriters at Lloyd's, London Subscribing to
7                                              Policy No. QA011608
8
9
10  Dated: December 16, 2011          SEDGWICK LLP

11
                                      By:   /s/ Brian D. Harrison
12                                             Brian D. Harrison
                                               Robert S. Gebhard
13                                             Veena A. Mitchell
                                               Attorneys for Counterdefendant
14                                             Zurich American Insurance Co.
15
16  Dated: December 16, 2011          WILEY REIN LLP
                                      LEWIS BRISBOIS BISGAARD & SMITH LLP
17
18                                    By:/s/ Jason P. Cronic
                                               Jason P. Cronic
19                                             Gordon J. Calhoun
                                               Douglas R. Irvine
20                                             Attorneys for Plaintiff/Counterclaim Defendant
                                               XL Specialty Insurance Company
21
22
23  Dated: December 16, 2011          TUCKER ELLIS & WEST LLP
24
                                      By:   /s/ Kim W. West
25                                             Kim W. West
                                               Alec H. Boyd
26                                             Attorneys for Plaintiff/Counterdefendant
                                               Arch Insurance Company
27
28

1

Dated: December 16, 2011          WALKER WILCOX MATOUSEK LLP

2

3                                 By:   /s/ Edward P. Gibbons
                                        Edward P. Gibbons
4                                       Tiffany Saltzman-Jones
                                        Attorneys for Plaintiff/Counterdefendant
5                                       ACE American Insurance Company

6

7    Dated: December 16, 2011          BATES CAREY NICOLAIDES LLP

8

9                                 By:   /s/ Andrew S. Smith
                                        Andrew W. Smith
                                        Ross B. Edwards
10                                      Attorneys for Plaintiff/Counterdefendant
                                        AXIS Insurance Company
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28