LOUIS E. KEMPINSKY (State Bar No. 90068)
E-mail:  lkempinsky@pwkllp.com
JOHN C. KEITH (State Bar No. 229755)
Email:  jkeith@pwkllp.com
PEITZMAN WEG & KEMPINSKY LLP
10100 Santa Monica Boulevard
Los Angeles, CA  90067
Phone:  310-552-3100
Fax:  310-552-3101

D. JEAN VETA (*pro hac vice*)
E-mail:  jveta@cov.com
DENNIS B. AUERBACH (*pro hac vice*)
E-mail:  dauerbach@cov.com
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, D.C.  20004
Phone:  202-662-6000
Fax:  202-662-6291

Attorneys    for    Defendant/Counterclaimant
Michael W. Perry

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| XL SPECIALTY INSURANCE COMPANY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL W. PERRY, *et al.*,<br><br>Defendants. | **Case No. 2:11-CV-2078-GHK-JCG**<br><br>**MICHAEL W. PERRY'S OPPOSITION TO ABC CARRIERS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>**Date:  January 17, 2012**<br><br>**Time:  9:00 a.m.**<br><br>**Courtroom:  850**<br><br>**Judge:  Hon. R. Gary Klausner** |

1

2     **MICHAEL W. PERRY, A. SCOTT**

3     **KEYS, S. BLAIR ABERNATHY,**
      **JOHN OLINSKI, SAMIR GROVER,**
4     **SIMON HEYRICK, VICTOR H.**

5     **WOODWORTH, SCOTT VAN**
      **DELLEN, WILLIAM ROTHMAN,**
6     **JILL JACOBSON, AND KEVIN**

7     **CALLAN,**

8                                **Counterclaimants,**

9     **v.**

10    **XL SPECIALTY INSURANCE**

11    **COMPANY, ARCH INSURANCE**
      **COMPANY, ACE AMERICAN**
12    **INSURANCE COMPANY, AXIS**

13    **INSURANCE COMPANY, CATLIN**
      **INSURANCE COMPANY, LTD,**
14    **ZURICH AMERICAN INSURANCE**

15    **COMPANY; TWIN CITY FIRE**
      **INSURANCE COMPANY; and**
16    **CONTINENTAL CASUALTY**

17    **COMPANY,**

18                                **Counterdefendants**

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2

3

I.      INTRODUCTION ............................................................................. 1

4

5

II.     ARGUMENT ................................................................................... 2

6

A.      The ABC Carriers Ignore Multiple Principles of California Insurance Law

7

that Invalidate their Arguments. ............................................................. 3

8

  1.    The ABC Carriers Bear the Burden of Proof ............................... 3

9

  2.    The ABC Carriers' Motion is Untenable as to Coverage for Defense Costs

10

and Premature as to Coverage for Any Settlement or Judgment. ...................... 4

11

  3.    The ABC Carriers' "All-or-Nothing" Approach Ignores the Fact that Each

12

Underlying Matter May Include Multiple "Claims." ........................................ 6

13

  4.    "The Slightest of Connections" is not Enough to Trigger the Exclusions. 8

14

  5.    The *Tripp* and Prior Notice Exclusions Are Ambiguous as Applied to the

15

Underlying Matters. ......................................................................... 11

16

  6.    Mr. Perry is Entitled to Discover and Present Extrinsic Evidence Before

17

Any Ruling Can Be Made Against Him. ..................................................... 14

18

B.      The ABC Carriers' Attempt to Bar Coverage for the Trustee and SEC

19

Matters Well Reflects Their Flawed Analysis. ........................................... 16

20

  1.    The Trustee Litigation Is Based on Improper Capital Contributions from

21

Bancorp to the Bank and *Disclaims* Reliance on Allegations in *Tripp* ............ 16

22

  2.    The SEC Litigation is Based on Alleged Non-Disclosure of Events that

23

Occurred After, and are Not Alleged in, *Tripp*. .......................................... 19

24

25

26

27

28

MICHAEL W. PERRY'S OPPOSITION TO ABC
CARRIERS' MOTION FOR JUDGMENT ON
THE PLEADINGS

1

2

**<u>TABLE OF AUTHORITIES</u>**

3

**Page(s)**

4

**CASES**

5

*ACE Am. Ins. Co. v. Ascend One Corp.*,

6

   570 F. Supp. 2d 789 (D. Md. 2008) ...................................................................... 9

7

*Admiral Ins. Co. v. Briggs*,

8

   264 F. Supp. 2d 460 (N.D. Tex. 2003) .............................................................. 19

9

*AIU Ins. Co. v. Superior Court*,

   51 Cal. 3d 807, 799 P.2d 1253, 274 Cal. Rptr. 820 (1990) ............................... 14

10

11

*American Med. Sec., Inc. v. Executive Risk Specialty Ins. Co.*,

   393 F. Supp. 2d 693 (E.D. Wis. 2005) .............................................................. 12

12

13

*Applied Elastomerics, Inc. v. Z-Man Fishing Prods., Inc.*,

   521 F. Supp. 2d 1031 (N.D. Cal. 2007) ............................................................ 16

14

15

*AT&T Corp. v. Faraday Capital Ltd.*,

   918 A.2d 1104 (Del. 2007) .................................................................................. 7

16

17

*Bank of the West v. Superior Court*,

   2 Cal. 4th 1254, 833 P.2d 545, 10 Cal. Rptr. 2d 538 (1992) ............................ 15

18

19

*Bay Cities Paving & Grading, Inc. v. Lawyers*
   *Mutual Insurance Co.*,
   5 Cal. 4th 854, 855 P.2d 1263, 21 Cal. Rptr. 2d 691 (1993) .................... 6, 8, 11

20

21

*Buss v. Superior Court of Los Angeles Cnty.*,

   16 Cal. 4th 35, 939 P.2d 766, 65 Cal. Rptr. 2d 366 (1997) ............................ 4, 6

22

23

*Century Transit Systems, Inc. v. American Empire Surplus*
   *Lines Insurance Co.*,

24

   42 Cal. App. 4th 121, 49 Cal. Rptr. 2d 567 (1996) ............................................. 8

25

*Continental Casualty Co. v. City of Richmond*,

26

   763 F.2d 1076 (9th Cir. 1985) .......................................................................... 8, 9

27

*Dore v. Arnold Worldwide, Inc.*,

   39 Cal.4th 384, 139 P.3d 56, 46 Cal. Rptr. 3d 668 (2006) ............................... 14

28

MICHAEL W. PERRY'S OPPOSITION TO ABC
CARRIERS' MOTION FOR JUDGMENT ON
THE PLEADINGS

*Federal Ins. Co. v. Raytheon Co.*,
    426 F.3d 491 (1st Cir. 2005) ............................................................. 12

*Financial Management Advisors, LCC v. American*
    *International Specialty Lines Insurance Co.*,
    506 F.3d 922 (9th Cir. 2007) .............................................................. 9

*First Trenton Indem. Co. v. River Imaging, P.A.*,
    2009 WL 2431649 (N.J. Super. A.D. Aug. 11, 2009) .......................... 10

*GGIS Ins. Servs., Inc. v. Superior Court*,
    168 Cal. App. 4th 1493, 86 Cal. Rptr. 3d 515 (2008) ........................ 14

*Gon v. First State Ins. Co.*,
    871 F.2d 863 (9th Cir. 1989) ............................................................... 4

*Gray v. Zurich Insurance Co.*,
    65 Cal. 2d 263, 419 P.2d 168, 54 Cal. Rptr. 104
    (1966) (en banc) .......................................................................... 5, 19

*Gregory v. Home Ins. Co.*,
    876 F.2d 602 (7th Cir. 1989) ............................................................. 11

*Haynes v. Farmers Ins. Exch.*,
    32 Cal. 4th 1198, 89 P.2d 381, 13 Cal.Rptr. 3d 68 (2004) ................. 13

*Highwoods Props., Inc. v. Executive Risk Indem., Inc.*,
    407 F.3d 917 (8th Cir. 2005) ............................................................. 11

*Home Ins. Co. of Ill. (N.H.) v. Spectrum Info. Techs., Inc.*,
    930 F. Supp. 825 (E.D.N.Y. 1996) ................................................. 7, 10

*HSBC Bank USA, N.A. v. Dara Petroleum, Inc.*,
    No. Civ. 2:09-2356WBSEFB, 2010 WL 2197525
    (E.D. Cal. May 28, 2010) ................................................................. 16

*In re K.F. Dairies, Inc. & Affiliates*,
    224 F.3d 922 (9th Cir. 2000) ............................................................. 14

*James River Ins. Co. v. Kemper Cas. Ins. Co.*,
    585 F.3d 382 (7th Cir. 2009) (Posner, J.) ......................................... 18

*Medill v. Westport Ins. Co.*,
    143 Cal. App. 4th 819, 49 Cal Rptr. 3d 570 (2006) ............................. 9

MICHAEL W. PERRY'S OPPOSITION TO ABC
CARRIERS' MOTION FOR JUDGMENT ON
THE PLEADINGS

*Pacific Gas & Electric Co. v. G. W. Thomas Drayage & Rigging Co.*,
  69 Cal. 2d 33, 442 P.2d 641, 69 Cal. Rptr. 561 (1968) ................................ 14, 15

*Prichard v. Liberty Mut. Ins. Co.*,
  84 Cal. App. 4th 890, 101 Cal. Rptr. 2d 298 (2000) ........................................... 3

*Silgan Containers v. Nat'l Union Fire Ins.*,
  No. C 09-05971 RS (LB), 2010 WL 5387748
  (N.D. Cal. Dec. 21, 2010) .................................................................................... 15

*Southridge Capital Mgmt., LLC v. Twin City Fire Ins. Co.*,
  No. X04CV020103527S, 2006 WL 2730312
  (Conn. Super. Ct. Sept. 8, 2006) ........................................................................ 10

*Sprint Nextel Corp. v. Executive Risk Indemn.*,
  2010 WL 5623408 (D. Kan. Sept. 21, 2010) ..................................................... 10

*Ticor Title Ins. Co. of Cal. v. Am. Resources, Ltd.*,
  859 F.2d 772 (9th Cir. 1998) ................................................................................. 6

*Trident Ctr. v. Connecticut Gen. Life Ins. Co.*,
  847 F.2d 564 (9th Cir. 1988) ............................................................................... 14

*U.S. v. Pressman-Gutman Co.*,
  721 F. Supp. 2d 1333 (Ct. Int'l Trade 2010) ....................................................... 3

*Waller v. Truck Ins. Exch., Inc.*,
  11 Cal. 4th 1, 900 P.2d 619, 44 Cal. Rptr. 2d 370 (1995) .................................... 4

*Western International Syndication Corp. v. Gulf Insurance Co.*,
  No. CV 04–2349–RGK, 2004 WL 2580788,(C.D. Cal. Sept. 2, 2004),
  *aff'd*, 222 F. App'x 589 (9th Cir. 2007). ................................................... 5, 6, 7, 8

*Zunenshine v. Executive Risk Indemn., Inc.*,
  No. 97 Civ. 5525(MBM), 1998 WL 483475 (S.D.N.Y. Aug. 17, 1998) ........... 11

*Zunenshine v. Executive Risk Indemnity, Inc.*,
  182 F.3d 902, 1999 WL 464988 (2d Cir. June 29, 1999) ............................. 10, 11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 18(a) .................................................................................................. 7

MICHAEL W. PERRY'S OPPOSITION TO ABC
CARRIERS' MOTION FOR JUDGMENT ON
THE PLEADINGS

# I.    <u>INTRODUCTION</u>

In exchange for substantial premiums, the ABC Carriers issued policies for the Year 2 period commencing on March 1, 2008.  These carriers nevertheless seek to avoid their coverage obligations for a number of claims first made after that date (the "Underlying Matters") by resort to two policy exclusions.  Specifically, they disavow coverage because the Underlying Matters purportedly share "factual connections" with the *Tripp* litigation.  The ABC Carriers are mistaken as a matter of law and fact.

The ABC Carriers assert (Br.[1] at 11) that coverage for the Underlying Matters is excluded so long as there exists even "*the slightest of connections*" between *Tripp* and the Underlying Matters.  This assertion, however, is flatly inconsistent with California law, which recognizes that a merely attenuated connection among lawsuits does not justify treating them as a single claim.  Here, because there is at most an attenuated connection between *Tripp* and a number of the Underlying Matters, the ABC Carriers may not avoid their defense obligations under the Year 2 policies.

The *Tripp* shareholder lawsuit was filed in March 2007, at the outset of the Year 1 policy period.  The gravamen of *Tripp* is disclosures made by IndyMac in 2006 and early 2007.  By contrast, the Underlying Matters that the carriers seek to exclude include allegations of wrongdoing that are both substantively and temporally distinct.  Nevertheless, the ABC Carriers argue that *Tripp* precludes coverage for all of the Underlying Matters in Year 2 because they share with *Tripp* certain (legally inoperative) background allegations regarding IndyMac's business practices.  If the ABC Carriers are correct that all lawsuits containing background allegations regarding a company's business practices must be deemed a single claim, then virtually every lawsuit covered under a D&O policy would be related to

---

[1] Citations to the ABC Carriers' brief (Dkt 194) are given as "Br. at __."

MICHAEL W. PERRY'S OPPOSITION TO ABC
CARRIERS' MOTION FOR JUDGMENT ON
THE PLEADINGS

1  the first such suit, thereby rendering policy renewals largely superfluous.

2          The ABC Carriers' motion, moreover, asks this Court to ignore numerous

3  rules of procedural and substantive law that preclude entry of judgment in favor of

4  these carriers at this early stage of the litigation.  For instance, under California law,

5  insurance policy exclusions must be narrowly construed, the burden of proving the

6  applicability of an exclusion falls on the insurer, and ambiguous policy language

7  must be construed in favor of the insured.  Here, giving the policy exclusions a

8  narrow construction and resolving all ambiguities in favor of the insureds, it is clear

9  that the ABC Carriers are not entitled to judgment as a matter of law.  The ABC

10  Carriers' request for a pre-discovery judgment also founders on well-established

11  law (i) requiring the insurer to provide defense coverage as long as there is a mere

12  potential for coverage, (ii) barring adverse determinations on indemnity coverage

13  until there is a settlement or judgment, and (iii) foreclosing an all-or-nothing

14  approach to coverage that ignores the fact that an individual lawsuit can be

15  comprised of more than one claim.

16          Mr. Perry is mindful that this Court now has before it three motions for

17  judgment on the pleadings, including motions filed by Mr. Perry (Dkt. 195), the

18  ABC Carriers (Dkt. 194), and the A-Side Carriers (Dkt. 192).   This opposition

19  brief will focus on the ABC Carriers' brief.  Mr. Perry has filed a separate

20  opposition to the motion of the A-Side Carriers and respectfully incorporates by

21  reference the arguments made in that opposition.

22                        **II.   ARGUMENT**

23          The ABC Carriers ask this Court to grant their motion for judgment on the

24  pleadings and declare that there is no coverage under their Year 2 Policies for either

25  defense or indemnity costs in connection with any of twelve Underlying Matters.

26  In so arguing, they place exclusive reliance on the *Tripp* and Prior Notice

27  Exclusions and paint with an exceedingly broad brush in describing the Underlying

28  Matters and their purported relationship with *Tripp*.  In presenting their arguments,

MICHAEL W. PERRY'S OPPOSITION TO ABC
CARRIERS' MOTION FOR JUDGMENT ON
THE PLEADINGS

they fail to give effect to the governing procedural and substantive law, as well as the terms of their policies and the nature of the Underlying Matters. Once those matters of law and fact are framed, it is plain for a number of independently dispositive reasons that the motion must be denied.

### A.  The ABC Carriers Ignore Multiple Principles of California Insurance Law that Invalidate their Arguments.

The ABC Carriers' motion rests, either implicitly or explicitly, on a multitude of errors regarding the requirements of California insurance law, any one of which precludes the relief they seek.

### 1.  The ABC Carriers Bear the Burden of Proof.

California law places "the burden of establishing the applicability of an exclusion" on the insurer. *See Prichard v. Liberty Mut. Ins. Co.*, 84 Cal. App. 4th 890, 910, 101 Cal. Rptr. 2d 298, 312 (2000). The sole basis for the ABC Carriers' motion is their contention that the *Tripp* and Prior Notice Exclusions apply.[2] Accordingly, both as movant and as the proponent of a policy exclusion, the burden of proof rests squarely on the ABC Carriers, not on Mr. Perry.

Nor does this Court have any obligation to search the record to do what the ABC Carriers have *not* done here -- namely, to determine what Claim or Claims are stated by each of the Underlying Matters states and whether the plaintiffs could sustain any of those Claims against Mr. Perry without resort to proof of any of the allegations in *Tripp*. *See U.S. v. Pressman-Gutman Co.,* 721 F. Supp. 2d 1333, 1363 n.24 (Ct. Int'l Trade 2010) ("Parties are not permitted to make bald, sweeping assertions such as these and then expect the court to make their case for them."). By choosing to place at issue *23* complaints and demand letters (including seven

---

[2] While the ABC Carriers seek to reserve the right to raise other coverage issues, they state (Br. at 11 n.6) that their motion relies only on the contention that the *Tripp* and Prior Notice Exclusions bar coverage for the Underlying Matters.

MICHAEL W. PERRY'S OPPOSITION TO ABC CARRIERS' MOTION FOR JUDGMENT ON THE PLEADINGS

different versions of the *Tripp* complaint), totaling *over 2,400 pages*, the ABC Carriers have chosen to assume the burden of explaining to the Court what exactly is contained in this mass of paper.  The few sentences they devote to selectively and tendentiously explaining the allegations of the Underlying Matters fall well short of satisfying their burden.

<blockquote>2.      **The ABC Carriers' Motion is Untenable as to Coverage for Defense Costs and Premature as to Coverage for Any Settlement or Judgment.**</blockquote>

The ABC Carriers' motion improperly conflates an insurer's obligation to pay defense costs with its obligation to indemnify an insured for a judgment or settlement.  Under California law, the ABC Carriers must pay Mr. Perry's defense costs unless they can prove that there is no possibility of coverage.  Their motion fails to clear this high bar.  With respect to coverage for any possible future settlements or judgments, moreover, the ABC Carriers' motion must be denied as premature, since no settlement or judgment has yet been entered.

<u>**Defense Costs.**</u>  Under California law, an insurer has a duty to *defend* an insured unless there is "[n]o possibility of coverage" under the insurer's policy. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 19, 900 P.2d 619, 627, 44 Cal. Rptr. 2d 370, 378 (1995).[3]  Thus, the ABC Carriers have a duty to provide defense coverage for each Underlying Matter that includes at least one potentially covered Claim.  *See Buss v. Superior Court of Los Angeles Cnty.*, 16 Cal. 4th 35, 49, 939 P.2d 766, 775, 65 Cal. Rptr. 2d 366, 375 (1997) (insurer "cannot parse the claims, dividing those that are at least potentially covered from those that are not," but must

---

[3] The Year 2 Policies impose on the Insurers a duty to pay Mr. Perry's defense costs rather than the functional duty to defend; nevertheless, an insurer's obligation to pay defense costs is determined by the same standards that apply to the duty to defend.  *See, e.g.*, *Gon v. First State Ins. Co.*, 871 F.2d 863, 868 (9th Cir. 1989) (applying duty-to-defend standards to insurer's duty to advance defense costs).

1   provide a defense for the entire action).  Moreover, as this Court correctly held in

2   *Western International Syndication Corp. v. Gulf Insurance Co.*, "the duty to defend

3   is based on the potential liability suggested by the facts alleged, rather than the form

4   or title of a cause of action," and the complaint "need not formally assert causes of

5   action" if the facts alone suggest a claim that could trigger the duty to defend.  *See*

6   No. CV 04–2349–RGK, 2004 WL 2580788, at *12 n.3 (C.D. Cal. Sept. 2, 2004),

7   *aff'd*, 222 F. App'x 589 (9th Cir. 2007).

8          Allegations that are inessential to a particular Claim, moreover, cannot be

9   used to exclude that Claim from coverage.  As the California Supreme Court noted

10  in *Gray v. Zurich Insurance Co.*, 65 Cal. 2d 263, 419 P.2d 168, 54 Cal. Rptr. 104

11  (1966) (en banc), "pleadings are malleable, changeable and amendable" and may be

12  drafted "in the broadest terms" to allege claims that superficially appear to be

13  excluded but which may prove at trial to rest on a basis that is in fact covered.  *Id*.

14  at 276, 419 P.2d at 176, 54 Cal. Rptr. at 112.  *Gray* thus cautioned against finding

15  an entire action to be excluded from coverage based on allegations that may be

16  inessential to recovery and were included only to "spice up" an otherwise prosaic

17  complaint in a "dramatic" fashion.  A claimant "may very well stretch the action

18  which lies in only nonintentional conduct," to use the example discussed in *Gray*,

19  "to the dramatic complaint that alleges intentional misconduct," but coverage would

20  apply if proof at trial showed that the insured "engaged only in nonintentional

21  tortious conduct."  *Id*. at 276-77, 419 P.2d at 176-77, 54 Cal. Rptr. at 112-13.

22         California law thus permits an insurer to disclaim its duty to defend only if a

23  careful analysis of all the Claims suggested by the facts alleged in a given

24  complaint shows that *none* of them create even a potential for coverage.  No such

25  careful analysis appears in the ABC Carriers' brief, which resorts to broad-brush

26  summaries of the Underlying Matters rather than the sort of line-by-line analysis

27  this Court conducted in *Western International Syndication* and that is required

28  under *Gray*.  Nowhere do the ABC Carriers even purport to delineate all of the

MICHAEL W. PERRY'S OPPOSITION TO ABC
CARRIERS' MOTION FOR JUDGMENT ON
THE PLEADINGS

"Claims" contained in each Underlying Matter or to demonstrate that the allegations in *Tripp* are essential to recovery on all of these Claims.  Accordingly, their request for judgment with respect to defense expenses should be denied.

**Settlement or Judgment Costs.**  As this Court explained in *Western International Syndication*, an insurer's duty to indemnify "arises only after liability is established" in the underlying matter.  No. CV 04-2349-RGK (JWJX), 2004 WL 5573919, at *2 (C.D. Cal. Dec. 20, 2004) (quoting *Buss v. Superior Court*, 16 Cal. 4th 35, 46, 939 P.2d 766, 773, 65 Cal. Rptr. 2d 366, 373 (1977)).  Thus, this Court held that, until liability in the underlying matter had been determined, a dispute concerning the insurer's duty to indemnify is not ripe for decision:

> [J]udges of the Ninth Circuit have indicated that until liability of  the insured is determined in the underlying action(s), there is no actual controversy as to the duty to indemnify…. Without a determination of liability, this Court simply cannot make determinations as to [the insurer's] duty to indemnify.

*Id.* at *2-*3; *see also Ticor Title Ins. Co. of Cal. v. Am. Resources, Ltd.*, 859 F.2d 772, 777 n.7 (9th Cir. 1998) (same).  Pursuant to this authority, the ABC Carriers' duty to indemnify Mr. Perry is an issue not properly before this Court at this time.

> **3.     The ABC Carriers' "All-or-Nothing" Approach Ignores the Fact that Each Underlying Matter May Include Multiple "Claims."**

The ABC Carriers' motion incorrectly takes an "all-or-nothing" approach, assuming that if *some* aspect of an Underlying Matter may implicate an allegation in *Tripp*, coverage is therefore excluded for the *entire* Underlying Matter.

California law takes a different approach.  The California Supreme Court held in *Bay Cities Paving & Grading, Inc. v. Lawyers Mutual Insurance Co.*, 5 Cal. 4th 854, 859, 855 P.2d 1263, 1265, 21 Cal. Rptr. 2d 691, 693 (1993), that "including multiple claims within a single action does not render them a single

MICHAEL W. PERRY'S OPPOSITION TO ABC CARRIERS' MOTION FOR JUDGMENT ON THE PLEADINGS

claim" for purposes of insurance coverage, and other courts have reached the same conclusion. *See, e.g.*, *Home Ins. Co. of Ill. (N.H.) v. Spectrum Info. Techs., Inc.*, 930 F. Supp. 825, 845-47, 850 (E.D.N.Y. 1996) ("initial amalgamation of claims in one suit" does not render them one "Claim" for purposes of D&O insurance coverage); *AT&T Corp. v. Faraday Capital Ltd.*, 918 A.2d 1104, 1108-09 (Del. 2007) (agreeing with *Spectrum*).  Treating a single lawsuit as including multiple "Claims" is entirely consistent with the policies' definition of a "Claim".  That term is not limited to lawsuits but also applies to "a written demand for monetary or non-monetary relief."[4]  This definition permits a single proceeding potentially to include more than one "Claim," since a complaint under modern pleading rules may include multiple demands for relief predicated on distinct factual bases.  *See, e.g.*, Fed. R. Civ. P. 18(a) (a party may join "as many claims as it has against an opposing party," even "independent" claims, in a single complaint); *see also Home*, 930 F. Supp. at 846 (interpreting similar definition of "Claim").

This Court's decision in *Western International Syndication* illustrates how a complaint may include several "Claims," only some of which fall within an exclusion's scope.  Although the bulk of the complaint at issue in that case alleged excluded trademark and breach of contract claims, this Court did not hold that the entire complaint was excluded from coverage.  Instead, the Court found that the underlying complaint also contained claims that were not barred by any applicable policy exclusion.  This Court accordingly held that the insurer "had not met its burden of showing no potential for coverage," 2004 WL 2580788, at *8, even

---

[4] The definition of "Claim" includes both "any written demand for damages or other  relief" and "any civil, criminal, administrative or regulatory proceeding." (Joint Stipulation [Dkt. 193] ("J.S.") Ex. 1, p. 27.)  The definition is, at best, ambiguous as to the number of "Claims" when applied to a civil proceeding that demands relief on multiple grounds.  California law requires such ambiguities to be construed in favor of coverage and in favor of the insured.

MICHAEL W. PERRY'S OPPOSITION TO ABC
CARRIERS' MOTION FOR JUDGMENT ON
THE PLEADINGS

though most of the claims pleaded in the complaint were excluded from coverage.

In sum, the *Tripp* and Prior Notice Exclusions apply to a "Claim," not to a "lawsuit." Even assuming for the sake of argument that *a* "Claim" alleged in one of the Underlying Matters is related to *Tripp*, the ABC Carriers have not even attempted to satisfy their burden of showing that each and every Claim raised in the Underlying Matters is related to *Tripp* in any legally cognizable way.[5]

## 4. "The Slightest of Connections" is not Enough to Trigger the Exclusions.

One of the ways the ABC Carriers attempt to sidestep their burden of proof is by misconstruing the *Tripp* and Prior Notice Exclusions to require them to show "only the slightest of connections" between *Tripp* and the Underlying Matters. The ABC Carriers do not cite a single case that actually applies their "only the slightest of connections" standard, which on its face is inconsistent with both California law and common sense. *See, e.g.*, *Bay Cites*, 5 Cal. 4th at 873, 855 P.2d at 1275, 21 Cal. Rptr. 2d at 703 (noting that "[a]t some point" the relationship between two claims "might be so attenuated or unusual that an objectively reasonable insured could not have expected that they would be treated as a single claim…").[6]

---

[5] This principle, as well as the ambiguity of the policies generally, explains why there is no inconsistency in Mr. Perry's position that he is entitled at least to coverage of his defense costs under both the Year 1 and Year 2 Policies: the fact that an Underlying Matter includes a claim covered under the Year 2 Policies does not preclude it from also stating a distinct claim covered under the Year 1 Policies. That said, the ABC carriers raise no issue regarding Year 1; they only seek relief from their Year 2 Policy obligations.

[6] Indeed, many of the cases they do cite stand, at best, for the limited proposition that a claim "arises out of" or is "based on" a particular fact only if that fact is an essential element of the claim. *Century Transit Systems, Inc. v. American Empire Surplus Lines Insurance Co.*, 42 Cal. App. 4th 121, 127-28, 49 Cal. Rptr. 2d 567, 571-72 (1996), involved a claim against an employer for an assault committed by its employee, the assault being an *essential element* of the claim. The case *Century* cites for the "slight connection" requirement -- *Continental Casualty Co. v. City of*

MICHAEL W. PERRY'S OPPOSITION TO ABC CARRIERS' MOTION FOR JUDGMENT ON THE PLEADINGS

1    That California has rejected the ABC Carriers' "slightest of connections" test
2  is amply demonstrated by the Ninth Circuit's decision in *Financial Management*
3  *Advisors, LCC  v. American International Specialty Lines Insurance Co.*, 506 F.3d
4  922, 925-26 (9th Cir. 2007).  In that case, the Ninth Circuit cited *Bay Cities* and
5  held that two different lawsuits against the same investment management company
6  were not related, despite the fact that both involved the same investment advisor
7  and implicated advice given by that advisor to two different clients to invest in the
8  same investment vehicle.  Thus, the Ninth Circuit made clear that two claims are
9  not necessarily related for purposes of applying a policy exclusion even where there
10  is a substantial amount of factual overlap between the claims.

11    The ABC Carriers' sweeping interpretation of the policy exclusions --which
12  they argue would result in a denial of coverage for Underlying Matters that are both
13  substantively and temporally disconnected from the allegations in *Tripp* -- is also
14  inconsistent with the common-sense construction given to similar policy terms by
15  courts throughout the nation.  *See, e.g.*, *ACE Am. Ins. Co. v. Ascend One Corp.*, 570
16  F. Supp. 2d 789, 800 (D. Md. 2008) (holding that underlying claims were too
17  "different in scope and time" to be related where otherwise similar wrongdoing
18  occurred in different years).  To be sure, "some degree of relatedness is going to
19  exist among almost any claims brought against an insured, especially in the field of
20  directors' and officers' liability insurance"; but for this reason, the courts recognize
21  that "there clearly have to be boundaries of some sort" in determining whether a

22

---

23  *Richmond*, 763 F.2d 1076 (9th Cir. 1985) -- likewise involved a claim excluded as
24  "arising directly or consequentially from bodily injury" because bodily injury was
   an *essential element* of the claim.  *See id.* at 1081.  *See also Medill v. Westport Ins.*
25  *Co.*, 143 Cal. App. 4th 819, 829-30, 49 Cal Rptr. 3d 570, 578-79 (2006) (exclusion
26  for claims "arising out of breach of contract" applied because "there could be no
   recovery against the directors and officers for mismanagement" absent proof of a
27  breach of contract).  The ABC Carriers have not even attempted to show that the
28  Underlying Matters would be excluded under this "essential element" standard.

policy exclusion applies. *Southridge Capital Mgmt., LLC v. Twin City Fire Ins. Co.*, No. X04CV020103527S, 2006 WL 2730312, at *9 (Conn. Super. Ct. Sept. 8, 2006) (concluding that the underlying claims at issue in that case were not related, despite the fact that "the general natures of the claimed transgressions" at issue in each of the underlying cases were "similar"). Accordingly, courts determining whether two lawsuits involve the same or related claims properly ignore "peripheral" allegations in complaints that are inessential to establishing liability, *see First Trenton Indem. Co. v. River Imaging, P.A.*, 2009 WL 2431649, at *5 (N.J. Super. A.D. Aug. 11, 2009), and reject the proposition that generic allegations of wrongdoing running through various complaints trigger comparable policy exclusions. *See Home Ins. Co. v. Spectrum Info. Techs., Inc.*, 930 F. Supp. 825, 850-51 (E.D.N.Y. 1996) (observing that mere allegation of a scheme to inflate a company's stock price running through various lawsuits is not sufficient to establish the applicability of a policy exclusion).[7]

The one non-California case that the ABC Carriers cite for the proposition that their exclusions apply to any claim "having any fact in common with" *Tripp* is not to the contrary. Indeed, *Zunenshine v. Executive Risk Indemnity, Inc.*, 182 F.3d 902, 1999 WL 464988 (2d Cir. June 29, 1999), involved two claims that had nearly *every* fact in common and thus presented a trivially obvious case for applying a prior notice exclusion similar to the Prior Notice Exclusion in the 08-09 D&O

---

[7] One of the ABC Carriers -- Zurich American -- argued in another D&O insurance case that "[f]or claims to be related it is not enough that they share superficial similarities, such as … generally similar allegations that the conduct of the board harmed shareholders. Such a broad reading of 'related' would effectively result in every securities suit being 'related' to the first suit filed because, on some level, all securities action involve allegations of board conduct that harms shareholders." Brief of Zurich Am. et al. in Support of Summary Judgment in *Sprint Nextel Corp. v. Executive Risk Indemn.*, 2010 WL 5623408 (D. Kan. Sept. 21, 2010).

MICHAEL W. PERRY'S OPPOSITION TO ABC CARRIERS' MOTION FOR JUDGMENT ON THE PLEADINGS

Policies.[8]  The ABC Carriers' reliance on *Zunenshine* is thus unavailing.

### 5.    The *Tripp* and Prior Notice Exclusions Are Ambiguous as Applied to the Underlying Matters.

The ABC Carriers' overbroad interpretation of the *Tripp* and Prior Notice Exclusions highlights the fact that these exclusions are ambiguous as applied to the Underlying Matters.  Ambiguity under California law is not an inherent quality of policy language but rather arises from uncertainty as to how that language should be applied to a particular case.  *See Bay Cities*, 5 Cal. 4th at 868, 855 P.2d at 1271, 21 Cal. Rptr.2d at 699 ("The proper question is whether the word is ambiguous in the context of *this* policy and the circumstances of *this* case.") (emphasis in original).[9]  It is clear enough that the *Tripp* and Prior Notice Exclusions were intended to preclude coverage under the Year 2 Policies for "copycat" lawsuits that merely parrot the allegations of *Tripp* or similar lawsuits that at a minimum overlap temporally and substantively with *Tripp*.  However, here we are not dealing with "copycat" or similar litigation.  That much is clear from the facts that (i) none of the Underlying Matters was filed until over a year after *Tripp*, and (ii) the judge before whom both *Tripp* and *Daniels* are pending has consolidated numerous securities

---

[8] *See Zunenshine v. Executive Risk Indemn., Inc.*, No. 97 Civ. 5525(MBM), 1998 WL 483475, at *2, *5 (S.D.N.Y. Aug. 17, 1998) (holding that the current claim arose out of the prior-noticed claim where both claims sought relief for "virtually identical" false statements concerning "SLM's net income for the first three quarters of 1993, the percentage of its sales spent on television advertising, and the effect the trademark infringement action had had on its financial condition."), *aff'd*, 182 F.3d 902, 1999 WL 464988 (2d Cir. June 29, 1999).

[9] *See also Highwoods Props., Inc. v. Executive Risk Indem., Inc.*, 407 F.3d 917, 923-24 (8th Cir. 2005) ("We conclude that a term should be found unambiguous if the facts of the case 'comfortably fit within the commonly accepted definition of the concept,' but may be ambiguous if the facts fall on the margins of a broad reading."); *Gregory v. Home Ins. Co.*, 876 F.2d 602, 606 (7th Cir. 1989) ("At some point" the "connection" between claims is "too tenuous reasonably to be called a relationship.").

MICHAEL W. PERRY'S OPPOSITION TO ABC CARRIERS' MOTION FOR JUDGMENT ON THE PLEADINGS

1   fraud lawsuits filed in the wake of IndyMac's collapse into the *Daniels* action,
2   while leaving *Tripp* as a *separate* case.

3        Despite their confident rhetoric, the ABC Carriers have not demonstrated that
4   the *Tripp* and Prior Notice Exclusions preclude coverage for any other type of
5   lawsuit, and if so, how those lawsuits can be identified.   The "slightest of
6   connections" standard they propose simply is not a credible answer to this question.
7   Nor does the literal text of the exclusions provide the answer the insurers suggest.
8   The exclusions bar coverage for claims "in any way involving … any fact" alleged
9   in *Tripp*.  Read literally, the "fact" that IndyMac was a bank, for example, is alleged
10  in *Tripp* and is in some way "involved" in every one of the Underlying Matters.
11  But it would be absurd to conclude that the *Tripp* and Prior Notice Exclusions bar
12  coverage for any post-*Tripp* lawsuit alleging that IndyMac was a bank, as courts
13  construing similar exclusions have made clear.   *See, e.g.*, *Federal Ins. Co. v.*
14  *Raytheon Co.*, 426 F.3d 491 (1st Cir. 2005) (similar exclusion "cannot reasonably
15  be given the broadest possible construction, under which any overlapping fact
16  between the two proceedings -- for example, the identity of Raytheon as the
17  defendant in the context of otherwise unrelated facts -- would trigger the
18  exclusion."); *American Med. Sec., Inc. v. Executive Risk Specialty Ins. Co.*, 393 F.
19  Supp. 2d 693, 703 (E.D. Wis. 2005) ("A literal reading of the exclusion would thus
20  render the policy illusory for any insured who had ever been sued and must be
21  rejected under basic principles of insurance policy construction.").

22       Nor is it even clear which of the seven complaints filed in *Tripp* between
23  March 2007 and February 2010 should be consulted to determine the *Tripp*
24  Exclusion's scope.  The exclusion took effect on March 1, 2008, when the Year 2
25  policies were issued, and refers to "the litigation … initiated 12 March 2007," *i.e.*,
26  the date the original *Tripp* complaint was filed. (J.S. Ex. 1, p. 55.)  The exclusion
27  does not, however, say that subsequent amendments to the original complaint
28  should be considered in evaluating its scope.  As of March 2008, moreover, the

- 12 -

operative complaint in *Tripp* was the Second Amended Complaint.  (J.S. ¶ 20.) Thereafter, the *Tripp* complaint was amended four more times.  The policy language provides no clear answer as to which of these complaints controls the operation of the *Tripp* Exclusion, and so is at least ambiguous on this score. Indeed, under these circumstances, we submit that it would be absurd to allow post-March 1, 2008 amendments to control.[10]

A similar uncertainty affects the Prior Notice Exclusion, which applies by its terms only to claims arising out of a fact "which has been the subject of any notice given prior to the Policy Period…."  The third and subsequent amended complaints in *Tripp* were not filed until *after* the policy period of the Year 2 Policies began and therefore could not have been the subject of any notice given "prior to the Policy Period" -- that is, prior to March 1, 2008.  The ABC Carriers' references to the February 2010 Sixth Amended Complaint in *Tripp* therefore are irrelevant to the application of the Prior Notice Exclusion.

Blame for this lack of clarity rests on the ABC Carriers.  "The burden of making coverage exceptions and limitations conspicuous, plain and clear rests with the insurer."  *Haynes v. Farmers Ins. Exch.*, 32 Cal. 4th 1198, 1204, 89 P.2d 381, 385, 13 Cal.Rptr. 3d 68, 73 (2004).  When the ABC Carriers issued the Year 2

---

[10]   For example, the ABC Carriers argue that certain of the Underling Matters are subject to the *Tripp* Exclusion because they quote from or refer to a February 26, 2009 Treasury Department report concerning IndyMac that is also quoted in the Sixth Amended Complaint in *Tripp* (filed on February 6, 2010).  (Br. at 18.)  Both the report itself and the Sixth Amended Complaint in *Tripp* post-date the March 1, 2008 start date of coverage under the Year 2 Policies by roughly a year or more and could not possibly have been within the contemplation of the parties when the Year 2 Policies were issued.  Yet the ABC Carriers apparently contend that by adding a reference to this report in an amended complaint filed long after the ABC Carriers' policies were issued, the *Tripp* plaintiffs have the power to effect an exclusion to coverage for *any* other lawsuit that cites to the same report (whether such citations are material to the claims in question or not).

MICHAEL W. PERRY'S OPPOSITION TO ABC CARRIERS' MOTION FOR JUDGMENT ON THE PLEADINGS

Policies, they knew *precisely* what was alleged in *Tripp* and should have been able to craft exclusions that delineated just as precisely what types of allegations in subsequent litigation should trigger the exclusions.   Because ambiguities "are generally resolved in favor of coverage," *In re K.F. Dairies, Inc. & Affiliates*, 224 F.3d 922, 926 (9th Cir. 2000) (quoting *AIU Ins. Co. v. Superior Court*,  51 Cal. 3d 807, 822, 799 P.2d 1253, 1264, 274 Cal. Rptr. 820, 830 (1990)), the ABC Carriers' motion should be denied.

### 6.   Mr. Perry is Entitled to Discover and Present Extrinsic Evidence Before Any Ruling Can Be Made Against Him.

Whether or not the *Tripp* and Prior Notice Exclusions are ambiguous on their face, the ABC Carriers are not entitled to a ruling in their favor until after Mr. Perry has been afforded a fair opportunity to conduct discovery and present extrinsic evidence regarding the correct interpretation of the exclusions.   No prior showing that the exclusions are ambiguous is required, as one of the ABC Carriers' own cases shows.   *See GGIS Ins. Servs., Inc. v. Superior Court*, 168 Cal. App. 4th 1493, 1507, 86 Cal. Rptr. 3d 515, 526 (2008) ("In determining whether policy language is ambiguous, we consider not only the face of the contract but also any extrinsic evidence that supports a reasonable interpretation.").

*GGIS* simply restates the California Supreme Court's holding  in *Pacific Gas & Electric Co. v. G. W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 37, 442 P.2d 641, 644, 69 Cal. Rptr. 561, 564 (1968), that the admissibility of extrinsic evidence does not depend on whether a contract "appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *Pacific Gas* remains the law of California.   *See Dore v. Arnold Worldwide, Inc.*, 39 Cal.4th 384, 391, 139 P.3d 56, 60, 46 Cal. Rptr. 3d 668, 673 (2006) (quoting from *Pacific Gas*); *Trident Ctr. v. Connecticut Gen. Life Ins. Co.*, 847 F.2d 564, 569 (9th Cir. 1988) ("Under *Pacific Gas*, it matters not how clearly a contract is written,….

1    the contract cannot be rendered impervious to attack by parol evidence.").[11]

2         In his own motion for judgment on the pleadings, Mr. Perry has already

3    pointed to the dramatic increase in premiums that IndyMac's insurers charged for

4    the Year 2 Policies compared to the premiums that many of the same insurers

5    charged IndyMac for similar D&O coverage the previous year.  Such premium

6    increases are difficult, if not impossible, to reconcile with the ABC Carriers'

7    position that the *Tripp* and Prior Notice Exclusions bar coverage for any post-

8    March 1, 2008 lawsuit that even mentions pre-March 1, 2008 events.

9         Beyond the premium increases themselves, Mr. Perry has now served

10   requests for production on the ABC Carriers that seek, among other things, the

11   contents of their underwriting files for the 08-09 D&O Policies and the procedures

12   by which the policies were underwritten, including the factors considered in

13   calculating the premiums.  The relevance of such documents to the interpretation of

14   the Year 2 Policies is not in doubt.  *See Silgan Containers v. Nat'l Union Fire Ins.*,

15   No. C 09-05971 RS (LB), 2010 WL 5387748, at *8 (N.D. Cal. Dec. 21, 2010)

16   ("The underwriting file is relevant to determining the risks that [the insurer]

17   expected to cover in the policy, how it interpreted the various policy terms, and

18   whether the terms of the policy are ambiguous in the first instance.").  Indeed,

19   IndyMac's outside directors are filing a motion seeking a stay of the carriers'

20   motions for judgment on the pleadings (and an affidavit containing some of the

21   extrinsic evidence that supports a finding of ambiguity) for this very reason.

22   Accordingly, this Court cannot rule in favor of the ABC Carriers before Mr. Perry

23

24   ───────────────

25   [11] *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264, 833 P.2d 545, 552, 10

26   Cal. Rptr. 2d 538, 545 (1992), cited by ABC Carriers, does not contradict *Pacific Gas*.  That case involved a motion for summary adjudication, not a motion for

27   judgment on the pleadings.  The parties thus were able to take discovery and present extrinsic evidence before the court decided whether policy language really

28   was "clear and explicit."  Mr. Perry has had no such opportunity here.

                                    MICHAEL W. PERRY'S OPPOSITION TO ABC
                                    CARRIERS' MOTION FOR JUDGMENT ON
                                    THE PLEADINGS

has had the opportunity to present evidence regarding the meaning of the exclusions.  *See HSBC Bank USA, N.A. v. Dara Petroleum, Inc.*, No. Civ. 2:09-2356WBSEFB, 2010 WL 2197525, at *5 (E.D. Cal. May 28, 2010) (denying motion for judgment on pleadings pending evaluation of  extrinsic evidence); *accord Applied Elastomerics, Inc. v. Z-Man Fishing Prods., Inc.*, 521 F. Supp. 2d 1031,1046 (N.D. Cal. 2007).

### B.    The ABC Carriers' Attempt to Bar Coverage for the Trustee and SEC Matters Well Reflects Their Flawed Analysis.

Two of the Underlying Matters targeted by the ABC Carriers are the Trustee and SEC Litigations.  Because there has not been any settlement or judgment as to Mr. Perry in those matters, the insurers' motion is premature as a matter of indemnity coverage.   As for defense coverage, they are not entitled to relief because, as we demonstrate below, Mr. Perry has shown the requisite "potential" for coverage, which is all Mr. Perry needs to show.  Unlike the ABC Carriers, Mr. Perry (i) does not bear the burden of proof, (ii) is not seeking a premature ruling with respect to indemnity, and (iii) alone would benefit from discovery revealing evidence of ambiguity.   Indeed, Mr. Perry's case for finding coverage of the Trustee and SEC Litigations well illustrates the deficiencies in the ABC Carriers' entire motion.  We review the two cases below.

### 1.    The Trustee Litigation Is Based on Improper Capital Contributions from Bancorp to the Bank and *Disclaims* Reliance on Allegations in *Tripp*.

The Trustee Litigation, filed more than two-and-a-half years after *Tripp*, alleges that Mr. Perry and other D&Os favored the Bank at Bancorp's expense by authorizing four capital contributions to the Bank totaling $355 million during the period September 27, 2007 through May 9, 2008.  (J.S. Ex. 33, pp. 2440, 2451, 2457.)   The Trustee alleges that these alleged "downstreaming" transactions "served no conceivable purpose other than to drain Bancorp of its assets and extend

MICHAEL W. PERRY'S OPPOSITION TO ABC CARRIERS' MOTION FOR JUDGMENT ON THE PLEADINGS

Perry and the Director Defendants' stay in their positions for a few more months until the Bank collapsed." (J.S. Ex. 33, pp. 2438-39.) No such "downstreaming" is alleged in *Tripp*. Nor do contributions of capital from Bancorp to the Bank have anything whatsoever to do with the *Tripp* claim, which is focused solely on allegedly misleading securities disclosures made no later than January 25, 2007 or March 1, 2007 (depending on the version of the complaint one consults). (*E.g.*, J.S. Ex. 17, p. 349; Ex. 19, p. 509.)

The Trustee, moreover, has explicitly *disclaimed* any intention of relying on events prior to 2008 to prove the subset of his "downstreaming" claims that seek relief for capital contributions occurring in 2008 (the so-called "2008 Downstream Transfers"). Count IV of the Trustee's complaint, which alleges claims for breach of the duty of care against Mr. Perry and others in connection with the 2008 Downstream Transfers, is explicitly denominated as one of the "Counts Based on Allegations *Solely* Related to Events in 2008." (J.S. Ex. 33, p. 2502 (emphasis added). Recall that the class period alleged in *Tripp* ends in early 2007. The Trustee thus has announced his intention *not* to rely on any events alleged in *Tripp* to prove his claims based on the 2008 Downstream Transfers.

Indeed, any allegations concerning improper underwriting, appraisal or reserving practices in *Tripp* are irrelevant to the Trustee's claim regarding the 2008 Downstream Transfers, the gravamen of which is that Mr. Perry and others "were or should have been aware that such transfers amounted to as much as approximately $3.4 billion less than the Bank needed to avoid failure," and thus the transfers "diminished Bancorp's value, depleted Bancorp's cash reserves and Bancorp received no consideration whatsoever for most if not all of the 2008 Downstream Transfers." (J.S. Ex. 33, p. 68.) The Bankruptcy Court has made matters even clearer by expressly ruling that the sole basis on which the Trustee may recover damages from Mr. Perry is "the 2007 and 2008 Downstream Transfers (as defined therein) and any other cash downstream transfers after January 1,

MICHAEL W. PERRY'S OPPOSITION TO ABC CARRIERS' MOTION FOR JUDGMENT ON THE PLEADINGS

1   2007." (*See* J.S. Ex. 44.)

2      The ABC Carriers do not dispute any of this.  Their case for applying the

3   *Tripp* and Prior Notice Exclusions to the Trustee Litigation rests entirely on the

4   notion that the Trustee's "downstreaming" allegations arise out of "IndyMac's dire

5   financial condition," which in turn "resulted from deliberate implementation of

6   inadequate appraisal practices and underwriting guidelines." (Br. at 4.)

7      As a threshold matter, the ABC Carriers may not establish the applicability

8   of a policy exclusion merely by asserting that the Bank's alleged underwriting and

9   appraisal practices were but-for conditions of the Underlying Matters.  *E.g.*, *James*

10  *River Ins. Co. v. Kemper Cas. Ins. Co.*, 585 F.3d 382, 386 (7th Cir. 2009) (Posner,

11  J.) (concepts such as "arising from" "mustn't [be] press[ed] . . . too hard").

12  Moreover, the paragraphs from the Trustee complaint that the ABC Carriers cite in

13  their brief do not support their position factually.  Indeed, paragraph 37 of the

14  Trustee complaint, which the ABC Carriers cite for the vague and irrelevant

15  proposition that "IndyMac's high-risk business model was a significant factor" in

16  the Bank's collapse (Br. at 15), alleges that adverse market conditions rather than

17  the wrongful acts alleged in *Tripp* caused the Bank's financial difficulties:  "Given

18  the Bank's heavy production focus on high-risk mortgage loans, *for which the*

19  *secondary market evaporated over the course of 2007*, it was unable to securitize

20  and sell billions of dollars of mortgage loans *in late 2007*."  (J.S. Ex. 33, p. 2446

21  (emphasis added).)

22      By contrast, the *Tripp* plaintiffs expressly *deny* that the Bank's financial

23  problems were "caused by changed market conditions, macroeconomic or industry

24  factors or Company-specific facts unrelated to the Defendants' fraudulent conduct."

25  (J.S. Ex. 19, p.  589.)  In other words, *Tripp*'s explanation for the Bank's financial

26  problems directly contradicts the foregoing explanation alleged by the Trustee.[12]

27  _____

28  [12] In any event, insurers cannot avoid their duty to defend by relying on allegations

- 18 -

### 2. The SEC Litigation is Based on Alleged Non-Disclosure of Events that Occurred After, and are Not Alleged in, *Tripp*.

The SEC Litigation, filed almost four years after *Tripp*, alleges that Mr. Perry caused Bancorp to make false and misleading statements with respect Bancorp's liquidity level and the Bank's regulatory capital ratios in 2008 -- beginning a full year after the end date of the *Tripp* class period. According to the SEC, Bancorp purportedly made misrepresentations between February and May 2008 about Bancorp's strong capital and liquidity positions and failed to disclose (a) that Bancorp was raising capital through its Direct Stock Purchase Plan ("DSPP"); (b) that such capital was being used to support capital ratios at the Bank; and (c) the methodology by which the Bank's capital ratios were calculated. (J.S. Ex. 39.) The SEC Litigation, which focuses on the period immediately preceding Bancorp's collapse, does not allege a single misrepresentation concerning the underwriting standards, hedging, or loan loss reserves alleged in *Tripp*, nor does it involve any alleged conduct during the *Tripp* class period.

The ABC Carriers nevertheless contend that the SEC Litigation arises from the allegations of *Tripp* because, according to the ABC Carriers, the Bank's deteriorating financial condition was "primarily caused by the imprudent and unsound business practices of IndyMac Bank" (Br. at 6). This is the ABC Carriers' allegation, however, not the SEC's. No specific allegations from the SEC complaint are cited to support this statement. When the ABC Carriers repeat their claim that the Bank's financial problems "are a direct result of IndyMac Bank's aggressive business model" (Br. at 16), they do not even cite to the SEC complaint.

These two statements -- both nothing more than unsubstantiated assertions by

---

that may prove to be inessential to the underlying claimant's recovery. *See Gray*, 65 Cal. 2d at 276-77, 54 Cal. Rptr. at 113-14. Facts that "simply provide[] the context" for a claim are not enough to trigger the exclusions. *See Admiral Ins. Co. v. Briggs*, 264 F. Supp. 2d 460, 463 (N.D. Tex. 2003).

MICHAEL W. PERRY'S OPPOSITION TO ABC CARRIERS' MOTION FOR JUDGMENT ON THE PLEADINGS

the ABC Carriers -- constitute the ABC Carriers' *entire* argument for denying coverage for the SEC Litigation.  Their brief offers no other reasons for their position.   For the ABC Carriers, the SEC Litigation is little more than an afterthought.

Even if the Court were inclined to overlook the ABC Carriers' failure to cite any specific allegations from the SEC complaint in support of their argument, the notion that the *Tripp* and Prior Litigation Exclusions bar coverage for any claim arising out of "imprudent," "unsound" or "aggressive" business practices clearly stretches the scope of these exclusions too far.  *Every* D&O claim inevitably alleges that the defendants acted imprudently or unsoundly.  Excluding coverage for any claim involving "imprudent" or "unsound" actions by IndyMac and its directors and officers would render coverage entirely illusory.  IndyMac did not agree to pay up to three times the premiums it paid for the prior year's D&O coverage for a mere illusion of coverage.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, the ABC Carriers' motion for judgment on the pleadings should be denied.

DATED:  December 16, 2011                Respectfully submitted,


                                         By:   /s/ D. Jean Veta
                                               D. Jean Veta

                                         Attorneys for Defendant Michael W. Perry

MICHAEL W. PERRY'S OPPOSITION TO ABC CARRIERS' MOTION FOR JUDGMENT ON THE PLEADINGS