LOUIS E. KEMPINSKY (State Bar No. 90068)
E-mail: lkempinsky@pwkllp.com
JOHN C. KEITH (State Bar No. 229755)
Email: jkeith@pwkllp.com
PEITZMAN WEG & KEMPINSKY LLP
10100 Santa Monica Boulevard
Los Angeles, CA 90067
Phone: 310-552-3100
Fax: 310-552-3101

D. JEAN VETA (*pro hac vice*)
E-mail: jveta@cov.com
DENNIS B. AUERBACH (*pro hac vice*)
E-mail: dauerbach@cov.com
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, D.C. 20004
Phone: 202-662-6000
Fax: 202-662-6291

Attorneys for Defendant/Counterclaimant
Michael W. Perry

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| XL SPECIALTY INSURANCE COMPANY, *et al.*,<br><br>          **Plaintiffs,**<br><br>v.<br><br>MICHAEL W. PERRY, *et al.*,<br><br>          **Defendants.** | **Case No. 2:11-CV-2078-GHK-JCG**<br><br>**MICHAEL W. PERRY'S OPPOSITION TO THE A-SIDE INSURERS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>**Date: January 17, 2012**<br><br>**Time: 9:00 a.m.**<br><br>**Courtroom: 850**<br><br>**Judge: Hon. R. Gary Klausner** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MICHAEL W. PERRY, A. SCOTT KEYS, S. BLAIR ABERNATHY, JOHN OLINSKI, SAMIR GROVER, SIMON HEYRICK, VICTOR H. WOODWORTH, SCOTT VAN DELLEN, WILLIAM ROTHMAN, JILL JACOBSON, AND KEVIN CALLAN,**

**Counterclaimants,**

**v.**

**XL SPECIALTY INSURANCE COMPANY, ARCH INSURANCE COMPANY, ACE AMERICAN INSURANCE COMPANY, AXIS INSURANCE COMPANY, CATLIN INSURANCE COMPANY, LTD, ZURICH AMERICAN INSURANCE COMPANY; TWIN CITY FIRE INSURANCE COMPANY; and CONTINENTAL CASUALTY COMPANY,**

**Counterdefendants**

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................... 1

II.    ARGUMENT ..................................................................................................... 2

   A.   California Law Does Not Support Any of the Grounds of "Relatedness"
Proposed by the A-Side Insurers. ............................................................... 2

      1.   IndyMac's "Business Plan" Does Not Make the Underlying Matters
Related to *Tripp*. ................................................................................. 3

      2.   Corporate "Culture" Does Not Create a Relationship Among Different
Claims. ................................................................................................. 4

      3.   The A-Side Insurers Cite No Case That Actually Holds that "One Fact In
Common" Is Sufficient. ........................................................................ 5

   B.   The A-Side Insurers Obtain No Advantage from Reliance on the
Interrelated Claims Provision. ................................................................... 10

      1.   The Interrelated Claims Provision Does Not Relieve the A-Side Insurers
of their Burden of Proof. ..................................................................... 10

      2.   The Interrelated Claims Provision Is Ambiguous. ................................ 12

   C.   Mr. Perry Is Entitled to Seek Defense Coverage Under Both the Year 1 and
Year 2 Policies. .......................................................................................... 14

   D.   The A-Side Insurers' Arguments Otherwise Suffer from the Same Flaws as
the ABC Carriers' Arguments. ................................................................... 15

III.   CONCLUSION ............................................................................................... 16

MICHAEL W. PERRY'S OPPOSITION TO A-SIDE INSURERS' MOTION FOR JUDGMENT ON THE PLEADINGS

1

2

# TABLE OF AUTHORITIES

3

4

**Page(s)**

**CASES**

5

6

*Acceptance Ins. Co. v. Syufy Enters.*,
  69 Cal. App. 4th 321, 81 Cal. Rptr. 2d 557 (1999) ................................. 9

7

*ACL Techs., Inc. v. Northbrook Prop. and Cas. Ins. Co.*,
  17 Cal. App. 4th 1773, 22 Cal. Rptr. 2d 206 (1993) .......................... 12

8

9

*Am. Med. Sec., Inc. v. Exec. Risk Specialty Ins. Co.*,
  393 F. Supp. 2d 693 (E.D. Wis. 2005) ................................................ 7

10

11

*American Home Assurance Co. v. Allen*,
  814 N.E.2d 662 (Ind. Ct. App. 2005) ................................................ 12

12

13

14

*Atlantic Permanent Fed. Sav. & Loan Ass'n v.*
  *American Cas. Co. of Reading, Pa.*,
  839 F.2d 212 (4th Cir. 1988) ............................................................ 9

15

16

*Axis Surplus Insurance Co. v. Johnson*,
  No. 06-CV-500-GKF-PJC, 2008 WL 4525409
  (N.D. Okla. Oct. 3, 2008) ......................................................... 13, 14

17

18

*Aydin Corp. v. First State Ins. Co.*,
  18 Cal. 4th 1183, 959 P.2d 1213, 77 Cal. Rptr. 2d 537 (1998) .......... 11

19

20

*Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*,
  5 Cal. 4th 854, 855 P.2d 1263, 21 Cal. Rptr. 2d 691 (1993) ........ 5, 6, 15

21

22

*Century Transit Systems, Inc. v. American Empire*
  *Surplus Lines Insurance Co.*,
  42 Cal. App. 4th 121, 49 Cal. Rptr. 2d 567 (1996) .......................... 8

23

24

*Dart Indus., Inc. v. Commercial Union Ins. Co.*,
  28 Cal. 4th 1059, 52 P.3d 79, 124 Cal. Rptr. 2d 142 (2002) ............. 11

25

26

27

*Eureka Federal Savings & Loan Association v.*
  *American Casualty Co. of Reading, Pennsylvania*,
  873 F.2d 229 (9th Cir. 1989) ..................................................... 3, 4

28

MICHAEL W. PERRY'S OPPOSITION TO A-
SIDE INSURERS' MOTION FOR JUDGMENT
ON THE PLEADINGS

*Fed. Ins. Co. v. Raytheon Co.*,
   426 F.3d 491 (1st Cir. 2005) ........................................................................ 7, 13

*Financial Management Advisors, LCC v. American
   International Specialty Lines Insurance Co.*,
   506 F.3d 922 (9th Cir. 2007) ............................................................................ 6

*Friedman Professional Management Co. v.
   Norcal Mutual Insurance Co.*,
   120 Cal. App. 4th 17, 15 Cal. Rptr. 3d 359 (2004) ........................................... 8

*FSLIC v. Burdette*,
   718 F. Supp. 649 (E.D. Tenn. 1989) ................................................................. 4

*Gregory v. Home Ins. Co.*,
   876 F.2d 602 (7th Cir. 1989) ............................................................................ 6

*Highwoods Props., Inc. v. Executive Risk Indem., Inc.*,
   407 F.3d 917 (8th Cir. 2005) ............................................................................ 6

*Home Ins. Co. of Ill. (N.H.) v. Spectrum Info. Techs., Inc.*,
   930 F. Supp. 825 (E.D.N.Y. 1996) ............................................................. 13, 15

*James River Ins. Co. v. Kemper Cas. Ins. Co.*,
   585 F.3d 382 (7th Cir. 2009) ............................................................................ 6

*KB Home v. St. Paul Mercury Insurance Co.*,
   621 F. Supp.2d 1271 (S.D. Fla. 2008), *aff'd, KB
   Home v. Travelers Insurance Co.*, 339 F.
   App'x 910 (11th Cir. 2009) ....................................................................... 4, 5, 7

*McCuen v. American Cas. Co. of Reading, Pa.*,
   946 F.2d 1401 (8th Cir. 1991) ..................................................................... 4, 13

*Middlesex Mut. Ins. Co. v. Bright*,
   106 Cal. App. 3d 282, 165 Cal.Rptr. 45 (1980) .............................................. 12

*ML Direct, Inc. v. TIG Specialty Insurance Co.*,
   79 Cal. App. 4th 137, 93 Cal. Rptr. 2d 846 (2000) ........................................ 8, 9

*North River Ins. Co. v. Huff*,
   628 F. Supp. 1129 (D. Kan. 1985) .................................................................... 4

MICHAEL W. PERRY'S OPPOSITION TO A-
SIDE INSURERS' MOTION FOR JUDGMENT
ON THE PLEADINGS

*Okada v. MGIC Indem. Corp.*,
  823 F.2d 276 (9th Cir. 1986) .................................................................... 4

*Palp, Inc. v. Williamsburg Nat'l Ins. Co.*,
  200 Cal. App. 4th 282, 132 Cal. Rptr. 3d 592 (2011) ........................................ 9

*Prichard v. Liberty Mutual Insurance Co.*,
  84 Cal. App. 4th 890, 101 Cal. Rptr. 2d 298
  (Cal. Ct. App. 2001) .......................................................................... 12

*Southridge Capital Mgmt., LLC v. Twin City Fire Ins. Co.*,
  No. X04CV020103527S, 2006 WL 2730312
  (Conn. Super. Ct. Sept. 8, 2006) .......................................................... 7

*State Farm Mutual Automobile Insurance Co. v. Partridge*,
  10 Cal. 3d 94, 514 P.2d 123, 109 Cal. Rptr. 811 (1973) .............................. 9, 10

*Waller v. Truck Ins. Exch., Inc.*,
  11 Cal. 4th 1, 900 P.2d 619, 44 Cal. Rptr. 2d 370 (1995) ............................ 15

*WFS Financial Inc. v. Progressive Casualty Insurance Co.*,
  232 F. App'x. 624 (9th Cir. 2007) .......................................................... 9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 18(a) ............................................................................ 15

MICHAEL W. PERRY'S OPPOSITION TO A-
SIDE INSURERS' MOTION FOR JUDGMENT
ON THE PLEADINGS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The A-Side Insurers' motion (Dkt. 192) seeks essentially the same relief as the ABC Carriers' motion (Dkt. 194) on essentially the same grounds.  Both groups of insurers issued directors and officers liability policies to IndyMac Bancorp ("IndyMac") that provide coverage for a period commencing on March 1, 2008 (the "Year 2 Policies").  Both charged substantially higher premiums for this coverage than IndyMac paid for D&O coverage during the previous year (the "Year 1 Policies").  Both now contend that the Year 2 Policies provide no coverage whatsoever for any of the lawsuits and other demands asserted against IndyMac's directors and officers following the collapse of IndyMac Bank in July 2008 and the subsequent bankruptcy of IndyMac itself.  Their theory for denying coverage suggests that the coverage IndyMac believed it was purchasing at great expense to protect its officers and directors from such claims is in fact utterly worthless.  Both sets of insurers contend that their Year 2 Policies provide no coverage whatsoever for any claim that shares even "one fact" in common with the *Tripp* shareholder lawsuit, which (i) was filed on March 12, 2007,  (ii) predates by more than a year the failure of IndyMac and the Bank, and (iii) seeks relief based on different incidents than those at issue in the subsequent litigation.

Although it was the A-Side Insurers, not the ABC Carriers, who commenced this litigation, it is the ABC Carriers, who provide the first four layers of coverage in the Year 2 policy period, who will be first to pay if the Court rejects their coverage theories (as it should).  Accordingly, in the interests of avoiding repetition, we rely mainly on our opposition to the ABC Carriers' motion, whose arguments for denying their motion apply equally to the motion filed by the A-Side Insurers.

MICHAEL W. PERRY'S OPPOSITION TO A-SIDE INSURERS' MOTION FOR JUDGMENT ON THE PLEADINGS

1    Some aspects of the A-Side Insurers' motion, however, merit a separate
2    response.  Unlike the ABC Carriers, who rely solely on the *Tripp* and Prior Notice
3    Exclusions, the A-Side Insurers also rely on the "Interrelated Claims Clause" of
4    their policies.  This does not actually add anything to their motion, however, as the
5    Clause is functionally an exclusion on which they bear the burden of proof, just as
6    all of the carriers bear the burden of proving the applicability of the *Tripp* and Prior
7    Notice Exclusions.  Moreover, the language of the Interrelated Claims Clause has
8    been found by many courts to be just as ambiguous as the language of the
9    Exclusions.  Indeed, the A-Side Insurers advance essentially the same arguments
10   for applying the Clause as they advance for applying the Exclusions.  Those
11   arguments posit that a coverage-excluding relationship can be found between *Tripp*
12   and the later litigation on the theory that all of these lawsuits arise from the same
13   "business plan" or corporate "culture."  Accepting this argument would mean that
14   almost any lawsuit one could imagine being brought against IndyMac's directors
15   and officers could relate back to *Tripp*, a result that would effectively render
16   coverage under the Year 2 Policies wholly illusory.

17   The A-Side Insurers thus have no better arguments for disclaiming coverage
18   under the Year 2 Policies than the ABC Carriers have.  Their motion should be
19   denied.

20

21                              II.    **ARGUMENT**

22        A.    **California Law Does Not Support Any of the Grounds of**
               **"Relatedness" Proposed by the A-Side Insurers.**
23

24   The A-Side Insurers propose a number of grounds for finding that all of the
25   Underlying Matters[1] relate to *Tripp*: (i) the Underlying Matters supposedly arise
26

27   [1] The "Underlying Matters" are the lawsuits and demand letters described in ¶¶ 25-
28   40 of the joint Stipulation ("J.S.") filed in this action (Dkt. 193).

- 2 -                                    MICHAEL W. PERRY'S OPPOSITION TO A-
                                         SIDE INSURERS' MOTION FOR JUDGMENT
                                         ON THE PLEADINGS

from the same "business model" (Br.[2]. at 1) or "business plan" (Br. at 12) alleged in *Tripp*; (ii) both *Tripp* and the Underlying Matters are the common result of IndyMac's corporate "culture," (Br. at 17); and (iii) these various matters are related in any event if they have "at least one fact in common" (Br. at 12), although it is not clear what this "one fact" may be if it is not the aforementioned "business plan" or "culture."  All of these grounds are astonishingly vague.  The A-Side Insurers do not predicate their motion on any specific events or Wrongful Acts but instead on intangible generalities that imply that they would regard any claim arising out of IndyMac's business activities as an offshoot of *Tripp*.

None of these grounds for finding relatedness has any support in California law, however.  Indeed, it is not evident from the A-Side Insurers' brief that *any* court has held two claims to be related on the grounds they propose.

### 1. IndyMac's "Business Plan" Does Not Make the Underlying Matters Related to *Tripp*.

The Ninth Circuit rejected the A-Side Insurers' "business plan" theory of relatedness in *Eureka Federal Savings & Loan Association v. American Casualty Co. of Reading, Pennsylvania*, 873 F.2d 229, 232 (9th Cir. 1989).  Eureka's directors and officers had been sued in connection with alleged negligence and mismanagement concerning over 200 loan transactions and sought coverage from their D&O insurer.  The insurer attempted to invoke a per-loss limit of liability by arguing that the 200 transactions constituted a single loss pursuant to a clause providing that "[c]laims based on or arising out of the same act, interrelated acts, or one or more series of similar acts, of one or more Directors of Officers shall be considered a single loss…." *Id*. at 234.  The insurer's argument for invoking this language was the same as the A-Side Insurers' argument for invoking the

---

[2] Citations to the A-Side Insurers' brief (Dkt. 192) are given as "Br. at __."

MICHAEL W. PERRY'S OPPOSITION TO A-SIDE INSURERS' MOTION FOR JUDGMENT ON THE PLEADINGS

Interrelated Claims Provision here:  All of the loan losses "resulted from an aggressive lending strategy adopted by Eureka in 1983 to reverse chronic operating losses."  *Id*.  Unlike the present case, the parties in *Eureka* stipulated to the existence of "a common business plan" under which all of the disputed loans were made.  *Id*.

Nevertheless, the Ninth Circuit held, as a matter of California law, that this "common business plan" was not enough to establish that all of the underlying claims were based on a "series of similar acts" or "interrelated acts."  The Ninth Circuit held that "the mere existence of an aggressive loan policy is insufficient as a matter of law to transform disparate acts and omissions made by five directors in connection with issuance of loans to over 200 unrelated borrowers into a single loss."  *Id*. at 235.[3]

### 2.    Corporate "Culture" Does Not Create a Relationship Among Different Claims.

The A-Side Insurers' reliance on allegations concerning a "corporate culture" has been rejected in one of the cases the A-Side Insurers cite in their own brief.  In *KB Home v. St. Paul Mercury Insurance Co.*, 621 F. Supp.2d 1271 (S.D. Fla. 2008), *aff'd*, *KB Home v. Travelers Insurance Co.*, 339 F. App'x 910 (11th Cir. 2009), a case decided under California law, the insurer argued that four claims alleging sexual harassment at the insured company should be deemed to be "interrelated" claims under a provision similar to the Interrelated Claims Provision

---

[3] Other courts have reached the same conclusion.  Indeed, policy language identical to that construed in *Eureka* has been the subject of rulings in several courts, all of which have held that this language does not permit aggregation of claims arising from multiple loans.  *See Okada v. MGIC Indem. Corp.*, 823 F.2d 276, 282-83 (9th Cir. 1986); *McCuen v. American Cas. Co. of Reading, Pa.*, 946 F.2d 1401, 1407-08 (8th Cir. 1991); *FSLIC v. Burdette*, 718 F. Supp. 649, 657-58 (E.D. Tenn. 1989); *North River Ins. Co. v. Huff*, 628 F. Supp. 1129 (D. Kan. 1985).

- 4 -

here.  Since the earliest of the four claims had been made prior to the policy period, acceptance of the insurer's position would have resulted in all four claims being excluded from coverage.  The insurer argued that the four claims all arose from "a culture of sexual harassment and a hostile work environment [that] was created by [the company's] managers."  *Id.* at 1276.  The district court rejected that argument: "The Court disagrees with [the insurer] that the fact that all four complainants believed that the workplace culture was infused with sexual harassment is adequate under the policy to prove interrelatedness."  *Id.* at 1278 n.6.

Indeed, the district court held (and the court of appeals affirmed) that one of the four claims was unrelated to the others "because of significant differences in the time frame of the alleged discrimination."  *Id.* at 1278; *see also* 339 F. App'x. at 912 ("the district court did not err in finding that the fourth claim, based upon different incidents and different time-frames, is unrelated to the initial charge.").  The other three claims were found to be related only because each derived from the claimants' attendance at the same company dinner that ended with a visit to a strip club.  *See* 621 F. Supp.2d at 1277.

### 3.    The A-Side Insurers Cite No Case That Actually Holds that "One Fact In Common" Is Sufficient.

The A-Side Insurers make the shocking assertion that two lawsuits must be deemed "related" for purposes of their policies if the lawsuits have just "one fact in common."  This assertion, however, is flatly inconsistent with California law.  As the California Supreme Court has recognized, "[a]t some point" the relationship between two claims "might be so attenuated or unusual that an objectively reasonable insured could not have expected they would be treated as a single claim."  *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 873, 855 P.2d 1263, 1275,  21 Cal. Rptr. 2d 691, 703 (1993).  Here, no reasonable insured would expect that any attenuated connections between *Tripp* and

1   the Underlying Matters would bar coverage in Year 2.  *See also Financial*

2   *Management Advisors, LCC  v. American International Specialty Lines Insurance*

3   *Co.*, 506 F.3d 922, 925-26 (9th Cir. 2007) (citing *Bay Cities* and holding that two

4   different lawsuits against the same investment management company were not

5   related, despite the fact that both lawsuits involved the same investment advisor and

6   implicated advice given by that advisor to two different clients to invest in the same

7   investment vehicle).

8         Unsurprisingly, a number of non-California cases -- including two circuit

9   court decisions relied on by the A-Side Insurers -- have reached precisely the same

10  conclusion.  *See Highwoods Props., Inc. v. Executive Risk Indem., Inc.*, 407 F.3d

11  917 (8th Cir. 2005); *Gregory v. Home Ins. Co.*, 876 F.2d 602, 606 (7th Cir. 1989).

12  The coverage dispute in *Highwoods*, for instance, involved two lawsuits, both

13  indisputably relating to the *exact same merger transaction* and alleging that the

14  merger was designed to benefit the interests of a particular family.  *See* 407 F.3d at

15  924-25.  The court found that the two claims at issue were unambiguously "related"

16  on the facts of that particular case.  *Id.*  At the same time, however, the court

17  recognized that -- on a different set of facts, with a somewhat more attenuated

18  relationship between the underlying claims -- the same "related claims" language

19  might not unambiguously apply.  *Id.* at 923-24 ("We conclude that a term should be

20  found unambiguous if the facts of the case 'comfortably fit within the commonly

21  accepted definition of the concept,' but may be ambiguous if the facts fall on the

22  margins of a broad reading.").  Similarly, the Seventh Circuit in *Gregory*

23  recognized that related claims policy language may not unambiguously apply even

24  where some relationship exists among the underlying claims because "[a]t some

25  point" the "connection" between the claims is "too tenuous reasonably to be called

26  a relationship."  *Gregory*, 876 F.2d at 606.[4]

27  _____

28  [4]     *See also James River Ins. Co. v. Kemper Cas. Ins. Co.*, 585 F.3d 382, 386

- 6 -

The sole purported source of the "one fact in common" rule relied on by the A-Side Insurers, moreover, is the *KB Home* case discussed above. As we have seen, that case actually held that the types of "facts" on which the A-Side Insurers rely -- the vague notion of a "business plan" or "culture" -- are not enough to create a relationship among claims arising from distinct incidents separated in time.  The claims that *KB Home* did find to be related had more than just "one fact" in common.  These claims all arose out of the same company dinner attended by all three of the claimants deemed to be asserting "related" claims.  The A-Side Insurers do not claim that any such specific common incident unites the Underlying Matters here.  Indeed,  the liability-generating acts in most of the Underlying Matters are distinct both temporally and substantively from the allegations in *Tripp*.  Perhaps this explains the A-Side Insurers' resort to vague terms not found in the policy like "overarching" (Br. at 10, 12) or their bold statement that multiple lawsuits are to be deemed one and the same claim and therefore excluded under a later policy "irrespective of any differences in claimants, defendants, cause of action or focus" and even though the various underlying plaintiffs "represent different interests or assert injuries under different laws allegedly occurring at different times" (Br. at 1-2, 14).

---

(7th Cir. 2009) (concepts such as "arising from" "mustn't [be] press[ed] . . . too hard"); *Fed. Ins. Co. v. Raytheon Co.*, 426 F.3d 491, 497 (1st Cir. 2005) (related claims provisions relied "cannot reasonably be given the broadest possible construction, under which any overlapping fact between the two proceedings . . . would trigger the exclusion"); *Southridge Capital Mgmt., LLC v. Twin City Fire Ins. Co.*, No. X04CV020103527S, 2006 WL 2730312, at *9 (Conn. Super. Ct. Sept. 8, 2006) (observing that "some degree of relatedness is going to exist among almost any claims brought against an insured, especially in the field of directors' and officers' liability insurance, and there clearly have to be boundaries of some sort"); *Am. Med. Sec., Inc. v. Exec. Risk Specialty Ins. Co.*, 393 F. Supp. 2d 693, 705 (E.D. Wis. 2005) ("some limits must exist on what claims may be considered related").

MICHAEL W. PERRY'S OPPOSITION TO A-SIDE INSURERS' MOTION FOR JUDGMENT ON THE PLEADINGS

None of the other cases cited by the A-Side Insurers hold that "one fact in common" is enough.  To the contrary, many of these decisions address situations where the relationship between two claims was patently obvious and/or not contested by the insured.  They simply do not support the sort of aggressive aggregation of claims involving diverse incidents spread out over time that the A-Side Insurers are attempting to accomplish here.

*Friedman Professional Management Co. v. Norcal Mutual Insurance Co.*, 120 Cal. App. 4th 17, 15 Cal. Rptr. 3d 359 (2004), provides a good example of the triviality of the cases cited by the A-Side Insurers.  The same patient asserted two claims against the same surgeon for injuries arising from the same operation:  one claim for malpractice during the surgery that resulted in vaginal bleeding, and a second claim for sexual battery, based on the surgeon's attempt to stop the vaginal bleeding during the same surgery.  As the court itself acknowledged, "[i]t is hard to imagine separate acts which are more clearly causally related." *Id*. at 32, 15 Cal. Rptr. 3d at 370.

 *ML Direct, Inc. v. TIG Specialty Insurance Co.*, 79 Cal. App. 4th 137, 93 Cal. Rptr. 2d 846 (2000), presented an equally easy case for finding a relationship between a private securities lawsuit that the insureds themselves admitted had "paraphrased" the allegations of earlier-filed SEC and NASD complaints.  *Id*. at 143 n.2, 93 Cal. Rptr. 2d at 851 n.2.  Indeed, the court noted that "the factual relationship between all three pleadings is not disputed." *Id.* at 146, 93 Cal. Rptr. 2d at 853.  Thus, relatedness was found essentially by default.

The limitations of the holding in *Century Transit Systems, Inc. v. American Empire Surplus Lines Insurance Co.*, 42 Cal. App. 4th 121, 128, 49 Cal. Rptr. 2d 567, 572 (1996), are striking.  *Century Transit* does not even address the question of whether two claims are related but instead reaches the unremarkable conclusion that a plaintiff's claim seeking damages for a beating from the employer of the man who did the actual beating is a claim "arising out of assault and battery."

1    The facts of *WFS Financial Inc. v. Progressive Casualty Insurance Co.*, 232

2    F. App'x. 624 (9th Cir. 2007), are not evident from the Ninth Circuit's brief

3    unpublished opinion, but the appellate papers show that, like *ML Direct*, this too

4    was a case in which the insured admitted the factual relationship between the two

5    class actions in question.  Indeed, the insured took a formal position in court filings

6    in the underlying actions that the later-filed class action was "based on allegations

7    virtually identical to those contained in" the first-filed class action.  *See* Brief of

8    Appellee at *11, 2005 WL 4668795).  Both actions were ultimately settled

9    "utilizing a settlement class that encompassed the two substantially overlapping

10   classes described in the two cases' complaints."  *Id*. at *6.  By contrast, Mr. Perry

11   has made no such concessions in the Underlying Matters.

12       Other decisions cited by the A-Side Insurers give a broad interpretation to the

13   concept of relatedness because, in the context of the particular coverage issues at

14   hand, a broad interpretation *favored coverage.  See Acceptance Ins. Co. v. Syufy*

15   *Enters.*, 69 Cal. App. 4th 321, 81 Cal. Rptr. 2d 557 (1999) (broad construction of

16   "arising out of" in additional insured provision was necessary for contractor to

17   qualify as an insured); *Atlantic Permanent Fed. Sav. & Loan Ass'n v. American*

18   *Cas. Co. of Reading, Pa.*, 839 F.2d 212, 220 (4th Cir. 1988) (deeming all claims to

19   be related minimized the number of applicable deductibles: "Virginia law requires

20   us to construe all ambiguities in insurance contracts against the insurer and in favor

21   of coverage.").  California law (like the law of most states) requires that "[a]n

22   insurance policy's coverage provisions must be interpreted broadly to afford the

23   insured the greatest possible protection, while a policy's exclusions must be

24   interpreted narrowly against the insurer."  *Palp, Inc. v. Williamsburg Nat'l Ins. Co.*,

25   200 Cal. App. 4th 282, 290, 132 Cal. Rptr. 3d 592, 599 (2011).

26       As the California Supreme Court vividly illustrated in *State Farm Mutual*

27   *Automobile Insurance Co. v. Partridge*, 10 Cal. 3d 94, 514 P.2d 123, 109 Cal. Rptr.

28   811 (1973), these rules of construction may require seemingly identical policy

- 9 -

MICHAEL W. PERRY'S OPPOSITION TO A-
SIDE INSURERS' MOTION FOR JUDGMENT
ON THE PLEADINGS

language to be interpreted differently depending on whether the language grants or limits coverage. Thus, the *Partridge* court held that the same incident was *covered* under an automobile policy as a claim "arising out of the use" of an automobile, and was *not excluded* under a homeowners' policy that excluded coverage for claims "arising out of the use" of an automobile. Accordingly, cases giving a broad interpretation to terms such as "arising out of" or "related" where a broad interpretation *favored coverage* do not hold that an equally broad interpretation would be appropriate where such terms serve to *exclude coverage*.

## B. The A-Side Insurers Obtain No Advantage from Reliance on the Interrelated Claims Clause.

Unlike the ABC Carriers, the A-Side Insurers also place reliance on the Interrelated Claims Clause to justify their denial of coverage. They claim two advantages in doing so. First, they contend that the Interrelated Claims Clause is not an exclusion but rather part of the A-Side Policies' coverage grant. This, they assert (Br. at 17) relieves them of the burden of proof that California law imposes on insurers to prove the applicability of an exclusion, and instead imposes on Mr. Perry the "burden to demonstrate that a claim falls within the basic scope of coverage." Second, they contend (Br. at 10) that the Interrelated Claims Clause is "clear" and "unambiguous", thereby hoping to avoid the rule under California law that ambiguities in policy language must be construed in favor of coverage.

Neither of these contentions is correct. The Interrelated Claims Clause confers no special advantages on the A-Side Insurers for the following reasons.

### 1. The Interrelated Claims Clause Does Not Relieve the A-Side Insurers of their Burden of Proof.

The Interrelated Claims Clause does not appear in the "Insuring Agreement" of the A-Side Policies. It appears in the "Conditions" section, where

1   several other provisions that serve to limit or defeat coverage also appear (such as

2   provisions creating a limit of liability and granting the insurer a right to cancel the

3   policy). (J.S., Ex. 5, p. 119.)  But the location of the Clause ultimately is not

4   controlling.  The rule requiring an insurer to assume the burden of proving that a

5   claim is specifically excluded from coverage "applies irrespective of whether the

6   dispositive policy language is found in clauses described as exclusions, exceptions,

7   limitations, conditions, or endorsements." *Dart Indus., Inc. v. Commercial Union*

8   *Ins. Co.*, 28 Cal. 4th 1059, 1071, 52 P.3d 79, 87, 124 Cal. Rptr. 2d 142, 152 (2002).

9   "[I]t is the *function* served by policy language, not the location of language in an

10   insurance policy, that is determinative." *Id*. (emphasis in original, quoting *Aydin*

11   *Corp. v. First State Ins. Co*., 18 Cal. 4th 1183, 1191, 959 P.2d 1213, 1218, 77 Cal.

12   Rptr. 2d 537, 542 (1998)).

13       The A-Side Insurers are attempting to use the Interrelated Claims Clause to

14   exclude coverage that otherwise would exist for Underlying Matters.  In the

15   absence of the Interrelated Claims Clause, they would qualify as claims "first

16   made" during the policy period and thus would be eligible for coverage under the

17   "Insuring Agreement" of the A-Side Policies.  The Underlying Matters either were

18   filed during the policy period or arise out of circumstances disclosed in the notice

19   of circumstance given by Mr. Perry during the Year 2 Policies, which identified the

20   SEC and the Trustee, among others, as likely plaintiffs.  (J.S., Ex. 41.)   The A-Side

21   Policies specifically require any claim arising out of the circumstances disclosed in

22   that notice to be "treated as if it had been first made during the Policy Period."  (J.S.

23   Ex. 5, p. 118.)

24       Mr. Perry accordingly does not need the Interrelated Claims Clause to bring

25   the Underlying Matters within the coverage of the A-Side Policies.  The A-Side

26   Insurers need the Clause to try to push the Underlying Matters out of their policies.

27   The A-Side Insurers therefore bear the burden of proving that the Clause excludes

28

MICHAEL W. PERRY'S OPPOSITION TO A-SIDE INSURERS' MOTION FOR JUDGMENT ON THE PLEADINGS

1  coverage for the Underlying Matters.[5]

2      Moreover,  it would be improper to interpret the Interrelated Claims Clause

3  to impose a greater obstacle to coverage of the Underlying Matters than the *Tripp*

4  and Prior Notice Exclusions, since such an interpretation would render these

5  exclusions superfluous.  *See ACL Techs., Inc. v. Northbrook Prop. and Cas. Ins.*

6  *Co.*, 17 Cal. App. 4th 1773, 1785, 22 Cal. Rptr. 2d 206, 213 (1993) (insurance

7  policies must be "construed to avoid rendering terms surplusage.").  The A-Side

8  Insurers evidently did not believe that the Interrelated Claims Clause alone was

9  enough to limit coverage for claims potentially related to *Tripp*; otherwise, they

10  would not have insisted on adding the *Tripp* Exclusion by endorsement to their

11  policies.  They cannot now contend that, thanks to the Interrelated Claims Clause,

12  claims arising out of *Tripp* were never covered in the first place.  *See Middlesex*

13  *Mut. Ins. Co. v. Bright*, 106 Cal. App. 3d 282, 291, 165 Cal.Rptr. 45, 50 (1980)

14  ("An exclusion would be unnecessary if the matter covered therein would not

15  otherwise be covered.").

16

17          **2.     The Interrelated Claims Clause Is Ambiguous.**

18      Case law contradicts the A-Side Insurers' claim that the language of the

19  Interrelated Claims Clause is clear and unambiguous.  To the contrary, several

20  courts have found that similar provisions are ambiguous.  *See, e.g.*, *American Home*

21  *Assurance Co. v. Allen*, 814 N.E.2d 662, 669 n.6 (Ind. Ct. App. 2005) (holding that

22

23  _____

24  [5] The posture of the parties here is analogous to the situation addressed in *Prichard*
   *v. Liberty Mutual Insurance Co.*, 84 Cal. App. 4th 890, 101 Cal. Rptr. 2d 298 (Cal.

25  Ct. App. 2001), in which the policyholder bore the burden of proving that a
   defamatory statement was made "during the policy period" to trigger coverage for a

26  defamation claim, but the insurer bore the burden of proving that "first publication"
   of the defamatory statement occurred prior to the policy period to exclude coverage

27  for the defamation claim.  *Id*. at 910, 101 Cal. Rptr. 2d at 312.

28

- 12 -

1    "series of continuous, repeated or interrelated Wrongful Acts" is ambiguous);

2    *McCuen v. American Cas. Co. of Reading, Pennsylvania*, 946 F.2d 1401, 1407-08

3    (8th Cir. 1991) (holding that the terms "interrelated" and "similar" are so "elastic"

4    in meaning as to be ambiguous); *Home Ins. Co. of Ill. (N.H.) v. Spectrum Info.*

5    *Techs., Inc.*, 930 F. Supp. 825, 848 (E.D.N.Y. 1996) (policy language that "[a]ll

6    claims arising from the same wrongful act or interrelated, repeated or continuous

7    wrongful acts of one or more assureds shall constitute a single claim and shall be

8    deemed to be a claim first made and reported to the Insurer in the policy period in

9    which the first such wrongful act is reported to the Insurer" was, at best,

10   ambiguous).

11        The A-Side Insurers' inability to articulate a credible standard for limiting

12   the scope of the Interrelated Acts Clause provides further evidence of the Clause's

13   ambiguity.  The Clause cannot reasonably mean that any claims having "one fact in

14   common" with *Tripp* are deemed to be the same claim as *Tripp*.  Simply because a

15   claim alleges, for example, that IndyMac was a bank should not be enough to deem

16   that claim to be related to *Tripp*.  As other courts have observed, an interrelated

17   claims provision "cannot reasonably be given the broadest possible construction,

18   under which any overlapping fact between the two proceedings -- for example, the

19   identity of [the insured] as the defendant in the context of otherwise unrelated facts

20   --would trigger the exclusion."  *Federal Ins. Co. v. Raytheon Co.*, 426 F.3d 491,

21   497 (1st Cir. 2005).

22        Still more evidence of the ambiguity of the Interrelated Claims Clause is the

23   position taken by XL Specialty and an affiliate of Axis Specialty in *Axis Surplus*

24   *Insurance Co. v. Johnson*, No. 06-CV-500-GKF-PJC, 2008 WL 4525409 (N.D.

25   Okla. Oct. 3, 2008), where these A-Side insurers or their affiliates *opposed* a

26   policyholder's attempt to construe a similar interrelated claims clause broadly in

27   order to create coverage for a post-policy period lawsuit by a bankruptcy trustee by

28   relating that lawsuit back to an earlier lawsuit.  XL and Axis *prevailed* in the

MICHAEL W. PERRY'S OPPOSITION TO A-
SIDE INSURERS' MOTION FOR JUDGMENT
ON THE PLEADINGS

*Johnson* case, obtaining a ruling that the policyholder could not rely on connections between the two lawsuits that were "so attenuated that the court does not believe an objectively reasonable insured could have expected the two to be treated as a single related claim." *Id*. at *10. Those connections were at least as attenuated as the connections the A-Side Insurers attempt to make here.

The earlier lawsuit in *Johnson* (the "*Stricker*" action) concerned a loan that financed the creation of a regional airline, whose subsequent failure caused the bankruptcy of its parent company and resulted in litigation by the parent's bankruptcy trustee (the "*Malloy*" action). To borrow the A-Side Insurers' words here, once the loan at issue in the *Stricker* action had been made, "the alleged train of events leading to the [*Malloy* action] had been set in motion," (Br. at 2). Yet the *Johnson* court, at the urging of XL and Axis, found that this attenuated connection was not enough to deem *Stricker* and *Malloy* to be the same claim. In light of *Johnson*, XL and Axis are in no position to argue here that the Interrelated Claims Clause unambiguously excludes coverage.

### C.   Mr. Perry Is Entitled to Seek Defense Coverage Under Both the Year 1 and Year 2 Policies.

The A-Side Insurers imply (Br. at 1) that, since there supposedly is "not a dispute" over coverage for the Underlying Matters under the Year 1 Policies (p. 1), the Underlying Matters therefore cannot also be covered under the Year 2 Policies. They go on to assert (Br. at 18 n.6) that "[a] Claim -- here a civil or criminal judicial proceeding in a court of law or equity or arbitration -- cannot be deemed first made during multiple policy periods."

Their simplistic binary model of coverage that assumes a lawsuit can be covered by only one policy is wrong. For starters, it is based on a premise that each Underlying Matter constitutes a single "Claim" -- and thus can only be "first made" in one policy period or another.

MICHAEL W. PERRY'S OPPOSITION TO A-SIDE INSURERS' MOTION FOR JUDGMENT ON THE PLEADINGS

1       As we explain in more detail in our opposition to the ABC Carriers' motion,

2   "including multiple claims within a single action does not render them a single

3   claim" for purposes of insurance coverage.  *See Bay Cities Paving & Grading, Inc.*

4   *v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 859, 855 P.2d 1263, 1265, 21 Cal. Rptr.

5   2d 691, 693 (1993).  The policies' definition of a "Claim" is not limited to entire

6   proceedings but also applies to "a written demand for monetary or non-monetary

7   relief," an alternate definition that permits a single civil proceeding to include more

8   than one "Claim," since a complaint under modern pleading rules may include

9   multiple demands for relief predicated on distinct factual bases.  *See, e.g.*, Fed. R.

10  Civ. P. 18(a) (a party may join "as many claims as it has against an opposing

11  party," even "independent" claims, in a single complaint).

12      Accordingly, an Underlying Matter may allege some claims that relate back

13  to *Tripp* while alleging other claims that do not.  Indeed, uncertainty as to the

14  correct application of the Interrelated Claims Clause, the *Tripp* Exclusion, and the

15  Prior Notice Exclusion may make it impossible at this preliminary stage of the case

16  to assign even a single Claim definitely to one policy period or the other.  That was

17  the case in *Home Insurance Co. of Illinois*, in which the court held that it "cannot

18  definitely conclude" whether related claim provisions similar to those at issue here

19  "either apply or do not apply without additional factual development."  930 F.

20  Supp. at 851.  Since Mr. Perry's insurers owe him a defense under California law if

21  there is even a "possibility of coverage" under their policies, *Waller v. Truck Ins.*

22  *Exch., Inc.*, 11 Cal. 4th 1, 19, 900 P.2d 619, 627, 44 Cal. Rptr. 2d 370, 378 (1995),

23  there is no inconsistency in seeking concurrent coverage for defense expenses in the

24  Underlying Matters under both the Year 1 and Year 2 Policies.

25

26      **D.**    **The A-Side Insurers' Arguments Otherwise Suffer from the Same Flaws as the ABC Carriers' Arguments.**

27

28      Aside from the arguments specifically refuted above, the A-Side Insurers'

MICHAEL W. PERRY'S OPPOSITION TO A-
SIDE INSURERS' MOTION FOR JUDGMENT
ON THE PLEADINGS

arguments mirror those advanced by the ABC Carriers and suffer from the same deficiencies.  We respectfully refer the Court to our arguments for denying the ABC Carriers' motion, which serve equally well as grounds for denying the A-Side Insurers' motion, and incorporate those arguments by reference herein.

### III.   CONCLUSION

For the foregoing reasons, the A-Side Insurers' motion for judgment on the pleadings should be denied.

DATED:   December 16, 2011                    Respectfully submitted,


By:   /s/ D. Jean Veta
       D. Jean Veta

Attorneys for Defendant Michael W. Perry