JOHN W. SPIEGEL (SBN 78935)
john.spiegel@mto.com
KATHLEEN M. McDOWELL (SBN 115976)
kathleen.mcdowell@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 25th floor
Los Angeles, CA  90071-1560
Telephone:  (213) 683-9100
Facsimile:   (213) 687-3702

Attorneys for Defendants and Counterclaimants
LOUIS E. CALDERA, LYLE E. GRAMLEY,
HUGH M. GRANT, PATRICK C. HADEN,
TERRANCE G. HODEL, ROBERT L. HUNT
II, LYDIA H. KENNARD, and BRUCE G.
WILLISON

[Additional Moving Parties Listed On
Signature Page]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| XL SPECIALTY INSURANCE COMPANY, *et al.*,<br><br>      **Plaintiffs,**<br><br>v.<br><br>**MICHAEL W. PERRY**, *et al.*,<br><br>      **Defendants.** | CASE NO. 2:11-CV-2078-GHK-JCG<br><br>**MOTION TO DEFER PLAINTIFFS' AND COUNTERDEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS PENDING DISCOVERY** (set for hearing on 1/17/2012); **DECLARATION OF KATHLEEN M. McDOWELL**<br><br>**Judge:  Hon. R. Gary Klausner** |
| **LOUIS CALDERA, LYLE GRAMLEY, HUGH GRANT, PATRICK HADEN, TERRENCE HODEL, ROBERT HUNT, LYDIA KENNARD, and BRUCE WILLISON,**<br><br>      **Counterclaimants,**<br><br>v.<br><br>**XL SPECIALTY INSURANCE** | **Date: January 17, 2012**<br><br>**Time: 9:00 a.m.**<br><br>**Courtroom: 850** |

1   COMPANY, *et al.*,

2                        Counter-Defendants.

3

4   LOUIS CALDERA, LYLE
    GRAMLEY, HUGH GRANT,
    PATRICK HADEN, TERRENCE
5   HODEL, ROBERT HUNT, LYDIA
    KENNARD, and BRUCE WILLISON,
6
7                        Cross-Complainants,

8   v.

9   CERTAIN UNDERWRITERS AT
    LLOYDS OF LONDON, an
10  unincorporated association; CATLIN
    INSURANCE CO., LTD., a United
11  Kingdom corporation; ZURICH
    AMERICAN INSURANCE CO., a
12  Delaware corporation; TWIN CITY
    FIRE INSURANCE CO., a Delaware
    corporation; CONTINENTAL
13  CASUALTY CO., a Delaware
    corporation,
14
15                       Cross-Defendants.

16

17

18

19

20

21

22

23

24

25

26

27

28

---

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on January 17, 2012, at 9:00 a.m., in Courtroom 850 of the United States District Court, Central District of California, located at 255 East Temple Street, Los Angeles, California 90012, Defendants and Counter-Claimants Louis E. Caldera, Lyle E. Gramley, Hugh M. Grant, Patrick C. Haden, Terrance G. Hodel, Robert L. Hunt II, Lydia H. Kennard, Bruce G. Willison (collectively, the "Outside Directors"), Kevin Callan, Samir Grover, Simon Heyrick, Jill Jacobson, John D. Olinski, William Rothman, Scott W. Van Dellen, Victor Woodworth, and S. Blair Abernathy (collectively with the Outside Directors, the "Moving Insureds") will move this Court to defer its decision on the Motions for Judgment on the Pleadings (the "Motions"), currently set for hearing on January 17, 2012, filed by the Side-A[1] and Side-ABC[2] insurers (collectively, the "Insurers") pending discovery, pursuant to California and federal case law and the Federal Rules of Civil Procedure.

The Side-A and Side-ABC Insurers filed their Motions before discovery could be conducted. *See* Dkt. Nos. 192, 194. Thus, the Moving Insureds first ask the Court – in their separately filed opposition to the Insurers' motions – to conclude that the Insurers' motions must be denied because the policy exclusions they rely upon do not, on their face, unambiguously preclude coverage. Alternatively, if the Court is not inclined to deny the Insurers' motions on their face, the Moving Insureds request that the Court grant the present Motion and permit the Moving Insureds to take discovery pertinent to the Motions before they are decided by the Court. This Motion is made on the ground that California and federal law mandate that policyholders are entitled to take discovery in an effort to

---

[1] The "Side-A Insurers" are XL Specialty Insurance Company, Arch Insurance Company, ACE American Insurance Company, and AXIS Insurance Company.
[2] The "Side-ABC Insurers" are Those Certain Underwriters at Lloyd's, London Subscribing to Policy No. QA011608, Catlin Insurance Company (UK) Ltd., Zurich American Insurance Co., Twin City Fire Insurance Company and Continental Casualty Company.

show that policy language is ambiguous or that the parties mutually intended the policy language to have a different meaning than what the language on its face may suggest.  The Moving Insureds request that, in the event that the Court does not deny the Insurers' motions outright, at a minimum, the Court defer adjudication of the Insurers' motions until the Moving Insureds have had the opportunity to conduct already-noticed and additional discovery regarding the drafting history and meaning of the policy language at issue.[3]

This Motion is based on this Notice, the Memorandum of Points and Authorities, the pleadings and papers on file with this Court, and on such argument to be presented on the hearing of the Motion.  This motion is made following the conference of counsel pursuant to Local Rule 7-3 of the Local Rules of Civil Procedure, which took place on December 6, 2011.  Declaration of Kathleen M. McDowell ("McDowell Decl."), ¶ 2.

---

[3] Michael Perry, one of the defendants in the Insurers' lawsuit, filed a separate motion for judgment on the pleadings of certain of his counterclaims. *See* Dkt. No. 195.  The Moving Insureds' motion to defer pending discovery is not directed to his motion.  The Moving Insureds believe that Mr. Perry's motion can and should be granted without the need for discovery.  This is particularly true because (1) none of the Insurers have contended that they need to take discovery and none has served any discovery, and (2) as an insured, Mr. Perry's motion must be granted if any reasonable reading of the exclusions supports the availability of coverage for defense costs under the 2008-09 policies.

DATED: December 16, 2011

MUNGER, TOLLES & OLSON LLP
John W. Spiegel
Kathleen M. McDowell

By:_____/s/_____
Kathleen M. McDowell

Attorneys for Defendants and Counterclaimants Louis E. Caldera, Lyle E. Gramley, Hugh M. Grant, Patrick C. Haden, Terrance G. Hodel, Robert L. Hunt II, Lydia H. Kennard, and Bruce G. Willison

Dated: December 16, 2011

CORBIN, FITZGERALD & ATHEY LLP

By:_____/s/_____
Michael W. Fitzgerald

Attorneys for Defendants and Counterclaimants Kevin Callan, Samir Grover, Simon Heyrick, Jill Jacobson, John D. Olinski, William Rothman, Scott W. Van Dellen, and Victor Woodworth

Dated: December 16, 2011

FAIRBANK & VINCENT

By:_____/s/_____
Robert H. Fairbank
Attorneys for Defendant
S. Blair Abernathy

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................ 1

II.   BRIEF FACTUAL BACKGROUND ...................................... 3
      A.    The Insurance Policies ............................................ 3
      B.    The Tripp Litigation ............................................... 3
      C.    The Trustee Litigation ............................................ 4
      D.    Relevant Policy Provisions ..................................... 5

III.  ARGUMENT ..................................................................... 5
      A.    Legal Standards ..................................................... 5
      B.    There Is Reasonable Grounds To Believe That Discovery Will
            Reveal The Insurers' Erroneous Interpretation Of Their Policy
            Exclusions ........................................................... 7
            1.    The Moving Insureds are entitled to discover and
                  introduce extrinsic evidence to refute the Insurers'
                  position that the policy exclusions clearly and
                  unambiguously preclude coverage ............................ 7
            2.    The information currently available to the Moving
                  Insureds suggests that evidence exists to challenge the
                  Insurers' position ........................................... 9
            3.    The Outside Directors have diligently pursued discovery ....... 11

IV.   CONCLUSION ................................................................. 12

1

# TABLE OF AUTHORITIES

2

**Page**

3

**FEDERAL CASES**

4

*Alfred H. Siegel v. Louis E. Caldera, et al. (In re Indymac Bancorp, Inc.),*
   Adv. No. 1:09-ap-02645 ........................................................................ 4

5

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) .............................................................................. 5

6

7

*Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck
   Reservation,*
   323 F.3d 767 (9th Cir. 2003) ................................................................. 5

8

9

*Emplrs. Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.,*
   353 F.3d 1125 (9th Cir. 2004) ............................................................... 6

10

11

*Metabolife Int'l, Inc. v. Wornick,*
   264 F.3d 832 (9th Cir. 2001) ................................................................. 6

12

*Reese v. Indymac Bancorp, Inc., et al.,*
   No. 07-CV-1635-GW-VBk ..................................................................... 4

13

14

*Thommeny v. Paramount Pictures Corp.,*
   No. 10-6951, 2011 WL 2899340 (C.D. Cal. July 13, 2011) ................... 6

15

*Trident Ctr. v. Conn. Gen. Life Ins. Co.,*
   847 F.2d 564 (9th Cir. 1988) ................................................................. 8

16

17

*VISA Int'l Serv. Ass'n. v. Bankcard Holders of Am.,*
   784 F.2d 1472 (9th Cir. 1986) ............................................................... 6

18

**STATE CASES**

19

*Farmers Ins. Exch. v. Knopp,*
   50 Cal. App. 4th 1415 (1996) .............................................................. 10

20

21

*AIU Ins. Co. v. Sup. Ct.,*
   51 Cal. 3d 807 (1990) ............................................................................ 7

22

*Bank of the West v. Sup. Ct.,*
   2 Cal. 4th 1254 (1992) ........................................................................... 7

23

*Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.,*
   5 Cal. 4th 854 (1993) ............................................................................. 7

24

25

*Boghos v. Certain Underwriters at Lloyd's of London,*
   36 Cal. 4th 495 (2005) ......................................................................... 10

26

27

*Dore v. Arnold Worldwide, Inc.,*
   39 Cal. 4th 384 (2006) ........................................................................... 8

28

# TABLE OF AUTHORITIES
## (continued)

Page

*Kazi v. State Farm Fire & Cas. Co.,*
   24 Cal. 4th 871 (2001) ....................................................................... 7

*Lockheed Martin Corp. v. Cont'l Ins. Co.,*
   134 Cal. App. 4th 187 (2005) ............................................................ 8

*Mariscal v. Old Republic Life Ins. Co.,*
   42 Cal. App. 4th 1617 (1996) ............................................................ 7

*Morey v. Vannucci,*
   64 Cal. App. 4th 904 (1998) .............................................................. 8

*Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.,*
   69 Cal. 2d 33 (1968) (hereafter, "PG&E") ..................................... 8

*Safeco Ins. Co. of Am. v. Robert S.,*
   26 Cal. 4th 758 (2001) ....................................................................... 7

*State v. Allstate Ins. Co.,*
   45 Cal. 4th 1008 (2009) ..................................................................... 8

**STATUTES AND RULES**

Fed. R. Civ. P. 12(d) ............................................................................... 6

Fed. R. Civ. P. 56(d) ............................................................................... 5

15967740.1

# I.   **INTRODUCTION**

XL Specialty Insurance Company, Arch Insurance Company, ACE American Insurance Company, Axis Insurance Company, Catlin Insurance Company (UK) Ltd., Continental Casualty Insurance Company, Twin City Fire Insurance Company, Zurich American Insurance Company, and Intervenor Counterdefendants Those Certain Underwriters and Lloyd's, London Subscribing to Policy No. QA011608 (collectively, the "Insurers") have filed two separate motions for judgment on the pleadings (collectively, the "Motions"), each of which is set to be heard on January 17, 2012.  *See* Dkt. Nos. 192, 194.

Concurrent with this instant motion, the Outside Directors have filed an opposition to the Insurers' Motions, on the ground, among others, that a duty to indemnify cannot be resolved "on the pleadings" alone, that the language of the challenged exclusions is ambiguous, and that the exclusions do not eliminate coverage for the one lawsuit in which the Outside Directors have been named as defendants.   If the Court disagrees, however, then the Court cannot grant the Insurers' motions for an alternative reason—extrinsic evidence is necessary for the Court to interpret the exclusions in the policies at issue.

In their Motions, the Insurers argue that this Court can adjudicate – on the pleadings alone – whether three exclusions in the policies (the "*Tripp*," "interrelated wrongful acts," and "prior notice" exclusions) preclude coverage for multiple underlying lawsuits, each brought by different plaintiffs, against different defendants, and involving different issues.  The Insurers claim that each of the three exclusions "clearly" and unambiguously requires that the lawsuits (including the Trustee's lawsuit against the Outside Directors) be "bunched" together as one and thus covered under the policies issued to Indymac in an earlier year, but not the policies at issue in this case.

Even *if* these exclusions were as clear as the Insurers contend (and they are

1

1    not), well-settled California insurance law and the Federal Rules of Civil Procedure

2    afford the Moving Insureds the *right* to take discovery to show that the provisions

3    mean something other than what the Insurers claim – particularly where, as here,

4    the principal exclusion relied upon by the Insurers (the "*Tripp* exclusion") was the

5    product of extensive negotiations between the parties.

6          As a result, if the Court is inclined to grant the Insurers' Motions, then the

7    Court should stay adjudication of those motions to allow the Outside Directors to

8    conduct already noticed discovery and additional discovery as to the negotiations

9    regarding the *Tripp* exclusion and the basis upon which the Insurers increased their

10   premiums on the renewed policies over 250%.

11         Through this discovery, among other things, the Moving Insureds seek

12   additional evidence of the parties' mutual intended meaning of the *Tripp* exclusion

13   and its interplay with the interrelated wrongful acts and prior notice exclusions.

14   The Moving Insureds are entitled to discovery to demonstrate that these exclusions

15   were never intended to have the draconian effect of sweeping virtually all claims

16   into the 2007-2008 policy year, rendering the extremely expensive renewal of the

17   policies a practical nullity.  California insurance law expressly prevents an

18   interpretation of policy exclusions that renders them redundant with other

19   exclusions, which is exactly how the insurers purport to interpret these exclusions

20   here.  Thus, the discovery is important to determine based upon the parties'

21   negotiations and the insurers' internal communications and understandings how the

22   parties intended the *Tripp* exclusion to apply and how it may modify or impact the

23   application of the other two exclusions.

24         Based on limited documents obtained to date, it has be come apparent that

25   the Insurers' interpretation of the *Tripp* exclusion at the time of contracting

26   assuredly was not in line with their current made-for-litigation position.  Further

27   discovery likely will confirm that the Insurers are attempting to change positions

28   and to expand their policy exclusions beyond their intended purpose.  The Moving

2

MOTION TO DEFER INSURERS' MOTIONS FOR JUDGMENT ON THE PLEADINGS

1  Insureds therefore respectfully request that, if the Court is inclined to grant the
2  Insurers' motions, it defer ruling on the Insurers' motions until the Moving Insureds
3  can conduct discovery and present evidence bearing on the meaning of the
4  challenged exclusions.[4]

## II.   BRIEF FACTUAL BACKGROUND

### A.   The Insurance Policies

In 2007, Indymac Bancorp, Inc. ("Bancorp") purchased $80 million of directors and officers ("D&O") liability insurance.  Counterclaim[5] at ¶ 25.  This coverage was spread among a "tower" of eight policies, each with a liability limit of $10 million.  *Id.*  These policies covered claims made from March 1, 2007 to March 1, 2008, and are collectively referred to herein as the "2007-08 policies."  *Id.*

Before the end of the 2007-08 policy period, Bancorp purchased D&O coverage  from the Side-A and Side-ABC Insurers for the policy period March 1, 2008 to April 1, 2009 (the "2008-09 policies").  Counterclaim at ¶ 25.  The 2008-09 policies are at issue in this litigation.  The premium price for the renewal policies was extraordinarily high, more than $6 million.  *See id.* Exs. 1-8 (Insurers' declaration pages reflecting the premiums for the 2008-09 policies).  This premium reflected an average increase of over 250%, and up to 443% from the premium charged to Bancorp for its 2007-08 D&O coverage.[6]   *Id.*

### B.   The *Tripp* Litigation

On March 12, 2007, a putative class of Indymac shareholders filed a lawsuit

---

[4] By this Motion, the Moving Insureds are not asking that the Court consider any particular extrinsic evidence for purposes of deciding the Insurers' Motions for Judgment on the Pleadings. Instead, the Moving Insureds are simply identifying evidence that, should the Court be inclined to grant the Insurers' Motions, discovery will lead to extrinsic evidence that the Court should consider before it rules on the Insurers' Motions.

[5] "Counterclaim" refers to the Outside Directors' Counterclaims, filed on July 2, 2011.  Dkt. No. 94 at 23.

[6] This average increase of more than 250% is based on the total premium paid on the 2008-09 policies against the total premiums for the 2007-2008 policies.  *See* Joint Stipulation Exs. 9-16, Dkt. No. 193 (Insurers' declaration pages reflecting the premiums for the 2007-08 policies).

3

1    titled, *Reese v. Indymac Bancorp, Inc., et al.*, No. 07-CV-1635-GW-VBk (the

2    "*Tripp* Litigation") in the Central District of California.  Answer[7] at ¶ 3.  The

3    Outside Directors are not named as defendants in the *Tripp* Litigation.

4    Counterclaim at ¶ 52.  The *Tripp* Litigation alleges that the Bancorp abandoned its

5    own loan underwriting guidelines and approved a substantial number of high risk

6    mortgage loans for the purpose of increasing the reported volume of such loans.  *Id.*

7    at ¶ 54.  The plaintiffs further allege that the named defendants made materially

8    false statements during the class period – March 1, 2006 to March 1, 2007 – in the

9    company's annual and quarterly reports, conference calls, and presentations.  *Id.*

10    There are no allegations of wrongdoing against the Outside Directors in the *Tripp*

11    Litigation.  *Id.*

12    **C.**     **The Trustee Litigation**

13       On November 11, 2009, Alfred H. Siegel, solely as Chapter 7 Trustee for

14    Bancorp ("the Trustee") filed a lawsuit titled, *Alfred H. Siegel v. Louis E. Caldera,*

15    *et al. (In re Indymac Bancorp, Inc.)*, Adv. No. 1:09-ap-02645 (the "Trustee

16    Litigation" or "Trustee Action") in the Bankruptcy Court against the Outside

17    Directors and Michael W. Perry, the former CEO and chairman of Bancorp.

18    Counterclaim at ¶¶ 5, 38.  The Trustee Litigation includes claims for breach of the

19    duties of care, loyalty, and good faith, and additionally for corporate waste.  The

20    Trustee's claims are premised on Bancorp's allegedly wrongful "downstreaming"

21    of $355 million to the Bank between September 2007 and May 2008.  *Id.* at ¶ 40.

22    These allegations had nothing to do with those asserted in the *Tripp* Litigation.  The

23    Trustee alleges that at the time the down-streaming transactions occurred, the

24    Outside Directors knew or should have known that the amounts transferred could

25    not prevent the Bank's failure and would serve merely to deplete Bancorp's assets.

26    *Id.*

27

28   

---

[7] "Answer" refers to the Outside Directors' Answer, filed on July 2, 2011.  Dkt. No. 94 at 3.

**MOTION TO DEFER INSURERS' MOTIONS FOR JUDGMENT ON THE PLEADINGS**

15967740.1

**D.     Relevant Policy Provisions**

According to the Insurers, three companion policy exclusions bar coverage under the 2008-09 policies for the Trustee Litigation.  The "*Tripp*" exclusion purports to exclude coverage for claims "based upon, arising out of, directly or indirectly resulting from or in consequence of or in any way involving" the *Tripp* Litigation.  Counterclaim at ¶54.  The "interrelated wrongful acts" exclusion addresses "interrelated wrongful acts," defined as those having as "a common nexus in any fact circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions." *Id.* at ¶ 56.  The "prior notice" exclusion purports to preclude coverage for loss resulting from any claim "based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance or situation, transaction, event or Wrongful Act which, before the Inception Date of this Policy, was the subject of any notice given under any other" policy.  Side-A Mot. at 5.

## III.     ARGUMENT

**A.     Legal Standards**

When the moving party requests relief requiring the resolution of factual disputes before discovery occurs, the Court has discretion to either "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." *See* Fed. R. Civ. P. 56(d).  The Court has broad powers to stay determinations of law pending fact discovery. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986) (stating that summary judgment should be adjourned where the nonmovant has not had the opportunity to discover information that is essential to his opposition); *Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003) (finding that where "a summary judgment motion is filed so early in the litigation, before a party has had any

15967740.1

realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56[(d)] motion fairly freely"); *Metabolife Int'l, Inc. v. Wornick,* 264 F.3d 832, 846 (9th Cir. 2001) ("requiring, rather than merely permitting, discovery 'where the non-moving party has not had the opportunity to discover information that is essential to its opposition.'"). These rules apply equally to motions for judgment on the pleadings. *See* Fed R. Civ. P. 12(d), which provides, in reference to Rule 12(c) motions that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

To obtain a stay of a motion involving needed discovery, the opposing party "must make (a) a timely application which (b) sufficiently identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists." *Emplrs. Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.,* 353 F.3d 1125, 1129 (9th Cir. 2004) (quoting *VISA Int'l Serv. Ass'n. v. Bankcard Holders of Am.,* 784 F.2d 1472, 1475 (9th Cir. 1986)). A similar iteration of this test allows the party opposing the dispositive motion to show "(1) [f]acts indicating a likelihood that controverting evidence exists as to material fact; (2) [s]pecific reasons why such evidence was not discovered or obtained earlier in the proceeding (*i.e.* good cause); (3) [s]teps or procedures by which [the non-moving party] propose[d] to obtain such evidence within a reasonable time; [and] (4) [a]n explanation of how those facts will suffice to defeat" the pending motion. *Thommeny v. Paramount Pictures Corp.,* No. 10-6951, 2011 WL 2899340, at *2 (C.D. Cal. July 13, 2011) (citations omitted).

The relevant facts here meet the above-stated standards. As a result, the Court may deny or stay the Insurers' motions to allow the Moving Insureds to conduct necessary discovery.

MOTION TO DEFER INSURERS' MOTIONS FOR JUDGMENT ON THE PLEADINGS

15967740.1

**B.**   **There Is Reasonable Grounds To Believe That Discovery Will Reveal The Insurers' Erroneous Interpretation Of Their Policy Exclusions.**

    **1.**   **The Moving Insureds are entitled to discover and introduce extrinsic evidence to refute the Insurers' position that the policy exclusions clearly and unambiguously preclude coverage.**

The Insurers claim in their motions that the exclusions at issue must be read only one way – that they all clearly and unambiguously sweep all the claims in the Trustee Litigation (and the myriad other underlying actions at issue here) into the 2007-08 policies.  Therefore, according to the Insurers, the Court can look solely to the "pleadings" and apply the exclusions to preclude all coverage for the Trustee's claims.  *See* Side-A Mot. at 10; Side-ABC Mot. at 11.  However, even if the Court were to accept the Insurers' characterization of the policy language, which it should not, before the Court so rules the Moving Insuresds are entitled to discover and present extrinsic facts to show a contrary interpretation.

Under well-settled California insurance policy interpretation law, if policy language is ambiguous, its words are to be construed in the insured's favor, consistent with the insured's reasonable expectations.  *Safeco Ins. Co. of Am. v. Robert S.*, 26 Cal. 4th 758, 765 (2001); *Kazi v. State Farm Fire & Cas. Co.*, 24 Cal. 4th 871, 879 (2001); *AIU Ins. Co. v. Sup. Ct.*, 51 Cal. 3d 807, 822 (1990).  Moreover, while grants of coverage are interpreted broadly, exclusions are interpreted narrowly.  *Mariscal v. Old Republic Life Ins. Co.*, 42 Cal. App. 4th 1617, 1623 (1996) ("exclusions are strictly interpreted against the insurer").

The meaning of an insurance policy's language is not to be resolved in a vacuum.  Instead, the language must be construed in the context of the policy as a whole, including the circumstances that gave rise to the policy and the matter giving rise to the claim for coverage.  *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 867 (1993); *Bank of the West v. Sup. Ct.*, 2 Cal. 4th 1254, 1265 (1992).  This is so because "[w]ords . . . do not have absolute

7

15967740.1

1   and constant referents." *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging*

2   *Co.*, 69 Cal. 2d 33, 38 (1968) (hereafter, "*PG&E*"). This is particularly true when

3   insurers rely on negotiated language that has left a paper trail about what the parties

4   mutually intended.

5          Accordingly, it does not matter how clearly a contract *appears* to be written.

6   *Trident Ctr. v. Conn. Gen. Life Ins. Co.*, 847 F.2d 564, 569 (9th Cir. 1988). As the

7   California Supreme Court has stated, even as to a contract that is apparently

8   unambiguous on its face, "a latent ambiguity may be exposed by extrinsic evidence

9   which reveals more than one possible meaning to which the language of the

10  contract is yet reasonably susceptible." *Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th

11  384, 391 (2006) (quoting and citing with approval *Morey v. Vannucci*, 64 Cal. App.

12  4th 904, 912 (1998)); *see also PG&E*, 69 Cal. 2d at 37, 39-40.

13         Therefore, under California law, even when a contract appears unambiguous

14  on its face, if the parties so request, extrinsic evidence must be provisionally

15  considered to determine whether the contract may contain some latent ambiguity

16  and whether the evidence is relevant to prove a meaning to which the contract is

17  "reasonably susceptible." *Dore*, 39 Cal. 4th at 391; *PG&E*, 69 Cal. 2d at 37, 39-40;

18  *Lockheed Martin Corp. v. Cont'l Ins. Co.*, 134 Cal. App. 4th 187, 197, 203 (2005)

19  (considering extrinsic evidence introduced by insurer in support of its construction

20  of policy) disapproved on other grounds in *State v. Allstate Ins. Co.,* 45 Cal. 4th

21  1008 (2009); *Morey*, 64 Cal. App. 4th at 914.

22         In this instance, the Moving Insureds request the opportunity to discover

23  extrinsic evidence and to identify at the very least a factual dispute between the

24  Moving Insureds and the Insurers as to the alleged "clarity" of the *Tripp* and other

25  exclusions cited by the Insurers. Discovery is necessary here to allow the Court to

26  determine whether the Insurers' policies are "reasonably susceptible" to the Moving

27  Insureds' interpretation, and thus, whether this matter can be resolved on the

28  pleadings.

MOTION TO DEFER INSURERS' MOTIONS FOR JUDGMENT ON THE PLEADINGS

2.    **The information currently available to the Moving Insureds suggests that evidence exists to challenge the Insurers' position.**

In their motions, the Insurers state in a conclusory fashion that the *Tripp* exclusion "is unmistakably and *intentionally broad* and plainly requires *only the slightest of connections* between the claim at issue and the *Tripp* Litigation." Side-ABC Mot. at 11 (emphasis added). Based on the Insurers' own argument about "intentionally broad" policy language, the Moving Insureds are entitled to conduct discovery to demonstrate the true intentions of the parties. Furthermore, the Insurers argue that the interrelated wrongful acts and prior notice exclusions should be interpreted in the same way as the *Tripp* exclusion. *See, e.g.,* Side-A Mot. at 20; Side-ABC Mot. at 10-11, n.6. On that basis, the Insurers ask the Court to treat the Trustee Litigation the same as the *Tripp* Litigation and deny coverage under the 2008-09 policies on that ground.

Based upon the limited policy underwriting information that the Moving Insureds currently possess,[8] however, (1) the *Tripp* exclusion was the product of extensive negotiations, and (2) the Insurers' position appears to contradict the parties' mutual intent based upon those negotiations. McDowell Decl., ¶ 3, Exh. A-E. Indeed, the Insurers initially proposed a *Tripp* exclusion that would only require a slight connection to new litigation. *Id.* Exh. A. Bancorp appears to have rejected this proposal outright as too broad and rendering the coverage illusory. *Id.* ¶ 4, Exh. B. Then, over the course of nearly a month, Bancorp and the Insurers exchanged language for the exclusion in an apparent effort to narrow it to apply only to future actions that mirrored the *Tripp* litigation (the Trustee Action does not fit within the purview of such litigation). *Id.* ¶ 5, Exhs. C-D. A more narrow exclusion was ultimately adopted by the parties. *Id.* Exh. E.

In addition, the Insurers substantially increased the premiums on the renewal

---

[8] Bancorp, not the Outside Directors, purchased the 2008-09 policies. Thus, the Outside Directors were not involved in the negotiations for those policies and do not possess complete information regarding the underwriting process.

9

15967740.1

1   policies. The Insurers' bases for this increase will likely support the Moving

2   Insureds' position that the 2008-09 policies were not intended to exclude any and

3   all claims related in any way, no matter how remote, to the subprime mortgage

4   matters that existed as of March 1, 2008; rather, they were written and intended to

5   cover the type of wrongful acts alleged in the Trustee Action.

6          The parties involved in these negotiations can attest to their actual

7   discussions – both internal and external – regarding the intent of coverage provided

8   by the 2008-09 policies. They also can testify as to their understanding of those

9   negotiations and expectations regarding the breadth of the relevant exclusions and

10  the reasons for the sky-high increase in premiums. Moreover, the Moving Insureds

11  have only limited documents. They expect that a complete underwriting file,

12  including all internal and external written communications regarding the

13  negotiations for the *Tripp* exclusion and the pricing of the policies, will further

14  clarify the parties' understandings and intent.

15         Critically, basic tenets of insurance policy interpretation mandate that policy

16  language not be interpreted in a manner that renders other policy language

17  redundant. *See, e.g., Boghos v. Certain Underwriters at Lloyd's of London*, 36 Cal.

18  4th 495, 503 (2005) (effect of Cal. Civ. Code Section 1641 "is to disfavor

19  constructions of contractual provisions that would render other provisions

20  surplusage"); *Farmers Ins. Exch. v. Knopp*, 50 Cal. App. 4th 1415, 1421 (1996)

21  ("contracts, including insurance contracts, are to be construed to avoid rendering

22  terms surplusage"). However, the Insurers' current interpretation of their policy

23  exclusions does just that. In fact, the Insurers argue that the three exclusions upon

24  which they rely all require the same result — that the Trustee Litigation should be

25  "bunched" with the *Tripp* Litigation and thus covered under the Insurers' 2007-08

26  policies, instead of under the 2008-09 policies.

27         Thus, the Insurers' current policy interpretation – that the *Tripp*, interrelated

28  wrongful acts, and prior notice exclusions all require the same result – cannot be

correct.  At the very least, the Insurers' documents and representatives involved in negotiating the 2008-09 language and underwriting those policies can clarify how these exclusions were intended to work together in a manner that is consistent with insurance policy interpretation standards as opposed to the Insurers' post-claim interpretations to advance their coverage denial effort.

Thus, the Moving Insureds expect that discovery of at least the parties involved in underwriting and negotiating the 2008-09 policies and related documents will negate the Insurers' proposed policy interpretation, or at the very least reveal a latent ambiguity in the policy language.  The Court thereby should allow the Moving Insureds to conduct discovery in advance of any ruling on the Insurers' motions.

### 3.    The Outside Directors have diligently pursued discovery.

On October 24, 2011, the Court held a scheduling conference in this lawsuit, at which the Court set an April 25, 2012 discovery cutoff.  McDowell Decl, ¶ 7. The next day, the Outside Directors settled the Trustee Action against them.  *Id.* However, the hearing to approve that settlement could not be scheduled to take place until December 21, 2011.  *Id.* ¶ 8.  To protect their interests in this action pending approval of their settlement, three weeks later, on November 17, 2011, the Outside Directors served document requests and interrogatories on Lloyd's and Zurich (the first two Side-ABC Insurers)[9].  *Id.* ¶ 9, Exhs. F-I.  Among other information, in those requests, the Outside Directors seek information relevant to interpreting the policy exclusions at issue in the Insurers' motions.  Specifically, on November 17, 2011, the Outside Directors served discovery requests regarding the drafting history and formation of the 2008-09 policies.  *Id.* ¶ 9, Exhs. F-G (Lloyd's

---

[9] The Outside Directors thus far have served discovery only on Lloyd's and Zurich because those insurers provided the first $20 million of insurance coverage and the Outside Directors settled the Trustee's claims against them for $15 million.  *See* Dkt. No. 197.  Thus, at this time, only those two insurers are relevant to respond to the Outside Directors' claims for coverage for the settlement.

MOTION TO DEFER INSURERS' MOTIONS FOR JUDGMENT ON THE PLEADINGS

15967740.1

1    and Zurich document request nos. 2, 4, 6, 8, 10, 13, and 16); *id.*, Exhs. H-I (Lloyd's

2    and  Zurich interrogatory nos. 2-5).

3         On December 1, 2011, the Outside Directors served additional relevant

4    discovery: Rule 30(b)(6) deposition notices of Lloyd's and Zurich's corporate

5    representatives. *Id.* ¶ 10, Exhs. J-K.  The topics for examination include the

6    drafting, negotiation, and underwriting of the 2008-09 policies. *Id.*

7         Lloyd's and Zurich's written discovery responses originally were due on

8    December 20, 2011, with the depositions noticed to commence on December 22

9    and 23.  The Outside Directors have agreed to short extensions for the Insurers to

10   respond to the discovery.  As a result, the written discovery responses now are due

11   on January 12, 2012, and the depositions are scheduled for January 19 and January

12   20, 2012.  *Id.* ¶ 11.

13        Thus, the Outside Directors have been diligent in pursuing discovery in this

14   action.  Regardless of that fact, and that the Outside Directors advised the Insurers

15   during the meet and confer process on the motions for judgment on the pleadings

16   that discovery was necessary before the Court can rule, the Insurers filed their

17   motions anyway.  The Insurers thus have no basis to oppose this motion on grounds

18   of lack of diligence when the Insurers were fully aware of the Outside Directors'

19   need for, and pursuit of specific discovery at the time the Insurers filed their

20   motions.  In fact, the Insurers' premature filing of case dispositive motions just as

21   discovery has commenced is no coincidence — they seek to avoid a meaningful

22   review by this Court of the merits of their coverage position.

23                          IV.    **CONCLUSION**

24        The Insurers have glossed over complex, fact-intensive policy interpretations

25   in an attempt to resolve this coverage dispute before the Moving Insureds have even

26   had the chance to take discovery.  This rush to judgment is contrary to well-

27   established California law that policy language must be interpreted in light of

28

MOTION TO DEFER INSURERS' MOTIONS FOR JUDGMENT ON THE PLEADINGS

15967740.1

1    extrinsic evidence and the facts of the case.  The Moving Insureds will suffer severe

2    prejudice if the Insurers' dispositive motions are decided now before the Moving

3    Insureds can complete discovery, the need for which the Insurers were fully aware

4    when they filed their motions.  The Moving Insureds thus respectfully request that,

5    should the Court be inclined to grant the Insurers' motions, it defer resolution of

6    those motions until the Moving Insureds have the opportunity to complete

7    discovery directed to the meaning of the challenged exclusions.

8    DATED:  December 16, 2011      MUNGER, TOLLES & OLSON LLP

9                                   John W. Spiegel
                                  Kathleen M. McDowell

10

11                                  By:_____/s/_____
                                  Kathleen M. McDowell

12

13                                  Attorneys for Defendants and
                                  Counterclaimants

14                                  Louis E. Caldera, Lyle E. Gramley, Hugh
                                 M. Grant, Patrick C. Haden, Terrance G.

15                                  Hodel, Robert L. Hunt II, Lydia H. Kennard,
                                 and Bruce G. Willison

16    Dated:  December 16, 2011      CORBIN, FITZGERALD & ATHEY LLP

17

18                                  By:_____/s/_____
                                  Michael W. Fitzgerald

19

20                                  Attorneys for Defendants and
                                  Counterclaimants

21                                  Kevin Callan, Samir Grover, Simon
                                 Heyrick, Jill Jacobson, John D. Olinski,

22                                  William Rothman, Scott W. Van Dellen,
                                 and Victor Woodworth

23    Dated:  December 16, 2011      FAIRBANK & VINCENT

24

25                                  By:_____/s/_____

26                                  Robert H. Fairbank

27                                  Attorneys for Defendant
                                 S. Blair Abernathy

28

13

15967740.1

## DECLARATION OF KATHLEEN M. McDOWELL

I, Kathleen M. McDowell, declare:

1.      I am an attorney in the law firm of Munger, Tolles & Olson LLP, counsel in the above-captioned action for Defendants and Counter-Claimants Louis E. Caldera, Lyle E. Gramley, Hugh M. Grant, Patrick C. Haden, Terrance G. Hodel, Robert L. Hunt II, Lydia H. Kennard, and Bruce G. Willison (collectively, the "Outside Directors"). I submit this declaration in support of the Moving Insureds' motion to defer decision on the insureds' motions for judgment on the pleadings until the Outside Directors and other moving insureds can conduct discovery. I am admitted to practice law in the state of California. I have personal knowledge of the facts stated in this declaration and could testify to them competently if called upon to do so.

2.      On December 6, 2011, a telephonic pre-filing meet and confer was held with various counsel for the carriers and individual insureds pursuant to Local Rule 7-3, during which counsel discussed the filing of this motion to permit the Outside Directors to take discovery pertinent to the insureds' motions for judgment on the pleadings before they are decided by the Court.

3.      Attached hereto as **Exhibit A-E** are true and correct copies of a series of emails and communications among Indymac Bancorp Inc. representatives (e.g., Roobik Galoosian), Indymac's insurance broker (Kate Freemantle, Marsh Risk and Insurance Services), Indymac's insurance counsel (Mike Rossi, Rossi Law Group), and representatives of insurance carriers (referred to as "Underwriters" or "BRIT") offering coverage for the 2008-2009 policy year concerning the scope of proposed exclusions to coverage being offered and their counsel (the Boundas firm). These emails and communications cover a nearly three-week time frame in February 2008. As indicated by the production numbers, these emails and communications were produced by Marsh Risk and Insurance Services pursuant to

MOTION TO DEFER INSURERS' MOTIONS FOR JUDGMENT ON THE PLEADINGS

15967740.1

1  subpoena.

2      4.      **Exhibit A** is an email dated February 19, 2008 from the broker

3  to Indymac representatives about the wording of a proposed "Interrelated Wrongful

4  Act" exclusion that was "inten[ded] … to tie any so-called "subprime" claims back

5  … to the 2007 policy period."  The broker identifies this scope as being "too

6  broad."  **Exhibit B** is an email dated February 21, 2008 from Indymac's counsel

7  and sent via "cc" to the broker further revising the "Interrelated Wrongful Acts"

8  language, and deleting prior language that would have extended the scope of the

9  exclusion to any transactions involving mortgage loans not saleable to government-

10  sponsored entities.   **Exhibit C** is an email dated February 21, 2008 from the

11  broker, forwarding Indymac's counsel revised version of the language to counsel

12  for the insurers and others.

13      5.      **Exhibit D** is an email dated February 21, 2008 between

14  representatives of the broker, which references a telephone conversation between

15  the broker and counsel for the insurers (Terri Lee Ferro).  In the email, the broker

16  confirmed that she had spoken to the insurers' counsel and "explained why we

17  believe the language is too broad on the interrelated definition.  We cannot exclude

18  the non GSE loans as it basically has the effect of excluding everything they

19  [Indymac] do …."

20      6.      **Exhibit E** is an email from four days later, dated February 25,

21  2008, in which the broker reported to Indymac representatives "[g]reat news" -- i.e.,

22  that the insurers had agreed to wording for the *Tripp* exclusion that was essentially

23  identical to what Indymac representatives had earlier proposed [reflected in Exhibit

24  B].

25      7.      On October 24, 2011, the Court conducted a scheduling

26  conference in this lawsuit at which the Court set an April 25, 2012 discovery cutoff.

27  The next day, the Outside Directors settled the Trustee Action against them.

28

15

**MOTION TO DEFER INSURERS' MOTIONS FOR JUDGMENT ON THE PLEADINGS**

15967740.1

1      8.    A hearing on a motion to approve the settlement between the

2   Trustee and the Outside Directors is scheduled for December 21, 2011 before Hon.

3   Sheri Bluebond in the United States Bankruptcy Court, Central District of

4   California, which I understand was the earliest date available on the Bankruptcy

5   Court's calendar.

6      9.    On November 17, 2011, the Outside Directors served document

7   requests and interrogatories on Lloyd's and Zurich (the first two Side-ABC

8   Insurers), including, among other, document requests regarding the drafting history

9   and formation of the 2008-09 policies.  Attached hereto as **Exhibits F-G** are true

10  and correct copies of the document requests propounded to Lloyd's and Zurich,

11  respectively.  Attached hereto as **Exhibit H-I** are true and correct copies of the

12  interrogatories propounded to Lloyd's and Zurich, respectively.

13     10.   On December 1, 2011, the Outside Directors served deposition

14  notices pursuant to Federal Rule of Civil Procedure 30(b)(6) for Lloyd's and

15  Zurich's corporate representatives.  The topics for examination include the drafting,

16  negotiation, and underwriting of the 2008-09 policies.  Attached hereto as **Exhibit**

17  **J-K** are true and correct copies of the Rule 30(b)(6) deposition notices propounded

18  to Lloyd's and Zurich, respectively.

19     11.   Lloyd's and Zurich's written discovery responses originally

20  were due on December 20, 2011, with the depositions noticed to commence on

21  December 22 and 23.  The Outside Directors have agreed to extensions for the

22  Insurers to respond to the discovery.  As a result, the written discovery responses

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

MOTION TO DEFER INSURERS' MOTIONS FOR JUDGMENT ON THE PLEADINGS

15967740.1

1  now are due on January 12, 2012, and the depositions are scheduled for January 19

2  and January 20.

3          I declare under penalty of perjury that the foregoing is true and correct,

4  and that this declaration was executed on December 16, 2011 at Los Angeles,

5  California.

6

7                              _/s/ Kathleen M. McDowell___

8                              Kathleen M. McDowell

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION TO DEFER INSURERS' MOTIONS FOR JUDGMENT ON THE PLEADINGS**

15967740.1