JOHN W. SPIEGEL (SBN 78935)
john.spiegel@mto.com
KATHLEEN M. McDOWELL (SBN 115976)
kathleen.mcdowell@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 25th floor
Los Angeles, CA 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

Attorneys for Defendants and Counterclaimants
LOUIS E. CALDERA, LYLE E. GRAMLEY,
HUGH M. GRANT, PATRICK C. HADEN,
TERRANCE G. HODEL, ROBERT L. HUNT
II, LYDIA H. KENNARD, and BRUCE G.
WILLISON

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **XL SPECIALTY INSURANCE COMPANY,** *et al.*, | **CASE NO. 2:11-CV-2078-GHK-JCG** |
| Plaintiffs, | **OUTSIDE DIRECTORS' OPPOSITION TO INSURERS' MOTIONS FOR JUDGMENT ON THE PLEADINGS** |
| v. | |
| **MICHAEL W. PERRY,** *et al.*, | **Judge: Hon. R. Gary Klausner** |
| Defendants. | |
| **LOUIS E. CALDERA, LYLE E. GRAMLEY, HUGH M. GRANT, PATRICK C. HADEN, TERRENCE G. HODEL, ROBERT L. HUNT II, LYDIA H. KENNARD, and BRUCE G. WILLISON,** | **Date: January 17, 2012** |
| Counterclaimants, | **Time: 9:00 a.m.** |
| v. | **Courtroom: 850** |
| **XL SPECIALTY INSURANCE COMPANY,** *et al.*, | |
| Counter-Defendants. | |

15983398.3

1  |  **LOUIS CALDERA, LYLE**
2  |  **GRAMLEY, HUGH GRANT,**
      **PATRICK HADEN, TERRENCE**
3  |  **HODEL, ROBERT HUNT, LYDIA**
      **KENNARD, and BRUCE WILLISON,**

4  |      **Cross-Complainants,**

5  |  **v.**

6  |  **CERTAIN UNDERWRITERS AT**
      **LLOYDS OF LONDON, an**
7  |  **unincorporated association; CATLIN**
      **INSURANCE CO., LTD., a United**
8  |  **Kingdom corporation; ZURICH**
      **AMERICAN INSURANCE CO., a**
9  |  **Delaware corporation; TWIN CITY**
      **FIRE INSURANCE CO., a Delaware**
10 |  **corporation; CONTINENTAL**
      **CASUALTY CO., a Delaware**
11 |  **corporation,**

12 |      **Cross-Defendants.**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.   FACTUAL BACKGROUND ........................................................................ 3

III.  ARGUMENT .............................................................................................. 6

   A.   Legal Standards Applicable to Motions for Judgment on the Pleadings........ 6

   B.   The Insurers' Exclusions Are At The Very Least Ambiguous And Should Be Interpreted In Favor Of The Outside Directors. ...................................................... 7

   C.   The Insurers Cannot Establish That The Capital Contribution Allegations Underlying The Trustee Litigation Are "Interrelated" To The Deficient Underwriting Allegations Underlying The *Tripp* Litigation. ............................... 8

      1.   Insurers Must Show More Than A "Slight Connection" For Claims To Be "Interrelated." ........................................................................................... 8

      2.   The Insurers Cannot Show That The Trustee Allegations Are Causally Related To The Tripp Allegations.................................................................. 10

   D.   The Court Cannot Rule At This Stage Of The Underlying Proceedings Against Coverage As A Matter Of Law. ............................................................ 13

   E.   The Outside Directors Are Entitled To Present Extrinsic Evidence To Demonstrate the Exclusions Are Ambiguous...................................................... 14

      1.   California Law Does Not Favor Deciding The Applicability of Policy Exclusions At the Pleading Stage Without Benefit of Discovery.................... 14

      2.   Discovery Will Demonstrate What The Parties Mutually Intended By These Exclusions. ......................................................................................... 16

IV.   CONCLUSION ........................................................................................ 17

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Admiral Ins. Co., Inc. v. Briggs*,
   264 F. Supp. 2d 460 (N.D. Tex. 2003) ................................................. 9

*Alfred H. Siegel v. Louis E. Caldera, et al. (In re Indymac Bancorp, Inc.)*,
   Adv. No. 1:09-ap-02645 .......................................................... 1, 4, 12

*Church Mut. Ins. Co. v. U.S. Liab. Ins. Co.*,
   347 F. Supp. 2d 880 (S.D. Cal. 2004) .................................................. 9

*Eureka Fed. Sav. & Loan Ass'n v. American Cas. Co. of Reading , Pa.*,
   873 F.2d 229 (9th Cir. 1989) ......................................................... 10

*Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist
   Congregational Church*,
   887 F.2d 228 (9th Cir. 1989) ........................................................... 6

*Gregory v. Home Ins. Co.*,
   876 F.2d 602 (7th Cir. 1989) ........................................................... 9

*Highwoods Props. v. Exec. Risk Indem., Inc.*,
   407 F.3d 917 (8th Cir. 2005) ......................................................... 15

*Hillcrest Christian Sch. v. Los Angeles*,
   No. 05-8788, 2006 U.S. Dist. LEXIS 97211 (C.D. Cal. Dec. 26, 2006) ............. 6

*Home Ins. Co. of Illinois v. Spectrum Information Technologies, Inc.*,
   930 F. Supp. 825 (E.D.N.Y. 1996) ...................................................... 7

*McCuen v. American Cas. Co. of Reading, Pennsylvania*,
   946 F.2d 1401 (8th Cir. 1991) .......................................................... 7

*Qwest Commc'ns Corp. v. City of Berkeley*,
   208 F.R.D. 288 (N.D. Cal. 2002) ....................................................... 6

*Reese v. Indymac Bancorp, Inc., et al.*,
   No. 07-CV-1635-GW-VBk ......................................................... passim

*WFS Fin., Inc. v. Progressive Cas. Ins. Co.,*
   232 F. App'x 624 (9th Cir. 2007); No. EDCV-04-976, 2005 U.S. Dist.
   LEXIS 46751, at *14-15 (C.D. Cal. Mar. 29, 2005)............................................ 8

**STATE CASES**

*Acceptance Ins. Co. v. Syufy Enters.,*
   69 Cal. App. 4th 321 (1999).......................................................................... 9

*AIU Ins. Co. v. Superior Court,*
   51 Cal. 3d 807 (1990).................................................................................... 8

*American Home Assurance Co. v. Allen,*
   814 N.E.2d 662 (Ind. App. 2005).................................................................. 7

*Bank of the West v. Superior Court,*
   2 Cal. 4th 1254 (1992)................................................................................ 10

*Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.,*
   5 Cal. 4th 854 (1993).................................................................................... 9

*Columbia Cas. Co. v. Northwestern Nat. Ins. Co.,*
   231 Cal. App. 3d 457 (1991)........................................................................ 15

*Dore v. Arnold Worldwide, Inc.,*
   39 Cal. 4th 384 (2006)........................................................................... 14, 16

*George v. Auto. Club. Of S. Cal.,*
   No. B229287, 2011 Cal. App. LEXIS 1550 (Cal. Ct. App. Dec. 12, 2011)...... 15

*GGIS Ins. Servs., Inc. v. Superior Court,*
   168 Cal. App. 4th 1493 (2008)..................................................................... 15

*Gray v. Zurich Ins. Co.,*
   65 Cal. 2d 263 (1966)................................................................................. 13

*Kazi v. State Farm Fire & Cas. Co.,*
   24 Cal. 4th 871 (2001).................................................................................. 8

*MacKinnon v. Truck Ins. Exch.,*
   31 Cal. 4th 635 (2003).................................................................................. 6

OUTSIDE DIRECTORS' OPPOSITION TO INSURERS' MOTIONS FOR JUDGMENT ON THE PLEADINGS
15983398.3

*ML Direct, Inc. v. TIG Specialty Ins. Co.*,
  79 Cal. App. 4th 137 (2000)...................................................................... 9

*Morey v. Vannucci*,
  64 Cal. App. 4th 904 (1998)...................................................................... 14

*Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*,
  69 Cal. 2d 33 (1968)....................................................................... 14, 15, 16

*Safeco Ins. Co. of Am. v. Robert S.*,
  26 Cal. 4th 758 (2001)............................................................................... 8

*Smith Kandal Real Estate v. Cont'l Cas. Co.*,
  67 Cal. App. 4th 406 (1998)....................................................................... 9

**STATUTES AND RULES**

Fed. R. Civ. P. 12(c) ...................................................................................... 6

Fed. R. Civ. P. 15(a)(2) ................................................................................. 13

**OUTSIDE DIRECTORS' OPPOSITION TO INSURERS' MOTIONS FOR JUDGMENT ON THE PLEADINGS**

15983398.3

## I.      **INTRODUCTION**

Through their improper motions for judgment on the pleadings, the Indymac D&O Insurers seek to strip their Insureds of $80 million of insurance coverage by asking this Court to declare — despite clear factual controversies, before any of the underlying lawsuits have been adjudicated, and without the benefit of discovery — that they have no coverage obligation under any of the 2008-2009 policies for the claims asserted in *Alfred H. Siegel v. Louis E. Caldera, et al. (In re Indymac Bancorp, Inc.)*, Adv. No. 1:09-ap-02645 (the "Trustee Litigation").  The Insurers' effort to avoid their clear coverage obligations under insurance policies for which they collected over $6 million in premiums should be rejected.

The Outside Directors[1] therefore join in the Oppositions concurrently filed by Mr. Perry  ("Perry Opp.").  The Outside Directors file this separate opposition to make four points:

*One*, it is simply not true, as the Insurers contend, that their policy exclusions are clear and unambiguous and can be interpreted and applied as a matter of law.  A number of courts have held to the contrary and found that exclusions with similar wording are ambiguous.  As a result, in the first instance, the exclusions must be interpreted in favor of the Outside Directors and the Insurers' motions must be denied.

*Two,* the Court also can deny the motions based upon a comparison of factual allegations in the Trustee Litigation and *Reese v. Indymac Bancorp, Inc., et al.*, No. 07-CV-1653-GW-VBk (the "*Tripp* Litigation").  Those allegations make clear that the Insurers cannot establish that the Trustee's claims against the Outside Directors are "interrelated" to the claims at issue in the earlier-filed *Tripp*

---

[1] The "Outside Directors" are Louis E. Caldera, Lyle E. Gramley, Hugh M. Grant, Patrick C. Haden, Terrance G. Hodel, Robert L. Hunt II, Lydia H. Kennard, and Bruce G. Willison.

1

15983398.3

Litigation. The Trustee Litigation involves capital contributions made by a parent company to its subsidiary bank which, according to the Trustee, should not have been approved by the Outside Directors. The *Tripp* Litigation is premised on the failure to disclose allegedly shoddy underwriting practices at the subsidiary bank; the case has nothing to do with — indeed, does not even mention — the capital contributions. Nor does it contain any allegations of wrongdoing against the Outside Directors. To prevail on their claim that they have no obligation to cover the Trustee Action under the 2008-09 policies, the Insurers must demonstrate that the Trustee Litigation and the *Tripp* Litigation have the requisite "causal connection" as to be deemed interrelated — an impossible task given the completely different legal theories, facts, time periods, and parties involved.

*Three*, should the Court determine that the allegations in the *Tripp* and Trustee Litigations are "related," which it should not, the Court is still not in a position to grant the Insurers' motion at this time. Until the Trustee Litigation is resolved, neither the parties nor the Court will know the ultimate bases for liability (if any). As a result, the Court cannot at this stage of the underlying actions make the determination regarding whether claims in the two lawsuits are sufficiently "related" to preclude coverage, as a matter of law.

*Four*, even if the Court disagrees with points one and two, it still cannot rule in favor of the Insurers at this time. The Insurers' motions cannot be decided in their favor without giving the Outside Directors the benefit of discovery to adduce extrinsic evidence relevant to the meaning of the exclusions. The Outside Directors have the right, under well-settled California insurance law (and the Federal Rules of Civil Procedure), to conduct discovery to show that the exclusions mean something other than what the Insurers claim — particularly where, as here, the exclusions relied upon by the Insurers were the product of extensive negotiations between the parties. The Outside Directors have propounded

2

15983398.3

discovery, to which the Insurers have not yet responded, directed to the negotiating history and meaning of the exclusions.  The Outside Directors have also filed a separate motion asking the Court to defer any ruling on the Insurers' motions for judgment on the pleadings until discovery can be conducted.

For these reasons, and all the additional grounds presented in the Perry Oppositions, the Outside Director respectfully submit that the Insurers' motions for judgment on the pleadings must be denied, or, in the alternative, deferred until after the Outside Directors have the opportunity to take discovery.

## II.    FACTUAL BACKGROUND

### A.    The Insurance Policies

In 2007, Indymac Bancorp, Inc. ("Bancorp") purchased $80 million of directors and officers ("D&O") liability insurance.  Counterclaim[2] at ¶ 25.  This coverage was spread among a "tower" of eight policies, each with a liability limit of $10 million.  *Id.*  These policies covered claims made from March 1, 2007 to March 1, 2008, and are collectively referred to herein as the "2007-08 policies." *Id.*

Before the end of the 2007-08 policy period, Bancorp purchased D&O coverage  from the Side-A and Side-ABC Insurers for the policy period March 1, 2008 to April 1, 2009 (the "2008-09 policies").  Counterclaim at ¶ 25.  The 2008-09 policies are at issue in this litigation.  The premium price for the renewal policies was extraordinarily high, more than $6 million.  *See id.* Exs. 1-8 (Insurers' declaration pages reflecting the premiums for the 2008-09 policies).  This premium

---

[2] "Counterclaim" refers to the Outside Directors' Counterclaims, filed on July 2, 2011.  Dkt. No. 94 at 23.

3

1   reflected an average increase of over 250% from the premium charged to Bancorp

2   for its 2007-08 D&O coverage.[3]  *Id.*

3   **B.      The *Tripp* Litigation**

4          On March 12, 2007, a putative class of Indymac shareholders filed a lawsuit

5   titled, *Reese v. Indymac Bancorp, Inc., et al.*, No. 07-CV-1635-GW-VBk (the

6   "*Tripp* Litigation") in the Central District of California.  Answer[4] at ¶ 3.  The

7   Outside Directors are not named as defendants in the *Tripp* Litigation.

8   Counterclaim at ¶ 52.  The *Tripp* Litigation alleges that Bancorp abandoned its

9   own loan underwriting guidelines and approved a substantial number of high risk

10   mortgage loans for the purpose of increasing the reported volume of such loans.

11   *Id.* at ¶ 54.  The plaintiffs further allege that the named defendants made materially

12   false statements during the class period — March 1, 2006 to March 1, 2007 — in

13   the company's annual and quarterly reports, conference calls, and presentations.

14   *Id.*  There are no allegations of wrongdoing against the Outside Directors in the

15   *Tripp* Litigation.  *Id.*

16   **C.      The Trustee Litigation**

17          On November 11, 2009, Alfred H. Siegel, solely as Chapter 7 Trustee for

18   Bancorp ("the Trustee") filed a lawsuit titled *Alfred H. Siegel v. Louis E. Caldera,*

19   *et al. (In re Indymac Bancorp, Inc.)*, Adv. No. 1:09-ap-02645 (the "Trustee

20   Litigation" or "Trustee Action") in the Bankruptcy Court against the Outside

21   Directors and Michael W. Perry, the former CEO and chairman of Bancorp.

22

23   _____

24   [3] This average increase of more than 250% is based on the total premium paid on

25   the 2008-09 policies against the total premiums for the 2007-08 policies.  *See* Joint
     Stipulation Exs. 9-16, Dkt. No. 193 (Insurers' declaration pages reflecting the

26   premiums for the 2007-08 policies).
     [4] "Answer" refers to the Outside Directors' Answer, filed on July 2, 2011.  Dkt.

27   No. 94 at 3.

28
     **OUTSIDE DIRECTORS' OPPOSITION TO INSURERS' MOTIONS FOR JUDGMENT ON THE PLEADINGS**
     15983398.3

1  Counterclaim at ¶¶ 5, 38.  The Trustee Litigation includes claims for breach of the

2  duties of care, loyalty, and good faith, and additionally for corporate waste.  The

3  Trustee's claims are premised on Bancorp's allegedly wrongful "downstreaming"

4  of $355 million to the Bank between September 2007 and May 2008.  *Id.* at ¶ 40.

5  These allegations had nothing to do with those asserted in the *Tripp* Litigation.

6  The Trustee alleges that at the time the downstreaming transactions occurred, the

7  Outside Directors knew or should have known that the amounts transferred could

8  not prevent the Bank's failure and would serve merely to deplete Bancorp's assets.

9  *Id.*

10 **D.**   **Exclusions Cited by Insurers**

11        The Insurers rely on three exclusions in the 2008-09 policies that they claim

12 potentially bar coverage for the Trustee Litigation:[5]

13        1) The *"Tripp"* exclusion purports to exclude coverage for claims "based

14 upon, arising out of, directly or indirectly resulting from or in consequence of or in

15 any way involving" the *Tripp* Litigation.  Side-A Mot. at 5;

16        2) The "interrelated wrongful acts" exclusion purports to exclude coverage

17 for wrongful acts that are "interrelated" with a prior claim, defined as those

18 wrongful acts having as "a common nexus any fact, circumstance, situation, event,

19 transaction or series of facts, circumstances, situations, events or transactions."  *Id.*

20 at 4; and

21        3) The "prior notice" exclusion purports to preclude coverage for loss

22 resulting from any claim "based upon, arising out of, directly or indirectly resulting

23 from, in consequence of, or in any way involving any fact, circumstance or

24

25

26

27 [5] The ABC Insurers rely on the *Tripp* and prior notice exclusions and the Side-A Insurers rely on all three exclusions.

28

**OUTSIDE DIRECTORS' OPPOSITION TO INSURERS' MOTIONS FOR JUDGMENT ON THE PLEADINGS**
15983398.3

situation, transaction[,] event or Wrongful Act which, before the Inception Date of this Policy, was the subject of any notice given under any other" policy.  *Id.* at 5.[6]

### III.  ARGUMENT

**A.    Legal Standards Applicable to Motions for Judgment on the Pleadings**

Judgment on the pleadings cannot be granted when disputed issues of material fact exist.  Fed. R. Civ. P. 12(c).  "When deciding a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), a court must treat the allegations contained in the challenged pleading as true.  Moreover, the court must resolve all doubts in the light most favorable to the nonmoving party." *Hillcrest Christian Sch. v. L. A.*, No. 05-8788, 2006 U.S. Dist. LEXIS 97211, at *4 (C.D. Cal. Dec. 26, 2006) (Klausner, J.) (citation omitted).

"As a result, a plaintiff is not entitled to judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery." *Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989).  Similarly, if the defendant raises an affirmative defense in his answer it will usually bar judgment on the pleadings.  *Id; see also Qwest Commc'ns Corp. v. City of Berkeley*, 208 F.R.D. 288, 295 (N.D. Cal. 2002) ("Berkeley denies every factual allegation made in the complaint related to the analysis under § 253(a).  While this might not matter were the Court deciding this issue at summary judgment, because the Court is being asked to decide preemption in a Rule 12(c) motion by the plaintiff, factual averments disputed by Berkeley may not be accepted in this motion.").

---

[6] While not in the form of an exclusion, the effect of this provision is to deny coverage where it otherwise would apply and therefore it is to be construed as an exclusion.  *See MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003) ("[I]nsurance coverage is interpreted broadly so as to afford the greatest possible protection to the insured, [whereas] exclusionary clauses are interpreted narrowly against the insurer.") (internal quotation marks omitted).

6

In light of this standard, in the very first instance, the Insurers' motions should be denied given that the Outside Directors' answer, affirmative defenses, and counterclaims create clear factual disputes as to whether the policy exclusions at issue in their motions in fact apply to the claims in the Trustee Litigation.[7]

**B.     The Insurers' Exclusions Are At The Very Least Ambiguous And Should Be Interpreted In Favor Of The Outside Directors.**

A number of courts have found when addressing exclusions that are similarly worded to those relied upon by the Insurers in their motions that the exclusions are ambiguous on their face. *See, e.g., McCuen v. Am. Cas. Co. of Reading, Pa.,* 946 F.2d 1401, 1407-08 (8th Cir. 1991) (court found terms "interrelated" and "similar" so "elastic" in meaning as to be ambiguous); *Am. Home Assurance Co. v. Allen,* 814 N.E.2d 662, 669, n.6 (Ind. App. 2005) (court declined to find matters "interrelated," relying on the ambiguity of the language, "series of continuous, repeated or interrelated wrongful acts"); *Home Ins. Co. of Ill. v. Spectrum Info. Techs., Inc.,* 930 F. Supp. 825, 848 (E.D.N.Y. 1996) (policy language that "[a]ll claims arising from the same wrongful act or interrelated, repeated or continuous wrongful acts of one or more assureds shall constitute a single claim and shall be deemed to be a claim first made and reported to the Insurer in the policy period in which the first such wrongful act is reported to the Insurer" was ambiguous).

Despite what the Insurers say, their exclusions are anything but clear and unambiguous as to their meaning and application.  California courts have routinely ruled that if policy language is ambiguous, its words are to be construed in the

---

[7] *See, e.g.,* Answer at ¶ 109 (denying Side-A Insurers' allegations from paragraph 109 of their complaint); *id.* at ¶ 110 (same, in regards to paragraph 110); *id.* at ¶ 111 (same, in regards to paragraph 111); *id.* at ¶¶ 136–41 (Outside Directors' six Affirmative Defenses); Counterclaims ¶¶ at 55, 57 (denying factual predicate for application of *Tripp,* interrelated wrongful acts, and prior notice exclusions).

7

1  insured's favor, consistent with the insured's reasonable expectations. *Safeco Ins.*
2  *Co. of Am. v. Robert S.*, 26 Cal. 4th 758, 765 (2001); *Kazi v. State Farm Fire &*
3  *Cas. Co.*, 24 Cal. 4th 871, 879 (2001); *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d
4  807, 822 (1990).  As a result, the Court should deny the Insurers' motions because
5  the Court cannot as a matter of law apply ambiguous exclusions to preclude
6  coverage.

7  **C.**   **The Insurers Cannot Establish That The Capital Contribution**
8  **Allegations Underlying The Trustee Litigation Are "Interrelated" To**
9  **The Deficient Underwriting Allegations Underlying The *Tripp***
10  **Litigation.**

11  1.   Insurers Must Show More Than A "Slight Connection" For Claims To
12  Be "Interrelated."

13  The Insurers contend that their exclusions are "unmistakably and
14  intentionally broad and plainly require[] only the slightest of connections between
15  the claim at issue and the *Tripp* Litigation."  Side-ABC Mot. at 11;  Side-A Mot. at
16  10-11.  This is not the law.  As a preliminary matter, to support their overly broad
17  interpretation of exclusionary policy language, the Insurers rely almost exclusively
18  on cases decided *after* fact discovery was complete — at the summary judgment
19  stage or even at trial.[8]  These cases simply do not apply here, where the Insurers
20  have yet to respond to the Insureds' discovery requests.

21

22

---

23  [8] Only one case cited by the Insurers — *WFS Fin., Inc. v. Progressive Cas. Ins.*
   *Co.*, 232 F. App'x 624, 625 (9th Cir. 2007) — was decided at the pleading stage.
24  But, unlike the present case, the relatedness of the two class actions at issue in
   *WFS* was not subject to material dispute.  The two lawsuits alleged that the same
25  company policy resulted in discrimination against minority borrowers.  *Id.*  That
   both lawsuits were in fact resolved together in one global settlement agreement
26  factored heavily into the court's relatedness analysis.  *WFS Fin. Inc. v. Progressive*
   *Cas. Ins. Co.*, No. EDCV-04-976, 2005 U.S. Dist. LEXIS 46751, at *14-15 (C.D.
27  Cal. Mar. 29, 2005).

8

15983398.3

28

Courts have not interpreted the "based on," "arising out of," and "related to" language in the exclusions at issue as broadly as the Insurers suggest, and have instead required some form of "causal relationship." *See, e.g., Smith Kandal Real Estate v. Cont'l Cas. Co.*, 67 Cal. App. 4th 406, 419 (1998) (interpreting the term "arising out of" to mean "causal relationship"); *see also Admiral Ins. Co., Inc. v. Briggs*, 264 F. Supp. 2d 460, 462-23 (N.D. Tex. 2003). Such a relationship cannot be "attenuated or unusual." *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.,* 5 Cal. 4th 854, 873 (1993). Indeed, California courts require that the two claims share the same "gravamen." *See Church Mut. Ins. Co. v. U.S. Liab. Ins. Co.*, 347 F. Supp. 2d 880, 888-90 (S.D. Cal. 2004). If this stringent "requisite factual relationship" is lacking, the Insurers cannot avoid coverage. *See ML Direct, Inc. v. TIG Specialty Ins. Co.*, 79 Cal. App. 4th 137, 144-46 (2000).

One of the cases relied upon by the Insurers, *Gregory v. Home Insurance Co.*, 876 F.2d 602, 605 (7th Cir. 1989), concluded that even a "logical connection" was "too subjective" to define "related," and therefore "limited the definition [of relatedness] to causal connections only." *See also Church Mut. Ins.* 347 F. Supp. 2d at 885-86 (rejecting insurers' broad interpretation of "arising out of" exclusionary language that would have "include[d] any claim connected in any way . . . no matter how attenuated the connection").

The Insurers mischaracterize the other case law they rely upon. For example, the Side-A Insurers cite *Acceptance Insurance Co. v. Syufy Enterprises*, 69 Cal. App. 4th 321 (1999) for the proposition that "California courts have consistently given a broad interpretation to the terms 'arising out of' . . . in various kinds of insurance provisions." Side-A Mot. at 11. However, that case interpreted "arising out of" within the context of a grant of coverage, *not in an exclusion*, which renders that case wholly inapposite. *Id.* at 323-24; *see also id.* at 328 (collecting cases concerning exclusion provisions). In yet another example of

9

overreaching, the Side-ABC Insurers tout *Bank of the West v. Superior Court*, 2 Cal. 4th 1254 (1992), which similarly did not involve interpretation of a policy exclusion.

      2.    <u>The Insurers Cannot Show That The Trustee Allegations Are Causally Related To The Tripp Allegations.</u>

As these cases demonstrate, contrary to the Insurers' arguments, California law requires more than a "slight connection" to establish interrelatedness. *See, e.g., Eureka Fed. Sav. & Loan Ass'n v. Am. Cas. Co. of Reading , Pa.*, 873 F.2d 229, 234 (9th Cir. 1989) ("common business plan" not enough to establish that all of the underlying claims were based on a "series of similar acts" or "interrelated acts"). The Insurers have not met, and cannot meet, that burden here as to the Outside Directors, especially given that all inferences must be drawn in favor of the Outside Directors. Accordingly, their motions must be denied.

As a threshold matter, there is a critical distinction between the Outside Directors and the other parties to whom the Insurers have directed their motions. Much of the argument in the Insurers' motions concerns the *Daniels* action, the *FDIC* litigation, the "mortgage-backed securities" litigation, and the *SEC* action. None of those cases involves the Outside Directors, who are defendants only in the Trustee Litigation — a case that is barely mentioned in the Insurers' motions, with good reason. Even if the Insurers' theory of "interrelatedness" holds water in other cases involving other Insureds — a conclusion at odds with the caselaw and which the Outside Directors contest — the Insurers cannot meet their burden as to the Trustee Litigation because allegedly shoddy underwriting practices are not causally related to the Trustee's claims of waste and breach of fiduciary duty arising from the downstreaming of capital from Bancorp to the Bank.

The Trustee Litigation alleges various breaches of fiduciary duty stemming from Bancorp making capital contributions to the Bank — it does not rely on loan

10

underwriting or origination practices.  The core of the Trustee Litigation is that the Outside Directors allegedly breached their fiduciary duties to Bancorp by approving or acquiescing to Bancorp's transfer of $355 million to the Bank between September 2007 and May 2008.  The Trustee contends that the downstream transfers were a waste of assets due to the Bank's illiquidity and undercapitalization during this time period.  *See, e.g.*, Trustee's Compl. at ¶¶ 64-87, 132-34, 265-302.  All of these alleged facts, along with anything that resembles them, are conspicuously absent from the complaint in the *Tripp* Litigation.

Similarly, the complaint in the Trustee Litigation alleges that the Outside Directors knew or should have known in late 2007 and 2008 that the Bank would fail without enormous outside capital infusions.  *Id.* at ¶¶ 48-49, 54.  In contrast, the complaint in *Tripp* is devoid of any allegation that the Bank had inadequate capital or liquidity or even that the *Tripp* defendants misrepresented the Bank's capital or liquidity.  The amount of capital the Bank needed to survive in late 2007 and 2008, or any other time period for that matter, is irrelevant to the *Tripp* Litigation.

The complaint in the Trustee Litigation further alleges that these downstream transfers violated company policies requiring Bancorp to maintain minimum capital levels and prior board approval of capital transfers.  *Id.* at ¶¶ 202-213.  For example, the Trustee alleges that a $70 million downstream transfer in March 2008, a year after the *Tripp* class period ended, reduced Bancorp's liquidity levels below required internal limits for the foreseeable future and was executed without prior board approval.  *Id.* at ¶¶ 66, 211.  Allegations about downstream transfers and related Bancorp policy violations have nothing to do with the *Tripp*

**OUTSIDE DIRECTORS' OPPOSITION TO INSURERS' MOTIONS FOR JUDGMENT ON THE PLEADINGS**

15983398.3

Litigation's allegations that certain officers misrepresented the Bank's underwriting and appraisal practices to the investing public.[9]

Further, the *Tripp* Litigation lacks any allegations similar to the Trustee's claims that the Outside Directors failed to aggressively pursue outside capital-raising opportunities to meet the Bank's need for capital. *Id.* ¶¶ at 135-185. The Trustee's Complaint alleges in great detail how the Board of Directors delegated its purported responsibility to raise capital to Mr. Perry. *Id.* The *Tripp* Litigation neither concerns capital-raising activities, nor even mentions them.

Rather than discuss these distinct facts that underlie the Trustee's claims, the Insurers have trolled the complaint in the Trustee Litigation for any reference to underwriting or appraisals in a failed effort to tie the Trustee's claims to those in *Tripp*. For instance, the Insurers assert that the Trustee's claims involve the Bank's appraisal practices because the Trustee uses the term "appraisal" *once* when quoting the Treasury OIG's report. Side-A Mot. at 16 (citing Trustee's Compl. ¶ 44). The Trustee's Complaint never mentions appraisals again and appraisal practices are in no way tied to the Trustee's claims.

As one would expect, almost any complaint against former directors and officers of Indymac would likely reference the Bank's primary business — underwriting and originating loans — at least a few times, whether or not underwriting has anything to do with the claims in that complaint. As the Bankruptcy Court noted, these scattered references simply give "color" to the Trustee's downstream transfer case. Hr'g Tr. on Motions to Dismiss, *Siegel v. Caldera*, Adv. No. 09-02645, at 26:6-8 (Bankr. C.D. Cal. Apr. 20, 2010). What

---

[9] To this end, the Trustee's allegations of damages — the amount of the downstream transfers made between September 2007 and May 2008 ($355 million) — are entirely separate from the damages in the *Tripp* Litigation — artificially inflated values at which those plaintiffs purchased Bancorp's stock from March 2006 to March 2007 due to alleged misrepresentations by Mr. Perry.

12

they do not do, much as the Insurers might wish otherwise, is transform the Trustee's claims that downstream transfers and related accounting and policy violations and deficient capital-raising efforts between September 2007 through May 2008 constitute breaches of fiduciary duties into anything resembling a securities case about corporate misrepresentations concerning underwriting and appraisal practices in 2006 and early 2007.[10]

In short, the Trustee Litigation and the *Tripp* Litigation are by no means related, even when judged by allegations alone, and not adjudicated facts. Recognizing that the gravamen of the Trustee's complaint has no relation to the *Tripp* Litigation, the Insurers instead seek to redefine the Trustee's Complaint to contort its facts to fit within the allegations of deficient underwriting and appraisal practices addressed in the *Tripp* Complaint. The Insurers' effort is disingenuous and manufactured. Regardless of what any of the other lawsuits against other Insureds may allege, one fact is clear — the Trustee and *Tripp* Litigations are wholly unrelated. The Insurers' motions should be denied on their merits.

**D.   The Court Cannot Rule At This Stage Of The Underlying Proceedings Against Coverage As A Matter Of Law.**

Even if the Court disagrees that the allegations in the *Tripp* and Trustee Litigations are sufficiently different from one another for purposes of the Insurers' "related claims" exclusions, the Court still cannot grant the Insurers' motions at this juncture. Assuming, based solely upon the allegations in the *Tripp* and Trustee Complaints, that the actions are "related" (although they are not), it may be that the facts as adjudicated would warrant a wholly different conclusion.

---

[10] Even more incredible is the Insurers' suggestion that, because the Trustee's Complaint references and attaches the Treasury OIG's report, every fact contained in that report somehow gives rise to the Trustee's claims. Side-A Mot. at 15, 17.

13

Regardless of how the Trustee complaint presently is framed, not until the matter is ultimately adjudicated or otherwise resolved can the Court determine the factual predicate as to whether the *Tripp* and Trustee Litigations implicate the Insurers' exclusions. For this additional reason, the Insurers' effort to resolve the duty to indemnify issue on the pleadings must be rejected.

**E.   The Outside Directors Are Entitled To Present Extrinsic Evidence To Demonstrate The Exclusions Are Ambiguous**

At the very least, the Court should defer resolution of the Insurers' motions because the Outside Directors have not yet had the opportunity to take discovery to show how the exclusions, even if seemingly unambiguous, are reasonably susceptible to an ambiguous interpretation, and to demonstrate what the parties actually intended by the exclusions.

1.   <u>California Law Does Not Favor Deciding The Applicability Of Policy Exclusions At The Pleading Stage Without The Benefit Of Discovery.</u>

As the California Supreme Court has consistently reaffirmed, even as to a contract apparently unambiguous on its face, "a latent ambiguity may be exposed by extrinsic evidence which reveals more than one possible meaning to which the language of the contract is yet reasonably susceptible." *Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 391 (2006) (quoting and citing with approval *Morey v. Vannucci*, 64 Cal. App. 4th 904, 912 (1998)); *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 37 (1968).

Even when a contract *appears* unambiguous, if the parties so request, extrinsic evidence must be provisionally considered to determine whether the contract may contain some latent ambiguity and whether the evidence is relevant to prove a meaning to which the contract is "reasonably susceptible." *Dore*, 39 Cal. 4th at 391; *PG&E*, 69 Cal. 2d at 37, 39-40; *George v. Auto. Club. Of S. Cal.*, No. B229287, 2011 Cal. App. LEXIS 1550, at *8-9 (Dec. 12, 2011).

14

15983398.3

1   Given that the Insurers' own cases describe the interpretation of exclusions

2   similar to those at issue here as a fact-driven exercise, their argument that the

3   exclusions are "unmistakably broad," "unambiguous" and subject to interpretation

4   as a matter of law seems particularly disingenuous.  As the Insurers' cases have

5   recognized, "[e]ven apparently clear policy language may be ambiguous when read

6   in the context of the policy and the circumstances of the case."  *GGIS Ins. Servs.,*

7   *Inc. v. Superior Court*, 168 Cal. App. 4th 1493, 1506-07 (2008) (citation omitted).

8   Another case cited by the Insurers held that "context is often central to the way in

9   which policy language is applied: the same language may be found both

10  ambiguous and unambiguous as applied to different facts."  *Highwoods Props. v.*

11  *Exec. Risk Indem., Inc.*, 407 F.3d 917, 923 (8th Cir. 2005).

12  Therefore, against this backdrop, the interpretation of a policy exclusion is

13  premature at the judgment on the pleadings stage because the Outside Directors

14  have not yet had the opportunity to obtain discovery and introduce extrinsic

15  evidence to support their interpretation of the policy.  *Columbia Cas. Co. v. Nw.*

16  *Nat'l Ins. Co.*, 231 Cal. App. 3d 457, 470 (1991) (reversing judgment on the

17  pleadings because "[g]iven the liberality of California's parol evidence rule, a

18  judgment on the pleadings granted in reliance on the terminology of [the policy] to

19  negate an express allegation of its meaning is highly suspect. . . . [C]onclusive

20  negation is unlikely because of the inevitable prospect that parol evidence may

21  lead to an interpretation of the contract consistent with the pleading's express

22  allegation.").  The Insurers would have this Court gloss over this important

23  procedural distinction and dismiss the Outside Directors' claims at the pleading

24  stage, but to do so is contrary to well-established California law.

25  Through their motions, the Insurers attempt to have the Court interpret these

26  exclusions prior to any discovery about what the parties intended these exclusions

27  to cover.  The Insurers themselves claim that the *Tripp* exclusion is "*intentionally*

28

15983398.3

broad." Side-ABC Mot. at 11 (emphasis added.)  By so doing, the Insurers have opened the door as to what the parties intended the exclusions to mean, which should entitle the Outside Directors to discovery about the parties' mutual intent. The Outside Directors must be allowed to obtain and present extrinsic evidence so the Court can provisionally consider that evidence in determining whether the policy is "reasonably susceptible" to the Outside Directors' interpretation.  *Dore*, 39 Cal. 4th at 391-92; *PG&E*, 69 Cal. 2d at 37, 39-40.

>    2.    Discovery Will Demonstrate What The Parties Mutually Intended By These Exclusions.

As shown in the Outside Directors' accompanying motion to defer the Insurers' motions for judgment on the pleadings pending discovery, the limited evidence uncovered to date shows that the intended scope of the *Tripp* exclusion — the subject of extensive negotiations — was much narrower than what the Insurers now claim.  *See* Declaration of Kathleen McDowell ISO Motion to Defer Insurers' Motions for Judgment on the Pleadings Pending Discovery, ¶¶ 3-6, Exs. A-E (filed concurrently herewith and incorporated herein by reference).

In addition, it is undisputed that the Insurers substantially increased the premiums on the 2008-09 policies, charging an average of over 250% more and in one case 443% more than the premium charged for the 2007-08 policies.  Clearly, the Insureds would not pay over 250% more in premiums in return for less coverage, or, if the Insurers' interpretation of the exclusions is accepted, for coverage that would be illusory.  Discovery of the reasons underlying this increase likely will show that the parties intended the exclusions to be narrow, and not as broad or sweeping as the Insurers now maintain.

## IV.    **CONCLUSION**

For the foregoing reasons, the Insurers' Motions for Judgment on the Pleadings should be denied.

16

15983398.3

DATED:  December 16, 2011

MUNGER, TOLLES & OLSON LLP
JOHN W. SPIEGEL
KATHLEEN M. MCDOWELL


By:  _____/s/_____

        Kathleen M. McDowell

Attorneys for Defendants and Counter-Claimants

Louis E. Caldera, Lyle E. Gramley, Hugh M. Grant, Patrick C. Haden, Terrance G. Hodel, Robert L. Hunt II, Lydia H. Kennard, and Bruce G. Willison

17