UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-02078-RGK (JCGx) | Date | January 26, 2012 |
|---|---|---|---|
| Title | XL SPECIALTY INSURANCE CO. et al. v. MICHAEL PERRY et al. | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** **(IN CHAMBERS) Order Re: Plaintiffs' Motion for Judgment on the Pleadings (DE 192), Counterdefedants' Motion for Judgment on the Pleadings (DE 194), Defendant's Motion for Judgment on the Pleadings (DE 195), Defendants' Motion to Defer Motions for Judgment on the Pleadings (DE 208)**

### I. INTRODUCTION

On March 10, 2011, XL Specialty Insurance Company, Arch Insurance Company, ACE American Insurance Company, and Axis Insurance Company (collectively, "Side-A Insurers") filed a Complaint against the former officers and directors of IndyMac Bank, F.S.B. and/or its holding company IndyMac Bancorp, Inc (collectively, "Defendants" or "Insureds"). The Complaint asks for declaratory relief that six underlying actions brought against the Defendants are not within the scope of the 2008-2009 (or "Tower 2") insurance policies provided by the Side-A Insurers.

The Defendants, in various groups, have filed three separate counterclaims against the Side-A Insurers, adding as counterdefendants Catlin Insurance Company, Zurich American Insurance Company, Twin City Fire Insurance Company, and Continental Casualty Company. The first counterclaim ("Perry Counterclaim") is brought by all but two of the officers of Indymac Bancorp and IndyMac Bank. The second counterclaim ("Caldera Counterclaim") is brought by all of the outside directors of Indymac Bancorp and IndyMac Bank. The third counterclaim ("Koon/Shellem Counterclaim") is brought by the remaining two officers of Indymac Bancorp and IndyMac Bank. On August 28, 2011, Certain Underwriters at Lloyds London intervened as counterdefendants (collectively with other counterderfendants as "ABC Insurers"). Together the three counterclaims ask for declaratory judgments that eleven underlying actions are within the scope of the Tower 2 insurance policies provided by the Side-A Insurers and the ABC Insurers.

There are presently four different motions pending before the Court:

1) The Side-A Insurers have moved for Judgment on the Pleadings as to their Complaint and all three counterclaims in their entirety. This Motion is opposed by all Defendants.
2) The ABC Insurers have moved for Judgment on the Pleadings as to all three counterclaims in their entirety. This Motion is opposed only by Defendant Perry.
3) Defendant Perry has moved for a Judgment on the Pleadings as to the fifth and ninth claim in the Perry Counterclaim. Defendant Keys has joined in this Motion. This Motion is opposed by the Side-A and ABC Insurers together.
4) All of the Defendants except Perry, Keys, Koon, and Shellem have moved to defer judgment on the first and second motions until after the parties have conducted discovery. This Motion is opposed by the Side-A and ABC Insurers together.

For the reasons discussed below, the Court **DENIES** the pending motions.

## II. FACTUAL BACKGROUND

The present action is one of many in this Court stemming from the bankruptcy filing of IndyMac Bancorp, Inc.

In July 2008 the Office of Thrift Supervision seized IndyMac Bank, F.S.B. ("IndyMac") and appointed the FDIC as receiver to manage IndyMac's assets and secured liabilities. Shortly thereafter IndyMac Bancorp ("Bancorp") the holding company for IndyMac, of which IndyMac was its only asset, filed for bankruptcy in the United States Bankruptcy Court for the Central District of California.

The former officers and directors of both IndyMac and Bancorp have subsequently been sued in several different state and district courts for various breaches of corporate fiduciary duties and violations of securities laws. These lawsuits are collectively referred to as the "underlying actions." The underlying actions that are pertinent to the present case and pending motions are as follows:

1) "Tripp Litigation"–class action securities lawsuit alleging that IndyMac ignored its own underwriting standards when originating loans.
2) "Daniels Litigation"–consolidated class action lawsuit alleging that IndyMac failed to enforce its internal controls in order to originate as many loans as possible.
3) "MBS Litigation"–several class action lawsuits alleging that IndyMac failed to disclose that the company was no longer adhering to underwriting standards.
4) "FDIC Letter"–a demand for payment of civil damages to the FDIC for failure to properly underwrite and manage loans.
5) "Van Dellen Litigation"–a suit brought by the FDIC alleging a negligent growth strategy and negligent underwriting practices.
6) "Siegel Litigation"–an adversary suit in Bancorp's bankruptcy proceeding alleging breach of corporate fiduciary duties.
7) "MBIA Litigation"–a lawsuit alleging false representations regarding compliance with underwriting standards.
8) "Assured Guaranty Litigation"–a lawsuit also alleging false representations regarding compliance with underwriting standards.
9) "SEC Litigation"–a lawsuit brought by the SEC against Defendants Perry and Keys.
10) "FDIC Litigation"–a lawsuit brought by the FDIC against Defendant Perry.
11) "Trustee Letter"–a letter by the Trustee of Bancorp's estate (Alfred Siegel) informing the Defendants of his intent to pursue a claim against the Defendants for breaches of their fiduciary duties.

Prior to its fall, IndyMac and IndyMac Bancorp had obtained substantial insurance coverage for the officers and directors and the Bank itself. The insurance coverage is broken up into two different

policy periods, 2007-2008 ("Tower 1") and 2008-2009 ("Tower 2"). Within each policy period there are eight different layers of coverage, with each provider covering $10 million in claims, for a total of $80 million of coverage in each policy year.

The first four providers in each tower provide ABC coverage for the following losses: (1) losses resulting from claims against directors and officers of Bancorp for individual acts, also known as "Side-A" coverage; (2) losses resulting from Bancorp's indemnification of its directors and officers, also known as "Side-B" coverage; and (3) losses sustained by Bancorp and its subsidiaries as a result of securities law violations, also known as "Side-C" coverage. The second four providers in each tower provide Side-A coverage only.

Because the Tower 2 policies were written after the Tripp Litigation had been filed, they include specific language exempting the Tripp Litigation and other related "claims" from coverage under Tower 2. The scope of these exemption clauses is the heart of the present case.

## III. LEGAL STANDARD

A motion for judgment on the pleadings is "functionally identical" to a motion to dismiss for failure to state a claim; the only significant difference is that a Rule 12(c) motion is properly brought "after the pleadings are closed – but early enough not to delay trial." Fed. R. Civ. P. 12(c); *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). The Court may grant a Rule 12(c) motion for judgment on the pleadings only if, taking all the allegations in the pleading as true, the moving party is entitled to judgment as a matter of law. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990).

When a Rule 12(c) motion is based on a failure to state a claim, the court must assume the allegations in the challenged complaint are true, and construe the complaint in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). When a plaintiff moves for judgment on the pleadings as to its own complaint, the court shall not grant the motion when the answer raises issue of fact that would defeat recovery or any affirmative defenses. *Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989).

## IV. DISCUSSION

The Court will first discuss the three pending Motions for Judgment on the Pleadings and then turn to the fourth Motion to Defer Judgment.

### A. **Motions for Judgment on the Pleadings**

The three Motions for Judgment on the Pleadings each ask the Court to construe clauses in the Tower 2 insurance policies in order to determine whether the underlying actions are covered or not covered under those policies as a matter of law.

In a motion for judgment on the pleadings, a court may consider only the content of the pleadings. *See* Fed. R. Civ. Pro 12(d) (noting that if the court considers evidence beyond the pleadings, the motion is one for summary judgment). However, the scope of the pleadings includes any documents that are incorporated by reference into the pleadings. Fed. R. Civ. Pro. 10(c). In this case, the parties have incorporated into the pleadings all eight insurance contracts and the complaints in each of the underlying actions.

In California, the interpretation of an insurance contract, like contracts generally, is a matter of law for the court to determine. *Cont'l Cas. Co. v. City of Richmond*, 763 F.2d 1076, 1079 (9th Cir. 1985) (applying California law); *Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 871 (9th Cir. 1979). In making a determination as to the meaning of the contract language, specifically whether it is unambiguous on its face, the court is required to consider pertinent extrinsic evidence. *Jones-Hamilton Co. v. Beazer Materials & Servs, Inc.*, 973 F.2d 688, 692 (9th Cir. 1992); *Brobeck*, 602 F.2d at 871. Only after looking at this extrinsic evidence may a court make a determination as to whether the extrinsic evidence should be used to give meaning to any ambiguous language in the contract. *Jones-Hamilton*, 973 F.2d at 692; *Brobeck*, 602 F.2d at 871.

The Defendants point to extrinsic evidence that will be available to the parties and the Court following discovery that may be relevant to interpreting the pertinent portions of the insurance contracts. Namely, they point to the dramatic increase in the premium price between the Tower 1 and Tower 2 policies and the facts surrounding the underwriting procedures. (Perry Opp. to ABC Insurers' Mot. for J. on the Pleadings 14-15 and Outside Directors' Opp. to Side-A Mot. for J. on the Pleadings 14-16.) However, the Court cannot consider such evidence in a motion for judgment on the pleadings as it would require the Court to go beyond the scope of the pleadings.

Because the Court is required to consider pertinent extrinsic evidence before it makes a determination as to whether the language of an insurance contract is unambiguous on its face and it is unable to do so under the parameters of the present Motions, the Court must therefore **deny** the Motions for Judgment on the Pleadings.

### B. Motion to Defer Ruling on the Motions for Judgment on the Pleadings

Presently before the Court is also a Motion to Defer Ruling on the Motions for Judgment on the Pleadings made by all but four of the Defendants. These Defendants ask the Court to defer ruling on the Motions for Judgment on the Pleadings until the parties can conduct adequate discovery and present extrinsic evidence to aid the Court in the task of contract interpretation. Defendants' Motion is improper because any evidence beyond the pleadings that could only be presented to the Court following discovery would not be appropriately before the Court on a motion for judgment on the pleadings. Such evidence would be properly before the Court on a motion for summary judgment.

### V. CONCLUSION

For the reasons stated above, the present Motions are **DENIED.**

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | slw |