1  David Simantob, SBN 155790
2  dsimantob@tresslerllp.com
   Elizabeth L. Musser, SBN 203512
3  emusser@tresslerllp.com
4  TRESSLER LLP
   1901 Avenue of the Stars, Suite 450
5  Los Angeles, CA 90067
6  Telephone: (310) 203-4800
   Facsimile: (310) 203-4850
7
8  Attorneys for Counterdefendant
   Catlin Insurance Company (UK) Ltd. and
9  Intervenor Counterdefendants Those Certain Underwriters at
10 Lloyd's, London Subscribing to Policy No. QA011608
11 (Additional parties and counsel listed on next page)
12
13            UNITED STATES DISTRICT COURT
14    CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
15
16 XL SPECIALTY INSURANCE          Case No. 2:11-CV-2078-RGK-JCG
   COMPANY, et al.,
17                                 Hon. R. Gary Klausner
              Plaintiffs,
18                                 **INSURERS' NOTICE OF**
   v.                             **MOTION AND MOTION FOR**
19                                **SUMMARY JUDGMENT, OR, IN**
                                  **THE ALTERNATIVE, PARTIAL**
20 MICHAEL W. PERRY, et al.       **SUMMARY JUDGMENT;**
                                  **SUPPORTING MEMORANDUM**
21            Defendants.         **OF POINTS AND AUTHORITIES**

22                                Date:      June 25, 2012
                                  Time:      9:00 a.m.
23                                Ctrm:      850
24 ──────────────────────────     Trial Date: July 24, 2012
25 AND RELATED COUNTERCLAIMS
26
27
28
                                           INSURERS' NOTICE OF MOT. AND MOT. FOR
                                                        SUMMARY JUDGMENT

Theodore A. Boundas (admitted *pro hac vice*)
tboundas@bswb.com
W. Joel Vander Vliet (admitted *pro hac vice*)
wvandervliet@bswb.com
BOUNDAS, SKARZYNSKI, WALSH & BLACK, LLC
200 East Randolph Drive, Suite 7200
Chicago, Illinois 60601
Telephone: (312) 946-4200
Facsimile: (312) 946-4272

Attorneys for Counterdefendant
Catlin Insurance Company (UK) Ltd. and
Intervenor Counterdefendants Those Certain Underwriters at
Lloyd's, London Subscribing to Policy No. QA011608


Brian D. Harrison, SBN 157123
brian.harrison@sedgwicklaw.com
Robert S. Gebhard, SBN 158125
robert.gebhard@sedgwicklaw.com
Veena A. Mitchell, SBN 161153
veena.mitchell@sedgwicklaw.com
SEDGWICK LLP
333 Bush Street, 30th Floor
San Francisco, California 94104
Telephone: (415) 781-7900
Facsimile: (415) 781-2635

Attorneys for Zurich American Insurance Company


Jason P. Cronic (admitted *pro hac vice*)
jcronic@wileyrein.com
WILEY REIN LLP
1776 K Street NW
Washington, DC  20006
Telephone: (202) 429-7000
Facsimile: (202) 719-7049


Attorneys for Plaintiff and Counterdefendant
XL Specialty Insurance Company

INSURERS' NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT

1   Gordon J. Calhoun, SBN 84509
    calhoun@llbslaw.com
2   Douglas R. Irvine, SBN 119863
3   irvine@llbslaw.com
    LEWIS BRISBOIS BISGAARD & SMITH LLP
4   221 N. Figueroa Street, Suite 1200
5   Los Angeles, CA 90012
    Telephone: (213) 250-1800
6   Facsimile: (213) 250-7900

7
    Attorneys for Plaintiff and Counterdefendant
8   XL Specialty Insurance Company

9

10  Kim W. West, SBN 78553
11  kim.west@clydeco.us
    Alec H. Boyd, SBN 161325
12  alec.boyd@clydeco.us
13  CLYDE & CO LLP
    101 Second Street, 24th Floor
14  San Francisco CA 94105
15  Telephone: (415) 365-9800
    Facsimile: (415) 365-9801
16

17   Attorneys for Plaintiff and Counterdefendant
     Arch Insurance Company
18

19
    Edward P. Gibbons (admitted *pro hac vice*)
20  egibbons@wwmlawyers.com
21  Tiffany Saltzman-Jones (admitted *pro hac vice*)
    tsj@wwmlawyers.com
22  WALKER WILCOX MATOUSEK LLP
23  One North Franklin Street, Suite 3200
    Chicago, IL 60606
24  Telephone: (312) 244-6700
25  Facsimile: (312) 244-6800

26
    Attorneys for Plaintiff and Counterdefendant
27  ACE American Insurance Company

28

INSURERS' NOTICE OF MOT. AND MOT. FOR
SUMMARY JUDGMENT

1   Ommid Farashahi (admitted *pro hac vice*)
    ofarashahi@bcnlaw.com
2   Andrew W. Smith (admitted *pro hac vice*)
3   asmith@bcnlaw.com
    Michael T. Skoglund (admitted *pro hac vice*)
4   mskoglund@bcnlaw.com
5   Ross B. Edwards (admitted *pro hac vice*)
    redwards@bcnlaw.com
6   BATES CAREY NICOLAIDES LLP
7   191 N. Wacker, Suite 2400
    Chicago, IL 60606
8   Telephone: (312) 762-3100
9   Fax: (312) 762-3200

10  Attorneys for Plaintiff and Counterdefendant
11  AXIS Insurance Company

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INSURERS' NOTICE OF MOT. AND MOT. FOR
SUMMARY JUDGMENT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 25, 2012 at 9:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 850 of the above-titled Court, located at 255 East Temple Street, Los Angeles, California 90012, before the Honorable R. Gary Klausner of the United States District Court for the Central District of California, Western Division, Counterdefendants Catlin Insurance Company (UK) Ltd. and Zurich American Insurance Company, Intervenor Counterdefendants Those Certain Underwriters at Lloyd's, London Subscribing to Policy No. QA011608, and Plaintiffs/Counterdefendants XL Specialty Insurance Company, Arch Insurance Company, ACE American Insurance Company, and AXIS Insurance Company (collectively, the "Insurers"[1]) will and hereby do respectfully move the Court for summary judgment or, in the alternative, partial summary judgment, pursuant to Federal Rule of Civil Procedure 56 in favor of the Insurers and against: (1) all defendants (the "Insureds") with respect to the A-Side Insurers' complaint; (2) Michael W. Perry, A. Scott Keys, S. Blair Abernathy, John Olinski, Samir Grover, Simon Heyrick, Victor H. Woodworth, Scott Van Dellen, William Rothman, Jill Jacobson and Kevin Callan for the counterclaims styled *Michael W. Perry, et al. v. XL Specialty Ins. Co., et al.*; (3) Louis E. Caldera, Lyle E. Gramley, Hugh M. Grant, Patrick C. Haden, Terrence G. Hodel, Robert L. Hunt II, Lydia H. Kennard and Bruce G. Willison (the "Outside Directors") for the counterclaims styled *Louis E. Caldera, et al. v. XL Specialty Ins. Co., et al.*; (4) Richard Koon and Kenneth Shellem for the counterclaims styled *Richard Koon, et al. v. XL Specialty Ins. Co., et al.*; and (5) Alfred H. Siegel, Solely as Chapter 7 Trustee of the Estate of IndyMac Bancorp (the "Trustee") as assignee of certain rights of Perry and the Outside Directors, and a party to this action under the Court's April 10, 2012 Order (Docket No. 237) ("Motion for Summary Judgment").

---

[1]   Counterdefendants Twin City Fire Insurance Company and Continental Casualty Company are filing a separate joinder to this Motion for Summary Judgment.

INSURERS' NOTICE OF MOT. AND MOT. FOR
SUMMARY JUDGMENT

Specifically, the Insurers ask the Court to grant summary judgment or partial summary judgment in their favor that no coverage obligation is owed by the Insurers under the directors and officers liability insurance policies issued by the Insurers to IndyMac Bancorp, Inc., for the March 1, 2008 to April 1, 2009 policy period (collectively, the "08-09 Policies") with respect to each of the following underlying matters:

* *Daniels v. Perry, et al.*, Case No. 2:08-cv-3812 (C.D. Cal.);
* *Federal Deposit Ins. Corp., as Receiver for IndyMac Bank, F.S.B. v. Perry, et al.*, Case No. 2:11-cv-5561 (C.D. Cal.);
* *Federal Deposit Ins. Corp, as Receiver for IndyMac Bank, F.S.B. v. Van Dellen, et al.*, Case No. 2:10-cv-4915 (C.D. Cal.);
* *Siegel v. Caldera, et al.*, Case No. 2:09-ap-2645 (Bankr. C.D. Cal.);
* *IBEW Local 103 v. IndyMac MBS, Inc., et al.*, Case No. BC405843 (Cal. Super. Ct. Los Angeles Cty.);
* *In re IndyMac Mortgage-Backed Securities Litigation*, Case No. 09-cv-4583 (S.D.N.Y.);
* *MBIA Ins. Corp. v. IndyMac ABS, Inc., et al.*, Case No. BC422358 (Cal. Super. Ct. Los Angeles Cty.);
* *Assured Guaranty Mun. Corp. v. UBS Securities LLC, et al.*, Case No. BC445785 (Cal. Super. Ct. Los Angeles Cty.); and
* *Securities and Exchange Comm'n v. Perry, et al.*, Case No. 2:11-cv-1309 (C.D. Cal.)

(collectively, the "Underlying Matters").

The Insurers' Motion for Summary Judgment is made pursuant to this Court's April 19, 2012 order granting the parties' stipulation to extend the motion cutoff in this matter to May 16, 2012.  (Docket No. 240.)  In accordance with Local Rule 7-3, this motion is made following ongoing conferences among counsel in this action, including in

connection with the joint status report and stipulation filed on April 6, 2012 (Docket No. 236), and the joint stipulation filed on April 18, 2012.  (Docket No. 239.)

This Motion is made on the grounds that there exist no genuine issues of material fact, and the Insurers are entitled to judgment as a matter of law because the 08-09 Policies do not provide coverage for the Underlying Matters, which are based on, arise out of and/or involve facts, circumstances, events and transactions underlying or at issue in *Tripp, et al. v. IndyMac Bancorp, Inc., et al.*, Case No. 2:07-cv-1635 (C.D. Cal.) (the "*Tripp* Litigation").  Specifically, the Underlying Matters are Claims deemed "first made" at the time of the filing of the *Tripp* Litigation, which was noticed prior to the inception of the 08-09 Policies, and, therefore, do not fall within the scope of the 08-09 Policies' insuring agreements.  In addition, even if the Underlying Matters were deemed first made during the 08-09 Policies' policy period, coverage for the Underlying Matters would nevertheless be excluded by the plain and unambiguous terms of the 08-09 Policies' Prior Notice and Specific Litigation Exclusions.

This Motion is based on this Notice of Motion and Motion for Summary Judgment and the Memorandum of Points and Authorities attached hereto, the Statement of Material Uncontroverted Facts and Conclusions of Law, the Declaration of Elizabeth L. Musser, the Stipulation Regarding Certain Exhibits and Allegations filed in this action on November 23, 2011 (Docket No. 193), the documents on file in this action, and such other argument or evidence that may be presented on Reply or at the time of the hearing of this Motion.

//

//

//

//

//

1    Respectfully submitted,

2    Dated: May 16, 2012              TRESSLER LLP

3

4                                    By:   /s/ Elizabeth L. Musser
                                           Elizabeth L. Musser
5                                          David Simantob
                                           Attorneys for Counterdefendants
6                                          Catlin Insurance Company (UK) Ltd. and
                                           Intervenor Counterdefendants Those Certain
7                                          Underwriters at Lloyd's, London Subscribing to
8                                          Policy No. QA011608

9

10   Dated: May 16, 2012              BOUNDAS, SKARZYNSKI, WALSH & BLACK LLC

11

12                                   By:   /s/ W. Joel Vander Vliet
                                           Theodore A. Boundas (*pro hac vice*)
13                                         W. Joel Vander Vliet (*pro hac vice*)
                                           Attorneys for Counterdefendants
14                                         Catlin Insurance Company (UK) Ltd. and
15                                         Intervenor Counterdefendants Those Certain
                                           Underwriters at Lloyd's, London Subscribing to
16                                         Policy No. QA011608

17

18   Dated: May 16, 2012              SEDGWICK LLP

19

20                                   By:   /s/ Brian D. Harrison
                                           Brian D. Harrison
21                                         Robert S. Gebhard
                                           Veena A. Mitchell
22                                         Attorneys for Counterdefendant
23                                         Zurich American Insurance Company

24

25

26

27

28

1   Dated: May 16, 2012          WILEY REIN LLP

2

3                               By:   /s/ Jason P. Cronic
                                      Jason P. Cronic (*pro hac vice*)
4                                     Attorneys for Plaintiff and Counterdefendant
                                      XL Specialty Insurance Company
5

6   Dated: May 16, 2012          LEWIS BRISBOIS BISGAARD & SMITH LLP

7

8                               By:   /s/ Douglas R. Irvine
                                      Gordon J. Calhoun
9                                     Douglas R. Irvine
                                      Attorneys for Plaintiff and Counterdefendant
10                                    XL Specialty Insurance Company

11

12  Dated: May 16, 2012          CLYDE & CO LLP

13

14                              By:   /s/ Alec H. Boyd
                                      Kim W. West
15                                    Alec H. Boyd
                                      Attorneys for Plaintiff and Counterdefendant
16                                    Arch Insurance Company

17

18  Dated: May 16, 2012          WALKER WILCOX MATOUSEK LLP

19

20                              By:   /s/ Tiffany Saltzman-Jones
                                      Edward P. Gibbons (*pro hac vice*)
21                                    Tiffany Saltzman-Jones (*pro hac vice*)
                                      Attorneys for Plaintiff and Counterdefendant
22                                    ACE American Insurance Company

23

24

25

26

27

28

INSURERS' NOTICE OF MOT. AND MOT. FOR
SUMMARY JUDGMENT

1

Dated: May 16, 2012                     BATES CAREY NICOLAIDES LLP

2

By:   /s/ Andrew W. Smith

3

Ommid Farashahi (*pro hac vice*)

4

Andrew W. Smith (*pro hac vice*)
Michael T. Skoglund (*pro hac vice*)

5

Ross B. Edwards (*pro hac vice*)
Attorneys for Plaintiff and Counterdefendant

6

AXIS Insurance Company

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    STATEMENT OF UNDISPUTED FACTS……………………………………..1

      A.    IndyMac Bank's Business Model and the Demise of IndyMac……………..1

      B.    The Tripp Litigation…………………………………………………………2

      C.    The Underlying Matters Related to the Tripp Litigation……………………3

      D.    The 07-08 and 08-09 Policies……………………………………………..5

II.   ARGUMENT………………………………………………...………………7

      A.    Summary Judgment Is Proper Because the Underlying
            Matters and the Tripp Litigation are Deemed a Single Claim
            First Made Prior to the Inception of the 08-09 Policies……………………..7

            1.    The Policies' Interrelated Wrongful Acts Language…………………7

            2.    Tripp Alleges and Involves Key Systemic Flaws at IndyMac………9

            3.    Tripp and the Underlying Matters Indisputably Involve
                  Interrelated Wrongful Acts…………………………………………10

      B.    The Prior Notice Exclusion Bars Coverage……………………………..17

      C.    The Tripp Exclusion Bars Coverage………………………………………19

III.  CONCLUSION…………...……………………………………………...……20

# TABLE OF AUTHORITIES

## CASES

*Acceptance Ins. Co. v. Syufy Enters.*
    69 Cal. App. 4th 321, 81 Cal. Rptr. 2d 557
    (Cal. Ct. App. 1999)……………………………………………………8, 18

*Advanced Network, Inc. v. Peerless Ins. Co.*
    190 Cal. App. 4th 1054, 119 Cal. Rptr. 3d 17
    (Cal. Ct. App. 2010)…………………………………………………..7

*Atl. Permanent Fed. Savings and Loan Assoc. v. Am. Cas. Co. of Reading, PA* 839
    F.2d 212 (4th Cir. 1988)……………………………….……………..9

*Bank of the West v. Super. Ct.*
    2 Cal. 4th 1254, 10 Cal. Rptr. 2d 538 (1992)......................................18

*British Airways Bd. v. Boeing Co.*
    585 F.2d 946-52 (9th Cir. 1978),
    *cert. denied*, 440 U.S. 981, 60 L. Ed.2d 241, 99 S. Ct. 1790 (1979)…………..7

*Celotex Corp. v. Catrett*
    477 U.S. 317, 91 L. Ed.2d 265, 106 S. Ct. 2548 (1986)……………….…..7

*Century Transit Sys., Inc. v. Am. Empire Surplus Lines Ins. Co.*
    42 Cal. App. 4th 121, 49 Cal. Rptr. 2d 567
    (Cal. Ct. App. 1996)…………………………………………..8, 18, 19

*Core Wealth Mgmt., LLC v. Hartford Fin. Servs. Group, Inc.*,
    No. CV 05-6340, 2007 WL 778440 (C.D. Cal. March 7, 2007)…………....18

*Friedman Prof'l Mgmt. Co., Inc. v. Norcal Mut. Ins. Co.*
    120 Cal. App. 4th 17, 15 Cal. Rptr. 3d 359 (Cal. Ct. App. 2004)………………9

*GGIS Ins. Servs., Inc. v. Super. Ct.*
    168 Cal. App. 4th 1493, 86 Cal. Rptr. 3d 515 (2008)…………...................…18

*Heighley v. J.C. Penney Life Ins. Co.*
    257 F. Supp. 2d 1241 (C.D. Cal. 2003)…………………………….……..7

1

2

*Highwoods Props., Inc. v. Exec. Risk Indem., Inc.*
   407 F.3d 917, 925 (8th Cir. 2005)………………………………………….9

3

4

*Medill v. Westport Ins. Co.*
143 Cal. App. 4th 819, 49 Cal. Rptr. 3d 570 (2006)………………………………18

5

6

7

*ML Direct, Inc. v. TIG Spec. Ins. Co.*
   79 Cal. App. 4th 137, 93 Cal. Rptr. 2d 846
   (Cal. Ct. App. 2000)…………………………………………………….……….9

8

9

*WFS Fin. Inc. v. Progressive Cas. Ins. Co.*
   232 F. App'x 624 (9th Cir. 2007)…………………………...………………9, 17

10

11

*Zunenshine v. Exec. Risk Indem., Inc.*
   182 F.3d 902, 1999 WL 464988 (2d Cir. June 29, 1999)……………………….18

12

13

## STAUTES

14

Federal Rule of Civil Procedure 56(c)………………………………………………7

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INSURERS' NOTICE OF MOT. AND MOT. FOR
SUMMARY JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

The Insureds are defendants in a series of actions arising out of the decline and demise of IndyMac Bank, F.S.B. ("IndyMac Bank" or the "Bank") and its corporate parent IndyMac Bancorp, Inc. ("IndyMac"), that began with the action styled *Tripp, et al. v. IndyMac Bancorp, Inc., et al.*, Case No. 2:07-cv-1635 (C.D. Cal.) (the "*Tripp* Litigation" or "*Tripp*"), first filed in March 2007.

Although there are some variations in their allegations and the legal theories they chose to pursue, the claimants in the *Tripp* Litigation and the related Underlying Matters at issue here are remarkably uniform in their explanation of the circumstances underpinning their claims. Claimants point to IndyMac's (1) high-risk business strategy, (2) departure from the Bank's own underwriting standards and lack of internal controls, (3) deficient appraisal practices, and (4) inadequate loan loss reserves as, at least in part, the basis for their assertions of liability and the core causes of their injuries. Importantly, these facts and circumstances underlie the *Tripp* Litigation, which commenced in 2007 before the inception of the 08-09 Policies and which was noticed under directors and officers liability insurance policies then in effect.

Because of the uncontroverted factual connections between the *Tripp* Litigation and each of the Underlying Matters, they are all deemed to be a single Claim first made before the inception of the 08-09 Policies and therefore outside the scope of the insuring agreements of those Policies. Furthermore, the Underlying Matters are excluded from coverage by the Prior Notice Exclusion and Specific Litigation Exclusion (also known as the "*Tripp* Exclusion") in the 08-09 Policies.

## I.    STATEMENT OF UNDISPUTED FACTS

### A.    IndyMac Bank's Business Model and the Demise of IndyMac

IndyMac Bank was a thrift and mortgage bank that failed because of an aggressive growth strategy, the use of Alt-A and other nontraditional loan products, inadequate underwriting practices, suspect appraisals, undue credit concentrations, and heavy reliance on costly funds borrowed from the Federal Home Loan Bank and from brokered

deposits.  (Insurers' Uncontroverted Material Facts [hereinafter "UMF"] 1-2.)[1]  The Bank's liquidity was reduced when housing prices fell in 2007 and the secondary mortgage market collapsed.  (UMF 3.)  According to the OIG Audit Report, the Bank ultimately failed due to unsafe and unsound underwriting practices and the manner in which the company was operated, which in turn led to the bankruptcy of its parent, IndyMac.  (UMF 4.)

### B.    The *Tripp* Litigation

*Tripp, et al. v. IndyMac Bancorp, Inc., et al.*, Case No. 2:07-cv-1635 (C.D. Cal.), first filed in March 2007, alleges securities law violations on behalf of a putative class of IndyMac stockholders during a class period of March 1, 2006-March 1, 2007.  (UMF 6-7.)  The *Tripp* plaintiffs allege that statements concerning IndyMac Bank's financial condition were false and misleading primarily because IndyMac Bank's underwriting practices and internal controls were grossly deficient, and that the Bank's loan loss reserves were inadequate.  (UMF 8.)  The *Tripp* plaintiffs contend that such deficient underwriting practices were part of IndyMac's company-wide, top-down business strategy, and that senior management encouraged underwriters to disregard underwriting guidelines, manipulate appraisal values, and push bad loans to close.  (UMF 9.)  The alleged misrepresentations purportedly concealed that "the Company's loan portfolio was severely impaired as a result of Defendants' repeated violations of the Company's internal/operational controls over underwriting[,]" causing IndyMac's stock to trade at inflated levels.  (UMF 10.)

### C.    The Underlying Matters Related to the *Tripp* Litigation

The seven "Underlying Matters" for which coverage is at issue in this case are as

---

[1] Federal regulators' conclusions regarding IndyMac's demise can be found in the Audit Report, Safety and Soundness: Material Loss Review of IndyMac Bank, FSB, Department of the Treasury, Office of the Inspector General (Feb. 26, 2009) (the "OIG Audit Report").  The OIG Audit Report is specifically referenced and relied upon throughout the underlying matters.  (UMF 5.)  The OIG Audit Report describes widespread problems with IndyMac Bank's underwriting practices, among others.  (UMF 2.)

follows:

 **The Daniels Litigation.**  *Daniels v. Perry, et al.*, Case No. 2:08-cv-3812 (C.D. Cal.), is a putative class action on behalf of shareholders that purchased/acquired IndyMac securities from March 1, 2007 through May 12, 2008, in reliance upon allegedly false statements regarding IndyMac Bank's appraisal practices, internal controls and underwriting guidelines.  (UMF 20.)[2]

 **The FDIC-Perry Litigation**.  In a March 27, 2009 letter and the subsequent action styled *FDIC, as Receiver for IndyMac Bank, F.S.B. v. Perry*, *et al.*, Case No. 2:11-cv-5561 (C.D. Cal.) (collectively, the "FDIC-Perry Litigation"), the FDIC alleges that former Bank CEO Perry was negligent in allowing the Bank to implement a risky strategy to increase loan production through loosening credit standards and underwriting guidelines, thus causing IndyMac Bank to incur significant losses.  (UMF 31.)

 **The FDIC-Van Dellen Litigation.**  In a March 27, 2009 letter and subsequent action styled *FDIC, as Receiver for IndyMac Bank, F.S.B. v. Van Dellen, et al.*, Case No. 2:10-cv-4915 (C.D. Cal.) (collectively, the "FDIC-Van Dellen Litigation"), the FDIC alleges that certain Insureds were negligent or breached their fiduciary duties by permitting the Bank to violate appraisal and underwriting standards in connection with certain loans through its Home Builders Division ("HBD").  (UMF 37.)

 **The Trustee Litigation.**  *Siegel v. Caldera, et al.*, Case No. 2:09-ap-2645 (Bankr. C.D. Cal.) (the "Trustee Litigation"), involves allegations that the Outside Directors and Perry breached their fiduciary duties to IndyMac by transferring at least $355 million to IndyMac Bank in 2007 and 2008 without regard for the Bank's deteriorated financial condition.  (UMF 43.)[3]  The Trustee alleges that IndyMac Bank's dire financial condition

---

[2] Since this action incepted, the *Daniels* Litigation has been restyled *Coady, et al. v. Perry, et al.*, Case No. 2:08-cv-3812 (C.D. Cal.), but will be referred to herein as the "*Daniels* Litigation" or "*Daniels*" for consistency with the pleadings.  (UMF 21.)

[3] In a previous May 28, 2009 letter (the "Trustee Letter") from counsel for the Trustee, the Trustee alleges that certain Insureds breached their fiduciary duties to IndyMac by disregarding IndyMac Bank's loose underwriting guidelines and allowing IndyMac to improperly downstream funds to IndyMac Bank, in an effort to alleviate IndyMac Bank's deteriorating financial condition caused by IndyMac Bank's loose underwriting

INSURERS' NOTICE OF MOT. AND MOT. FOR
SUMMARY JUDGMENT

1 resulted from the deliberate implementation of inadequate appraisal and underwriting

2 practices, causing IndyMac Bank to hold millions of dollars in high-risk loans.  (UMF

3 45.)  According to the Trustee's complaint, the IndyMac board's "deliberate and at times

4 blind pursuit of profits and self-interest over safe and sound business practices . . . created

5 the circumstances that ultimately would cause the Bank's failure and Bancorp's

6 insolvency."  (UMF 47.)

7     **The MBS Litigation**.  The action styled *IBEW Local 103 v. IndyMac Bank MBS,*

8 *Inc., et al*., Case No. BC405843 (LASC), and the action styled *In re IndyMac Mortgage-*

9 *Backed Securities Litigation*, Case No. 09-cv-4583 (S.D.N.Y.) (a consolidation of two

10 prior actions commenced on May 14, 2009 and June 14, 2009), are collectively referred

11 to herein as the "MBS Litigation."  That litigation is a consolidated securities class action

12 brought by purchasers of mortgage-backed securities ("MBS") backed by loans

13 originated by IndyMac Bank.  The plaintiffs allege that certain Insureds made false and

14 misleading statements regarding the Bank's appraisal practices and underwriting

15 guidelines, causing plaintiffs to purchase MBS that were far riskier than represented.

16 (UMF 56.)

17     **The MBS Insurer Litigation.**  The actions styled *MBIA Ins. Corp. v. IndyMac*

18 *ABS, Inc., et al.*, Case No. BC422358 (LASC), and *Assured Guaranty Mun. Corp. v. UBS*

19 *Securities LLC, et al.*, Case No. BC445785 (LASC), (collectively, the "MBS Insurer

20 Litigation") were brought by financial guaranty insurers in connection with MBS

21 originated by IndyMac Bank.  (UMF 62.)  The plaintiffs allege that certain Insureds made

22 false statements regarding the Bank's underwriting guidelines and appraisal process,

23 causing investors to purchase MBS that were riskier than represented.  (UMF 63.)

24     **The SEC Litigation**.  *Securities and Exchange Comm'n v. Michael W. Perry*, *et*

25 *al.*, Case No. 2:11-cv-1309 (C.D. Cal.) (the "SEC Litigation"), is an action brought by the

26 Securities and Exchange Commission (the "SEC") for securities fraud and reporting

27 violations against certain Insureds.  (UMF 68.)  At the time of filing, the SEC filed a

28 guidelines and high-risk business model.  (UMF 44.)

INSURERS' NOTICE OF MOT. AND MOT. FOR
SUMMARY JUDGMENT

Notice of Related Cases advising that the SEC Litigation was related to both *Tripp* and *Daniels*, as all three actions involve "false and misleading statements . . . regarding IndyMac's financial condition." (UMF 71.) The SEC Litigation followed an investigation by the SEC, which included subpoenas issued to IndyMac and to individual insureds that are defendants in the SEC Litigation. (UMF 72.)

### D.   The 07-08 and 08-09 Policies

IndyMac obtained directors and officers liability insurance that afforded specified coverage for claims first made between March 1, 2007 and March 1, 2008 (the "07-08 Policies"), providing total limits of liability of $80 million. (UMF 73.) In March 2007, the *Tripp* Litigation was filed against IndyMac Financial, Inc., Perry, IndyMac's Chief Financial Officer, and IndyMac Bank's President. (UMF 74.) The Insureds provided notice of *Tripp* under the 07-08 Policies and are receiving coverage under those policies for the defense of *Tripp* and the Underlying Matters. (UMF 76-77.) Indeed, since the inception of this coverage litigation, the relevant Insureds have agreed to resolve *Tripp*, *Daniels*, the MBS Litigation, and the FDIC-Perry Litigation solely with proceeds from the 07-08 Policies. (UMF 78.)

Prior to the expiration of the 07-08 Policies, IndyMac negotiated with the Insurers for a new "tower" of coverage for the 08-09 policy period. (UMF 79.) As a result, the Insurers issued directors and officers liability insurance policies for the March 1, 2008 to April 1, 2009 policy period. (UMF 79.) The 08-09 Policies consist of eight policies, each providing $10 million in policy limits. (UMF 80.) The first four policies, subject to their terms, provide specified coverage for losses resulting from the acts of individual directors and officers (side A coverage), losses resulting from IndyMac's indemnification of such individuals (side B coverage), and losses sustained by IndyMac for securities law violations (side C coverage) (the "08-09 ABC Policies"). (UMF 81.) The second four policies, subject to their terms, provide only side A coverage (i.e., coverage available solely for the directors and officers of IndyMac and the Bank, not the companies

themselves) (the "08-09 A-Side Policies").  (UMF 82.)[4]

Each 08-09 Policy contains or incorporates certain common terms and conditions at issue in this action:

- The 08-09 Policies are all "claims made" policies, meaning they apply "only to any Claim first made during the Policy Period . . . ." (UMF 83), and afford coverage for "Loss resulting from a Claim first made against the Insured Persons during the Policy Period."  (UMF 83.)

- "Claim" is defined in relevant part as any civil proceeding initiated against the insureds.  (UMF 84.)

- All Claims "involving the same Wrongful Act or Interrelated Wrongful Acts shall be deemed to constitute a single Claim and shall be deemed to have been made at the earliest of . . . the time at which the earliest Claim involving the same Wrongful Act or Interrelated Wrongful Acts is first made [or] shall be deemed to have been made . . . ."  (UMF 85.)

- "Interrelated Wrongful Acts" are "Wrongful Acts which have as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions" (UMF 86) or "any Wrongful Act based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related, or series of related facts, circumstances, situations, transactions, or events."  (UMF 87.)

In addition, the 08-09 Policies contain two applicable exclusions, the Prior Notice Exclusion and the *Tripp* Exclusion, which are quoted in full in the accompanying

---

[4] The four 08-09 ABC Policies were issued, respectively, by movants (1) Catlin Insurance Company (UK) Ltd. and Those Certain Underwriters at Lloyd's, London Subscribing to Policy No. QA011608, (2) Zurich American Insurance Company, (3) Twin City Fire Insurance Company, and (4) Continental Casualty Company (collectively, the "ABC Insurers").  The four 08-09 A-Side Policies were issued, respectively, by movants (1) XL Specialty Insurance Company, (2) Arch Insurance Company, (3) ACE American Insurance Company, and (4) AXIS Insurance Company (collectively, the "A-Side Insurers").  (UMF 81-82.)

INSURERS' NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT

1  Statement of Facts.[5]  (UMF 88-90.)

2  **II.    ARGUMENT**

3       Federal Rule of Civil Procedure 56(c) provides for summary judgment where no

4  genuine issue exists as to any material fact and where the moving party is entitled to

5  judgment as a matter of law.  Under Rule 56(c), the moving party bears the burden of

6  establishing that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477

7  U.S. 317, 322-23, 91 L. Ed.2d 265, 106 S. Ct. 2548 (1986).  It may meet this burden by

8  presenting evidence that would entitle it to a directed verdict at trial.  *Id.*  Once that

9  burden is met, the opposing party must present facts showing that contradiction is

10 possible.  *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 950-52 (9th Cir. 1978), *cert.*

11 *denied*, 440 U.S. 981, 60 L. Ed.2d 241, 99 S. Ct. 1790 (1979).  Such facts may not be

12 based upon speculation or conjecture, but must be based on admissible evidence that

13 creates a genuine dispute as to a material fact.  *Id.*  And, in any event, "[t]he

14 interpretation of an insurance contract is a question of law, not fact."  *Heighley v. J.C.*

15 *Penney Life Ins. Co.*, 257 F. Supp. 2d 1241, 1250 (C.D. Cal. 2003).

16      Here, there are no issues of material fact presented, as the plain terms of the 08-09

17 Policies afford no coverage for the Underlying Matters as a matter of law.

18 **A.    Summary Judgment Is Proper Because the Underlying Matters and the**

19 ***Tripp* Litigation are Deemed a Single Claim First Made Prior to the**

20 **Inception of the 08-09 Policies**

21      **1.    The Policies' Interrelated Wrongful Acts Language**

22      The Insureds (and the Trustee, standing in their shoes) cannot as a matter of law

23 meet their burden of proving that the Underlying Matters fall within the 08-09 Policies'

24 insuring agreements.  *See Advanced Network, Inc. v. Peerless Ins. Co.,* 190 Cal. App. 4th

25 1054, 1060, 119 Cal. Rptr. 3d 17, 23 (Cal. Ct. App. 2010) (it is the insureds' burden to

26

27

28

[5] The 08-09 A-Side Policies contain a separate Prior Notice Exclusion that is worded slightly different than that contained in the 08-09 ABC Policies, but the differences are not relevant here.  (UMF 88-89.)

establish coverage).  The 07-08 and 08-09 Policies are "claims made" policies pursuant to which all Claims arising out of or involving Interrelated Wrongful Acts – a defined term in the 08-09 Policies – are deemed a "single Claim" made during the policy period when the first such Claim was made.  (UMF 83-85.)  A "Claim" under the Policies is a "civil proceeding."  (UMF 84.)  "Interrelated Wrongful Acts" is, in turn, defined broadly as "any Wrongful Act based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related, or series of related facts, circumstances, situations, transactions, or events."  (UMF 86-87.)  Thus, under the policies' plain terms, all Claims involving Interrelated Wrongful Acts are deemed first made when the first such Claim was made.  (UMF 85.)

There can be no dispute that the Claim arising from *Tripp* was first made during the 07-08 Policy Period, when that action was first filed.  (UMF 6, 74.)  Because the Underlying Matters and the *Tripp* Litigation all "arise from" and "involve" Wrongful Acts based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related, or series of related facts, circumstances, situations, transactions, or events, under the plain terms of the 08-09 Policies, all of those matters are deemed a single Claim first made when *Tripp* was first filed, prior to the inception of the 08-09 Policies.  (UMF 85.)

As indicated, the plain and unambiguous terms of the 08-09 Policies require that all Claims that involve Wrongful Acts arising out of, directly or indirectly resulting from, in consequence of, or in any way involving a series of facts, circumstances, situations, transactions, or events be deemed a single Claim first made at the time of the first such Claim.  This broad language must be interpreted consistent with its plain meaning. "California courts have consistently given a broad interpretation to the terms 'arising out of' . . . in various kinds of insurance provisions."  *Acceptance Ins. Co. v. Syufy Enters.*, 69 Cal. App. 4th 321, 328, 81 Cal. Rptr. 2d 557, 561 (Cal. Ct. App. 1999).  Such language requires "only a 'slight connection' or incidental relationship," and "the term 'based on' has the same effect as 'arising out of.'"  *Century Transit Sys., Inc. v. Am.*

*Empire Surplus Lines Ins. Co.*, 42 Cal. App. 4th 121, 128 n.4, 49 Cal. Rptr. 2d 567, 572 n.4 (Cal. Ct. App. 1996) (citation omitted).

Courts have recognized that broad language similar to that of the 08-09 Policies addressing the relationships between multiple claims applies, even where lawsuits are filed by "different sets of plaintiffs, in . . . different fora under . . . different legal theories." *WFS Fin. Inc. v. Progressive Cas. Ins. Co.,* 232 F. App'x 624, 625 (9th Cir. 2007); *Highwoods Props., Inc. v. Exec. Risk Indem., Inc.*, 407 F.3d 917, 925 (8th Cir. 2005) (holding that a later claim arises out of the same series of facts as an earlier claim, even though they seek different remedies and the later claim adds "a number of facts that had occurred since [an earlier claim] was filed"); *ML Direct, Inc. v. TIG Spec. Ins. Co.*, 79 Cal. App. 4th 137, 144-45, 93 Cal. Rptr. 2d 846, 852-53 (Cal. Ct. App. 2000) (holding that litigation was "based upon" prior proceedings and all the matters shared an undisputed "factual relationship" despite differences in the defendants named); *Atl. Permanent Fed. Savings and Loan Assoc. v. Am. Cas. Co. of Reading, PA*, 839 F.2d 212, 219 (4th Cir. 1988) (finding a single claim where claims all arose out of the planning and carrying out of a home improvement loan program); *Friedman Prof'l Mgmt. Co., Inc. v. Norcal Mut. Ins. Co.*, 120 Cal. App. 4th 17, 15 Cal. Rptr. 3d 359 (Cal. Ct. App. 2004) (claim for failures to mitigate harm the defendant caused was "related" to claim for causing harm in the first place).  The unmistakable commonalities of *Tripp* and the Underlying Matters cannot be denied.

## 2.  *Tripp* Alleges and Involves Key Systemic Flaws at IndyMac

The *Tripp* plaintiffs allege that IndyMac "created a company-wide culture and practice of ignoring and intentionally overriding the Company's underwriting guidelines for the singular, myopic goal of generating loan volumes . . . [, which] placed the Company's business in the precarious condition of relying on a flimsy base of significantly risky loans[.]"  (UMF 11.)  They also allege that "IndyMac's appraisal reviews were limited and recklessly deficient," and that its "internal/operational controls were grossly deficient." (UMF 12.)  They further assert that IndyMac "grew by focusing

on utilizing Alt-A, negative/interest only amortizing loans, and other high-risk loans." (UMF 13.)  Further, *Tripp* alleges that, towards the end of the class period, IndyMac had difficulty selling these loans "as the secondary market became less liquid and information about IndyMac's lax credit quality practices began to seep into the marketplace."  (UMF 14.)  As a result, IndyMac was "stuck with a substantial portion of loans that defaulted quickly and which IndyMac was unable to sell on the secondary market."  (UMF 14.)

### 3. *Tripp* and the Underlying Matters Indisputably Involve Interrelated Wrongful Acts

The *Daniels* Litigation is but a continuation of *Tripp*: its class period picks up where the *Tripp* class period ends, and it shares with *Tripp* allegations that IndyMac collapsed because "it underwrote, originated and sold poor-quality risk-laden mortgages" and employed "reckless loan underwriting and appraisal practices" which led to inadequate loan loss reserves.  (UMF 22.)  According to the *Tripp* and *Daniels* complaints, these business practices were crucial to IndyMac's financial condition, which ultimately collapsed because of the allegedly deficient practices, notwithstanding defendants' efforts to conceal them.  (UMF 15, 23.)  As a result, *Daniels* and *Tripp* are deemed to be a single Claim under the 08-09 Policies' language.

Like the plaintiffs in *Tripp* and *Daniels*, the FDIC premises recovery on negligence in underwriting risky loans in variance from applicable underwriting guidelines and the use of suspect appraisal practices.  (UMF 32, 38.)  Moreover, *Daniels* expressly quotes, incorporates and relies upon the allegations of the FDIC-Van Dellen Action, which itself focuses on the Bank's underwriting and appraisal failures.  (UMF 24.)

The plaintiffs in the MBS and MBS Insurer Litigation also allege misrepresentations concerning underwriting and appraisals of IndyMac Bank's originated loans, which they contend affected the value of the securities made up of such loans. (UMF 58, 64.)

The Trustee Litigation also arises from and involves Wrongful Acts based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way

INSURERS' NOTICE OF MOT. AND MOT. FOR
SUMMARY JUDGMENT

involving any of the same or related facts, circumstances, situations, transactions, or events as do *Tripp*, *Daniels*, and the other Underlying Matters.  Indeed, the complaint in the Trustee Litigation explicitly alleges that the Trustee's action is "based upon" "documents filed in *securities* and other class actions," *i.e. Tripp* and *Daniels*.  (UMF 48.)[6]  Moreover, the substantive allegations of the Trustee Litigation are inextricably woven into the underlying facts and allegations of *Tripp,* as demonstrated by the Trustee's complaint's lengthy description of the alleged "Nature of this Action," in which he alleges that IndyMac Bank:

> had a heavy production focus on high-risk mortgage loans, for which the secondary market evaporated over the course of 2007[, and that a]s a result, the Bank was unable to securitize and sell billions of dollars of mortgages in late 2007 and instead was required to hold those loans on its balance sheet, creating enormous losses and acute capital inadequacies.

(UMF 49.)  As such, the Trustee has connected his allegations of breach of fiduciary duty to the underwriting practices at issue in *Tripp* and *Daniels.*  Indeed, these allegations are incorporated by reference in *each* count of the Trustee Action.  (UMF 50.)

Additionally, the substantive predicate to the Trustee's wrongful "downstreaming" allegations is that the defendants failed "to heed and act upon red flags that indicated the Bank's business model was not sustainable" and "disregarded clear red flags about Bancorp's worsening financial position" as they made the alleged "downstream" transfers.  (UMF 51.)  The Trustee cannot escape this fundamental basis for his allegations.  Indeed, of the 203 paragraphs of general factual allegations set forth in the Trustee complaint, 50 paragraphs (25%) pertain to alleged financial "red flags."  The Trustee admits as much when he alleges that the business practices during the period on which *Tripp* focused "*created the circumstances* that ultimately would cause the Bank's

---

[6] The Trustee also alleges that his action is "based upon" the OIG Audit Report, on which the plaintiffs in *Tripp* and *Daniels* also explicitly rely.  (UMF 5.)

failure and Bancorp's insolvency." (UMF 52) (emphasis added). Furthermore, the Trustee contends that the failure to address the red flags exacerbated the already precarious financial condition of IndyMac and the Bank:

> Failing to heed and act upon red flags that indicated the Bank's business model and origination practices were not sustainable. Indeed as early as October 2006 (if not earlier), red flags were waved at Defendants indicating the Bank's business model and origination practices were deeply flawed. These included, but were not limited to, negative analyst reports, the appreciable increase in . . . repurchase demands, the decline in loan sales and forecasting errors, and the Bank's complete lack of any meaningful or proper mortgage loan and underwriting standards. This deliberate disregard and reckless indifference by the Defendants resulted in their failure to adequately oversee and manage Bancorp's exposure to the mortgage market and to ensure that even the most basic underwriting standards were in place at the Bank, thereby greatly and needlessly exacerbating exposure.

(UMF 53.)

The SEC Litigation also must be deemed a single Claim with *Tripp, Daniels*, and the other Underlying Matters, first made during the 07-08 Policy Period. That action followed an investigation by the SEC, which issued subpoenas seeking, among other things, "all documents and communications relating to IndyMac's loan underwriting guidelines, policies, and procedures and any deviations therefrom" and relating to its "allowance for loan losses." (UMF 72.) The focus of the SEC investigation, which is itself a "Claim" as defined in the 08-09 Policies, plainly overlaps with the allegations in the *Tripp* Litigation. (UMF 72) (SEC Subpoenas requesting documents from the time period between January 1, 2005, and July 11, 2008); (UMF 84) (definition of Claim). The SEC Litigation, of course, arises directly from the SEC investigation, which, as evidenced by the documents sought by the SEC subpoenas, was focused on the facts, circumstances, situations, transactions and events at issue in *Tripp*, *Daniels* and the other

Underlying Matters.  Indeed, the SEC identified *Tripp* and *Daniels* as "related cases," when, after its investigation, it filed its complaint.[7]  (UMF 71.)  Moreover, the SEC specifically alleges that Perry and Keys violated securities laws by making certain misstatements and omissions because, at the time, they had knowledge regarding IndyMac's deteriorating financial position.  (UMF 69.)

Other explicit and significant commonalities among the various actions are summarized below in more detail.

**High-Risk Business Strategy:**  The *Tripp* Litigation and the Underlying Matters each allege, are based upon, arise out of, directly or indirectly result from, are in consequence of, or in some way involve or are connected with IndyMac Bank's allegedly high-risk business strategy:

- The *Daniels* Litigation alleges that IndyMac Bank's business strategy was driven by a "sales culture" focused on originating and selling risky non-traditional mortgages (*i.e.*, Alt-A and Option Arm loans), without adhering to prudent origination and securitization processes.  (UMF 26.)

- The FDIC's demand letter to Perry alleges that the relevant Insureds were negligent "in connection with IndyMac's involvement with the origination, underwriting, securitization and marketing of the securities" of subprime loans leading to Bank losses in the loan markets.  (UMF 33.)  The FDIC-Perry Litigation also alleges that Perry was negligent in failing to stop the production of billions in risky residential loans as part of an "aggressive gamble to increase market share."  (UMF 34.)

- The FDIC-Van Dellen Litigation alleges that IndyMac Bank's losses from its Home Builders Division also stemmed from its "high-risk growth strategy" and "high-risk underwriting strategy."  (UMF 39.)

---

[7] The *Daniels* Litigation similarly incorporates by reference the SEC's allegations, which purportedly provide "new evidence showing that in 2007 and 2008, Perry and Keys knew the depth of IndyMac's deteriorating financial condition."  (UMF 25.)

- The Trustee Litigation alleges that IndyMac Bank's high-risk business model was a significant factor in the Bank's failure.  Specifically, the Trustee alleges that IndyMac Bank's focus on originating and selling "high-risk" mortgage loans led to capital inadequacy problems as IndyMac Bank accumulated risky assets that it was unable to sell on the secondary market, which ultimately led to the need for capital "downstreaming" from IndyMac to the Bank.  (UMF 54.)

- The MBS Litigation alleges that IndyMac Bank embarked on a path of "aggressive growth" marked by the origination and securitization of risky subprime loans.  *See* (UMF 59.)  Similarly, the MBS Insurer Litigation alleges that IndyMac Bank, in an effort to expand market share, "pressed to generate more loans" by offering nontraditional mortgage loan products and abandoning prudent underwriting practices.  (UMF 65.)

- The SEC Litigation relies on IndyMac's "rapidly deteriorating financial condition," including deteriorating capital and liquidity levels.  (UMF 70.)  It further focuses on the downgrading of millions of dollars in IndyMac Bank-sponsored MBS that the Bank held on its balance sheet, negatively impacting its capital ratios.  (UMF 70.)  These negative developments are a direct result of the Bank's aggressive business model.

**Underwriting Standards and Internal Controls:**  Allegations regarding IndyMac Bank's controls over its underwriting practices are prominent in the *Tripp* Litigation.  (UMF 16.)  Indeed, *Tripp* alleges a culture of fraud at IndyMac Bank, evidenced by wide-ranging and management-directed violations of company underwriting guidelines and controls.  (UMF 17.)  Similarly, the Underlying Matters allege, are based upon, arise out of, directly or indirectly result from, are in consequence of, or in some way involve or are connected with such allegations:

- *Daniels* alleges that IndyMac's statements about the company's financial health were misleading because IndyMac Bank "systematically disregarded sound underwriting practices, systematically overrode IndyMac's own underwriting

standards and risk control procedures . . . and otherwise fostered a corporate culture that encouraged employees to push mortgages through without regard to underwriting standards." (UMF 27.)

- The FDIC Demand alleges that the relevant Insureds were negligent in connection with the Bank's underwriting of mortgage loans and cites factual deficiencies relating to the negligent practices as described in the *Tripp* Litigation. (UMF 35.) The FDIC-Perry Litigation alleges that the Bank "wrongly emphasized production and market share over credit quality and quality underwriting." (UMF 36.)

- The FDIC-Van Dellen Litigation alleges that the defendants ignored credit policies and waived underwriting requirements in pursuit of a "high risk underwriting strategy," and pursued "negligent underwriting practices." (UMF 39-40.) The majority of the loans at issue in that action were initially underwritten or extended during the *Tripp* class period. (UMF 42.)

- The Trustee alleges that, despite numerous financial red flags, the defendants implemented inadequate underwriting guidelines to increase loan volume and profits, ultimately leading to IndyMac's insolvency and the Bank's failure. (UMF 47.) (The Directors "openly admitted that, among other things, their deliberate and, at times, blind pursuit of profits and self-interest over safe and sound business practices had created the circumstances that ultimately would cause the Bank's failure and Bancorp's insolvency.")

- The MBS Litigation is pervasive with allegations of deficient underwriting practices by the Bank. (UMF 60.) Similarly, the MBS Insurer Litigation alleges that IndyMac Bank "systematically" abandoned underwriting guidelines in pursuit of increased loan originations and that the Insureds made misrepresentations regarding underwriting standards. (UMF 66.)

**Deficient Appraisal Practices:** The *Tripp* plaintiffs reference the Bank's vulnerability to widespread appraisal fraud, and assert that "IndyMac's appraisal reviews were limited and recklessly deficient." (UMF 12.) It also cites the OIG Audit Report's

finding of "weaknesses with property appraisals obtained to support the collateral on the loans." (UMF 18.)  The Underlying Matters rely on similar allegations:

- *Daniels* alleges that "IndyMac's appraisal policies were deficient," citing the OIG Audit Report. (UMF 28.)  In addition, it relies upon the OIG Audit Report's findings that appraisals in the Home Builders Division were unsound. (UMF 29.)

- The FDIC-Van Dellen complaint asserts that defendants are liable due to their "negligently approving loans with inadequate appraisals," and repeatedly alleges that defendants committed negligence or breaches of duty by "[c]ausing or allowing a loan to be made, renewed, and/or extended with inadequate or problematic appraisals." (UMF 41.)

- The Trustee relies upon the OIG Audit Report's finding that "[a]ppraisals obtained by IndyMac on underlying collateral were often questionable" and contributed to the "significant capital inadequacy at the Bank" that precipitated the alleged wrongful capital contributions. (UMF 46.)

- The MBS Litigation also relies upon allegations of appraisal abuses by the Bank, (UMF 61), as does the MBS Insurer Litigation, which alleges misrepresentations concerning appraisals and cites the OIG Audit Report's finding that "IndyMac failed to comply with its own appraisal guidelines." (UMF 67.)

**Inadequate Loan Loss Reserves:**  *Tripp*, *Daniels*, and the Trustee Litigation each alleges, is based upon, arises out of, directly or indirectly results from, is in consequence of, or in some way involves or is connected with IndyMac Bank's allegedly inadequate loan loss reserves. *Tripp* references the adequacy of the Bank's loan loss reserves and asserts that such reserves did not consider the "effects of any changes in risk selection and underwriting standards" because IndyMac Bank's "'underwriting standards' were wholly ineffective . . . and thus meaningless as a factor in the calculation of the Company's loan loss reserves." (UMF 19) (citing the OIG Audit Report).

Like *Tripp*, the *Daniels* Litigation also alleges that IndyMac's statements regarding the "'conservative' nature of its loan loss reserves" were false. (UMF 30.)  According to

1  the allegations of the *Daniels* Litigation, the defendants ignored "red flags"

2  demonstrating that allowances for loan losses were insufficient, and falsely stated that

3  IndyMac was in a sound financial position, even though "IndyMac's loan loss reserves

4  were not even within the realm of reason."  (UMF 30.)

5      Similarly, the Trustee Litigation attaches and incorporates the OIG Audit Report,

6  which identified inadequate loss reserves as a cause of IndyMac Bank's failure and

7  concluded that its Allowance for Loan and Lease Losses ("ALLL") decreased as a

8  percentage of total loans until 2007, despite the observed probability of a downward trend

9  in real estate values.  (UMF 55) ("The ALLL is critical because of its impact on the

10  thrift's capital levels.").  The OIG's findings are part of the allegations underpinning the

11  Trustee's allegations that the defendants wrongfully made capital contributions to

12  IndyMac Bank despite alleged knowledge that such transfers would not prevent IndyMac

13  Bank's failure.  (UMF 55.)

14                          *    *    *    *    *

15      Given the undeniable commonalities between and among the Underlying Matters

16  and the *Tripp* Litigation, and the resulting Interrelated Wrongful Acts, all of the matters

17  must be deemed a single Claim made prior to the 08-09 Policies' policy period.  As such,

18  the Insureds (and the Trustee, standing in their shoes) are unable as a matter of law to

19  meet their burden of establishing that the Underlying Matters fall within the coverage

20  grant of the 08-09 Policies.  *See WFS Fin. Inc.*, 232 F. App'x at 625 and the other cases

21  cited *supra* at 10-11.

22      **B.    The Prior Notice Exclusion Bars Coverage**

23      The 08-09 Policies preclude coverage for Claims based upon, arising out of,

24  directly or indirectly resulting from or in consequence of, or in any way involving any

25  fact, circumstance, or situation that has been the subject of any notice given prior to the

26  08-09 Polices' effective dates under any other policy.  (UMF 88-89.)  This exclusionary

27  language is unmistakably broad and by its terms requires only the slightest of connections

28  between the claim at issue and prior matters.  *Bank of the West v. Super. Ct.*, 2 Cal. 4th

1254, 1264, 10 Cal. Rptr. 2d 538 (1992) ("If contractual language is clear and explicit, it governs."); *GGIS Ins. Servs., Inc. v. Super. Ct.*, 168 Cal. App. 4th 1493, 1506, 86 Cal. Rptr. 3d 515 (2008) (holding that where policy language is "clear and explicit and does not involve an absurdity, the plain meaning governs.").

Courts routinely give effect to broad language such as that included in the Prior Notice Exclusion. As set forth above, "California courts have consistently given a broad interpretation to the terms 'arising out of' . . . in various kinds of insurance provisions." *Medill v. Westport Ins. Co.*, 143 Cal. App. 4th 819, 830, 49 Cal. Rptr. 3d 570, 578-79 (2006) (quoting *Acceptance Ins. Co.*, 69 Cal. App. 4th at 328). Such language requires "only a 'slight connection' or incidental relationship," and "the term 'based on' has the same effect as 'arising out of.'" *Century Transit Sys., Inc. v. Am. Empire Surplus Lines Ins. Co.*, 42 Cal. App. 4th 121, 128 n.4, 49 Cal. Rptr. 2d 567 (1996) (citation omitted); *see also Core Wealth Mgmt., LLC v. Hartford Fin. Servs. Group, Inc.*, No. CV 05-6340, 2007 WL 778440, at *3 (C.D. Cal. March 7, 2007) ( The "prefatory language . . . 'based upon, arising from, attributable to, in connection with, or in any way related to . . .' has the effect of giving broad meaning to the terms of [an] exclusion.").

Where, as here, policy terms depend upon the presence of shared facts, circumstances, or similar events, a subsequent claim having any fact in common with a prior claim triggers the exclusion. *See Zunenshine v. Exec. Risk Indem., Inc.*, 182 F.3d 902, 1999 WL 464988, at *2 (2d Cir. June 29, 1999) (holding that similarly-worded exclusions "apply if the [later] claims were based on any fact underlying the prior litigation"). And, the plain language of the policies requires *only* that claims have any fact in common; differences in legal theories are not relevant to the coverage determination. *Bank of the West*, 2 Cal. 4th at 1264; *GGIS Ins. Servs., Inc.*, 168 Cal. App. 4th at 1506 (plain meaning governs).

For the reasons discussed above, the Underlying Matters and the *Tripp* Litigation all allege, are based upon, arise out of, result from, are in consequence of, or in some way involve the allegedly improper business practices that ultimately led to IndyMac Bank's

INSURERS' NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT

failure and IndyMac's insolvency.  Each Underlying Matter merely approaches from a different perspective many of the same facts and circumstances that underlie the alleged "unsafe and unsound" practices at IndyMac Bank.  (UMF 4.)  As a result, each of the Underlying Matters falls within the terms of the Prior Notice Exclusion, and, accordingly, summary judgment for the Insurers is appropriate.

### C.    The *Tripp* Exclusion Bars Coverage

The *Tripp* Exclusion was specifically written to bar coverage for claims "based upon, arising out of, indirectly resulting from or in consequence of, or in any way involving . . . the Tripp Litigation . . . or any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions underlying or alleged in the Tripp Litigation."[8]  (UMF 90.)  Moreover, the exclusion expressly provides that no coverage is afforded for matters falling within its scope "regardless of any legal theory upon which such Claim is predicated."  (UMF 90.)  Nor is it relevant whether such Claims involve or do not involve Interrelated Wrongful Acts.  Therefore, it is of no moment that some of the Underlying Matters are predicated on different legal theories or brought by different stakeholders.  Under well-settled California law, the only thing that matters is the existence of a "slight connection" or "incidental relationship" between the relevant facts, circumstances, situations, events or transactions alleged in *Tripp* and the Underlying Matters, and this connection or relationship is easily established here by the readily discernible common threads running through *Tripp* and the Underlying Matters.  *See Century Transit Sys., Inc.* 42 Cal. App. 4th at 128 n.4, 49 Cal. Rptr. 2d at 572 n.4 (explaining broad interpretation afforded to "arising out of" and "based on" in this context).

Accordingly, summary judgment for the Insurers is warranted for this reason as well.

---

[8] This broad exclusion was the product of negotiation and agreement between the insurers and IndyMac, a sophisticated purchaser of insurance that was advised by a top broker and legal counsel.  (UMF 91-93.)

INSURERS' NOTICE OF MOT. AND MOT. FOR
SUMMARY JUDGMENT

1

**III.**   **CONCLUSION**

As shown, the Underlying Matters are deemed under the 08-09 Policies to be a single Claim first made when the *Tripp* Litigation was filed, prior to the 08-09 Policy Period.  And the Prior Notice and the *Tripp* Exclusions bar coverage for the Underlying Matters in any event.  Accordingly, the Insurers' Motion for Summary Judgment should be granted.


Dated: May 16, 2012                TRESSLER LLP


By:   /s/ Elizabeth L. Musser
            David Simantob
            Elizabeth L. Musser
            Attorneys for Counterdefendants
            Catlin Insurance Company (UK) Ltd. and
            Intervenor Counterdefendants Those Certain
            Underwriters at Lloyd's, London Subscribing to
            Policy No. QA011608


Dated: May 16, 2012                BOUNDAS, SKARZYNSKI, WALSH & BLACK, LLC

By:   /s/ W. Joel Vander Vliet
            Theodore A. Boundas (*pro hac vice*)
            W. Joel Vander Vliet (*pro hac vice*)
            Attorneys for Counterdefendant
            Catlin Insurance Company (UK) Ltd. and
            Intervenor Counterdefendants Those Certain
            Underwriters at Lloyd's, London Subscribing to
            Policy No. QA011608

1   Dated: May 16, 2012          SEDGWICK LLP

2

3                                By:   /s/ Brian D. Harrison
                                      Brian D. Harrison
4                                     Robert S. Gebhard
                                      Veena A. Mitchell
5                                     Attorneys for Counterdefendant
                                      Zurich American Insurance Company
6

7

8   Dated: May 16, 2012          WILEY REIN LLP

9

10                               By:   /s/ Jason P. Cronic
                                      Jason P. Cronic (*pro hac vice*)
11                                    Attorneys for Plaintiff and Counterdefendant
                                      XL Specialty Insurance Company
12

13

14  Dated: May 16, 2012          LEWIS BRISBOIS BISGAARD & SMITH LLP

15                               By:   /s/ Douglas R. Irvine
                                      Gordon J. Calhoun
16                                    Douglas R. Irvine
                                      Attorneys for Plaintiff and Counterdefendant
17                                    XL Specialty Insurance Company

18

19

20  Dated: May 16, 2012          CLYDE & CO LLP

21                               By:   /s/ Alec H. Boyd
                                      Kim W. West
22                                    Alec H. Boyd
                                      Attorneys for Plaintiff and Counterdefendant
23                                    Arch Insurance Company

24

25

26

27

28

1    Dated: May 16, 2012              WALKER WILCOX MATOUSEK LLP

2

3                                     By:   /s/ Tiffany Saltzman-Jones
                                           Edward P. Gibbons (*pro hac vice*)
4                                          Tiffany Saltzman-Jones (*pro hac vice*)
                                           Attorneys for Plaintiff and Counterdefendant
5                                          ACE American Insurance Company

6

7    Dated: May 16, 2012              BATES CAREY NICOLAIDES LLP

8

9                                     By:   /s/ Andrew W. Smith
                                           Ommid Farashahi (*pro hac vice*)
10                                         Andrew W. Smith (*pro hac vice*)
                                           Michael T. Skoglund (*pro hac vice*)
11                                         Ross B. Edwards (*pro hac vice*)
12                                         Attorneys for Plaintiff and Counterdefendant
                                           AXIS Insurance Company
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28