GORDON J. CALHOUN, SB# 84509
  E-Mail: calhoun@lbbslaw.com
DOUGLAS R. IRVINE, SB# 119863
  E-Mail: irvine@lbbslaw.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012
Telephone: (213) 250-1800
Facsimile: (213) 250-7900

Attorneys for Plaintiff and Counterdefendant,
XL SPECIALTY INSURANCE COMPANY

[See Signature Page for Additional Counsel]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| XL SPECIALTY INSURANCE COMPANY, *et al.*,<br><br>                    Plaintiffs,<br><br>          v.<br><br>MICHAEL W. PERRY, *et al.*,<br><br>                    Defendants.<br><br>_____<br><br>AND RELATED COUNTERCLAIMS | Case No. 2:11-CV-2078-RGK-JCG<br><br>Hon. R. Gary Klausner<br><br>**INSURERS' OPPOSITION TO MICHAEL W. PERRY'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:              June 18, 2012<br>Time:            9:00 a.m.<br>Courtroom:    850<br><br>Trial Date:    July 24, 2012 |

# TABLE OF CONTENTS

Page

I.     INTRODUCTION...........................................................................1

II.    THE 08-09 POLICIES' PROVISIONS ...........................................2

III.   THE SEC LITIGATION INVOLVES AND ARISES FROM THE  SAME SERIES OF FACTS AND CIRCUMSTANCES THAT GIVE RISE TO THE *TRIPP* LITIGATION ...............................................................3

IV.    THE SEC INVESTIGATION AND THE SEC  LITIGATION ARE A SINGLE CLAIM THAT IS DEEMED MADE IN THE  07-08 POLICY PERIOD..........................................................................................6

V.     THE SEC LITIGATION ARISES FROM AND INVOLVES INTERRELATED WRONGFUL ACTS WITH THE *DANIELS* ACTION, WHICH IS ALSO DEEMED FIRST MADE DURING THE 07-08 POLICY PERIOD ...........................................................................8

VI.    MR. PERRY'S NOTICE OF CIRCUMSTANCES DOES NOT CREATE COVERAGE FOR THE SEC LITIGATION UNDER THE 08-09 POLICIES ...............................................................9

VII.   MR. PERRY'S OTHER COVERAGE ARGUMENTS FAIL ......................14

       A.     Mr. Perry Applies the Wrong Tests .......................................14

       B.     Extrinsic Evidence Does Not Create Any Ambiguity...........................16

       C.     Premiums are Irrelevant Where Policy Language is Unambiguous.....17

       D.     Mr. Perry's Multiple Claims Argument Fails........................................18

VIII.  THE 08-09 POLICIES DO NOT PROVIDE "ZERO COVERAGE" ............19

IX.    THE INSURERS ARE NOT OBLIGATED TO PAY DEFENSE COSTS  WHERE THERE IS "NO POSSIBILITY OF COVERAGE" .........19

X.     CONCLUSION ...............................................................................20

INSURERS' OPPOSITION TO PERRY'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

Page

## Cases

*Acceptance Ins. Co. v. Syufy Enters.*
69 Cal. App. 4th 321, 81 Cal. Rptr. 2d 557 (Cal. Ct. App. 1999) ........................14

*ACL Tech., Inc. v. Northbrook Prop. & Cas. Ins. Co.*
17 Cal. App. 4th 1773, 22 Cal. Rptr. 2d 206 (Cal. Ct. App. 1993) ....................17

*Advanced Network, Inc. v. Peerless Ins. Co.*
190 Cal. App. 4th 1054, 119 Cal. Rptr. 3d 17 (Cal. Ct. App. 2010) ......................9

*AIU Ins. Co. v. Superior Ct.*
51 Cal. 3d 807, 799 P.2d 1253, 274 Cal. Rptr. 820 (Cal. 1990) ..........................18

*Am. Cas. Co. of Reading, Pennsylvania v. Federal Deposit Ins. Corp.*
821 F. Supp. 655 (W.D. Okla. 1993) ...................................................................11

*Axis Surplus Ins. Co. v. Johnson*
No. 06-CV-500-GKF-PJC, 2008 WL 4525409 (N.D. Okla. Oct. 3, 2008)...........16

*Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Insurance Co.*
5 Cal. 4th 854, 855 P.2d 1263, 21 Cal. Rptr. 2d 691 (Cal. 1993) ........................18

*Burns v. Int'l Ins. Co.*
709 F. Supp. 187 (N.D. Cal. 1989) ......................................................................11

*Century Transit Sys., Inc. v. Am. Empire Surplus Lines Ins. Co.*
42 Cal. App. 4th 121, 49 Cal. Rptr. 2d 567 (Cal. Ct. App. 1996) ......................15

*Chatton v. Nat'l Union Fire Ins. Co.*
10 Cal. App. 4th 846, 13 Cal. Rptr. 2d 318 (Cal. Ct. App. 1992) ........................17

*FDIC v. Mijalis*
15 F.3d 1314 (5th Cir. 1994) ...............................................................................13

*Fid. & Deposit Co. v. Charter Oak Fire Ins. Co.*
66 Cal. App. 4th 1080, 78 Cal. Rptr. 2d 429 (Cal. Ct. App. 1998) ....................17

*Garvey v. State Farm Fire & Cas. Co.*
48 Cal. 3d 395, 770 P.2d 704, 257 Cal. Rptr. 292 (Cal. 1989) ..........................16

*Genesis Ins. Co. v. Magma Automation, Inc.*
386 Fed. Appx. 728 (9th Cir. July 12, 2010) .......................................................11

*Gon v. First State Insurance Co.*
871 F.2d 863 (9th Cir. 1989) ...............................................................................19

*Herzog v. Nat'l Am. Ins. Co.*
2 Cal. 3d 192, 465 P.2d 841, 84 Cal. Rptr. 705 (Cal. 1970) ...............................17

*In re K.F. Dairies*
224 F.3d 922 (9th Cir. 2000) ........................................................................ 17

*Indus. Indem. Co. v. Apple Computer Inc.*
79 Cal. App. 4th 817, 95 Cal. Rptr. 2d 528 (Cal. Ct. App. 2009) ................ 17

*Jeff Tracy, Inc. v. U.S. Specialty Ins. Co.*
636 F. Supp. 2d 995 (C.D. Cal. 2009) .......................................................... 19

*KPFF, Inc. v. Cal. Union Ins. Co.*
56 Cal. App. 4th 963 (1997) ......................................................................... 11

*Medill v. Westport Ins. Corp.*
143 Cal. App. 4th 819, 49 Cal. Rptr. 3d 570 (Cal. Ct. App. 2006) .............. 15

*Merino v. Allstate Indem. Co.*
231 F. App'x 682 (9th Cir. 2007) ................................................................. 19

*Securities and Exchange Commission v. Michael W. Perry, et al.*
Case No. CV11-01309-GHK (JCx) (C.D. Cal.) ............................................. 1

*Southgate Rec.n and Park Dist. v. Cal. Assoc. for Park and Rec. Ins.*
106 Cal. App. 4th 293, 130 Cal. Rptr. 2d 728  (Cal. Ct. App. 2003) ........... 15

*State Farm Mutual  Automobile Ins. Co. v. Partridge*
10 Cal. 3d 94, 514 P.2d 123, 109 Cal. Rptr. 811 (Cal. 1973) .............. 15, 16

*Waller v. Truck Ins. Exch., Inc.*
11 Cal. 4th 1, 44 Cal. Rptr. 2d 370 (Cal. 1995) .......................................... 20

*Young v. Ill. Union Ins. Co.,*
No. C07-05711, 2008 WL 5234052 (N.D. Cal. Dec. 15, 2008) .................. 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

INSURERS' OPPOSITION TO PERRY'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

## I.  **INTRODUCTION**

As detailed in the Insurers' Memorandum in support of their Motion for Summary Judgment, the "SEC Litigation"[1] does not fall within the scope of the 08-09 Policies because the SEC Litigation and the *Tripp* Litigation are deemed to be a single Claim first made prior to the inception of the 08-09 Policies.  Moreover, the Prior Notice Exclusion and *Tripp* Exclusion bar coverage for the SEC Litigation.  For these reasons, summary judgment in favor of the Insurers, and not partial summary judgment for Michael Perry, is appropriate.

Mr. Perry's Memorandum in support of his Motion for Partial Summary Judgment (Doc. No. 245) does not independently advance any legal argument, but instead echoes, refers to or joins in and expressly relies upon erroneous legal arguments advanced in the Trustee's Memorandum in support of Summary Judgment (Doc. No. 273).  The Insurers respond to those legal arguments in their opposition to that motion, showing:

- California law requires enforcement of the Policies' plain language;
- Broadly-worded exclusions also apply;
- No special interpretive rules supplant the Policies' plain language;
- The Insureds have the burden of demonstrating coverage under the insuring agreements;
- The policy terms are not ambiguous in the abstract or when applied;
- Extrinsic evidence does not create an ambiguity; and
- The premium is not evidence of an ambiguity.

Rather than repeat those arguments, the Insurers incorporate the legal arguments in their Opposition to the Trustee's  motion into this opposition by reference.

This opposition further explains how the SEC Litigation is connected to the *Tripp* Litigation and the *Daniels* Action, and is based upon, arises out of, directly or

---

[1] *Securities and Exchange Commission v. Michael W. Perry*, *et al.*, Case No. CV11-01309-GHK (JCx) (C.D. Cal.).

1

indirectly results from or is in consequence of, or in any way involves facts, circumstances, situations, events, transactions or series of facts, circumstances, situations, events or transactions underlying or alleged in *Tripp* and *Daniels*.  It also responds to Mr. Perry's claim that *Tripp* and the SEC Litigation are temporally and substantively distinct, and explains why Mr. Perry's attempts to distinguish the Claims in this way fail.

## II.      THE 08-09 POLICIES' PROVISIONS

As set forth in the Insurers' Memorandum in support of their Motion for Summary Judgment (Doc No. 250) and as described below, the SEC Litigation plainly is connected to the *Tripp* Litigation, a securities class action attacking IndyMac's alleged company-wide failures to maintain proper loan underwriting standards and internal controls.  Under the broad and unambiguous language of the 08-09 Policies, the connections between these matters are more than sufficient to establish that the SEC Litigation is not covered under the 08-09 Policies.

The 07-08 and 08-09 Policies are "claims made" policies pursuant to which all Claims arising from or involving Interrelated Wrongful Acts[2] – a defined term in the 08-09 Policies – are deemed a "single Claim" made during the policy period when the first such Claim was made.[3]  Insurers' Statement of Undisputed Material Facts ("IUMF"), Doc Nos. 253 and 258-1, at 83-85.

---

[2] "Interrelated Wrongful Acts" is defined broadly in the 08-09 Policies as "Wrongful Acts which have as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions," IUMF 86, or "any Wrongful Act based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related, or series of related facts, circumstances, situations, transactions, or events." IUMF 87.

[3] Mr. Perry cites no authority for the proposition that these provisions "must be treated as an exclusion."  Perry's Memorandum of Points and Authorities ("PMSJ") at 8, n.4.  These provisions are not exclusions, but neutral terms that operate to determine when a Claim is deemed first made.  Accordingly, the burden remains on Mr. Perry to "bring the claim within the basic scope of coverage." *Advanced Network, Inc. v. Peerless Ins. Co.,* 190 Cal. App. 4th 1054, 1060, 119 Cal. Rptr. 3d 17 (Cal. Ct. App. 2010).  The parties agree that California law appears to govern this dispute.

2

In addition to the 08-09 Policies' insuring agreements, the Insurers also rely upon two sets of exclusions that preclude coverage for the SEC Action:  prior notice exclusions, which appear in various yet similar form in the 08-09 Policies (collectively, the "Prior Notice Exclusion") and two identical "Specific Litigation Exclusions," (collectively, the "Specific Litigation Exclusion" or "*Tripp* Exclusion") which were the subject of negotiation between the Insurers and IndyMac and its advisors.  IUMF 91.  These exclusions bar coverage for a Claim that involves a connection—broadly defined—with any Claims, facts, circumstances, transactions or events for which notice was provided in a prior policy year or with any fact, circumstance, transaction or event or series of facts, circumstances, transactions or events alleged in or underlying the *Tripp* Litigation.  IUMF 88-90.

### III.   THE SEC LITIGATION INVOLVES AND ARISES FROM THE SAME SERIES OF FACTS AND CIRCUMSTANCES THAT GIVE RISE TO THE *TRIPP* LITIGATION

The SEC Litigation involves and arises from a continuation of the series of alleged facts, circumstances, transactions and events involving misrepresentation of IndyMac's financial and capital position underlying the *Tripp* Litigation.  The SEC Litigation alleges that Mr. Perry violated securities laws by making false and misleading disclosures of IndyMac's financial condition when he knew of IndyMac's "rapidly deteriorating financial condition".  IUMF 69-70.  The complaint further alleges that the downgrading of millions of dollars in IndyMac Bank-sponsored mortgage-backed securities that the Bank held on its balance sheet negatively impacted its capital ratio and liquidity levels, which ultimately resulted in IndyMac Bank's receivership and IndyMac's bankruptcy.  *Id.*  The negative developments are a direct result of IndyMac's aggressive business model.

These facts are also central to the *Tripp* Litigation.  The *Tripp* complaint, first filed in March 2007 and noticed to the Insurers during the March 1, 2007 to March 1, 2008 policy period, alleges securities law violations on behalf of a putative class

of IndyMac stockholders during a class period of March 1, 2006-March 1, 2007. IUMF 6-7.  The *Tripp* plaintiffs allege that statements concerning IndyMac Bank's financial condition were false and misleading primarily because IndyMac Bank's underwriting practices and internal controls were grossly deficient, and that the Bank's loan loss reserves were inadequate.  IUMF 8.  The *Tripp* plaintiffs contend that such deficient underwriting practices were part of IndyMac's company-wide, top-down business strategy, and that senior management encouraged underwriters to disregard underwriting guidelines, manipulate appraisal values, and push bad loans to close.  IUMF 9, 11- 13.  The misrepresentations purportedly concealed that "the Company's loan portfolio was severely impaired as a result of Defendants' repeated violations of the Company's internal/operational controls over underwriting [,]" causing IndyMac's stock to trade at inflated levels.  IUMF 10.  Further, the plaintiffs allege that, towards the end of the class period, IndyMac had difficulty selling the loans referenced, "as the secondary market became less liquid and information about IndyMac's lax credit quality practices began to seep into the marketplace," and as a result, IndyMac was "stuck with a substantial portion of loans that defaulted quickly and which IndyMac was unable to sell on the secondary market."  IUMF 14.

Additionally, the allegations in the *Tripp* Litigation underlie, per the OIG Audit Report specifically cited by the plaintiffs therein (and in *Daniels*), the Bank's capital and liquidity problems.  IUMF 5. The Bank's liquidity was reduced when housing prices fell in 2007 and the secondary mortgage market collapsed.  IUMF 3. According to the OIG Audit Report, the Bank ultimately failed due to unsafe and unsound underwriting practices and the manner in which the company was operated, which in turn led to IndyMac's bankruptcy.  IUMF 4.

Contrary to Mr. Perry's assertions, the *Tripp* Litigation and the SEC Litigation both arise from and involve IndyMac Bank's low capital levels which were impacted by the Bank's inadequate loan loss reserves.  The *Tripp* plaintiffs, referencing the OIG Audit Report, challenge the adequacy of IndyMac Bank's loan

loss reserves and assert that such reserves did not consider the "effects of any changes in risk selection and underwriting standards" because its "'underwriting standards' were wholly ineffective . . . and thus meaningless as a factor in the calculation of the Company's loan loss reserves."  IUMF 19.  Further, the OIG Audit Report states that loan loss reserves or "Allowance for Loan and Lease Losses" is "critical because of its impact on the thrift's capital levels."  OIG Audit Report attached as Exhibit 34 to Joint Stipulation at 10-11.[4]  The OIG Audit Report thus noted that IndyMac Bank's total risk based capital was "low" at 10.26 percent on March 31, 2008 and if this threshold fell below 10 percent, IndyMac Bank "would not have been considered 'well capitalized' for regulatory purposes."  *Id.*

These facts, circumstances, situations, transactions and events overlap, are consistent with and closely track the facts, circumstances, situations, transactions and events at issue in the SEC Litigation.  Specifically, the SEC alleges that Mr. Perry and Scott Keys falsely represented that the proceeds of the sale of IndyMac common stock through the DSPP, beginning on February 26, 2008, would be used for "general corporate purposes" when, in fact, on February 19, 2008, Mr. Keys informed Mr. Perry that "IndyMac Bank's forecasted capital ratio at March 31 was expected to be right at or slightly under 10%" and thus, IndyMac planned to use $25 to $50 million of the proceeds from sales through the DSPP for a capital contribution to IndyMac Bank.  Ex. 39, SEC Complaint, ¶¶ 19-20.  The SEC also contends that certain IndyMac securities filings were false and misleading in "that they failed to disclose that IndyMac's well-capitalized status was based, in part, on the change in method by which IndyMac calculated its capital ratio, so that it was no longer based on double risk-weighting of subprime loan assets."  *Id.* at ¶ 48.

Notably, when the SEC filed its complaint, it also filed a Notice of Related Cases.  This Notice states that the SEC Litigation is related to the *Tripp* Litigation

---

[4] Unless otherwise noted, all exhibits cited herein are attached to the Joint Stipulation Regarding Certain Exhibits and Allegations filed in this action on November 23, 2011 (Doc. No. 193).

because "both actions involve Perry's conduct at IndyMac in making public statements to investors" and that the SEC Litigation is related to *Daniels* because "they arise from the same or closely related events."  IUMF 71.  That the SEC focuses on events taking place after the allegations in the *Tripp* Litigation, as Mr. Perry asserts (PMSJ at 2:21-3:8), does not remove them from the series of related facts, circumstances, transactions, and events; indeed, a "series" clearly denotes a sequence.  The above-referenced series of facts, circumstances, transactions and events is at issue in the *Tripp* Litigation and in the SEC Litigation.  Thus, the series of lawsuits arises from a common nexus of facts, circumstances, transactions and events.  As such, the *Tripp* Litigation and SEC Litigation are deemed to constitute a single claim first made prior to the inception of the 08-09 policy period.[5]  Further, it is clear that the SEC Litigation is based upon, arises out of, directly or indirectly results from, is in consequence of or in some way involves one or more facts underlying or alleged in the *Tripp* Litigation.  Accordingly, the Prior Notice Exclusion and *Tripp* Exclusion bar coverage for the SEC Litigation.

## IV.   THE SEC INVESTIGATION AND THE SEC  LITIGATION ARE A SINGLE CLAIM THAT IS DEEMED MADE IN THE  07-08 POLICY PERIOD

On August 12, 2008, the SEC, in follow-up to an informal inquiry on July 24, 2008 (less than two weeks after the FDIC seized IndyMac Bank on July 11, 2008), issued subpoenas to Mr. Perry and others for the production of documents that encompassed the *Tripp* class period (January 1, 2005 to July 11, 2008) ("SEC Investigation").  The SEC Investigation, which is itself a "Claim" as defined under the Policies, sought, among other things, all documents and communications relating to:

---

[5] Indeed, for this reason, the Insurers have been reimbursing Mr. Perry and Mr. Keys for the costs incurred to defend against the SEC Litigation under the 07-08 Policies.  IUMF 76-77.

INSURERS' OPPOSITION TO PERRY'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

IndyMac's loan underwriting guidelines, policies, and procedures and any deviations therefrom;

The methodology and calculation of IndyMac's provision and allowance for loan losses;

The financial condition, results of operations, assets, liabilities, income, expenses, accounts, transactions, activities, and business of IndyMac;

IndyMac's quarterly revenue, earnings per share and profit targets;

Periodic reports relating to the value and quantity of loans included in IndyMac's consolidated balance sheets by product type (*i.e.*, prime, subprime, Alt-A, pay option ARM, interest only, 80/20, HELOC, etc);

Periodic reports relating to the value and quantity of IndyMac's loan production and pipeline by product type; and

Periodic reports relating to loan default/delinquency rates and amounts in IndyMac's portfolios by product type, borrower profile and causation.

IUMF 72. *See also* Ex. 1, Section II.D; Ex. 5, Section II(C)(definition of "Claim").

Each of these categories of documents, as well as the facts and circumstances related thereto, that the SEC was seeking to obtain as part of its investigation are also at issue in *Tripp*. The SEC Investigation, along with the *Tripp* Litigation, is thus deemed a single Claim first made under the 07-08 Policies because the Investigation and *Tripp* involve the same or similar series of facts and circumstances and involve Interrelated Wrongful Acts. In *Tripp,* the plaintiffs allege wide-ranging and management directed violations of the Company's underwriting guidelines and controls evidencing a culture of fraud at the company. IUMF 17. Further, *Tripp* addresses IndyMac's high risk business strategy and growth through placement of high-risk loans, widespread appraisal fraud, and the inability to sell loans on the secondary period due to the lax credit quality practices and a substantial increase in defaults. IUMF 13-15. This, in turn, led to IndyMac's capital/liquidity crisis. In its

investigation, the SEC sought the same or similar information regarding the alleged misstatements and omissions relating to the multiple identical facets of IndyMac's business.  IUMF 17-19.  In sum, there can be no doubt that the SEC Investigation is a single Claim with *Tripp.*

The resulting lawsuit, the SEC Litigation, is likewise part of the same Claim, along with the SEC Investigation and *Tripp,* that is deemed made in the 07-08 policy period.  Before the SEC can file suit, it must conduct an investigation.  17 CFR 202.5(b).  Here, the SEC's investigation of Mr. Perry began shortly after the FDIC seized IndyMac Bank and, according to the SEC's Responses to Perry's First Set of Interrogatories, continued at least until the SEC filed suit against Mr. Perry.  Request for Judicial Notice in Support of Insurers' Oppositions and Declaration of Douglas R. Irvine at Ex. 12.  Thus, there is no doubt that the SEC Litigation necessarily arises out of the SEC's Investigation and, therefore, is a single Claim deemed first made at the time of *Tripp* and in the 07-08 policy period.

## V.   THE SEC LITIGATION ARISES FROM AND INVOLVES INTERRELATED WRONGFUL ACTS WITH THE *DANIELS* ACTION, WHICH IS ALSO DEEMED FIRST MADE DURING THE 07-08 POLICY PERIOD

The *Daniels* Action explicitly incorporates allegations of the SEC Litigation.  *See* Ex. 25, *Daniels* Fifth ACAC, ¶¶ 12-20, 33, 40, 211-212.  Indeed, *Daniels* cites the SEC complaint as "evidence showing that in 2007 and 2008, Perry and Keys knew the depth of IndyMac's deteriorating financial condition."  *Id.*, ¶ 14.  The *Daniels* Litigation is but a continuation of *Tripp*: its class period picks up where the *Tripp* class period ends, and it shares with *Tripp* allegations that IndyMac collapsed because "it underwrote, originated and sold poor-quality risk-laden mortgages" and employed "reckless loan underwriting and appraisal practices" which led to inadequate loan loss reserves.  IUMF 22.  According to *Tripp* and *Daniels*, these business practices were crucial to IndyMac's financial condition, which ultimately

collapsed because of the deficient practices, notwithstanding defendants' efforts to conceal them.  IUMF 15, 23.  As a result, *Daniels* and *Tripp* are deemed to be a single Claim first made under the 07-08 Policies.

Likewise, because the SEC Litigation is a continuation of the series of alleged facts, circumstances, transactions and events involving misrepresentations of IndyMac's financial and capital position underlying the *Tripp* Litigation and the *Daniels* Action, it must be deemed a single Claim with those actions first made during the 07-08 policy period.  Less than two weeks after IndyMac Bank was seized, the SEC commenced an investigation and, soon thereafter, issued subpoenas to IndyMac, Mr. Perry and others demanding documentation and information about IndyMac's underwriting guidelines, loan products, value and quality of loans, loan fault/delinquency rates, loan losses and secondary market reserves, and write-downs. IUMF 72.  There can be no dispute the SEC's investigation focused on, overlapped and sought information about  the facts, circumstances, situations, transactions and events at issue in *Tripp* and *Daniels*.

## VI.   MR. PERRY'S NOTICE OF CIRCUMSTANCES DOES NOT CREATE COVERAGE FOR THE SEC LITIGATION UNDER THE 08-09 POLICIES

Assuming arguendo the SEC Litigation is not deemed first made during the 07-08 policy period, there is still no coverage for it under the 08-09 Policies.  The Insuring Clauses for the 08-09 Policies provide that coverage is afforded for Loss resulting from any Claim first made during the policy period.  It cannot be disputed that the SEC Litigation against Mr. Perry for securities offering fraud and reporting violations was filed on February 11, 2011, was not made or noticed during the 08-09 policy period which expired on April 1, 2009, and thus does not fall within the coverage grant. Ex. 39, p. 1.  *See Advanced Network, Inc. v. Peerless Ins. Co.,* 190 Cal. App. 4th 1054, 1060, 119 Cal. Rptr. 3d 17 (Cal. Ct. App. 2010) (insured bears burden of establishing coverage).

In recognition of this, Mr. Perry seeks to create coverage for the post-policy period SEC Litigation through reliance on the provision of the 08-09 Policies that he refers to as the "notice of circumstances" provision. Those provisions provide that the insurer shall be given written notice as soon as the Insured becomes aware of circumstances that might give rise to a Claim.[6] If such notice describes the particular Wrongful Acts, the consequences which may result, the reasons for anticipating a Claim with full particulars as to the dates and persons involved, and an estimate of quantum, then a subsequent Claim based on those circumstances may be deemed made during the policy period. *See* Ex. 1, Section VI.B; Ex. 5, Section VI(D).

On February 26, 2009, Mr. Perry sent correspondence to the Insurers that advised, without describing or identifying a specific Wrongful Act, that the SEC might assert claims against IndyMac's former directors and officers. *See* Exs. 40-41. That correspondence did not advise (1) that he may be sued by the SEC in connection with his attempts to raise capital in 2008; (2) that Perry might be sued in connection with IndyMac's Direct Stock Purchase Plan; or (3) he may be sued for improper disclosures regarding IndyMac's liquidity levels or  the Bank's capital ratio, the latter which he argues in his motion are "at the heart of the allegations in the SEC Litigation", but "not mentioned  once . . . in *Tripp*." PMSJ at 2:24 – 28. Further, although Mr. Perry claims that the  "global financial crisis" is specifically identified in the SEC's complaint as a cause of the Bank's financial difficulties" but "was not at issue in *Tripp*" (PMSJ at 13:3 – 14:3)*,* that crisis is not mentioned as a basis of a possible claim that may be brought against him in his February 26, 2009 correspondence. Since the allegations that Mr. Perry now cites as a basis to argue that the SEC Litigation and *Tripp* are not Interrelated Wrongful Acts were not included in his February 26, 2009 correspondence, he cannot rely upon them to deem any future claim to have been made at the time the notice of circumstances

---

[6] The "notice of circumstances" provisions in the ABC and A-Side policies are not identical, but the differences are not relevant here. *See* Ex. 1, Section VI.B; Ex. 5, Section VI(D).

was provided.  Moreover, because the SEC Litigation was filed after the 08-09 Policies expired, there is no coverage for the SEC Litigation because Mr. Perry did not comply with the notice of circumstances provision.[7]

Courts are clear that allowing an insured's non-specific notice of circumstances to extend coverage results in an unbargained-for extension of claims-made coverage and, accordingly, require strict compliance by the insured with such provisions.  *See Burns v. Int'l Ins. Co.*, 709 F. Supp. 187, 191 (N.D. Cal. 1989), *aff'd*, 929 F.2d 1442 (9th Cir. 1991) (strict compliance is necessary to allow the insurer under a claims-made policy to "attain a level of predictability" so that it can "close its books" on a policy at the expiration date and more accurately "calculat[e] its necessary reserves and future premiums"; such predictability "translates into significantly lower costs to consumers").  Measured against the requirements of the 08-09 Policies, Mr. Perry's purported notice falls far short of the level of specificity required by courts applying California law.  *See, e.g.*, *Genesis Ins. Co. v. Magma Automation, Inc.*, 386 Fed. App'x. 728, 730 (9th Cir. 2010) (finding the insured's notice of circumstances did not provide the "specific information" required under the relevant notice provision); *KPFF, Inc. v. Cal. Union Ins. Co.*, 56 Cal. App. 4th 963, 976, 66 Cal. Rptr. 2d 36 (1997) (finding that notice provided "at best a possibility of other claims . . . without providing enough information to allow insurer to infer the likelihood of such claims").  *See also Am. Cas. Co. v. FDIC*, 821 F. Supp. 655, 663 (W.D. Okla. 1993) (letter containing "laundry list of potential wrongdoing that could be committed by any bank director or officer" not sufficient to trigger coverage under a claims made policy).

Here, Mr. Perry's asserted notice of circumstance provides:

---

[7] On the other hand, if the connection between the notice in Mr. Perry's February 26, 2009 correspondence and the SEC Litigation is determined to be sufficient, then these same connections must also be sufficient to find that the Interrelated Wrongful Acts language applies and, therefore, results in the SEC Litigation being deemed a single Claim first made at the time of *Tripp* and in the 07-08 policy period.  Those same connections would bar coverage under the Specific Litigation and Prior Notice Exclusions of the 08-09 Policies.

INSURERS' OPPOSITION TO PERRY'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

1    Mr. Perry is a former director and officer of IndyMac Bancorp,

2    Inc. ("IndyMac"), which has filed for bankruptcy protection . . . .  In

3    connection with IndyMac's pending bankruptcy case and otherwise, the

4    Federal Deposit Insurance Corporation (FDIC) and the bankruptcy

5    trustee have indicated that they may assert claims against Mr. Perry,

6    and various government agencies in addition to the SEC (including the

7    Office of Inspector General at the Department of the Treasury, the

8    Office of Inspector General at the FDIC, the U.S. Department of

9    Justice, and the Federal Bureau of Investigation) and a federal grand

10   jury are pursuing inquiries, investigations, or proceedings in the

11   aftermath of the placement of IndyMac Bank into receivership.

12   The foregoing circumstances might give rise to a Claim within

13   the coverage of the Policies against Mr. Perry by one or more of the

14   aforementioned entities, by other federal or state regulatory,

15   administrative, or investigative agencies, or by other persons or entities.

16   Such Claim or Claims may allege one or more Wrongful Acts that are

17   the same as or related to the Wrongful Acts alleged in [the *Tripp*

18   Litigation and *Daniels* Litigation] or may allege other Wrongful Acts

19   related to events leading up to or relating to the bankruptcy of IndyMac

20   and/or events leading up to or relating to the placing into receivership of

21   IndyMac Bank.  We are unable to estimate the quantum of damages that

22   might be claimed at this time.

23   Ex. 40 and 41, at 1, 2.

24   These bare-bones statements do not comply with the requirements of the 08-

25   09 Policies.  No specific Wrongful Acts or specific circumstances and anticipated

26   Wrongful Act allegations are set forth in the notice letters.  On the contrary, the

27   notice letters merely refer generally to one or more Wrongful Acts that are "the

28   same as or related to the Wrongful Acts alleged in" the *Tripp* Litigation and/or

12

*Daniels* Litigation.  This constitutes an acknowledgment by Mr. Perry that the circumstances or Wrongful Acts that could potentially give rise to a Claim by the Trustee and SEC are the same facts, circumstances, and Wrongful Acts at issue in the *Tripp* Litigation and its related Claims.  The letters also refer vaguely to "events leading up to or relating to the bankruptcy of IndyMac . . . .," in other words, as the OIG Audit Report concluded, the unsafe and unsound underwriting practices alleged in *Tripp*.  *See* IUMF 4.  Consequently, assuming arguendo that this portion of the notice letters is adequate, for there to be any coverage for the Trustee Litigation and the SEC Litigation, which were filed after the 08-09 Policy Period, these actions must be deemed first made during the 07-08 year in which the Tripp Litigation was filed.

Further, while the letters reference that Claims could be asserted "in connection with IndyMac's pending bankruptcy case *or otherwise*," by one of several entities or *"other persons or entities*," alleging *"other Wrongful Acts*," no specifics are alleged.  Exs. 40 and 41, at 1-2 (emphasis added).  Such vague statements are not notice of "specific circumstances and anticipated Wrongful Act allegations," "specific Wrongful Acts" or their anticipated consequences as required by the 08-09 Policies.  If Mr. Perry could not identify the specific Wrongful Acts that could potentially give rise to claims by the Trustee or SEC, then the insurers are certainly not required to guess.  *FDIC v. Mijalis*, 15 F.3d 1314, 1335 (5th Cir. 1994) (adequacy of a notice of circumstances is judged objectively, not based on whether the insurer can "subjectively draw[] inferences that potential claims exist").

And, finally, this Court should reject any suggestion the Insurers should have advised Mr. Perry that his notice of circumstances was inadequate to extend coverage to the later filed SEC Action.  First, "notice of circumstances" provisions impose no such obligation.  *See* Ex. 1, Section VI.B; Ex. 5, Section VI(D).  Second, the Insurers had no reason to anticipate the scope of the SEC Litigation – until such Claim was made, they had no ability to assess whether Mr. Perry had adequately

INSURERS' OPPOSITION TO PERRY'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

described its underpinnings, and thus could not judge the notice's adequacy with respect to the SEC Litigation, filed nearly two years later.

## VII.   MR. PERRY'S OTHER COVERAGE ARGUMENTS FAIL

### A.   Mr. Perry Applies the Wrong Tests

Mr. Perry makes several unfounded arguments for why the 08-09 Policies' broadly worded provisions do not apply.  First, Mr. Perry reads into these provisions a requirement that in order for these provisions to apply to bar coverage for the SEC Litigation, the SEC Litigation must be "temporally and substantively similar" to the *Tripp* Litigation.  Mr. Perry cites no authority for this proposition.  Further, Mr. Perry's analysis is backwards as the contract provisions at issue turn on the presence of common facts in the two lawsuits (*i.e.*, the Claims) and not on differences or variations in the Claims.  The relevant questions are whether the SEC Litigation is a Claim (1) based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions underlying or alleged in the *Tripp* Litigation; or (2) arising from or involving Interrelated Wrongful Acts with any Claim first made during the 07-08 policy period.  When the two matters are compared, there is no doubt that the answer to both questions is a resounding "yes."

Moreover, courts interpreting similar policy provisions have not required claims to be substantively or temporally similar and routinely enforce policy language such as that of the 08-09 Policies.  "California courts have consistently given a broad interpretation to the terms 'arising out of' . . . in various kinds of insurance provisions."  *Acceptance Ins. Co. v. Syufy Enters.*, 69 Cal. App. 4th 321, 328, 81 Cal. Rptr. 2d 557 (Cal. Ct. App. 1999).  Even in the context of a policy exclusion – "arising out of," according to California courts, "is a broad concept requiring only a 'slight connection' or an 'incidental relationship' between the injury and the *excluded* risk," which "broadly links the exclusionary operative events with

14

the exclusion." *Southgate Rec. and Park Dist. v. Cal. Assoc. for Park and Rec. Ins.*, 106 Cal. App. 4th 293, 301, 130 Cal. Rptr. 2d 728  (Cal. Ct. App. 2003) (internal citations omitted).  And "the term 'based on' has the same effect as 'arising out of.'" *Century Transit Sys., Inc. v. Am. Empire Surplus Lines Ins. Co.*, 42 Cal. App. 4th 121, 128 n.4, 49 Cal. Rptr. 2d 567 (Cal. Ct. App. 1996) (internal citation omitted).

Citing *State Farm Mutual  Automobile Insurance Co. v. Partridge*, 10 Cal. 3d 94, 514 P.2d 123, 109 Cal. Rptr. 811 (Cal. 1973), Mr. Perry asserts that even if one "background fact" alleged in *Tripp* contributed to the situation of which the wrongful acts alleged by the SEC arose, the 08-09 Policies' provisions would only preclude coverage where such fact was the "sole proximate cause" of the SEC Litigation.  PMSJ at 12.  Mr. Perry asserts that because the "global financial crisis" was a cause of IndyMac Bank's financial circumstances at issue in the SEC Litigation, and was "entirely independent" of the facts at issue in the *Tripp* Litigation, there is the possibility of coverage for the SEC Litigation under the 08-09 Policies.  PMSJ at 12.

Mr. Perry's reliance upon *Partridge* is misplaced, as *Partridge* has been specifically distinguished in later cases interpreting "arising out of" language in policy exclusions under California law.  In *Medill*, the California Court of Appeals stated that "[c]ourts following *Partridge* have made it clear that its holding only applies to 'multiple causes that operated totally independently of one another.'" *Medill v. Westport Ins. Corp.,* 143 Cal. App. 4th 819, 835, 49 Cal. Rptr. 3d 570 (Cal. Ct. App. 2006) (citation omitted).  Thus, in *Medill*, the court explained that because the insured directors' and officers' alleged negligence and breach of fiduciary duties did not exist independently of excluded risks for the issuance or endorsement of bonds and the failure to pay on the bonds, but arose out of and were directly connected to those risks, the proximate cause analysis in *Partridge* was inapplicable. *Id.  See also Garvey v. State Farm Fire & Cas. Co.*, 48 Cal. 3d 395, 399, 770 P.2d 704, 257 Cal. Rptr. 292 (Cal. 1989) ("*Partridge* . . . should be utilized only in

15

*liability* cases in which true concurrent causes, each originating from an independent act of negligence, simultaneously join together to produce injury"). The same conclusion is dictated here.  The SEC's allegations do not exist independently of the facts alleged in the *Tripp* Litigation but arise out of the alleged conduct *and* the "financial crisis[8]" described in *Tripp.*  Thus, *Partridge* is inapplicable.

Also, *Axis Surplus Insurance Co. v. Johnson*, No. 06-CV-500-GKF-PJC, 2008 WL 4525409 (N.D. Okla. Oct. 3, 2008), cited by Mr. Perry, is inapposite to the facts here.  In *Johnson*, the insureds sought coverage for a claim brought by a trustee involving sweeping allegations of mismanagement of the parent company by attempting to relate the claim to an earlier claim involving a loan that created a subsidiary.  The insureds argued that the claims involved "Interrelated Wrongful Acts" simply because both claims asserted causes of action for negligence and breach of fiduciary duty.  *Id.* at 24-25.  Here, the Insurers' position is not simply based upon a common cause of action between the SEC Litigation and *Tripp* Litigation, but by all the facts and circumstances discussed above.

### B.   Extrinsic Evidence Does Not Create Any Ambiguity

Contrary to Mr. Perry's assertion, there is no actual "debate and disagreement" among the Insurers regarding the scope of the *Tripp* Exclusion. PMSJ at 11.  Mr. Perry's basis for this assertion are snippets of deposition testimony he references in order to create the appearance of an ambiguity.  This testimony is irrelevant for several reasons.  First, the *Tripp* Exclusion is clear and unambiguous on its face and extrinsic evidence is not admissible to support an interpretation of the policy language that would be inconsistent with its plain terms by rendering many, if

---

[8] Indeed, contrary to Mr. Perry's assertion, the financial crisis and housing downturn are at issue in the *Tripp* Litigation.  *See* Ex. 23 at ¶ 5 ("[A] significant number of subprime lenders began to close shop during 2006, causing dislocation in the housing market."); Ex. 23 at ¶ 6 ("Notwithstanding the downturn in the real estate market, Defendants portrayed IndyMac as a stable and growing company that would not only weather the bad times facing the mortgage industry, but would emerge from troubling times even stronger.")

16

1  not all, of them surplusage.  *See, e.g.*, *ACL Tech., Inc. v. Northbrook Prop. & Cas.*

2  *Ins. Co.*,  17 Cal. App. 4th 1773, 1791, 22 Cal. Rptr. 2d 206 (Cal. Ct. App. 1993)

3  ("Whatever else extrinsic evidence may be used for, it may not be used to show that

4  words in contracts mean the exact opposite of their ordinary meaning.").

5      Further, because the "interpretation of an insurance policy is a *legal* rather

6  than a *factual* determination," the "opinion evidence" of insurers' employees is

7  "completely irrelevant to interpret an insurance contract."  *Chatton v. Nat'l Union*

8  *Fire Ins. Co.*, 10 Cal. App. 4th 846, 865, 13 Cal. Rptr. 2d 318 (Cal. Ct. App. 1992)

9  (rejecting argument that coverage existed because insurers' employees admitted the

10  existence of such liability); *Indus. Indem. Co. v. Apple Computer Inc.*, 79 Cal. App.

11  4th 817, 835 n.4, 95 Cal. Rptr. 2d 528 (Cal. Ct. App. 2009) ("[T]he opinions of

12  insurance company agents and employees regarding coverage issues . . . are

13  "completely irrelevant" to the legal issues of policy interpretation.").  As such, Mr.

14  Perry's citations to characterizations or summaries of contract language elicited by

15  counsel in depositions is irrelevant.  *E.g.*, PMSJ at 11.

16      **C.**  **Premiums are Irrelevant Where Policy Language is Unambiguous**

17      Mr. Perry's arguments regarding premiums paid are irrelevant.  PMSJ at 9-10.

18  As the case law cited by Mr. Perry indicates, courts will look to the insurance

19  premiums charged only where the "reasonable expectations" of the insured are

20  deemed relevant, *i.e.*, where the policy is ambiguous.  *See Herzog v. Nat'l Am. Ins.*

21  *Co.,* 2 Cal. 3d 192, 197, 465 P.2d 841, 84 Cal. Rptr. 705 (Cal. 1970) (stating that the

22  "reasonable expectations of the insured" do not contemplate that a homeowner's

23  policy will provide automobile coverage as other insurance "with a premium

24  commensurate to the increased risks" is available for that purpose); *Fid. & Deposit*

25  *Co. v. Charter Oak Fire Ins. Co.*, 66 Cal. App. 4th 1080, 1086, 78 Cal. Rptr. 2d 429

26  (Cal. Ct. App. 1998) (citation omitted).  *In re K.F. Dairies*, 224 F.3d 922, 926 (9th

27  Cir. 2000) (citation omitted) (A "policyholder's 'reasonable expectation' of

28  coverage *is only relevant* when the policy is ambiguous.").  *See also AIU Ins. Co. v.*

17

*Superior Ct.,* 51 Cal. 3d 807, 822, 799 P.2d 1253, 274 Cal. Rptr. 820 (Cal. 1990) (the insured's objectively reasonable expectations of coverage are considered only if the language is susceptible to more than one interpretation). Here, the language of the policy provisions at issue is clear and explicit, and Mr. Perry has alleged no reasonable basis for asserting otherwise. The premiums charged for the 08-09 Policies do not reflect any ambiguity in the meaning of the policy terms: the 08-09 Policies afford coverage for any manner of Claims that fall within their insuring agreements and are not excluded. An increase in premium over prior years based on market conditions and IndyMac's claim history does not afford a basis to interpret the broad language of the policies' provisions other than according to their plain meaning. Nothing about the amount of the premium charged demonstrates that the policies were underwritten with coverage for the SEC Litigation "in mind" as Mr. Perry suggests. PMSJ at 9. The language of the policy provisions at issue is clear and explicit, and Mr. Perry has alleged no reasonable basis for asserting otherwise.

## D.    <u>Mr. Perry's Multiple Claims Argument Fails</u>

Citing *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Insurance Co.*, 5 Cal. 4th 854, 859, 855 P.2d 1263, 21 Cal. Rptr. 2d 691 (Cal. 1993), Mr. Perry suggests that the SEC Litigation is comprised of multiple "claims" and that there is the potential for coverage for those purported "claims" that address IndyMac's new business model. PMSJ at 19. This position is misguided. Pursuant to the 08-09 Policies, a "civil proceeding" is a distinct "Claim" (IUMF 84) whereas the policy at issue in *Bay Cities* did not separately define "Claim" to mean "civil proceeding" but instead defined "Claim" to mean "*a demand*, including service of suit or institution of arbitration proceedings, *for money against the insured*." *Bay Cities*, 5 Cal. 4th at 859 (emphasis added). Thus, *Bay Cities* is irrelevant. Further, IndyMac clearly would not have paid an indeterminate amount of $2.5 million retentions for multiple "claims" "suggested by the facts alleged in a given complaint." PMSJ at 19.

Moreover, even if there are multiple "claims" in the SEC Litigation, the SEC Litigation itself remains a single "Claim" that would relate to the *Tripp* Litigation.

## VIII.  THE 08-09 POLICIES DO NOT PROVIDE "ZERO COVERAGE"

Mr. Perry incorrectly states that the Insurers have interpreted the 08-09 Policies in such a way that the policies provide "zero coverage" and thus coverage is rendered illusory.  PMSJ at 15-16.  However, a policy is not deemed illusory unless it "affords no coverage whatsoever."  *Merino v. Allstate Indem. Co.*, 231 F. App'x 682, 729 (9th Cir. 2007).  *See also Young v. Ill. Union Ins. Co*., No. C07-05711, 2008 WL 5234052, at *1 (N.D. Cal. Dec. 15, 2008) (to same effect).  Indeed, this court has found that, even where an exclusion precludes coverage for "the predominant type of Claim envisioned under [a] policy", coverage is not illusory where the exclusion does not "eliminate coverage entirely."  *Jeff Tracy, Inc. v. U.S. Specialty Ins. Co.*, 636 F. Supp. 2d 995, 1007 (C.D. Cal. 2009).  Here, the 08-09 Policies afford coverage for any non-excluded Claim first made during the 08-09 policy period.  It is not difficult to envision any number of potential Claims that could fall within the scope of coverage that would not be barred by the exclusions at issue here.  For example, as the 08-09 Policies afford specific coverage for management's liabilities arising out of mergers and acquisitions and employment practices liability claims, potential areas of liability far afield from *Tripp* and the other matters at issue here.  Ex. 1, Section II. J, K.[9]

## IX.    THE INSURERS ARE NOT OBLIGATED TO PAY DEFENSE COSTS WHERE THERE IS "NO POSSIBILITY OF COVERAGE"

Mr. Perry asserts that "the Year 2 Policies impose on the Insurers a duty to pay Mr. Perry's defense costs rather than the more traditional duty to defend," and cites to *Gon v. First State Insurance Co.*, 871 F.2d 863 (9th Cir. 1989), for the proposition that California courts do not distinguish between an insurer's "duty to

---

[9] See the Insurers' Opposition to the Trustee's Motion for Summary Judgment at pp. 19-20 for examples of other Claims that would likely not implicate the *Tripp* Exclusion or other policy provisions that preclude coverage for the SEC Litigation.

INSURERS' OPPOSITION TO PERRY'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

defend" and "duty to pay." PMSJ at 17. However, even accepting that the 08-09 Insurers' obligations are considered to be the same as a duty to defend, California law is clear that "'where there is no possibility of coverage, there is no duty to defend . . . .'" *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18-19, 44 Cal. Rptr. 2d 370, 378 (Cal. 1995) (citation omitted). As described above, the application of the interrelated wrongful acts provision, Prior Notice Exclusion and *Tripp* Exclusion establishes that there is no possibility of coverage under the 08-09 Policies for the SEC Litigation. Accordingly, the Insurers have no obligation to pay Mr. Perry's defense costs for the SEC Litigation.

## X.   **CONCLUSION**

For the foregoing reasons, the Insurers respectfully request that the Court deny Mr. Perry's motion for partial summary judgment and grant the Insurers' motion for summary judgment and declare that the 08-09 Policies afford no coverage for the SEC Litigation.

DATED: May 29, 2012               LEWIS BRISBOIS BISGAARD & SMITH LLP

By: /s/ Douglas R. Irvine
        Gordon J. Calhoun
        Douglas R. Irvine

        Jason P. Cronic (Admitted *pro hac vice*)
        jcronic@wileyrein.com
        WILEY REIN LLP
        1776 K Street NW
        Washington, DC  20006
        Telephone: (202) 429-7000
        Facsimile: (202) 719-7049

        Attorneys for Plaintiff/Counterdefendant XL
        Specialty Insurance Company

INSURERS' OPPOSITION TO PERRY'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

DATED: May 29, 2012          CLYDE & CO LLP

                             By: /s/ Alec H. Boyd
                                 Kim W. West, SBN 78553
                                 kim.west@clydeco.us
                                 Alec H. Boyd, SBN 161325
                                 alec.boyd@clydeco.us
                                 CLYDE & CO LLP
                                 101 Second Street, 24th Floor
                                 San Francisco CA 94105
                                 Telephone: (415) 365-9800
                                 Facsimile: (415) 365-9801

                                 Attorneys for Plaintiff/Counterdefendant
                                 Arch Insurance Company

DATED: May 29, 2012          WALKER WILCOX MATOUSEK LLP

                             By: /s/ Tiffany Saltzman-Jones
                                 Edward P. Gibbons (Admitted *pro hac vice*)
                                 egibbons@wwmlawyers.com
                                 Tiffany Saltzman-Jones (Admitted *pro hac vice*)
                                 tsj@wwmlawyers.com
                                 One North Franklin Street, Suite 3200
                                 Chicago, IL 60606
                                 312-244-6700
                                 312-244-6800 (fax)

                                 Attorneys for Plaintiff/Counterdefendant
                                 ACE American Insurance Company

INSURERS' OPPOSITION TO PERRY'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

DATED: May 29, 2012                BATES CAREY NICOLAIDES LLP

By: /s/ Andrew W. Smith
     Ommid C. Farashahi (Admitted *pro hac vice*)
     ofarashahi@bcnlaw.com
     Andrew W. Smith (Admitted *pro hac vice*)
     asmith@bcnlaw.com
     Michael T. Skoglund  (Admitted *pro hac vice*)
     mskoglund@bcnlaw.com
     Ross B. Edwards (Admitted *pro hac vice*)
     redwards@bcnlaw.com
     191 N. Wacker Street Suite 2400
     Chicago, IL 60606
     312-762-3297
     312-762-3200 (fax)
     Attorneys for Plaintiff Counterdefendant
     AXIS American Insurance Company

DATED: May 29, 2012                SEDGWICK LLP

By: /s/ Brian D. Harrison
     Brian D. Harrison, SBN 157123
     brian.harrison@sedgwicklaw.com
     Robert S. Gebhard, SBN 158125
     robert.gebhard@sedgwicklaw.com
     Veena A. Mitchell, SBN 161153
     veena.mitchell@sedgwicklaw.com
     333 Bush Street, 30th Floor
     San Francisco, California 94104
     Telephone: (415) 781-7900
     Facsimile: (415) 781-2635

     Attorneys for Zurich American Insurance
     Company

INSURERS' OPPOSITION TO PERRY'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

DATED: May 29, 2012

BOUNDAS, SKARZYNSKI, WALSH & BLACK, LLC

By: /s/ Theodore A. Boundas

    Theodore A. Boundas (Admitted *pro hac vice*)
    tboundas@bswb.com
    Peter F. Lovato (Admitted *pro hac vice*)
    plovato@bwsb.com
    W. Joel Vander Vliet (Admitted *pro hac vice*)
    wvandervliet@bswb.com
    200 East Randolph Drive, Suite 7200
    Chicago, Illinois 60601
    Telephone: (312) 946-4200
    Facsimile: (312) 946-4272
    Attorneys for Counterdefendant
    Catlin Insurance Company (UK) Ltd. and
    Intervenor Counterdefendants Those Certain
    Underwriters at
    Lloyd's, London Subscribing to Policy No.
    QA011608

DATED: May 29, 2012

TRESSLER LLP

By: /s/ Elizabeth L. Musser

    David Simantob, SBN 155790
    dsimantob@tresslerllp.com
    Elizabeth L. Musser, SBN 203512
    emusser@tresslerllp.com
    1901 Avenue of the Stars, Suite 450
    Los Angeles, CA 90067
    Telephone: (310) 203-4800
    Facsimile: (310) 203-4850

    Attorneys for Counterdefendant
    Catlin Insurance Company (UK) Ltd. and
    Intervenor Counterdefendants Those Certain
    Underwriters at Lloyd's, London Subscribing to
    Policy No. QA011608; Twin City Fire Insurance
    Company and Continental Casualty Company

DATED: May 29, 2012

TRESSLER LLP

By: /s/ Michael R. Delhagen

    Michael R. Delhagen (Admitted *pro hac vice*)
    mdelhagen@tresslerllp.com
    Kyle P. Barrett (Admitted *pro hac vice*)
    kbarrett@tresslerllp.com
    One Penn Plaza, Suite 4701
    New York, NY 10119
    Telephone: (646) 833-0900
    Facsimile: (646) 833-0877

Attorneys for Counterdefendant
Twin City Fire Insurance Company

DATED: May 29, 2012

WILEY REIN LLP

By: /s/ William E. Smith

    William E. Smith (Admitted *pro hac vice*)
    wsmith@wileyrein.com
    John Howell (Admitted *pro hac vice*)
    jhowell@wileyrein.com
    1776 K Street NW
    Washington, DC 20006
    Telephone: (202) 429-7000
    Facsimile: (202) 719-7049

Attorneys for Counterdefendant
Continental Casualty Company

INSURERS' OPPOSITION TO PERRY'S MOTION FOR
PARTIAL SUMMARY JUDGMENT