David Simantob, SBN 155790
dsimantob@tresslerllp.com
Elizabeth L. Musser, SBN 203512
emusser@tresslerllp.com
TRESSLER LLP
1901 Avenue of the Stars, Suite 450
Los Angeles, CA 90067
Telephone: (310) 203-4800
Facsimile: (310) 203-4850

Attorneys for Counterdefendants
Catlin Insurance Company (UK) Ltd. and
Intervenor Counterdefendants Those Certain Underwriters at
Lloyd's, London Subscribing to Policy No. QA011608

(Additional parties and counsel listed on next page)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| XL SPECIALTY INSURANCE COMPANY, *et al.*,<br><br>         Plaintiffs,<br><br>v.<br><br>MICHAEL W. PERRY, *et al.*<br><br>         Defendants.<br><br>―――――――――――――――――<br>AND RELATED COUNTERCLAIMS | Case No. 2:11-CV-2078-RGK-JCG<br><br>Hon. R. Gary Klausner<br><br>**INSURERS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date:      June 18, 2012<br>Time:      9:00 a.m.<br>Ctrm:      850<br><br>Trial Date:  July 24, 2012 |

Theodore A. Boundas (*admitted pro hac vice*)
tboundas@bswb.com
Peter F. Lovato (*admitted pro hac vice*)
plovato@bswb.com
W. Joel Vander Vliet (*admitted pro hac vice*)
wvandervliet@bswb.com
BOUNDAS, SKARZYNSKI, WALSH & BLACK, LLC
200 East Randolph Drive, Suite 7200
Chicago, Illinois 60601
Telephone: (312) 946-4200
Facsimile: (312) 946-4272

Attorneys for Counterdefendant
Catlin Insurance Company (UK) Ltd. and
Intervenor Counterdefendants Those Certain Underwriters at
Lloyd's, London Subscribing to Policy No. QA011608

Brian D. Harrison, SBN 157123
brian.harrison@sedgwicklaw.com
Robert S. Gebhard, SBN 158125
robert.gebhard@sedgwicklaw.com
Veena A. Mitchell, SBN 161153
veena.mitchell@sedgwicklaw.com
SEDGWICK LLP
333 Bush Street, 30th Floor
San Francisco, California 94104
Telephone: (415) 781-7900
Facsimile: (415) 781-2635

Attorneys for Counterdefendant
Zurich American Insurance Company

INSURERS' REPLY IN SUPP. OF MOT. FOR
SUMM. J., OR IN THE ALTERNATIVE,
MOT. FOR PARTIAL SUMM. J.

Jason P. Cronic (*admitted pro hac vice*)
jcronic@wileyrein.com
WILEY REIN LLP
1776 K Street NW
Washington, DC  20006
Telephone: (202) 719-7000
Facsimile: (202) 719-7049

Attorneys for Plaintiff and Counterdefendant
XL Specialty Insurance Company


Gordon J. Calhoun, SBN 84509
calhoun@llbslaw.com
Douglas R. Irvine, SBN 119863
irvine@llbslaw.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
221 N. Figueroa Street, Suite 1200
Los Angeles, CA 90012
Telephone: (213) 250-1800
Facsimile: (213) 250-7900

Attorneys for Plaintiff and Counterdefendant
XL Specialty Insurance Company


Kim W. West, SBN 78553
kim.west@clydeco.us
Alec H. Boyd, SBN 161325
alec.boyd@clydeco.us
CLYDE & CO LLP
101 Second Street, 24th Floor
San Francisco, CA 94105
Telephone: (415) 365-9800
Facsimile: (415) 365-9801

Attorneys for Plaintiff and Counterdefendant
Arch Insurance Company

INSURERS' REPLY IN SUPP. OF MOT. FOR
SUMM. J., OR IN THE ALTERNATIVE,
MOT. FOR PARTIAL SUMM. J.

Edward P. Gibbons (*admitted pro hac vice*)
egibbons@wwmlawyers.com
Tiffany Saltzman-Jones (*admitted pro hac vice*)
tsj@wwmlawyers.com
WALKER WILCOX MATOUSEK LLP
One North Franklin Street, Suite 3200
Chicago, IL 60606
Telephone: (312) 244-6700
Facsimile: (312) 244-6800

Attorneys for Plaintiff and Counterdefendant
ACE American Insurance Company


Ommid Farashahi (*admitted pro hac vice*)
ofarashahi@bcnlaw.com
Andrew W. Smith (*admitted pro hac vice*)
asmith@bcnlaw.com
Michael T. Skoglund (*admitted pro hac vice*)
mskoglund@bcnlaw.com
Ross B. Edwards (*admitted pro hac vice*)
redwards@bcnlaw.com
BATES CAREY NICOLAIDES LLP
191 N. Wacker, Suite 2400
Chicago, IL 60606
Telephone: (312) 762-3100
Fax: (312) 762-3200

Attorneys for Plaintiff and Counterdefendant
AXIS Insurance Company

INSURERS' REPLY IN SUPP. OF MOT. FOR
SUMM. J., OR IN THE ALTERNATIVE,
MOT. FOR PARTIAL SUMM. J.

1    The oppositions make much of the fact that the Insurers' coverage position has not
2    evolved since their briefing of motions for judgment on the pleadings, but that
3    consistency illustrates the fundamental nature of this case. It is a straight-forward legal
4    dispute over the application of contract terms. The Insurers' position is unchanged
5    because nothing has changed the words of the contracts or the allegations asserted in the
6    Underlying Matters. Application of the former to the latter results in the inescapable
7    conclusion that the Underlying Matters are afforded no coverage under the 08-09
8    Policies.[1] After months of discovery, the Insureds and the Trustee have come forward
9    with no reasonable alternative reading of the negotiated policies that, as the law requires,
10   can be squared with the undisputed plain language of the contracts. Instead, they rely on
11   arguments that seek to divert the Court from the controlling contract terms. Importantly,
12   however, they concede that the "essential facts" are undisputed, *see* Trustee's Opp. to the
13   Insurers' Mot. for Summary Judgment ("TO"), D.E. 285 at 3:13. The Insurers agree, and,
14   for that reason, summary judgment in the Insurers' favor is now appropriate.

15   **I.    THE TRUSTEE'S OPPOSITION FAILS TO ESTABLISH COVERAGE**

16       The Trustee argues that the Trustee Litigation and *Tripp* are not sufficiently
17   connected to satisfy a "standard" he asserts applies in lieu of the policy language. That
18   standard, however, does not square with his own prior views of his case, forcing him to
19   run from his own complaint and summary of the "gravamen" of that complaint he
20   presented to the bankruptcy court. The Trustee cannot dismiss the clear connections
21   between his action and the company-wide failures alleged in *Tripp* as mere
22   "background," nor so easily contend that the undeniable connections among the Trustee
23   Litigation, *Tripp* and the *Daniels* Litigation—with which *Tripp* is deemed a single
24   Claim—are not "pertinent" connections. TO at 18. Stated simply, the plain language of
25   the 08-09 Policies and California law trump his diversionary arguments.

26       **Burden Of Proof And Controlling Law:**  The Trustee insists that all policy terms
27   on which the Insurers rely must be deemed "exclusions." TO at 5-7. The "Interrelated

28   _____

[1] Capitalized terms herein and citations have the same meanings ascribed to them in the Insurers' Opening Memorandum, D.E. 250.

INSURERS' REPLY IN SUPP. OF MOT. FOR
SUMM. J., OR IN THE ALTERNATIVE,
MOT. FOR PARTIAL SUMM. J.

1   Wrongful Acts" provisions of the Policies, however, do not exclude coverage. Instead,
2   they determine when Claims are deemed made. *See* Insurers' Statement of Undisputed
3   Material Facts ("UMF"), D.E. 258-1, ¶ 85. As a result of those provisions, coverage is
4   available for the Underlying Matters under the 07-08 Policies, even for those that were
5   made after the 07-08 and 08-09 Policies expired. The Insureds simply cannot deny that
6   they have received a defense of each of the Underlying Matters as a result. UMF ¶¶ 76-
7   77.[2] Accordingly, the Trustee is entitled to no special interpretive benefit merely because
8   he contends the Interrelated Wrongful Acts provisions are "exclusions."

9        Nonetheless, the question of burden is immaterial, as the plain language of the
10   contracts governs both the insuring agreements and the exclusions. *GGIS Ins. Servs., Inc.*
11   *v. Superior Court*, 168 Cal. App. 4th 1493, 1506, 86 Cal. Rptr. 3d 515, 526 (Cal. Ct. App.
12   2008) ("Where policy language is "clear and explicit and does not involve an absurdity,
13   the plain meaning governs."). Contrary to the Trustee's repeated assertions, the policy
14   language at issue here is given its plain, broad meaning, notwithstanding its presence
15   within an exclusion. *See, e.g., Southgate Recreation & Park Dist. v. Cal. Assn. for Park &*
16   *Recreation Ins.*, 106 Cal. App. 4th 293, 301, 130 Cal. Rptr. 2d 728, 733 (Cal. Ct. App.
17   2003) ("arising out of" is broadly applied even in exclusion); *Core Wealth Mgmt., LLC v.*
18   *Hartford Fin. Serv. Grp., Inc.* No. 05-6340, 2007 WL 778440, at *3 (C.D. Cal. Mar. 7,
19   2007) ("'based upon, arising from, attributable to, in connection with, or in any way
20   related to' . . . [gives] broad meaning to the terms of the exclusion."). No interpretive rule
21   eviscerates the breadth of the language to which the contracting parties agreed, and the
22   terms are not, as the Trustee argues "ambiguous as a matter of law." TO at 11. *See*
23   *Century Transit Sys., Inc. v. Am. Empire Surplus Lines Ins. Co.*, 42 Cal. App. 4th 121, 49
24   Cal. Rptr. 2d 567, 571 (Cal. Ct. App. 1996) ("[T]here cannot be ambiguity in the abstract,
25   that is, one unrelated to an application.").

26        Nor are the cases on which the Trustee focuses relevant, as they are based on
27   materially differing contract language or facts. *See, e.g., Fin. Mgmnt. Advisors, LCC v.*

28   
---
[2] Indeed, the parties have agreed to potential settlement involving at least three of the Underlying Matters under the 07-08 Policies since this case was filed. *See* UMF ¶ 78.

1  *Am. Int'l Spec. Lines Ins. Co.*, 506 F.3d 922, 925-26 (9th Cir. 2007) (interpreting the

2  undefined term "related"); *Eureka Fed. Sav. & Loan Ass'n v. Am. Cas. Co. of Reading,*

3  *Pa.*, 873 F. 2d 229, 234 (9th Cir. 1989) (interpreting undefined term "interrelated acts");

4  *Church Mut. Ins. Co. v. U.S. Liability Ins. Co.*, 347 F. Supp. 2d 880, 885 and 889 (S.D.

5  Cal. 2004) (involving a "breach of contract" exclusion and an exclusion for cases "based

6  upon [a prior claim] derived from the same or essentially the same facts"); *Axis Surplus*

7  *Ins. Co. v. Johnson*, No. 06-CV-500-GKFPJC, 2008 WL 4525409, at *9 (N.D. Okla. Oct.

8  3, 2008) (underlying actions were united by "the mere fact that both allege breaches of

9  fiduciary duty and gross negligence."). Courts doubtless come to varying conclusions

10 when applying particular policy language to particular cases. What is clear from the case

11 law is that numerous courts, including those applying California law, have no difficulty

12 applying as written language like that used in the policies here, recognizing that "broad

13 language is not necessarily ambiguous language." *Hilb Rogal & Hobbs Ins. Servs. v.*

14 *Indian Harbor Ins. Co.*, 379 F. App'x 609, 611 (9th Cir. 2010).

15     **Extrinsic Evidence:**  The Trustee complains that the Insurers have not relied upon

16 significant extrinsic evidence in support of their positions. That is because none is needed;

17 the meaning of an insurance contract is a question of law, not fact. *Stanford Univ. Hosp. v.*

18 *Fed. Ins. Co.*, 174 F.3d 1077, 1083 (9th Cir. 1999). The previous contentions, in response

19 to motions for judgment on the pleadings, that extrinsic evidence "could" show ambiguity

20 have proved baseless. After extensive discovery, the record contains no competent

21 evidence establishing that ambiguity exists.

22     In lieu of pointing to evidence showing that the parties to the contracts expressed

23 some understanding of the relevant language other than that required by the plain terms

24 (because no such evidence exists), the Trustee substitutes out-of-context deposition blurbs

25 to try to induce this Court to abandon the contracts. But it is the role of the Court to apply

26 the policy language as written, and testimony of a witness responding to a hypothetical

27 question or a request to characterize or "explain" policy language has no bearing on this

28 legal question. *See, e.g.*, *Industrial Indem. Co. v. Apple Computer Inc.*, 79 Cal. App. 4th

INSURERS' REPLY IN SUPP. OF MOT. FOR
SUMM. J., OR IN THE ALTERNATIVE,
MOT. FOR PARTIAL SUMM. J.

1  817, 835 n.495 Cal. Rptr. 2d 528, 539 n.4 (Cal. Ct. App. 2009) ("[T]he opinions of

2  insurance company agents and employees regarding coverage issues . . . are 'completely

3  irrelevant' to the legal issues of policy interpretation.").[3] And, even if the excerpted

4  testimony were considered, it does not establish any reasonable *application* of the relevant

5  policy language sufficient to generate coverage or that the words in the contract were

6  intended to have anything other than their plain meaning.[4]

7      The Trustee's reliance on Judge Wu's docket control decision not to transfer the

8  Trustee Litigation to his court is equally feeble. This was not an "evaluation" of the

9  Trustee Litigation in any way relevant to the Policies. First, he was not presented with the

10 issue. And, in any event, he focused on the observation that the Trustee Litigation is based

11 on different "legal theories," which is irrelevant under policy language focusing on facts,

12 circumstances, situations, transactions and events and explicitly applying "regardless of

13 any legal theory on which [a] Claim is predicated." UMF ¶ 90; *see also WFS Fin. Inc. v.*

14 *Progressive Cas. Ins. Co.,* 232 F. App'x 624, 625 (9th Cir. 2007) (different legal theories

15 irrelevant to analysis of factual connections).

16      ***Tripp* And The Trustee Litigation:**  The Trustee does not refute that, under the

17 actual terms of the 08-09 Policies, the Trustee Litigation is a Claim based upon, arising

18 out of, directly or indirectly resulting from or in consequence of, or in any way involving

19 any fact, circumstance, situation, event, transaction or series of facts, circumstances,

20 situations, events or transactions underlying or alleged in *Tripp* and *Daniels*, and is

21 therefore deemed under the 08-09 Policies to be a single Claim first made prior to the

22 inception of coverage or is expressly excluded. *See* UMF ¶¶ 85-90. Instead, the Trustee

23 seeks to avoid actually applying the policy language by declaring it ambiguous.

24  _____

25 [3] Further, the testimony of witnesses concerning the ABC Policies on which the Trustee
relies can have no implications for the interpretation of the A-Side Policies, which do not
follow form to the ABC Policies. UMF ¶ 82.

26 [4] The Trustee asserts that a witness testified that the Trustee Litigation "would not be
excluded" if it "only involved downstreaming transactions." TO at 15. This is not

27 accurate. The quote, cobbled together from several pages of testimony, references a letter
setting forth the position that *if* the allegations of the Trustee Litigation were unrelated to

28 *Tripp*, there would be *no coverage at all* under any policy period, because the Trustee
Litigation was filed after all the policies expired. Trustee's Supp. Statement of Facts ¶ 87.

INSURERS' REPLY IN SUPP. OF MOT. FOR
SUMM. J., OR IN THE ALTERNATIVE,
MOT. FOR PARTIAL SUMM. J.

1  Critically, however, he offers no reasonable contrary interpretation of the language—in

2  the context of the policy as a whole, giving meaning to each term—that results in

3  coverage for the Trustee Litigation under the 08-09 Policies rather than the 07-08 Policies.

4          The Trustee also mischaracterizes his own complaint in an effort to minimize its

5  undisputable connections to *Tripp*. Those connections are discussed at length in the

6  Insurers' Opposition to the Trustee's Motion for Summary Judgment, D.E. 279, at 8-12,

7  and incorporated herein. The Trustee's complaint includes numerous allegations that the

8  defendants failed to heed "red flags" in IndyMac's business and expressly states that it is

9  "based on" review of securities class actions, including *Tripp*. The Trustee dismisses these

10 allegations as "background" and not the "gravamen" of his litigation but cannot deny that

11 his suit includes them and that they are more than sufficient to tie the Trustee Litigation to

12 *Tripp* and the 07-08 Policies under the broad policy language. *See* TO at 19.

13         The Trustee asserts that the Court must likewise ignore the actual allegations of the

14 Trustee Litigation because the bankruptcy court determined that the relief sought by the

15 Trustee would be limited to the amount of certain "downstream" transfers from IndyMac

16 Bancorp to IndyMac Bank. TO at 2. But the bankruptcy court made no ruling about the

17 "true gravamen" of the Trustee Action. It struck no allegations from the Trustee's

18 complaint and imposed no limit on the Trustee's ability to rely on any allegations to prove

19 liability and, therefore, entitlement to relief. Nor did the bankruptcy court, as the Trustee

20 asserts, declare any allegations "surplusage." Order Denying Motion to Dismiss, Ex. 8 to

21 Trustee's Request for Judicial Notice, D.E. 273, at 1. Indeed, as the Trustee notes, the

22 bankruptcy court stated that it "did not see in the complaint any discussion of the damages

23 that flowed from . . . failure to notice red flags, failure to change course *other than* [the

24 defendants] went ahead and downstreamed the cash." Trustee's Separate Statement of

25 Uncontroverted Facts, D.E. 273-1, ¶ 33 (emphasis added). Accordingly, to the extent the

26 bankruptcy court's discussion is relevant, that court noted that the Trustee's allegation that

27 the defendants "went ahead and downstreamed the cash" *is* the alleged damage that

28 flowed from—was in consequence of—the "failure to change course," *i.e.* from the

INSURERS' REPLY IN SUPP. OF MOT. FOR
SUMM. J., OR IN THE ALTERNATIVE,
MOT. FOR PARTIAL SUMM. J.

1  practices alleged in *Tripp*.

2        The asserted heart of the Trustee Litigation—wrongful downstreaming—is

3  inescapably tied, by the Trustee's own allegations, to *Tripp*. To recover on his

4  downstreaming theory, the Trustee admittedly would have had to show that

5  downstreaming constituted a breach of fiduciary duty or waste. The Trustee's complaint

6  alleged that transfers were wrongful *because* of the directors' knowledge of IndyMac's

7  allegedly unsustainable course due to the underwriting and other failures alleged in *Tripp*.

8  In the Trustee's words, these practices "*created the circumstances* that ultimately would

9  cause the Bank's failure and Bancorp's insolvency." Ex. 33 ¶ 229 (emphasis added).[5]

10        **The Trustee's Single "Claim":**  The Trustee cannot pick out "facts" in the Trustee

11  Litigation that do not "relate back" while ignoring those that do in order to manufacture a

12  covered "Claim." TO at 20. "Claim" is defined in relevant part as a "civil proceeding," so

13  the Trustee Litigation as a whole—itself a "Claim"—is deemed a single Claim with *Tripp*,

14  first made when *Tripp* was first made, and is also excluded by the Prior Notice and

15  Specific Litigation Exclusions. UMF ¶ 84. The same conclusion is reached under the

16  analysis of *AT&T v. Faraday Capital Ltd.*, 918 A.2d 1104, 1109 (Del. 2007), on which

17  the Trustee mistakenly relies. There, the Delaware court required the lower court to

18  analyze each cause of action in a complaint—which may constitute a "single Claim."

19  Even applying the contractual provisions to each individual count in the Trustee's Action,

20  as espoused in *Faraday*, the 08-09 Policies would afford no coverage, because each count

21  alleging breach of fiduciary duty and corporate waste in the Trustee's complaint (Counts

22  IV-IX) expressly incorporates and re-alleges the preceding allegations in paragraphs 1-77,

23  and specifically alleges that the directors failed to heed and act upon "red flags." *See* Ex.

24  33, Count IV ("failing to heed and act upon red flags that indicated the Bank's model was

25  not sustainable"); Count V (same); Count VI (same); Count VII ("as early as October

26  2006 (if not earlier), red flags were waved at Defendants indicating that the Bank's

27  business model and origination practices were deeply flawed"); Count VIII (same); Count

28   

_____

[5] Except as noted, exhibits are attached to the Joint Stipulation in this action, D.E. 193.

INSURERS' REPLY IN SUPP. OF MOT. FOR
SUMM. J., OR IN THE ALTERNATIVE,
MOT. FOR PARTIAL SUMM. J.

1  IX (incorporating same). As each count has the allegations of the vast bulk of the

2  complaint in common, comparing them results in them being deemed a single Claim,

3  deemed first made before the inception of the 08-09 Policies when *Tripp* was filed, and

4  excluded by the Prior Notice and Specific Litigation Exclusions. Applying the *Faraday*

5  analysis changes nothing because the Trustee's counts are related to one another and

6  involve and depend upon on the same improper conduct alleged in *Tripp*.[6]

7  ## II.    THE VAN DELLEN OPPOSITION FAILS TO ESTABLISH COVERAGE

8          The Van Dellen Insureds incorrectly contend that *Tripp* is confined to a particular

9  subset of IndyMac's business. The *Tripp* complaint belies this assertion, as it explicitly

10 identifies "Company-wide knowledge of IndyMac's underwriting problems," Ex. 23 ¶ 70,

11 a "company-wide culture and practice of ignoring and intentionally overriding the

12 Company's underwriting guidelines," *id.*¶ 146, and a "company-wide pattern of

13 abandoning underwriting guideline," *id.* ¶ 147.[7] And if, as the Van Dellen Insureds assert,

14 a complaint's introductory paragraphs show what it is "really about," paragraph 8 of the

15 FDIC's complaint reveals that it is "really about" the Bank's poor underwriting through

16 "negligently approving loans with inadequate or inaccurate financial information

17 regarding the creditworthiness of the borrower and/or the guarantors [and] negligently

18 approving loans with inadequate appraisals[.]" Ex. 26 ¶ 8.[8] Both actions involve alleged

19 failures in underwriting at IndyMac over a particular time period, which are alleged by

20 plaintiffs to have reached throughout the company. Under the policy terms, the FDIC-Van

21 Dellen Litigation is not a Claim first made during the 08-09 Policy Period and would be

22 excluded under the 08-09 Policies in any event by the Specific Litigation and Prior Notice

23 _____

24 [6] *Pereira v. Nat'l Union Fire Ins. Co.*, No. 04-1134, 2006 WL 1982789 (S.D.N.Y. July
   12, 2006), is likewise inapposite, as the court there noted the policy definition of "claim"
   as a "written demand" and did not analyze policy language like that here which defines
25 "Claim" in relevant part as a "civil proceeding."

26 [7] Numerous connections between the Van Dellen Litigation and Tripp are discussed in
   detail in the Insurers Opposition to the Van Dellen Insureds' Motion for Summary
   Judgment [D.E. 281], which the Insurers' incorporate herein by reference.

27 [8] The Van Dellen Insureds' view on the import of introductory paragraphs contrasts with
28 that of the Trustee, who opportunistically asserts that the Court should ignore the opening
   paragraph of his own complaint, which expressly states that the complaint is "based upon"
   the OIG Report and "documents filed" in *Tripp*. *See* UMF ¶¶ 48, 55; Ex. 33 at 1.

INSURERS' REPLY IN SUPP. OF MOT. FOR
SUMM. J., OR IN THE ALTERNATIVE,
MOT. FOR PARTIAL SUMM. J.

1    Exclusions.

2         **Illusory Coverage:**  The Van Dellen insureds argue that, because the Claim against

3    them is not covered, the Insurers' interpretation of the Policies does not meet their

4    "reasonable expectations" and is otherwise illusory.[9] But there can be no objectively

5    reasonable expectation that the FDIC-Van Dellen Litigation be covered under the 08-09

6    Policies in light of their plain terms. *Hilb*, 379 F. App'x at 611. ("[T]he language of the

7    policy is the best indicator of a party's reasonable expectations[.]"). Nor do references to

8    increased premium generate coverage. Those increased premiums secured IndyMac –

9    suddenly a much weaker player in an increasingly suspect industry and already facing a

10   significant Claim – $80 million in coverage under the 08-09 Policies for future Claims.[10]

11   That no future covered Claims were made is unsurprising, as the company – soon after the

12   policies incepted – ceased as a going concern. The breadth and magnitude of the *Tripp*

13   allegations provided fertile grounds for Claims, but those Claims were covered under the

14   07-08 Policies.

15   **III.    THE PERRY OPPOSITION FAILS TO ESTABLISH COVERAGE**

16        Perry's opposition largely incorporates the Trustee's arguments and therefore fails

17   for the same reasons—the policy language at issue here is broad and has been broadly

18   applied and no extrinsic evidence has been adduced that provides any basis on which to

19   alter or ignore that language. His other arguments likewise fail.

20        ***Tripp* And The SEC Proceeding**:  Perry suggests that a "line-by-line" analysis is

21   necessary to determine whether the SEC Litigation is covered under the 08-09 Policies.

22   No such analysis is necessary because the SEC Litigation is deemed first made prior to the

23

24   _____

     [9] The Van Dellen insureds' protest that defense costs "are not being paid under the 2008-
25   09 Policies," rings hollow, as defense costs are and have been paid under the 07-08
     Policies, where coverage for the FDIC-Van Dellen Action is found.

26   [10] Among other things, underwriters testified that the increased premiums resulted in
     perceptions of increased risk in the subprime field and IndyMac's diminished financial
27   position (making payment by the insurers in lieu of indemnity by the company more
     likely).  *See* Insurers' Statement Of Genuine Issues Of Fact In Opp. To The Trustee's
28   Mot. For Summary Judgment, D.E 279-1, ¶ 19; Supplemental Decl. of Elizabeth L.
     Musser in Support of Insurer's Mot. for Summary Judgment (filed June 4, 2012) ¶ 8, Ex.
     1, Moss Depo. at 359:19-360:22; 377:4-18.

                                                    INSURERS' REPLY IN SUPP. OF MOT. FOR
                             - 8 -                   SUMM. J., OR IN THE ALTERNATIVE,
                                                    MOT. FOR PARTIAL SUMM. J.

1    inception of the 08-09 Policies, during the 07-08 Policy Period. Whatever other analysis is

2    necessary, a Claim can only be first made once. Because the SEC Litigation is deemed a

3    single Claim with *Tripp* first made during the 07-08 Policy Period, any more detailed

4    analysis is to be performed under the 07-08 Policies. But because the SEC Litigation is

5    not deemed first made during the 08-09 Policies and because it is otherwise excluded,

6    there is no possibility of coverage for it under the 08-09 Policies.

7         Perry nonetheless contends that the Insurers have not provided sufficient detail

8    concerning the relationship between the SEC Action, *Tripp* and other Claims deemed first

9    made during the 07-08 Policy Period. The Insurers' Opposition to Perry's Summary

10   Judgment Motion, which the Insurers incorporate by reference, discusses these

11   connections at length: *Tripp* and the SEC Litigation both arise from and involve the

12   Bank's low capital levels which were impacted by its deteriorating financial condition and

13   inadequate loan loss reserves, brought about by IndyMac's reckless underwriting. *See*

14   D.E. 280, at 3-9. Perry cannot escape those facts.[11]

15        Perry also dismisses the SEC subpoena and investigation as but an "intermediate

16   episode."  But the SEC's investigation, initiated by its subpoena to Perry, and the SEC

17   Litigation are deemed to be a single Claim under the policy language, and the SEC

18   subpoena makes clear that such Claim arises out of, is based upon, is in consequence of,

19   results from, and involves—like *Tripp*—"IndyMac's loan underwriting guidelines,

20   policies, and procedures and any deviations therefrom" and its "allowance for loan losses"

21   during the January 1, 2005 to July 11, 2008 time period. UMF ¶ 72. Accordingly, the

22   proceeding against Perry arises out of and involves Interrelated Wrongful Acts with *Tripp*

23   and is deemed first made during the 07-08 Policy Period. Perry seeks to distance himself

24   from the SEC investigation by contending that he is not "seeking coverage in this

25   insurance lawsuit for any costs of defending against the SEC subpoena or

26   investigation"—perhaps because these costs have been paid, like SEC Litigation defense

27   _____

28   [11] Perry's discussion of *Eureka*, 873 F.2d 229, is unavailing because, as noted above, it
     involves more narrow and undefined policy language—"interrelated acts" and "series of
     similar acts"—instead of the markedly broad language at issue here. *See* PO at 7.

INSURERS' REPLY IN SUPP. OF MOT. FOR
SUMM. J., OR IN THE ALTERNATIVE,
MOT. FOR PARTIAL SUMM. J.

costs, under the 07-08 Policies. *See* UMF ¶¶ 76-77. The SEC Litigation is part of the same regulatory activity and arises out of the SEC's investigation of Perry. Because of their connections to *Tripp*, that Claim is deemed first made outside the coverage grant of the 08-09 Policies.[12]

*Tripp* **And The FDIC-Perry Litigation**: Perry asserts that the Insurers' motion must be denied as to the FDIC-Perry Litigation because it is "too early in the litigation." This contention is without support and wholly contrary to basic principles of insurance law. With respect to the provisions at issue here, coverage is assessed based on the allegations in the complaint. *E.g., Friedman Prof'l Mgmt. Co., Inc. v. Norcal Mut. Ins. Co.,* 120 Cal. App. 4th 17, 15 Cal. Rptr. 3d 359, 373 (Cal. Ct. App. 2004) (coverage determined by facts "taken from the complaint" and facts "known by the insurer at the inception of a third party lawsuit"). In any event, the FDIC-Perry Litigation alleges, like *Tripp*, that Perry oversaw the origination of risky loans as part of an "aggressive gamble to increase market share," UMF ¶ 34, and "disregarded quality underwriting," UMF ¶ 36. Significantly, Perry does not dispute that he agreed to the settlement of that suit using proceeds from the 07-08 Policies. *See* Perry's Statement of Genuine Disputes, D.E. 284-1, ¶ 78. There is thus no coverage for the FDIC-Perry Litigation under the 08-09 Policies.

**Perry's Concessions:**  Perry does not oppose the Insurers' motion with respect to the *Daniels* Litigation, the MBS Litigation, and the MBS Insurer Litigation. He thus concedes that these actions are deemed first made during the 07-08 Policy Period and that coverage is otherwise excluded by the Prior Notice and Specific Litigation Exclusions – and, implicitly, that the policy terms are not ambiguous and unenforceable as a matter of law. And, as *Daniels* is deemed first made during the 07-08 Policy Period, so must be the SEC Litigation, the Trustee Litigation and the FDIC-Van Dellen Litigation, which constitute a single Claim with *Daniels* and *Tripp*. *See, e.g.*, Insurers' Opp. to Perry Mot. for Summary Judgment, D.E. 280, at 8-9.

---

[12] As the Insurers have noted, the SEC considered its action, *Tripp,* and *Daniels* to be "related cases." UMF 71. It is the SEC's view of its allegations, not Judge Wu's administrative decision regarding transfer, that the Insurers highlight.

INSURERS' REPLY IN SUPP. OF MOT. FOR SUMM. J., OR IN THE ALTERNATIVE, MOT. FOR PARTIAL SUMM. J.

1    Respectfully submitted,

2    Dated: June 4, 2012                    TRESSLER LLP
3
4                                           By:   /s/ Elizabeth L. Musser
                                                 David Simantob
5                                                Elizabeth L. Musser
6                                                Attorneys for Counterdefendants
                                                 Catlin Insurance Company (UK) Ltd. and
7                                                Intervenor Counterdefendants Those Certain
8                                                Underwriters at Lloyd's, London Subscribing
                                                 to Policy No. QA011608
9

10
11   Dated: June 4, 2012                    BOUNDAS, SKARZYNSKI, WALSH & BLACK
                                            LLC
12
13                                          By:   /s/ W. Joel Vander Vliet
                                                 Theodore A. Boundas (*pro hac vice*)
14                                               Peter F. Lovato (*pro hac vice*)
15                                               W. Joel Vander Vliet (*pro hac vice*)
                                                 Attorneys for Counterdefendants
16                                               Catlin Insurance Company (UK) Ltd. and
17                                               Intervenor Counterdefendants Those Certain
                                                 Underwriters at Lloyd's, London Subscribing
18                                               to Policy No. QA011608
19

20   Dated: June 4, 2012                    SEDGWICK LLP
21
22                                          By:   /s/ Brian D. Harrison
                                                 Brian D. Harrison
23                                               Robert S. Gebhard
                                                 Veena A. Mitchell
24                                               Attorneys for Counterdefendant
25                                               Zurich American Insurance Company

26

27

28

INSURERS' REPLY IN SUPP. OF MOT. FOR
                                            SUMM. J., OR IN THE ALTERNATIVE,
                                            MOT. FOR PARTIAL SUMM. J.

1   Dated: June 4, 2012                    WILEY REIN LLP

2
                                           By:    /s/ Jason P. Cronic
3                                                 Jason P. Cronic (*pro hac vice*)
                                                  Attorneys for Plaintiff and Counterdefendant
4                                                 XL Specialty Insurance Company

5

6
    Dated: June 4, 2012                    LEWIS BRISBOIS BISGAARD & SMITH LLP
7

8                                          By:    /s/ Douglas R. Irvine
                                                  Gordon J. Calhoun
9                                                 Douglas R. Irvine
                                                  Attorneys for Plaintiff and Counterdefendant
10                                                XL Specialty Insurance Company

11

12
    Dated: June 4, 2012                    CLYDE & CO LLP
13

14                                         By:    /s/ Alec H. Boyd
                                                  Kim W. West
15                                                Alec H. Boyd
                                                  Attorneys for Plaintiff and Counterdefendant
16                                                Arch Insurance Company
17

18

19  Dated: June 4, 2012                    WALKER WILCOX MATOUSEK LLP

20
                                           By:    /s/ Tiffany Saltzman-Jones
21                                                Edward P. Gibbons (*pro hac vice*)
                                                  Tiffany Saltzman-Jones (*pro hac vice*)
22                                                Attorneys for Plaintiff and Counterdefendant
                                                  ACE American Insurance Company
23

24

25

26

27

28

INSURERS' REPLY IN SUPP. OF MOT. FOR
SUMM. J., OR IN THE ALTERNATIVE,
MOT. FOR PARTIAL SUMM. J.

1    Dated: June 4, 2012                    BATES CAREY NICOLAIDES LLP

2
                                            By:   /s/ Andrew W. Smith
3                                                 Ommid Farashahi (*pro hac vice*)
4                                                 Andrew W. Smith (*pro hac vice*)
                                                  Michael T. Skoglund (*pro hac vice*)
5                                                 Ross B. Edwards (*pro hac vice*)
6                                                 Attorneys for Plaintiff and Counterdefendant
                                                  AXIS Insurance Company
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INSURERS' REPLY IN SUPP. OF MOT. FOR
                                                                SUMM. J., OR IN THE ALTERNATIVE,
                                                                MOT. FOR PARTIAL SUMM. J.