Jerold Oshinsky (Cal. Bar No. 250771)
Linda D. Kornfeld (Cal. Bar No. 155765)
JENNER & BLOCK LLP
633 West 5th Street, Suite 3600
Los Angeles, California 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199
E-mail: joshinsky@jenner.com, lkornfeld@jenner.com

Lee R. Bogdanoff (Cal. Bar No. 119542)
David M. Stern (Cal. Bar No. 67697)
Robert J. Pfister (Cal. Bar No. 241370)
KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067

Andrew L. Sandler (*Pro Hac Vice)*
Benjamin B. Klubes (*Pro Hac Vice*)
Benjamin P. Saul (*Pro Hac Vice*)
BUCKLEYSANDLER LLP
1250 24th Street N.W., Suite 700
Washington, District of Columbia 20037

*Attorneys for Defendant and Appellant Alfred H. Siegel, Solely as Chapter 7 Trustee*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **XL SPECIALTY INSURANCE COMPANY, *et al.*,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**MICHAEL W. PERRY, *et al.*,**<br><br>**Defendants.** | Case No. 2:11-cv-2078-RGK-JCG<br><br>**NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT; REPRESENTATION STATEMENT** |
| **MICHAEL W. PERRY, *et al.*,**<br><br>**Counterclaimants,**<br><br>**v.** | |

**XL SPECIALTY INSURANCE COMPANY, *et al.*,**

**Counter-Defendants.**

PLEASE TAKE NOTICE THAT pursuant to Federal Rule of Appellate Procedure 3, Defendant Alfred H. Siegel, solely in his capacity as the Chapter 7 Trustee of IndyMac Bancorp, Inc. (the "Trustee"), hereby appeals to the United States Court of Appeals for the Ninth Circuit from the order granting Plaintiffs' and Counterdefendants' Motion for Summary Judgment and denying Defendants' Motion for Summary Judgment, entered on June 27, 2012 (the "Order"), as well as any subsequent entry of final judgment. The Order is attached hereto as **Exhibit A**. The Trustee knows of no related cases currently pending in the Ninth Circuit.

DATED: July 3, 2012 JENNER & BLOCK LLP

By: /s/ Linda Kornfeld

Jerold Oshinsky (Cal. Bar No. 250771)
Linda D. Kornfeld (Cal. Bar No. 155765)
633 West 5th Street, Suite 3600
Los Angeles, California 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199
E-mail: joshinsky@jenner.com
lkornfeld@jenner.com

Lee R. Bogdanoff (Cal. Bar No. 119542)
David M. Stern (Cal. Bar No. 67697)
Robert J. Pfister (Cal. Bar No. 241370)
KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067
Telephone: (310) 407-4000
Facsimile: (310) 407-9090
E-mail: lbogdanoff@ktbslaw.com
dstern@ktbslaw.com
rpfister@ktbslaw.com

Andrew L. Sandler (*Pro Hac Vice*)
Benjamin B. Klubes (*Pro Hac Vice*)
Benjamin P. Saul (*Pro Hac Vice*)
BUCKLEYSANDLER LLP
1250 24th Street N.W., Suite 700
Washington, District of Columbia 20037
Telephone: (202) 349-8000
Facsimile: (202) 349-8080
E-mail: asandler@buckleysandler.com
bklubes@buckleysandler.com
bsaul@buckleysandler.com

*Attorneys for Defendant and Appellant Alfred H. Siegel, Solely as Trustee*

**REPRESENTATION STATEMENT**

**(Fed. R. App. P. 12(b); Circuit Rule 3-2(B))**

PLEASE TAKE FURTHER NOTICE THAT:

The following attorneys represent the following parties to the appeal:

Jerold Oshinsky (Cal. Bar No. 250771)
Linda D. Kornfeld (Cal. Bar No. 155765)
633 West 5th Street, Suite 3600
Los Angeles, California 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199
E-mail: joshinsky@jenner.com
lkornfeld@jenner.com

Lee R. Bogdanoff (Cal. Bar No. 119542)
David M. Stern (Cal. Bar No. 67697)
Robert J. Pfister (Cal. Bar No. 241370)
KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067
Telephone: (310) 407-4000
Facsimile: (310) 407-9090
E-mail: lbogdanoff@ktbslaw.com
dstern@ktbslaw.com
rpfister@ktbslaw.com

Andrew L. Sandler (*Pro Hac Vice*)
Benjamin B. Klubes (*Pro Hac Vice*)
Benjamin P. Saul (*Pro Hac Vice*)
BUCKLEYSANDLER LLP
1250 24th Street N.W., Suite 700
Washington, District of Columbia 20037
Telephone: (202) 349-8000
Facsimile: (202) 349-8080
E-mail:
asandler@buckleysandler.com
bklubes@buckleysandler.com
bsaul@buckleysandler.com

*Attorneys for Defendant and Appellant Alfred H. Siegel, Solely as Trustee*

Jason P. Cronic
**Wiley Rein LLP**
1776 K Street, N.W.
Washington, D.C. 20006
(202) 429-7000

*Attorneys for Plaintiff and Appellee XL Specialty Insurance Co.*

Gordon J. Calhoun
Douglas R. Irvine
**Lewis Brisbois Bisgaard & Smith LLP**
221 North Figueroa Street, Suite 1200
Los Angeles, CA 90012
(213) 250-1800

*Attorneys for Plaintiff and Appellee XL Specialty Insurance Co.*

Ira Revich
James B. Green
**Charleston Revich & Wollitz**
1925 Century Park East, Suite 1250
Los Angeles, CA 90067
(310) 551-7040

*Attorneys for Plaintiff and Appellee Ace American Insurance Company*

Edward P. Gibbons
Tiffany Saltzman-Jones
**Walker Wilcox Matousek LLP**
One North Franklin Street
Suite 3200
Chicago, IL 60606
(312) 244-6700

*Attorneys for Plaintiff and Appellee ACE American Insurance Company*

Kim W. West
Alex C. Boyd
**Clyde & Co.**
101 Second Street, 24th Floor
San Francisco, CA 94105
(415) 365-9800

*Attorneys for Plaintiff and Appellee Arch Insurance Company*

Andrew Smith
Michael Skoglund
Ommid Farashahi
**Bates Carey Nicolaides LLP**
191 North Wacker, Suite 2400
Chicago, IL 60606
(312) 762-3100

*Attorneys for Plaintiff and Appellee Axis Insurance Company*

Alexander G. Calfo
**Yukevich Calfo & Cavanaugh**
355 S. Grand Avenue, 15th Floor
Los Angeles, CA 90071
(213) 362-7777

*Attorneys for Plaintiff and Appellee Axis Insurance*

Theodore A. Boundas
W. Joel Vander Vliet
**Boundas Skarzynski Walsh & Black LLC**
200 East Randolph Street, Suite 7200
Chicago, IL 60601
(312) 946-4200

*Attorneys for Plaintiff and Appellee Certain Underwriters at Lloyd's, London Subscribing to Policy No. QA01168 and Catlin Insurance Company, Ltd.*

Michael R. Delhagen
Kyle P. Barrett
**Tressler LLP**
One Penn Plaza, Suite 4701
New York, NY 10119
(646) 833-0900

*Attorneys for Plaintiff and Appellee Twin City Fire Insurance Company*

William E. Smith
John E. Howell
**Wiley Rein LLP**
1776 K Street NW
Washington, DC 20006
(202) 429-7000

*Attorneys for Plaintiff and Appellee Continental Casualty Company*

Brian D. Harrison
Veena A. Mitchell
**Sedgwick LLP**
333 Bush Street, 30th Floor
San Francisco, CA 94104
(415) 365-9800

*Attorneys for Plaintiff and Appellee Zurich American Insurance Company*

DATED: July 3, 2012

JENNER & BLOCK LLP

By: /s/ Linda Kornfeld
Jerold Oshinsky (Cal. Bar No. 250771)
Linda D. Kornfeld (Cal. Bar No. 155765)
633 West 5th Street, Suite 3600
Los Angeles, California 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199
E-mail: joshinsky@jenner.com
lkornfeld@jenner.com

Lee R. Bogdanoff (Cal. Bar No. 119542)
David M. Stern (Cal. Bar No. 67697)
Robert J. Pfister (Cal. Bar No. 241370)
KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067
Telephone: (310) 407-4000
Facsimile: (310) 407-9090
E-mail: lbogdanoff@ktbslaw.com
dstern@ktbslaw.com
rpfister@ktbslaw.com

Andrew L. Sandler (*Pro Hac Vice*)
Benjamin B. Klubes (*Pro Hac Vice*)
Benjamin P. Saul (*Pro Hac Vice*)
BUCKLEYSANDLER LLP
1250 24th Street N.W., Suite 700
Washington, District of Columbia 20037
Telephone: (202) 349-8000
Facsimile: (202) 349-8080
E-mail:
asandler@buckleysandler.com
bklubes@buckleysandler.com
bsaul@buckleysandler.com

*Attorneys for Defendant and Appellant Alfred H. Siegel, Solely as Trustee*

# EXHIBIT A

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-02078-RGK (JCGx) | Date | June 27, 2012 |
|---|---|---|---|
| Title | XL SPECIALTY INSURANCE CO. et al. v. MICHAEL PERRY et al. | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| Not Present | Not Present | |

**Proceedings:** **(IN CHAMBERS) Order Re: Plaintiffs' and Counterdefendants' Motion for Summary Judgment (DE 250); Counterdefendants' Motion for Summary Judgment (DE 252); Defendant's Motion for Summary Judgment (DE 274); Defendants' Motion for Summary Judgment (DE 249); Defendant's Motion for Summary Judgment (DE 275)**

## I. INTRODUCTION

On March 10, 2011, XL Specialty Insurance Company ("XL Specialty"), Arch Insurance Company ("Arch"), ACE American Insurance Company ("ACE"), and Axis Insurance Company ("Axis") (collectively, "Side-A Insurers") filed a Complaint against the former Officers and Directors of IndyMac Bank, F.S.B. and/or its holding company IndyMac Bancorp, Inc (collectively, "Defendants" or "Insureds"). The Complaint asks for declaratory relief that six underlying actions brought against the Defendants are not within the scope of the 2008-2009 (or "Tower 2") insurance policies provided by the Side-A Insurers.

The Defendants, in various groups, have filed three separate counterclaims against the Side-A Insurers, adding as Counterdefendants Catlin Insurance Company ("Catlin"), Zurich American Insurance Company ("Zurich"), Twin City Fire Insurance Company ("Twin City"), and Continental Casualty Company ("Continental"). The first counterclaim ("Perry Counterclaim") is brought by all but two of the Officers of Indymac Bancorp and IndyMac Bank. The second counterclaim ("Caldera Counterclaim") is brought by all of the Directors of Indymac Bancorp and IndyMac Bank. The third counterclaim ("Koon/Shellem Counterclaim") is brought by the remaining two Officers of Indymac Bancorp and IndyMac Bank. On August 28, 2011, Certain Underwriters at Lloyds London ("Lloyds") intervened as counterdefendants (collectively with other counterderfendants as "Side ABC Insurers"). Together the three counterclaims ask for declaratory judgment that ten underlying actions are within the scope of the Tower 2 insurance

policies provided by the Side-A Insurers and the Side ABC Insurers or eligible for reimbursement of defense costs under those policies.

On January 26, 2012, the Court denied various Motions for Judgment on the Pleadings made by the parties.

On April 10, 2012, the Court granted a stipulation by the parties to substitute Alfred Siegel ("Trustee") for the Directors (the counterplaintiffs on the Caldera Counterclaim) and for Michael Perry's interest in the underlying action *Siegel v. Caldera*. The Trustee and the Directors and Perry have reached a settlement in the underlying *Siegl v. Caldera* action and he represents the interested party in this case as to that action.

There are presently five motions pending before the Court:

1) The Side-A Insurers, Catlin, Zurich, and Lloyds have moved for summary judgment on the Complaint and all three Counterclaims in their entirety ("Insurer Motion") at DE 250;
2) Twin City and Continental have joined the Insurer Motion and moved separately on an independent ground ("Twin City Motion") at DE 252;
3) Defendant Perry has moved for summary judgment on the ninth claim in the Perry Counterclaim and Defendant Keys has joined in this Motion ("Perry Motion") at DE 274;
4) The Trustee has moved for summary judgment on all claims involving *Siegel v. Caldera* (the fourth claim in the Complaint, the fifth claim in the Perry Counterclaim, and the Caldera Counterclaim in its entirety) ("Trustee Motion") at DE 275;
5) Defendants Van Dellen, Rothman, Olinski, Woodworth, Grover, Heyrick, Callan, Jacobson, Koon, and Shellem have joined the Trustee and the Perry Motions and independently moved for summary judgment as to the third and eleventh claim in the Perry Counterclaim and the first and second claims in the Koon/Shellem Counterclaim ("Van Dellen Motion") at DE 249.[1]

For the reasons discussed below, the Court **GRANTS** the Insurer and Twin City Motions for Summary Judgment and **DENIES** the Perry, Trustee, and Van Dellen Motions for Summary Judgment.

## II. FACTUAL BACKGROUND

The present action is one of many in this Court stemming from the bankruptcy filing of IndyMac Bancorp, Inc.

In July 2008, the Office of Thrift Supervision seized IndyMac Bank, F.S.B. ("IndyMac") and appointed the FDIC as receiver to manage IndyMac's assets and secured liabilities. Shortly thereafter IndyMac Bancorp ("Bancorp") the holding company for IndyMac filed for bankruptcy in the United States Bankruptcy Court for the Central District of California.

The former Officers and Directors of both IndyMac and Bancorp have subsequently been sued in several state and district courts for breaches of corporate fiduciary duties, violations of securities laws, and common law claims. These lawsuits are collectively referred to as the "Underlying Actions." The Underlying Actions that are pertinent to the present case and pending Motions are as follows:

---

[1] Defendant Abernathy is the only party who has not filed a Motion for Summary Judgment. Additionally, Abernathy has not opposed the Insurer or Twin City Motions.

1) "Tripp Litigation"–a class action securities lawsuit alleging that IndyMac ignored its own underwriting standards when originating loans, issued a substantial number of high risk loans in order to increase IndyMac's loan volume, quickly sold these high risk loans–either outright or through securitization transactions–and falsely portrayed the financial stability and health of IndyMac through SEC filings, *Tripp et al. v. IndyMac Bancorp, Inc. et al.*;[2]
2) "Daniels Litigation"–a consolidated class action lawsuit alleging that IndyMac failed to enforce its internal controls regarding underwriting practices in order to originate as many loans as possible, *Daniels v. Perry*;
3) "MBS Litigation"–two class action lawsuits alleging that IndyMac failed to follow its underwriting standards, securitized high risk mortgages, and falsely represented this information to investors, *IBEW Local 103 v. IndyMac Bank MBS, Inc.* and *In re IndyMac Mortgage-Backed Securities Litigation*;
4) "FDIC Demand"–a demand for payment of civil damages to the FDIC for failure to properly underwrite and manage loans, dated March 27, 2009 and addressed to Perry and other members of the Board of Directors;
5) "FDIC Litigation"–a lawsuit brought by the FDIC against Defendant Perry for negligently permitting the securitization of high risk mortgages made against corporate policy, *FDIC v. Perry*;
6) "FDIC-HBD Matter"–a suit brought by the FDIC alleging that the Home Builders Division of IndyMac failed to follow the company's strict underwriting procedures, *FDIC v. Van Dellen*;
7) "Trustee Demand"–a letter by the Trustee informing certain Defendants of his intent to pursue a claim against them for breaches of their fiduciary duties, letter dated May 28, 2009;
8) "Trustee Litigation"–an adversary suit in Bancorp's bankruptcy proceeding alleging breach of corporate fiduciary duties against Perry and the Directors for downstreaming funds from Bancorp to IndyMac despite knowledge that this transfer of funds would be insufficient to save IndyMac from failure, *Siegel v. Caldera et al.*;
9) "MBIA Litigation"–a lawsuit alleging that Defendants made false representations regarding compliance with underwriting standards, specifically in regards to three securitization transactions, *MBIA Insurance Corp. v. IndyMac ABS, Inc.*;
10) "Assured Guaranty Litigation"–a lawsuit also alleging that Defendants made false representations regarding compliance with underwriting standards, specifically in regards to two securitization transactions *Assured Guaranty Municipal Corp. v. UBS Securities, LLC*;
11) "SEC Litigation"–a lawsuit brought by the SEC against Defendants Perry and Keys for false representations regarding IndyMac's financial stability in SEC filings, *SEC v. Perry et al.*

Prior to its fall, IndyMac and IndyMac Bancorp had obtained substantial insurance coverage for the Officers and Directors and IndyMac itself. The insurance coverage is broken up into two different policy periods, 2007-2008 ("Tower 1") and 2008-2009 ("Tower 2"). Within each policy period there are eight different layers of coverage, with each provider covering successive $10 million in claims, for a total of $80 million of coverage in each policy year.

The first four providers in each tower (Side ABC Insurers) provide coverage for the following losses: (1) losses resulting from claims against directors and officers of Bancorp for individual acts, also known as "Side-A" coverage; (2) losses resulting from Bancorp's

[2] The factual summaries for all cases are taken from the complaints in the Underlying Actions, which are attached as exhibits to the Joint Stipulation at DE 193.

indemnification of its directors and officers, also known as "Side-B" coverage; and (3) losses sustained by Bancorp and its subsidiaries as a result of securities law violations, also known as "Side-C" coverage. The second four providers in each tower (Side-A Insurers) provide Side-A coverage only.

All of the Tower 2 insurance policies are "claims made" policies, which means that coverage is provided for claims that are made during the policy period. The parties do not dispute that the Tripp Litigation is a claim made prior to the Tower 2 policies and is not covered by these policies. However, the Tower 2 policies construe subsequent requests for coverage that are sufficiently related to another claim previously made as part of the first claim ("interrelated wrongful acts limitation"). Additionally, because the Tower 2 policies were written after the Tripp Litigation had been noticed to the Insurers, they include specific language exempting claims related to the Tripp Litigation from coverage under Tower 2 ("Tripp Litigation exclusion"). Lastly, the Tower 2 policies also include a specific exemption for claims, and any related litigation, that were noticed under a prior policy ("prior notice exclusion"). The exact interpretation of these three parts of the policies is the subject of the pending Motions.

## III. JUDICIAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is proper only where "there is no genuine issue as to any material fact and that the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Upon such showing, the court may grant summary judgment "on all or part of the claim." Fed. R. Civ. P. 56(a).

To prevail on a summary judgment motion, the moving party must show that there are no triable issues of material fact as to matters upon which it has the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). On issues where the moving party does not have the burden of proof at trial, the moving party is required only to show that there is an absence of evidence to support the non-moving party's case. *See id.* at 326.

To defeat a summary judgment motion, the non-moving party may not merely rely on its pleadings or on conclusory statements. Fed. R. Civ. P. 56(e). Nor may the non-moving party merely attack or discredit the moving party's evidence. *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). The non-moving party must affirmatively present specific admissible evidence sufficient to create a genuine issue of material fact for trial. *See Celotex Corp.*, 477 U.S. at 324.

## IV. DISCUSSION

The Court first turns to the issue of interpreting the language in the three pertinent clauses in the Tower 2 insurance policies and will then turn to an analysis of how that language affects coverage for each of the Underlying Actions as relevant for the pending Motions for Summary Judgment.

### A. Interpretation of the Tower 2 Insurance Contracts

First the Court sets forth some general rules regarding insurance contract interpretation.

The language of a contract is to be interpreted in a manner consistent with "the mutual intention of the parties as it existed at the time of contracting[.]" Cal. Civ. Code § 1636. The intention of the parties is to be determined based on the written terms of the contract. *Id.* § 1639. It is well-established that "[w]ords used in an insurance policy are to be interpreted

according to the plain meaning which a layman would ordinarily attach to them. Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists." *Reserve Ins. Co. v. Pisciotta*, 30 Cal. 3d 800, 807 (1982).

"A policy provision is ambiguous when it is susceptible to two or more reasonable constructions." *E.M.M.I., Inc. v. Zurich Am. Ins. Co.*, 32 Cal. 4th 465, 470 (2004) (citin *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995)). In determining whether the policy language is ambiguous, a court is to examine the language in the context of the policy as a whole and the circumstances of the particular case; ambiguity is not to be determined in the abstract. *Id.* (citing *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 868 (1993)). The fact that there is disagreement about the meaning of a phrase does not necessarily create ambiguity. *Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 18 Cal. 4th 857, 868 (1998) (citing *Castro v. Fireman's Fund Am. Life Ins. Co.*, 206 Cal. App. 1114, 1120 (Ct. App. 1988)). Ambiguous policy terms are to be interpreted consistent with the reasonable expectations of the insured. *Id.* at 470-71 (citing *Safeco Ins. Co. v. Robert S.*, 26 Cal. 4th 758, 763 (2001)). However, the expectations of the insured are only relevant in interpreting an ambiguous contract; they may not be used to create an ambiguity where none exists. *Gen. Reinsurance Corp. v. St. Jude Hosp.*, 107 Cal. App. 4th 1097, 1108 (Ct. App. 2003) (citing *La Jolla Beach & Tennis Club, Inc. v. Indus. Indem. Co.*, 9 Cal. 4th 27, 37 (1994)).

The insured normally has the burden to establish that the claim is within the scope of the policy and appropriate for indemnification. *Advanced Network, Inc. v. Peerless Ins. Co.*, 190 Cal. App. 4th 1054, 1060 (Ct. App. 2010). Conversely, the insurer has the burden of showing that a claim is exempt from coverage under an exclusion to the policy. *Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1188 (1998). Exclusionary clauses are to be interpreted narrowly so that an insurer may not escape coverage by making exclusions difficult to understand. *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003). In determining whether language is inclusionary or exclusionary, a court looks, not to the placement of the language in the policy, but to the effect of the language and whether it serves to provide or take away coverage. *Aydin Corp.*, 18 Cal. 4th at 1191-92.

1. *Interrelated Wrongful Act Limitation*

The Tower 2 policies deem claims that stem from interrelated wrongful acts to have been made at the time the first such claim is made. The Insurers argue that the Underlying Actions fall within the scope of claims that are "interrelated wrongful acts" with the Tripp Litigation and are therefore excluded from coverage under the policies. Defendants argue that the policy language is ambiguous, and therefore should be interpreted in their favor to give a narrow reading to the scope of cases that qualify as interrelated wrongful acts. The Court finds the language unambiguous.

Both the Side ABC and Side-A policies limit their liability so that any claim that arises from the same "interrelated wrongful acts" constitutes a single claim. Furthermore, the policies note that all such "claims" will be construed as having been made at the time the first claim was made. (DE 193, Ex. 1, § IV, C & Ex. 5, § IV, G.) The parties dispute the meaning given to interrelated wrongful acts, specifically whether the Underlying Actions are interrelated wrongful acts with the Tripp Litigation.

The Side ABC policies define interrelated wrongful acts as "wrongful acts which have as a common nexus any fact, circumstance, situation, event, transaction or series of facts,

circumstances, situations, events or transactions." (DE 193, Ex. 1, § II, L.)[3] The Side-A policies define interrelated wrongful acts as "any wrongful act based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related, or series of related, facts, circumstances, situations, transactions, or events." (DE 193, Ex. 5, § II, J.)

The Court finds that both of these definitions are unambiguous. Defendants' attempt to find ambiguity in the language by noting that it creates a broad exclusion is unavailing. *See Medill v. Westport Ins. Corp.*, 143 Cal. App. 4th 819, 836 (Ct. App. 2006). Further, Defendants cannot establish ambiguity by noting that certain underwriters employed by the Insureds offered multiple suggested meanings for the scope of interrelated wrongful acts. The employees are not lawyers and thus the relevance of their opinion is questionable at best. Additionally, the fact that a word carries multiple meanings and creates a broad exclusion does not render the language ambiguous. *E.M.M.I, Inc. v. Zurich Am. Ins. Co.*, 32 Cal. 4th 465, 472 (2004).

In light of the fact that the language is unambiguous, the Court gives both clauses their plain and ordinary meaning. *Reserve Ins. Co. v. Pisciotta*, 30 Cal. 3d 800, 807 (1982). California courts have repeatedly given broad interpretation to phrases such as "arising out of." *Medill*, 143 Cal. App. 4th at 830 (noting that the language does not require any particular theory of causation and connotes only a "minimal causal connection or incidental relationship"). The Court will therefore construe any of the Underlying Actions as interrelated wrongful acts with the Tripp Litigation–and excluded from coverage under the Tower 2 policies–if they have in common any of the same underlying facts, circumstances, events or series of facts, circumstances, events. Further, the Side-A policies appear to give an even broader definition to interrelated wrongful acts by describing a wide range of causal connections ("based on, arising out of, directly or indirectly resulting from, in consequence of . . .") that will suffice to make claims fall within the scope of "interrelated wrongful acts." *See id.*

The Court finds the definition of "interrelated wrongful acts" unambiguous. It describes a broad range of relationships between the original claim and other lawsuits that will be deemed as part of that same claim and made at the time of the first claim, in this case as part of the Tripp Litigation and prior to the Tower 2 policies.

2. *Prior Notice Exclusion*

In addition to the language described above, both sets of policies specifically exclude claims that were noticed prior to the current policy period. They also provide that a wide range of related claims will be construed to be within the scope of the prior notice given.

The Side ABC policies exclude "any payment in connection with a claim based upon arising out of, directly or indirectly resulting from or in consequence of, or in any way involving: 1) any wrongful act or any fact, circumstance or situation which was been the subject of any notice given prior to the policy period . . . ." (DE 193, Ex. 1, § III, B.) The Side-A language is similar in that it will not cover claims "based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance or situation, transaction event or wrongful act which, before the inception date of this policy was the subject of notice given under any other . . . Directors' and Officers' insurance . . . ." (DE 193, Ex. 5, § III, B(2).)

[3] The Court only examines the language of the first Side ABC and Side-A policy as the remaining three policies in each category are "follow on" policies such that their language is identical.

The Court has already found that Defendants' arguments regarding ambiguity are unavailing and finds that this language does not lend itself independently to ambiguity. Therefore, the Court finds that the prior notice exclusion in both the Side ABC and Side-A policies is unambiguous. Further, the Court notes that the language here describes a broad relationship between subsequent claims and claims that were made during prior policies such that these subsequent claims will be excluded from coverage under the Tower 2 policies; in this part, the Side ABC policies are equal to the Side-A policies and broader than the Side ABC policies' interrelated wrongful acts limitation. (*See* DE 193, Ex. 5, § I, J.)

The difference between the interrelated wrongful acts limitation and the prior notice exclusion is a subtle one. The interrelated wrongful acts limitation states that claims that fall within the scope of "interrelated wrongful acts" will be deemed to have been made at the time the first claim was made. The prior notice exclusion states that the policy does not provide coverage for claims that are broadly related to claims that were noticed during a prior policy period.

3. *Tripp Litigation Exclusion*

Because the Tower 2 policies were written after the Tripp Litigation was intiated, the Side ABC and Side-A policies include an identical endorsement addressing the particulars of that case ("the Tripp Exclusion").

That exclusion provides that:

> no coverage shall be available under this policy for any claim based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the following: 1) the [Tripp Litigation]; or 2) any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions underlying or alleged in the Tripp Litigation., regardless of any legal theory upon which such claim is predicated.

(DE 193, Ex. 5, Endorsement #16.)[4]

The Court has already found that Defendants' arguments regarding ambiguity are unavailing. Additionally, the Court notes that the language of the Tripp Exclusion does not lend itself independently to ambiguity. Therefore, the Court finds this exclusion unambiguous. The Tripp Exclusion covers within its scope, and excludes from coverage, cases that have a broad range of relationships to the facts of the Tripp Litigation.

4. *Additional Language Noted in the Twin City Motion*

The Twin City Motion identifies an additional exclusion that was included in the Twin City insurance policy and incorporated into the Continental insurance policy. As will be evidenced below, the Court need not reach this additional grounds in order to resolve the pending Motions. Therefore, the Court will not define and interpret the policy language identified in the Twin City Motion.

**B. Analysis of the Underlying Actions**

Having defined the pertinent policy language, the Court now turns to the issue of

---

4 This quote is from the first Side-A policy at Exhibit 5, but the language from the first Side ABC policy at Exhibit 1 is identical in all material aspects.

whether any of the Underlying Actions are covered in the Tower 2 policies or fall within the scope of any of the three exclusionary clauses in light of the relationship between each Underlying Action and the Tripp Litigation. Because the Court finds that all ten Underling Actions are sufficiently related to the Tripp Litigation to be excluded under at least one clause of the Tower 2 policies, the Court **grants in full** the Insurer and Twin City Motions for Summary Judgment and **denies in full** the Perry, Trustee, and Van Dellen Motions for Summary Judgment.

1. *Daniels Litigation*

Defendants do not oppose the Insurer's Motion for Summary Judgment as it relates to coverage of the Daniels Litigation. (Perry Opp'n to Insurer Mot. for Summ. J., 1, n.1.) Therefore the Court **grants** the Insurer and Twin City Motions for Summary Judgment as to the claims and counterclaims that deal with the Daniels Litigation.

2. *FDIC Demand and FDIC Litigation*

The FDIC Demand is a letter from the FDIC to Perry, Keys, Abernathy, and other parties not named in this lawsuit dated March 27, 2009 providing notice of the FDIC's intent to initiate a lawsuit for damages arising out of the negligence of IndyMac's Officers and Directors in issuing loans that did not meet the company's underwriting standards. The FDIC Litigation is a lawsuit filed in July 2011 against Perry alleging that he negligently permitted the issuance and securitization of high risk mortgages against IndyMac's corporate standards. The facts indicate that the FDIC Demand and resulting FDIC Litigation are related.

Both of these Underlying Actions deal with allegations that have common "facts, circumstances, situations, events, or transactions" with the Tripp Litigation, namely IndyMac's failure to follow its underwriting standards and the resulting issuance of high risk mortgages. Wrongful acts that may fall outside the temporal scope of the Tripp Litigation are still within the scope of "interrelated wrongful acts" because that definition encompasses "series" of facts, circumstance, situation, event, and transaction. It is not necessary for the alleged wrongs to be temporally identical. Therefore, the FDIC Demand and FDIC Litigation fall within the scope of "interrelated wrongful acts" under both the Side ABC and Side-A policies and are excluded from coverage under both sets of policies through the interrelated wrongful acts limitation as well as the prior notice and Tripp Litigation exclusions. This is true even in light of the fact that the three clauses are exclusionary and the Insurers have the burden of negating coverage. *See Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1188 (1998).

In addition to the question of indemnification, the Counterclaims additionally request declaratory relief as to whether the Insurers are required to pay defense costs on the Underlying Actions. The duty to defend is broader than the duty to indemnify; such duty arises when there is the possibility of coverage. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 19 (1995). The determination of whether there is the possibility of coverage is made by "comparing the allegation of the complaint with the terms of the policy." *Id.* (citing *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 276 (1966)). The Court finds that the facts as alleged in the FDIC Demand and the FDIC Litigation show that there is no possibility of coverage .

Therefore, the Court **grants** the Insurer and Twin City Motions for Summary Judgment as to all claims and counterclaims that deal with the FDIC Demand and the FDIC Litigation.

3. *FDIC-HBD Matter*

The FDIC-HBD Matter focuses specifically on the actions of the Home Builders Division ("HBD"), rather than IndyMac as a whole. However, the allegations center on the fact that the HBD approved loans in violation of IndyMac's underwriting standards, allegations that are shared in common with the Tripp Litigation. For the reasons discussed in Section IV, B, 2, the FDIC-HBD Matter falls and is excluded from indemnification and defense costs under the Tower 2 policies.

Therefore, the Court **grants** the Insurer and Twin City Motions for Summary Judgment as to all claims and counterclaims that deal with the FDIC-HBD Matter and **denies** the Van Dellen Motion for Summary Judgment.

4. *Trustee Demand and Trustee Litigation*

In May 2009, the Trustee sent a demand letter to Perry putting him on notice of potential claims regarding breach of fiduciary duties as a result of the Directors' and Officers' decision to downstream funds from Bancorp to IndyMac ("Trustee Demand"). A lawsuit against Perry and the Directors of Bancorp followed this notice ("Trustee Litigation"). Although the allegations at the heart of both the Trustee Demand and the resulting Trustee Litigation are the alleged breach of fiduciary duties owed by the Defendants to Bancorp as a result of their decision to downstream money to IndyMac to the detriment of Bancorp long after IndyMac was salvageable, these claims directly result from the financial situation facing IndyMac as a result of the wrongful mortgage practices that are at the heart of the Tripp Litigation. The risky mortgages put IndyMac in a difficult financial situation, which Defendants attempted to fix by allegedly downstreaming funds from Bancorp in violation of their fiduciary duties.

For this reason, the Trustee Demand and Trustee Litigation directly result from the Tripp Litigation. Therefore the cases are interrelated wrongful acts with the Tripp Litigation as defined by the Side A policies and excluded from coverage. The definition of interrelated wrongful acts in the Side ABC policies does not include claims directly resulting from each other. Thus the Trustee Demand and Litigation may not be excluded from coverage under the interrelated wrongful acts limitation of the Side ABC policies. However, both the Tripp Exclusion and the Prior Notice Exclusion in the Side ABC policies exclude claims that directly or indirectly result from the Tripp Litigation; the Trustee Demand and Trustee Litigation both directly result from the same series of facts alleged in the Tripp Litigation. Therefore, both the Trustee Demand and Trustee Litigation are excluded from coverage under the Tower 2 policies, although perhaps not under all three clauses of the Side ABC policies. Furthermore, the Court finds that there is no possibility of coverage for the reasons described above in Section IV, B, 2 and defenses costs are inappropriate.

Therefore, the Court **grants** the Insurer and Twin City Motions for Summary Judgment as to all claims and counterclaims that deal with the Trustee Demand and Trustee Litigation and **denies** the Trustee Motion for Summary Judgment.

5. *MBS Litigation*

Defendants do not oppose the Insurer's Motion for Summary Judgment as it relates to coverage of the MBS Litigation. (Perry Opp'n to Insurer Mot. for Summ. J., 1, n.1.) Therefore, the Court **grants** the Insurer and Twin City Motions for Summary Judgment as to all claims and counterclaims that deal with the MBS Litigation.

6. *MBIA Litigation*

The MBIA Litigation is brought on behalf of a stock insurance corporation against Defendants and other parties alleging that Defendants made false representations regarding three securitization transactions. Specifically, the allegations are that Defendants did not disclose that IndyMac had failed to follow its underwriting standards and that the mortgages that were part of these securitization transactions were high risk. These allegations share the same factual basis as the allegations in the Tripp Litigation in that part of the alleged wrong was the decision by IndyMac to abandon its underwriting practices which resulted in the issuance of high risk mortgages. For the reasons discussed in Section IV, B, 2, the MBIA Litigation is excluded from coverage under the Tower 2 policies and defense costs are likewise inappropriate.

Therefore, the Court **grants** the Insurer and Twin City Motions for Summary Judgment as to all claims and counterclaims that deal with the MBIA Litigation.

7. *Assured Guaranty Litigation*

The Assured Guaranty Litigation follows very closely to the MBIA Litigation in that it challenges two securitization transactions, specifically in regards to the allegedly false representations made by Defendants in regards to IndyMac's underwriting policies and the soundness of the mortgages that were used in the securitization transactions. For the reasons discussed in Section IV, B, 2, the Assured Guaranty Litigation is excluded from coverage under the Tower 2 policies and defense costs are likewise inappropriate.

Therefore, the Court **grants** the Insurer and Twin City Motions for Summary Judgment as to all claims and counterclaims that deal with the Assured Guaranty Litigation.

8. *SEC Litigation*

The SEC Litigation is an enforcement action brought by the SEC against Perry and Keys for allegedly false representations regarding IndyMac's financial stability made in required SEC filings. In this case, like the Trustee Demand and Litigation, IndyMac's abandonment of its underwriting practices is not the alleged wrong. However, again like the Trustee Demand and Litigation, the wrongs alleged in the SEC Litigation directly resulted from IndyMac's decision to abandon its underwriting practices and guidelines. The risky mortgages put IndyMac in a perilous financial condition, one which Defendants allegedly tried to cover up through false SEC filings.

The parties make much of the fact that Judge Wu declined to sign an order relating the SEC Litigation to the Tripp Litigation. In the Central District, the determination of whether two cases are related such that they should be assigned to the same judge is governed by General Order 08-05. The relationship required for two cases to be related under the General Order is more narrow than the relationship described in the Tower 2 exclusionary clauses. Thus, the Court finds that it is not determinative that the SEC Litigation and the Tripp Litigation are not related under General Order 08-05.

For the reasons discussed in Section IV, B, 4, the SEC Litigation is excluded from coverage under the Tower 2 policies as it directly results from the same facts or series of facts alleged in the Tripp Litigation.

Therefore, the Court **grants** the Insurer and Twin City Motions for Summary Judgment

as to all claims and counterclaims that deal with the SEC Litigation and **denies** the Perry Motion for Summary Judgment.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** the Insurer and Twin City Motions for Summary Judgment (DEs 250 and 252, respectively) and **DENIES** the Perry, Trustee, and Van Dellen Motions for Summary Judgment (DEs 274, 275, and 249, respectively). This Order is binding against Defendant Abernathy who has not joined in any of the oppositions to the Insurer or Twin City Motions as the Court finds that the legal conclusions reached herein are sufficient basis for granting the Motions; the Court has not relied solely on his failure to file an opposition.

**IT IS SO ORDERED.**

________ : ________

Initials of Preparer slw